IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| EL PAPEL, LLC; BERMAN, 2 LLC; and KARVELL LI, an individual, )<br><br>Plaintiffs, )<br><br>v. )<br><br>JAY R. INSLEE, in his official capacity as Governor of the State of Washington; JENNY A. DURKAN, in her official capacity as the Mayor of the City of Seattle; and THE CITY OF SEATTLE, a municipal Corporation, )<br><br>Defendants. ) | Civil Action No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

    Plaintiffs, El Papel, LLC, Berman 2, LLC, and Karvell Li, by and through undersigned counsel, hereby file this Complaint against Defendants Jay R. Inslee, in his official capacity as Governor of the State of Washington (hereinafter "Washington State"), Jenny A. Durkan, in her official capacity as Mayor of the City of Seattle (hereinafter "the Mayor"), and the City of Seattle (hereinafter "Seattle") and allege as follows:

*COMPLAINT* - 1
*Case No.* _____

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## INTRODUCTION

1.     In early 2020, the COVID-19 pandemic struck the United States, prompting governments nationwide to shut down substantial parts of the economy for several months, creating widespread financial hardship.

2.     In response, the Washington Governor and the City of Seattle, encompassing both the Mayor and City Council, suspended the right of property owners to evict tenants for nonpayment of rent, among other reasons. Plaintiffs recognize and are themselves affected by the economic hardship of the ongoing pandemic. They have in the past and continue to work effectively with tenants who fall behind on their rent, whether due to the pandemic or for other reasons. But as Plaintiffs' experiences show, the blanket eviction ban puts landlords at the mercy of tenants who do not pay rent or violate other lease terms, whether they face financial hardship or not, and deprives them not only of their income, but the ability to recover and re-let their property to tenants in need of new homes.

3.     The eviction bans have upended lease obligations and stripped landlords of one of their most basic of property rights—the right of possession—leaving them with no bargaining power and no remedy against nonpaying tenants or tenants in breach of other material lease obligations. Meanwhile, tenants remain able to enforce all the landlords' lease obligations.

4.     The eviction bans violate federal constitutional protections against the impairment of contracts by State and municipal governments and evade the government's constitutional duties to pay just compensation when private property is taken for public use.

5.     The eviction bans go well beyond even the foreclosure moratoria discussed in the Great Depression-era case of *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934), widely regarded as establishing the apex of the state's power to impair contracts during an economic crisis. Moreover, by requiring private landlords to forgo their right of possession without even the recompense of fair rent, the eviction bans lay the burden of emergency housing costs at the feet of private landlords to avoid imposing the true cost on the public. This is precisely what the Takings Clause of the Federal Constitution does not allow. That clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and

justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

## JURISDICTION AND VENUE

6.     This action arises under the Contract Clause of Article I, Section 10, of the United States Constitution and the Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment. This Court has jurisdiction through 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

7.     Under *Ex parte Young*, 209 U.S. 123 (1908), actions against state officials seeking prospective injunctive relief are not barred by sovereign immunity.

8.     As explained below, Seattle and Washington State's eviction bans and Seattle's related ordinance establishing terms of future potential repayment of rents impair a landlord's contractual ability to evict nonpaying tenants and tenants violating other lease obligations, or otherwise seek to collect overdue rent. All Plaintiffs currently have nonpaying tenants, some of whom have the means to pay but have chosen not to; thus, absent the eviction ban, the Plaintiffs would have a right to evict their tenants. Consequently, a present and concrete controversy between the parties exists.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2). Plaintiffs reside within this District and the rental properties subject to this action are situated here.

## PARTIES

**Plaintiffs**

10.     Plaintiffs El Papel, LLC, Berman 2, LLC, and Karvell Li are the fee simple owners of several rental properties, including rental properties that have at all relevant times been located within Seattle City limits. All Plaintiffs currently have nonpaying tenants or tenants violating their rental agreements. Under the Defendants' eviction bans, the Plaintiffs are prohibited from regaining possession of their property or enforcing contractual obligations, such as payment of rent.

COMPLAINT - 3
Case No. _____

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

**Defendants**

11.    Defendant Jay R. Inslee is the Governor of the State of Washington. He is sued in his official capacity. Earlier this year, Governor Inslee issued an executive order implementing a statewide eviction ban. Wash. Rev. Code § 43.06.220(2)(g) (2020); Proclamation 20-19, March 18, 2020, Exh. A. Governor Inslee is charged with enforcing his orders. Wash. Rev. Code § 43.06.010 (2020); Wash. Rev. Code § 43.06.220 (2020).

12.    Defendant Jenny A. Durkan is the Mayor of the City of Seattle. As Mayor, she is empowered to enforce the laws of Seattle and to perform such other duties and exercise such other authority as may be prescribed by law. Seattle, Washington, Municipal Charter, Art. V, § 2. She is sued in her official capacity.

13.    The City of Seattle is a municipality created under the laws of the State of Washington. The Seattle City Council is its governing body.

14.    Each Defendant is a "person" within the meaning of 42 U.S.C. § 1983. The acts of the Defendants set forth below were performed under color of law. The acts alleged herein occurred and took place in Washington State and the City of Seattle.

## GENERAL ALLEGATIONS

Washington State Eviction Ban

15.    Typically, in Washington State a landlord can bring an unlawful detainer action when a tenant: (1) in a fixed-term lease holds over or retains possession after the lease's expiration, (2) in a month-to-month lease, refuses to leave the rental property after the landlord provides twenty-day notice requiring the tenant to vacate the premises at the end of a given month, (3) defaults on his rent payments under the lease after the landlord serves the tenant notice to either pay or vacate, (4) continues in possession after neglect or failure to keep or perform a lease condition, (5) permits waste on the demised premises, (6) resides on the land without having color of title, or (7) permits any gang-related activity on the premises. Wash. Rev. Code § 59.12.030 (2020).

16.    By proclamation, the Governor has suspended these causes for eviction. The proclamation states: "Landlords, property owners, and property managers are prohibited from

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

serving or enforcing, or threatening to serve or enforce, any notice requiring a resident to vacate any dwelling or parcel of land occupied as a dwelling, including but not limited to an eviction notice, notice to pay or vacate, notice of unlawful detainer, notice of termination of rental, or notice to comply or vacate. This prohibition applies to tenancies or other housing arrangements that have expired or that will expire during the effective period of this Proclamation. This prohibition applies unless the landlord, property owner, or property manager (a) attaches an affidavit attesting that the action is necessary to respond to a significant and immediate risk to the health, safety, or property of others created by the resident; or (b) provides at least 60 days' written notice of intent to (i) personally occupy the premises as a primary residence, or (ii) sell the property." Proclamation 20-19.3, July 24, 2020, Exh. B.

17.     Additionally, under the eviction ban, landlords are prohibited from seeking or enforcing judicial eviction orders, assessing or threatening to assess late fees, and treating any unpaid rent as an enforceable debt. Exh. B.

18.     Notably, the eviction ban is not limited only to tenants facing hardship due to the COVID-19 pandemic. Exh. B.

19.     Originally issued on March 18, 2020, Washington's eviction ban was only intended to last a few months. Exh. A. However, Governor Inslee has continually extended it. Exhs. B–D. Currently, the moratorium is in effect through October 15, 2020. Exh. B at 4.

Seattle Mayor's Eviction Ban

20.     Similarly, Seattle typically allows landlords to evict tenants for the nonpayment of rent. *See* Seattle, Washington, Municipal Code (SMC) § 22.206.160 (2020).

21.     However, in March of this year, Seattle's Mayor issued a civil emergency order preventing all landlords from initiating unlawful detainer actions during her emergency order. SMC § 10.02.020.A.15; Mayor's Eviction Moratorium, March 14, 2020; Exh. E. The Mayor's order creates an affirmative defense to evictions unless the tenant is an imminent threat to their neighbors' health or safety. Exh. E at 3. The Mayor's order also prevents landlords from issuing late fees or other charges due to the late payment of rent. Exh. E at 3.

*COMPLAINT - 5*
*Case No. _____*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

22.      Originally issued on March 14, 2020, the Mayor's ban on evictions has been extended through December 31, 2020, or until the end of the Mayor's Proclamation of Civil Emergency, whichever is earliest. Exh. E at 3; Mayor's Extension of Moratorium, May 2, 2020, Exh. F; Mayor's Extension of Moratorium, July 31, 2020, Exhibit G.

23.      Notably, the Mayor's ban is written to prevent all evictions, not just those causally related to the pandemic. Exhs. E–G.

Seattle City Council's Eviction Ban

24.      As mentioned above, Seattle typically allows landlords to evict tenants for the nonpayment of rent. *See* SMC § 22.206.160 (2020).

25.      However, Seattle's City Council supplemented the Mayor's eviction ban with its own, amending the City's just-cause-eviction ordinance to create an affirmative defense to evictions. Seattle Ordinance 126075, Exh. H. The affirmative defense states: "[I]t is a defense to eviction if the eviction would result in the tenant having to vacate the housing unit within six months after the termination of the Mayor's eviction moratorium, and if the reason for terminating the tenancy is: 1) The tenant fails to comply with a 14-day notice to pay rent or vacate pursuant to RCW 59.12.030(3) for rent due during, or within six months after the termination of, the Mayor's residential eviction moratorium; or 2) The tenant habitually fails to pay rent resulting in four or more pay-or-vacate notices in a 12-month period." Exh. H at 19.

26.      The City Council's eviction ban allows the tenant to invoke the affirmative defense if he/she submits a "declaration or self-certification asserting [he/she] has suffered a financial hardship[.]" Exh. H at 19. The ban does not require the financial hardship to be related to the pandemic. Exh. H.

27.      Originally enacted on May 6, 2020, the City Council's eviction ban will remain in effect until six months after the Mayor's separate eviction ban ends. Exh. H at 1.

Seattle City Council's Rent Repayment Ordinance

28.      Seattle's City Council also adopted a "rent repayment" ordinance, Ordinance 126081, which limits Plaintiffs' ability to collect rent according to their lease agreements. Seattle Ordinance 126081, Exh. I. The repayment ordinance restricts a landlord from timely collecting

COMPLAINT - 6
Case No. _____

rent from tenants for unpaid rent that came due during the Mayor's civil emergency or six months after the civil emergency ends. *Id.*

29.     If a tenant owes less than one month of overdue rent, the tenant may pay the overdue rent in three consecutive, monthly installments. Seattle Ordinance 126081, Exh. I at 7–8. If the tenant is between one and two months overdue, the tenant may pay the balance in five consecutive, monthly installments. *Id.* For overdue rent exceeding two months, the tenant may pay in six monthly payments. *Id.*

30.     A tenant who declines to pay rent for the full length of the period under the ordinance (the civil emergency plus six months) will not have to pay the landlord in full until a full year after the civil emergency has ended. Exh. I.

31.     A landlord's rejection of the city-mandated repayment schedule constitutes a defense to eviction under the ordinance. Exh. I at 8.

Plaintiffs and the Homes They Rent

A.     El Papel's Rental Homes

32.     Plaintiff El Papel, LLC, has two governors: Mark Travers and Michele Ruess. El Papel, LLC, owns several small rental properties.

33.     One such rental property—located in Seattle city limits—is currently occupied by two holdover tenants whose lease expired on July 31 and who have refused to pay rent since April of this year.

34.     The lease agreement expressly provides that the tenancy does not roll into a month-to-month tenancy after the termination of the fixed term.

35.     El Papel is currently unable to enforce the lease provisions requiring the tenants to vacate the rental property at the end of their lease term.

36.     At least one of these tenants actively encouraged the other tenants in the building and neighborhood to engage in a "rent strike" by refusing to pay rent.

37.     The tenants collectively owe El Papel $14,408 as of August 2020. El Papel has sought to negotiate with its tenants, who have been unresponsive.

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

38.     The lease agreement between El Papel and the tenants establishes that the tenants shall pay monthly rent on the first day of each calendar month of the lease term. The lease agreement states that any rent received after the third day of any month is considered late and subject to a late fee of $75.00.

B.      Berman 2, LLC, and its Rental Properties

39.     Berman 2, LLC, is owned and managed by Osho Berman. Berman 2 owns and manages over twenty rental units within Seattle city limits.

40.     Mr. Berman has historically rented and continues to rent these units to low-income tenants, many of whom were previously homeless, at below-market rates.

41.     Berman 2 relies on the availability of eviction as a remedy to maintain a safe and comfortable environment for tenants and to keep rates low.

42.     Berman 2 has tenants occupying a total of six units who are currently declining to pay rent in response to the pandemic. Mr. Berman has sought to negotiate with his tenants, and is willing to accept partial payment or repayment, but they have been unresponsive. Berman 2's nonpaying tenants continue to occupy the units. To date, Berman 2's tenants owe in total about $10,818 in overdue rent accrued since the eviction bans became law, not including late fees.

43.     Berman 2's lease agreements are for fixed terms and do not roll into month-to-month tenancies upon expiration. His lease agreements state that his tenants agree to "pay all rent and other charges promptly when due or assessed, including utilities for which [the tenant] is responsible and to provide proof of payment." It also provides: "Any rent unpaid by the due date is termed delinquent." The lease provides that late rent will result in a late payment charge of $75 plus $5 each additional day thereafter that rent has not been paid in full.

Karvell Li and his Rental Property

44.     Karvell Li owns one residential rental property in Seattle city limits. Mr. Li entered into a month-to-month lease with his current tenant on January 15, 2017.

45.     Mr. Li's tenant has remained employed throughout the tenancy.

46.     Mr. Li's tenant, however, began to neglect consistent rent payments beginning in June 2019.

COMPLAINT - 8
Case No. _____

47.     Mr. Li has issued six separate fourteen-day notices to pay or vacate in the last twelve months, on August 10, 2019, September 2, 2019, October 2, 2019, November 2, 2019, December 18, 2019, and February 14, 2020.

48.     Mr. Li has gone above and beyond his duties as a landlord by trying to negotiate payment plans, offering to waive rent and certain rental fees, pay utility expenses, and pay all of his tenant's moving expenses. Mr. Li's tenant has denied or refused to respond to all such offers. Consequently, but for Seattle and Washington State's eviction ban, Mr. Li would initiate an unlawful detainer action to recover his property.

49.     As of the filing of this complaint, the tenant remains in possession of the rental unit.

50.     The lease states that rent is to be paid monthly, on or before the first day of each month. If rent is not paid on or before the due date, the lease provides that the tenant shall pay a $25 late charge for each day that the rent is delinquent, up to a maximum of ten percent of one month's rent. As of the filing of this complaint, the tenant owes $27,059.55 in accumulated rent and late fees.

Injury to Plaintiffs from the Eviction Bans and Rent Repayment Ordinance

51.     Because of the eviction bans and the repayment ordinance, Plaintiffs are prohibited from evicting, attempting to evict, or trying to recover any overdue rent. As a result, the Plaintiffs are deprived of their right to possess their own properties and the obligations (and related remedies) of their lease contracts have been impaired.

52.     Simply put, in an effort to mitigate the financial hardships individuals face because of the pandemic, Seattle and Washington State have shifted the financial burden of its emergency housing policies from renters or the public to landlords.

53.     But for the eviction bans and the rent repayment ordinance, Plaintiffs would immediately initiate eviction proceedings to gain re-entry to their properties or seek other remedies available to collect rents from tenants occupying their properties in breach of, or without, valid leases.

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## INJUNCTIVE RELIEF ALLEGATIONS

54.     The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

55.     If Seattle and Washington State are not enjoined from enforcing their eviction ban and repayment ordinance, the Plaintiffs will be irreparably harmed. Under Seattle and Washington State's eviction ban, the Plaintiffs are now suffering a continuous and compounding injury because they are unable to recover overdue rent or evict nonpaying tenants and re-let their properties. As a result, the Plaintiffs and other similarly situated landlords, who must continue paying mortgages, taxes, insurance, and maintenance costs, face an ever-increasing financial injury with no certain end date in sight. Seattle and Washington State's actions deprive the Plaintiffs of their constitutionally protected property interests and unconstitutionally impair their ability to enforce the obligations created under their rental contracts.

56.     Additionally, the Plaintiffs are informed and believe, and on that basis allege, that if not enjoined by this Court, Seattle and Washington State will continue to extend their respective bans and thereby continue to violate the Takings Clause of the Fifth Amendment by requiring the physical occupation of Plaintiffs' properties in breach of, or without, valid leases.

57.     The Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are compounding monthly and, in any event, would not fully redress the Plaintiffs' harm because under the Defendants' eviction bans the Plaintiffs still cannot make repairs and re-let their properties. Additionally, under the Defendants' eviction bans, the Plaintiffs will not recover any damages for a year after the pandemic emergency ends. Such delay necessitates an injunction.

58.     Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

59.     The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

60.     An actual and substantial controversy exists between the Plaintiffs and Defendants over the constitutionality of the Defendants' eviction ban and the rent repayment ordinance. The Plaintiffs contend, pursuant to 42 U.S.C. § 1983, that both on its face and as applied to the

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

Plaintiffs, the Defendants' eviction ban and Seattle's rent repayment ordinance violate the Contract Clause of Article I, Section 10, of the U.S. Constitution, and the Takings Clause of the Fifth Amendment. The Plaintiffs are informed and believe, and on that basis allege, that the Defendants contend that their eviction ban and rent repayment ordinance are constitutional.

61.    This case is justiciable now because Seattle and Washington State's eviction ban and Seattle City Council's separate rent repayment ordinance have caused and will continue to cause injury to the Plaintiffs by preventing them from enforcing their rental contracts and forcing Plaintiffs to submit to the physical occupation of their property by others with no legal right to remain there. But for Seattle and Washington State's eviction ban and repayment ordinance, the Plaintiffs would be able to evict their nonpaying tenants or other unlawful occupants, recover any overdue rent, and make reasonable use of their rental properties by renting them to future tenants willing to abide by lease terms.

62.    Declaratory relief is therefore appropriate to resolve this controversy.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF –**

**CITY OF SEATTLE'S CITY COUNCIL'S EVICTION BAN'S UNCONSTITUTIONAL IMPAIRMENT OF A CONTRACT**

**(Pursuant to U.S. Const. art. I, § 10, cl. 1 & 42 U.S.C. § 1983)**

63.    The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

64.    Article I, Section 10, Clause 1, of the United States Constitution states: "No State shall . . . make any . . . law impairing the obligation of contracts[.]" U.S. Const. art. I, § 10, cl. 1. However, this is exactly what Seattle's eviction ban does. Exh. H.

65.    Plaintiffs' lease contracts with their tenants condition tenancy on the obligation to pay rent and maintain other terms of the lease. Those contracts also provide Plaintiffs with a right to evict tenants for nonpayment of rent or other breaches of lease terms.

66.    Plaintiffs have a constitutionally protected right to the possession of their properties.

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

67.     As discussed above, *supra* ¶¶ 24–27, Seattle's City Council's eviction ban creates an affirmative defense to its just-cause eviction ordinance. Seattle Ordinance 126075, Exh. H. To invoke this affirmative defense, a tenant is only required to submit a declaration or self-certify financial hardship. Exh. H at 19. The hardship does not have to be related to the pandemic. Exh. H.

68.     Once the affirmative defense is invoked, a landlord cannot evict or attempt to evict as a remedy for a breach of a lease. *Id.* at 19–20. A landlord also cannot seek to evict a nonpaying tenant for six months after the Mayor's eviction ban is terminated. *Id.*

69.     Due to the eviction ban, Plaintiffs can no longer enforce the central obligation to pay rent in monthly installments through an unlawful detainer action. The eviction ban's impairment on Plaintiffs' residential lease agreements is therefore substantial.

70.     By enforcing its eviction ban, Seattle, acting under color of state law, has unconstitutionally impaired the obligation of Plaintiffs' contracts.

71.     An actual controversy exists between the parties, in that the Plaintiffs are suffering an ongoing and irreparable harm by Seattle's treatment, and the harm will continue unless Seattle's eviction ban is declared unconstitutional and enjoined by this Court.

## SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF –
## CITY OF SEATTLE'S CITY COUNCIL'S REPAYMENT ORDINANCE'S
## UNCONSTITUTIONAL IMPAIRMENT OF A CONTRACT
### (Pursuant to U.S. Const. art. I, § 10, cl. 1 & 42 U.S.C. § 1983)

72.     The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

73.     Under Seattle's repayment ordinance, a tenant who fails to pay rent during or within six months after the emergency order's termination do not have to repay the full balance of unpaid rent for up to a full year after the civil emergency ends (currently January 1, 2022). Exh. I. The repayment order also prohibits landlords from collecting late fees, interest, or other charges related to the late payment of rent. *Id.*

74.     The repayment ordinance directly impairs the contractual obligation to pay late fees and interest on overdue rent. Exh. I. Since the timeliness of payment is a central feature of a residential lease agreement, interference that removes enforcement of timely payment is substantial.

75.     Additionally, Seattle's repayment ordinance imposes an unreasonable delay on a landlords' ability to recover overdue rent and late fees. Exh. I. The City Council's repayment ordinance would prohibit the Plaintiffs, and other similarly situated landlords, from recovering their lost earnings up to a year after the emergency order ends. Such a delay is an impermissible impairment of the rental agreements.

76.     By enforcing the fundamentally unfair repayment ordinance, the City of Seattle, acting under color of state law, has unconstitutionally impaired the obligation of Plaintiffs' contracts.

77.     An actual controversy exists between the parties, in that the Plaintiffs are suffering ongoing and irreparable harm by Seattle's impairment of their contracts, and the harm will continue unless Seattle's repayment ordinance is declared unconstitutional and enjoined by this Court.

### THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF –
### CITY OF SEATTLE'S CITY COUNCIL'S UNCONSTITUTIONAL TAKING OF THE
### PLAINTIFFS' RENTAL PROPERTIES
### (Pursuant to U.S. Const. amend. V & 42 U.S.C. § 1983)

78.     The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

79.     The Fifth Amendment to the United States Constitution states: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. This provision is also known as the Takings Clause.

80.     A physical occupation of property authorized by the government is a taking. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012).

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

81.    Plaintiffs have a constitutionally protected right to the possession of their property.

82.    Plaintiffs are suffering the unwanted and unauthorized occupation of their property as a result of the eviction ban.

83.    Defendants may not constitutionally compel Plaintiffs to rent their property, deprive plaintiffs of their right to re-enter their property, or refrain from terminating a tenancy pursuant to valid lease contracts.

84.    The eviction ban forces Plaintiffs to bear the costs of providing tenant public assistance in violation of the Takings Clause, which was designed to bar the Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Armstrong*, 364 U.S. at 48–49.

85.    An actual controversy exists between the parties, in that the Plaintiffs are suffering an ongoing and irreparable harm by Seattle's taking of their property, and the harm will continue unless Seattle's eviction ban is declared unconstitutional and enjoined by this Court.

## FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF – MAYOR OF SEATTLE'S EVICTION BAN'S UNCONSTITUTIONAL IMPAIRMENT OF A CONTRACT

### (Pursuant to U.S. Const. art. I, § 10, cl. 1 & 42 U.S.C. § 1983)

86.    The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

87.    Under the Seattle Mayor's eviction ban, landlords are prevented from initiating unlawful detainer actions during the Mayor's emergency order. Exh. E. Landlords are also not allowed to impose late fees or other charges due to the late payment of rent. Exh. E. This is an unlawful impairment on the obligations of contract.

88.    The Mayor and the City of Seattle will likely argue they can impair the Plaintiffs' rental contracts because of the pandemic and to ensure individuals have adequate housing; however, like Seattle's City Council's eviction ban and Washington State's eviction ban, the Mayor's ban is justified by or adequately tailored to the pandemic. Exh. E. Instead, the eviction ban prevents all evictions regardless of the circumstances surrounding a tenant's refusal to pay

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

rent. Exh. E. Additionally, to the extent the Mayor's eviction ban does relate to the pandemic, it still eliminates the crux of the rental business model, which is an individual's ability to collect rent in a timely manner and enforce that obligation through eviction proceedings if necessary. Exh. E.

89.     Consequently, because the Mayor's eviction ban substantially impairs the Plaintiffs' ability to enforce their rental contracts, the Mayor's eviction ban cannot stand.

90.     By enforcing the eviction ban, Seattle's Mayor, acting under color of state law, has unconstitutionally impaired the obligation of Plaintiffs contracts.

91.     An actual controversy exists between the parties, in that the Plaintiffs are suffering an ongoing and irreparable harm by Seattle's Mayor's treatment, and the harm will continue unless the Mayor's eviction ban is declared unconstitutional and enjoined by this Court.

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF –**
**MAYOR OF SEATTLE'S EVICTION BAN'S UNCONSTITUTIONAL TAKING OF**
**THE PLAINTIFFS' RENTAL PROPERTIES**
**(Pursuant to U.S. Const. amend. V & 42 U.S.C. § 1983)**

92.     The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

93.     Seattle's Mayor's eviction ban impermissibly allows tenants to indefinitely physically occupy the Plaintiffs' rental properties without any compensation. Exh. E.

94.     By enforcing the eviction ban, Seattle's Mayor, acting under color of state law, is imposing a physical occupation of Plaintiffs' property in violation of the Takings Clause.

95.     An actual controversy exists between the parties, in that the Plaintiffs are suffering an ongoing and irreparable harm by the Mayor physically taking their property, and the harm will continue unless Seattle's Mayor's eviction ban is declared unconstitutional and enjoined by this Court.

*COMPLAINT* - 15
*Case No.* _____

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

**SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF –
WASHINGTON STATE'S EVICTION BAN'S UNCONSTITUTIONAL IMPAIRMENT
OF A CONTRACT**

**(Pursuant to U.S. Const. art. I, § 10, cl. 1 & 42 U.S.C. § 1983)**

96.    The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

97.    Under Washington State's eviction ban, all landlords are prohibited from serving or enforcing any notice requiring a tenant to vacate any dwelling or parcel of land occupied as a dwelling. Exh. A at 2. This ban applies in all cases unless: (1) the tenant is an immediate risk to the health, safety, or property of others or (2) the landlord plans to personally occupy the premises or sell the property. Exh. A at 2. This is an unconstitutional impairment of contractual obligations.

98.    Similar to the other Defendants, it is likely Washington State will argue it can impair the Plaintiffs' rental contracts because of the pandemic and to ensure individuals have adequate housing; however, like Seattle's various eviction ban, Washington State's eviction ban is neither justified by nor adequately tailored to the pandemic. Exh. A. Instead, the eviction ban prevents all evictions regardless of the circumstances surrounding a tenant's refusal to pay rent. Exh. A at 2–3. Additionally, to the extent Washington State's eviction ban does relate to the pandemic, it still eliminates the crux of the rental business model, which is an individual's ability to collect rent in a timely manner and enforce that obligation through eviction proceedings if necessary. Exh. A.

99.    Consequently, because Washington State's eviction ban substantially impairs the Plaintiffs' ability to enforce their rental contracts, Washington State's eviction ban cannot stand.

100.   By enforcing the eviction ban, Washington State, acting under color of state law, has unconstitutionally impaired the obligation of Plaintiffs' contracts.

101.   An actual controversy exists between the parties, in that the Plaintiffs are suffering an ongoing and irreparable harm by Washington State's treatment, and the harm will continue unless Washington State's eviction ban is declared unconstitutional and enjoined by this Court.

*Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484*

**SEVENTH CLAIM FOR DECLARATORY RELIEF – TAKING OF PROPERTY**

**(Pursuant to U.S. Const. amend. V & 42 U.S.C. § 1983)**

102.    The Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs.

103.    Washington State's eviction ban impermissibly allows tenants to indefinitely physically occupy the Plaintiffs' rental properties without any compensation. Exh. A at 2–3.

104.    By enforcing the eviction ban, Washington State, acting under color of state law, is allowing and will continue to allow tenants to physically occupy premises that do not belong to them, violating the Takings Clause.

105.    An actual controversy exists between the parties, in that the Plaintiffs are suffering an ongoing and irreparable harm by Washington State's physical taking of their property, and the harm will continue unless Washington State's eviction ban is declared unconstitutional and enjoined by this Court.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs pray for relief as follows:

1.    For a declaration that Seattle's City Council's eviction ban on its face, and as applied to the Plaintiffs and similarly situated property owners, violates the Contracts Clause by impermissibly preventing them from enforcing the eviction provisions in their rental contracts;

2.    For a declaration that Seattle's City Council's rent repayment ordinance on its face, and as applied to the Plaintiffs, violates the Contracts Clause by impermissibly delaying the Plaintiffs', and other similarly situated landlords', ability to recover overdue rent and late fees, which they are contractually allowed to do through their rental contracts with their tenants;

3.    For a declaration that Seattle's City Council's eviction ban on its face, and as applied to the Plaintiffs and similarly situated property owners, violates the Takings Clause of the Fifth Amendment by forcing landlords to accept the physical occupation of their property without just compensation;

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

4.     For a declaration that the Mayor's eviction ban on its face, and as applied to the Plaintiffs and other similarly situated property owners, violates the Contracts Clause by impermissibly preventing them from enforcing the eviction provisions in their rental contracts;

5.     For a declaration that the Mayor's eviction ban on its face, and as applied to the Plaintiffs and similarly situated property owners, violates the Takings Clause of the Fifth Amendment by forcing landlords to accept the physical occupation of their property without just compensation;

6.     For a declaration that Washington State's eviction ban on its face, and as applied to the Plaintiffs and other similarly situated property owners, violates the Contracts Clause by impermissibly preventing them from enforcing the eviction provisions in their rental contracts;

7.     For a declaration that Washington State's eviction ban on its face, and as applied to the Plaintiffs and other similarly situated property owners, violates the Takings Clause of the Fifth Amendment by forcing landlords to accept the physical occupation of their property without just compensation;

8.     To permanently enjoin the Defendants, their agents, representatives, and employees, from enforcing their respective eviction bans and the rent repayment ordinance;

9.     For an award, pursuant to 42 U.S.C. § 1988(b), of reasonable attorney fees, expenses, and costs; and

10.     For nominal damages and such other relief as the Court deems just and proper.

DATED: September 3, 2020.

Respectfully submitted:

s/ ETHAN W. BLEVINS
s/ BRIAN T. HODGES
Ethan W. Blevins, WSBA # 48219
Brian T. Hodges, WSBA # 31976
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
Email: EBlevins@pacificlegal.org
Email: BHodges@pacificlegal.org

Kathryn D. Valois, Florida Bar # 1010150*
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
Email: KValois@pacificlegal.org

* Pro hac vice pending

*Attorneys for Plaintiffs*

*Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484*