# Exhibit H

Complaint/Sea. Ord. 126075, May 6, 2020

Court: W.D. Wash.  Case No. _____

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, WA 98104 - 425.576.0484

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1

## CITY OF SEATTLE

2

### ORDINANCE  126075

3

COUNCIL BILL  119784

4
5  AN ORDINANCE relating to termination of residential rental tenancies; providing a defense to
6      evictions occurring within six months after the termination of the Mayor's residential
7      eviction moratorium as amended by Resolution 31938; amending Section 22.206.160 of
8      the Seattle Municipal Code; declaring an emergency; and establishing an immediate
9      effective date; all by a 3/4 vote of the City Council.
10
11  WHEREAS, the coronavirus disease 19 (COVID-19) outbreak was declared a pandemic by the

12      World Health Organization on March 11, 2020; and

13  WHEREAS, self-distancing (keep 6 feet of distance between individuals) has been

14      recommended to deter the spread of the virus; and

15  WHEREAS, the Governor of Washington has declared a state of emergency, prohibited

16      gatherings of 50 or more people, and closed K-12 schools statewide in an effort to slow

17      transmission and contraction of the disease; and

18  WHEREAS, such a ban in conjunction with self-distancing means cancellations of large events

19      and a decrease in the number of people patronizing places of business, resulting in

20      reduced work and loss of income for workers in multiple industries, including the service

21      and entertainment industries; and

22  WHEREAS, a decrease in income can result in financial instability and uncertainty about how to

23      allocate resources to continuing expenses, including rent; and

24  WHEREAS, the economic disruptions caused by COVID-19 will increase the likelihood of

25      tenants facing eviction; and

26  WHEREAS, evictions can often result in homelessness given the rental housing market in

27      Seattle; and

*Template last revised December 2, 2019*

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    WHEREAS, people experiencing homelessness are at risk of transmitting and contracting

2         COVID-19 because of the nature of close quarters in encampments and shelters, and do

3         not have consistent access to locations for handwashing or other hygiene facilities; and

4    WHEREAS, the City has a heightened interest in preventing more individuals and families from

5         becoming homeless to avoid the increased risk of transmission and spread of COVID-19;

6         and

7    WHEREAS, The City of Seattle provides residential tenants defenses to eviction through the

8         City's Just Cause Eviction Ordinance; and

9    WHEREAS, the Mayor issued an emergency order creating a moratorium on residential

10        evictions that could last through the end of the civil emergency; and

11   WHEREAS, the Governor has issued an eviction moratorium until June 4, which could be

12        extended further; and

13   WHEREAS, the Council recognizes that economic impacts from the COVID-19 emergency are

14        likely to last much longer than the civil emergency itself; and

15   WHEREAS, the Council intends that upon a tenant's successful assertion of a defense to

16        eviction, a court will prohibit the award of attorneys' fees to a landlord, regardless of

17        whether the court finds that the landlord or tenant is the prevailing party; and

18   WHEREAS, on March 24, the National Multifamily Housing Council recommended, and some

19        landlords have adopted, a plan to support tenants by halting evictions for 90 days,

20        offering lease renewals without a rent increase, creating payment plans for overdue rent,

21        and waiving late fees; and

22   WHEREAS, the Council recognizes the impact of eviction prevention measures on small

23        landlords and intends to assess the continuing need for such protections on a weekly

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    basis, in conjunction with consideration of the weekly reports requested from the Mayor

2    in Section 5 of Resolution 31937, which modified the Mayor's Proclamation of Civil

3    Emergency, beginning March 20, 2020; and

4    WHEREAS, the Council will continue to explore and implement strategies to support small

5    landlords during the state of emergency; NOW, THEREFORE,

6    **BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:**

7    Section 1. The City Council ("Council") makes the following legislative findings of fact

8    and declarations:

9    A. In the exercise of the City of Seattle's police powers, the City is granted authority to

10   pass regulations designed to protect and promote public peace, health, safety, welfare, and

11   prosperity.

12   B. On January 24, 2020, the Seattle Office of Emergency Management announced that

13   the first reported case in Washington and in the United States of novel coronavirus (COVID-19)

14   occurred in Snohomish County.

15   C. On February 28, 2020, Public Health – Seattle and King County announced the first

16   King County and United States death due to COVID-19 at Evergreen Hospital in Kirkland,

17   Washington.

18   D. On February 29, 2020, Washington Governor Jay Inslee declared a state of emergency

19   in response to new cases of COVID-19, directing state agencies to use all resources necessary to

20   prepare for and respond to the outbreak.

21   E. On March 3, 2020, Mayor Jenny Durkan issued a proclamation of civil emergency in

22   response to new cases of COVID-19, authorizing the Mayor to exercise the emergency powers

23   necessary for the protection of the public peace, safety, and welfare.

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1       F. On March 11, 2020, Washington Governor Jay Inslee amended his emergency order to

2   prohibit gatherings of 250 people or more for social, spiritual and recreational activities

3   including, but not limited to, community, civic, public, leisure, faith-based, or sporting events;

4   parades; concerts; festivals; conventions; fundraisers; and similar activities.

5       G. On March 13, 2020, Washington Governor Jay Inslee amended his emergency order

6   closing all schools in King, Snohomish, and Pierce Counties through April 24, 2020 to apply

7   statewide.

8       H. On March 13, 2020, the U.S. President declared that the COVID-19 outbreak

9   constituted a national emergency.

10       I.  Mayor Durkan signed an emergency order, amended by the Council in Resolution

11   31938 on March 16, 2020, creating a moratorium on residential evictions for non-payment of

12   rent through the earlier of the end of the civil emergency or 60 days after the effective date of the

13   emergency order, prohibiting a landlord from issuing a notice of termination or initiating an

14   eviction action for non-payment of rent or otherwise acting on a termination notice, and creating

15   a defense to a pending eviction action for non-payment of rent that the eviction would occur

16   during the moratorium.

17       J. On March 16, 2020, Washington Governor Jay Inslee mandated the immediate two-

18   week closure of all restaurants, bars, and entertainment and recreational facilities and amended

19   his emergency order to prohibit gatherings of 50 people or more.

20       K. On March 17, 2020, Public Health – Seattle and King County confirmed 518 cases of

21   COVID-19, including 46 deaths, in King County.

22       L. On March 18, 2020, Washington Governor Jay Inslee announced a statewide

23   moratorium on evictions, prohibiting landlords from serving a notice of unlawful detainer for

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    default payment of rent and issuing a 20-day notice for unlawful detainer, unless the landlord

2    provides an affidavit stating that the action is believed necessary to ensure the health and safety

3    of the tenant or others.

4        M. On March 23, 2020, Governor Inslee announced a "Stay-Home Stay Healthy" order

5    that required that all non-essential businesses be closed and banned all gatherings for two weeks,

6    and on April 2, extended the order until May 4.

7        N. On April 6, 2020, Washington Governor Jay Inslee extended school closures through

8    the end of the 2019-2020 school year and prohibited most forms of in-person instruction through

9    June 19.

10       O. On April 16, 2020, Washington Governor Jay Inslee extended the statewide

11   moratorium on evictions until June 4, 2020 and expanded the order to: include more types of

12   dwelling situations; prohibit enforcement of agreements to vacate; prohibit a landlord from

13   assessing or threatening to assess late fees; prohibit rent where access to the unit was prevented

14   as a result of COVID-19; prohibit increased rent or deposits; and prohibit landlords from treating

15   unpaid rent and charges as enforceable debt unless the landlord demonstrates by a preponderance

16   of the evidence to a court that the resident was offered, and refused or failed to comply with, a

17   reasonable repayment plan that was reasonable based on the individual financial, health, and

18   other circumstances of that resident.

19       P. In light of COVID-19 spreading person-to-person and particularly between people who

20   are in close contact with one another, the Centers for Disease Control and Prevention (CDC) has

21   recommended that: those who are mildly ill self-isolate by staying home, avoiding public areas,

22   and avoiding transportation; sensitive populations avoid people who are sick; and everyone

23   practice self-distancing.

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1   Q. Public Health – Seattle and King County has recommended that people at higher risk

2 of severe illness stay home and away from large groups of people as much as possible. People at

3 higher risk include people: over 60 years of age; with underlying health conditions, including

4 heart disease, lung disease, or diabetes; with weakened immune systems; and who are pregnant.

5   R. Public Health – Seattle and King County has recommended that employers take steps

6 to make it more feasible for their employees to work in ways that minimize close contact with

7 large numbers of people, including maximizing telecommuting options and maximizing

8 flexibility in sick leave benefits for those who are ill or at high risk.

9   S. The Washington State Legislature has declared a state policy to help residents who are

10 experiencing a temporary crisis in retaining stable housing to avoid eviction from their homes, as

11 expressed in Laws of 2019, ch. 356, § 1.

12   T. The September 2018 Seattle Women's Commission and the King County Bar

13 Association's report *Losing Home: The Human Cost of Eviction in Seattle* ("Losing Home

14 Report") found that the most disadvantaged groups face the highest likelihood of eviction.

15   U. The Losing Home report found that most evicted respondents became homeless, with

16 37.5 percent completely unsheltered, 25.0 percent living in a shelter or transitional housing, and

17 25.0 percent staying with family or friends. Only 12.5 percent of evicted respondents found

18 another apartment or home to move into.

19   V. A 2018 investigation by the King County Medical Examiner's Office (KCMEO)

20 found that over half of 107 presumed homeless deaths investigated occurred outside and

21 attributed approximately 121, or 62 percent, of presumed homeless deaths investigated to non-

22 natural causes (drug overdose, accidents (including hypothermia), suicide, homicide, and

1   undetermined), making it clear that people experiencing homelessness have a much higher risk

2   than the general population of developing exposure-related conditions.

3        W. Persons with underlying health conditions are at greater risk of fatality if they catch

4   COVID-19, and preventing individuals from becoming higher-risk patients will protect the

5   public health, safety, and welfare of the region.

6        X. The impacts of the emerging public health crisis on the economy, employment, job

7   retention, child care, and businesses may result in: workers being unable to go to work because

8   of illness; the need to care for children home from day care or school or for other family

9   members without paid sick or safe time; and reduced hours due to reduced demand, furlough, or

10   unemployment as businesses struggle during the state of emergency. These risks are

11   compounded especially for workers without paid sick or safe time, those in the "gig economy,"

12   and others without protections that help stabilize income. Historically disadvantaged populations

13   are already at greater risk of eviction. Compounding existing risk with the impacts from the

14   COVID-19 emergency may increase the likelihood of exposure, spread, and contraction of the

15   virus.

16        Y. Providing a defense to eviction for certain causes is necessary as an additional step to

17   protect public health to support stable housing, decrease the likelihood that individuals and

18   families will fall into homelessness, and decrease exposure while the COVID-19 emergency

19   exists.

20        Z. Governor's Proclamation 20-28 allows certain actions under the Open Public Meetings

21   Act for actions that are 1) necessary and routine; or 2) necessary in response to the COVID-19

22   public health emergency.

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    AA.  By reason of the findings set out above, this legislation is necessary in response to

2    the COVID-19 public health emergency.

3    Section 2. Subsection 22.206.160.C of the Seattle Municipal Code, which section was

4    last amended by Ordinance 126041, is amended as follows:

5    **22.206.160 Duties of owners**

6    * * *

7    C. Just cause eviction

8    1. Pursuant to provisions of the Washington State Residential Landlord-Tenant

9    Act (RCW 59.18.290), an owner may not evict a residential tenant without a court order, which

10    can be issued by a court only after the tenant has an opportunity in a show cause hearing to

11    contest the eviction (RCW 59.18.380). An owner of a housing unit shall not evict or attempt to

12    evict any tenant, or otherwise terminate or attempt to terminate the tenancy of any tenant, unless

13    the owner can prove in court that just cause exists. Regardless of whether just cause for eviction

14    may exist, an owner may not evict a residential tenant from a rental housing unit if: the unit is

15    not registered with the Seattle Department of Construction and Inspections if required by Section

16    22.214.040; or if subsection<u>s</u> 22.206.160.C.8 <u>or 22.206.160.C.9</u> provide((s)) the tenant a defense

17    to the eviction.

18    An owner is in compliance with the registration requirement if the rental housing

19    unit is registered with the Seattle Department of Construction and Inspections before issuing a

20    notice to terminate tenancy. The reasons for termination of tenancy listed below, and no others,

21    shall constitute just cause under this Section 22.206.160:

22    a. The tenant fails to comply with a 14 day notice to pay rent or vacate

23    pursuant to RCW 59.12.030(3); a ten day notice to comply or vacate pursuant to RCW

*Template last revised December 2, 2019*

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    59.12.030(4); or a three day notice to vacate for waste, nuisance (including a drug-related

2    activity nuisance pursuant to chapter 7.43 RCW), or maintenance of an unlawful business or

3    conduct pursuant to RCW 59.12.030(5);

4                         b. The tenant habitually fails to pay rent when due which causes the owner

5    to notify the tenant in writing of late rent four or more times in a 12 month period;

6                         c. The tenant fails to comply with a ten day notice to comply or vacate that

7    requires compliance with a material term of the rental agreement or that requires compliance

8    with a material obligation under chapter 59.18 RCW;

9                         d. The tenant habitually fails to comply with the material terms of the

10   rental agreement which causes the owner to serve a ten day notice to comply or vacate three or

11   more times in a 12 month period;

12                        e. The owner seeks possession so that the owner or a member of the

13   owner's immediate family may occupy the unit as that person's principal residence and no

14   substantially equivalent unit is vacant and available in the same building, and the owner has

15   given the tenant at least 90 days' advance written notice of the date the tenant's possession is to

16   end. The Director may reduce the time required to give notice to no less than 20 days if the

17   Director determines that delaying occupancy will result in a personal hardship to the owner or to

18   the owner's immediate family. Personal hardship may include but is not limited to hardship

19   caused by illness or accident, unemployment, or job relocation. For the purposes of this Section

20   22.206.160, "Immediate family" includes the owner's domestic partner registered pursuant to

21   Section 1 of Ordinance 117244 or the owner's spouse, parents, grandparents, children, brothers

22   and sisters of the owner, of the owner's spouse, or of the owner's domestic partner. There is a

23   rebuttable presumption of a violation of this subsection 22.206.160.C.1.e if the owner or a

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1  member of the owner's immediate family fails to occupy the unit as that person's principal

2  residence for at least 60 consecutive days during the 90 days immediately after the tenant

3  vacated the unit pursuant to a notice of termination or eviction using this subparagraph as the

4  cause for eviction;

5  f. The owner elects to sell a single-family dwelling unit and gives the

6  tenant at least 90 days' written notice prior to the date set for vacating, which date shall coincide

7  with the end of the term of a rental agreement, or if the agreement is month to month, with the

8  last day of a monthly period. The Director may reduce the time required to give notice to no less

9  than 60 days if the Director determines that providing 90 days' notice will result in a personal

10  hardship to the owner. Personal hardship may include but is not limited to hardship caused by

11  illness or accident, unemployment, or job relocation. For the purposes of this Section

12  22.206.160, an owner "elects to sell" when the owner makes reasonable attempts to sell the

13  dwelling within 30 days after the tenant has vacated, including, at a minimum, listing it for sale

14  at a reasonable price with a realty agency or advertising it for sale at a reasonable price in a

15  newspaper of general circulation. There shall be a rebuttable presumption that the owner did not

16  intend to sell the unit if:

17  1) Within 30 days after the tenant has vacated, the owner does not

18  list the single-family dwelling unit for sale at a reasonable price with a realty agency or advertise

19  it for sale at a reasonable price in a newspaper of general circulation, or

20  2) Within 90 days after the date the tenant vacated or the date the

21  property was listed for sale, whichever is later, the owner withdraws the rental unit from the

22  market, rents the unit to someone other than the former tenant, or otherwise indicates that the

23  owner does not intend to sell the unit;

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    g. The tenant's occupancy is conditioned upon employment on the

2    property and the employment relationship is terminated;

3    h. The owner seeks to do substantial rehabilitation in the building;

4    provided that, the owner must obtain a tenant relocation license if required by Chapter 22.210

5    and at least one permit necessary for the rehabilitation, other than a Master Use Permit, before

6    terminating the tenancy;

7    i. The owner (i) elects to demolish the building, convert it to a cooperative,

8    or convert it to a nonresidential use; provided that, the owner must obtain a tenant relocation

9    license if required by Chapter 22.210 and a permit necessary to demolish or change the use

10   before terminating any tenancy, or (ii) converts the building to a condominium provided the

11   owner complies with the provisions of Sections 22.903.030 and 22.903.035;

12   j. The owner seeks to discontinue use of a housing unit unauthorized by

13   Title 23 after receipt of a notice of violation. The owner is required to pay relocation assistance

14   to the tenant(s) of each such unit at least two weeks prior to the date set for termination of the

15   tenancy, at the rate of:

16   1) $2,000 for a tenant household with an income during the past 12

17   months at or below 50 percent of the County median income, or

18   2) Two months' rent for a tenant household with an income during

19   the past 12 months above 50 percent of the County median income;

20   k. The owner seeks to reduce the number of individuals residing in a

21   dwelling unit to comply with the maximum limit of individuals allowed to occupy one dwelling

22   unit, as required by Title 23, and:

23   1)

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1          a) The number of such individuals was more than is lawful

2     under the current version of Title 23 but was lawful under Title 23 or Title 24 on August 10,

3     1994;

4          b) That number has not increased with the knowledge or

5     consent of the owner at any time after August 10, 1994; and

6          c) The owner is either unwilling or unable to obtain a

7     permit to allow the unit with that number of residents.

8          2) The owner has served the tenants with a 30 day notice,

9     informing the tenants that the number of tenants exceeds the legal limit and must be reduced to

10    the legal limit,

11         3) After expiration of the 30 day notice, the owner has served the

12    tenants with and the tenants have failed to comply with a ten day notice to comply with the limit

13    on the number of occupants or vacate, and

14         4) If there is more than one rental agreement for the unit, the owner

15    may choose which agreements to terminate; provided that, the owner may either terminate no

16    more than the minimum number of rental agreements necessary to comply with the legal limit on

17    the number of occupants, or, at the owner's option, terminate only those agreements involving

18    the minimum number of occupants necessary to comply with the legal limit;

19         l.

20         1) The owner seeks to reduce the number of individuals who reside

21    in one dwelling unit to comply with the legal limit after receipt of a notice of violation of the

22    Title 23 restriction on the number of individuals allowed to reside in a dwelling unit, and:

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1       a) The owner has served the tenants with a 30 day notice,

2   informing the tenants that the number of tenants exceeds the legal limit and must be reduced to

3   the legal limit; provided that no 30 day notice is required if the number of tenants was increased

4   above the legal limit without the knowledge or consent of the owner;

5       b) After expiration of the 30 day notice required by

6   subsection 22.206.160.1.1.a, or at any time after receipt of the notice of violation if no 30 day

7   notice is required pursuant to subsection 22.206.160.1.1.a, the owner has served the tenants with

8   and the tenants have failed to comply with a ten day notice to comply with the maximum legal

9   limit on the number of occupants or vacate; and

10      c) If there is more than one rental agreement for the unit,

11  the owner may choose which agreements to terminate; provided that the owner may either

12  terminate no more than the minimum number of rental agreements necessary to comply with the

13  legal limit on the number of occupants, or, at the option of the owner, terminate only those

14  agreements involving the minimum number of occupants necessary to comply with the legal

15  limit.

16      2) For any violation of the maximum legal limit on the number of

17  individuals allowed to reside in a unit that occurred with the knowledge or consent of the owner,

18  the owner is required to pay relocation assistance to the tenant(s) of each such unit at least two

19  weeks prior to the date set for termination of the tenancy, at the rate of:

20      a) $2,000 for a tenant household with an income during the

21  past 12 months at or below 50 percent of the county median income, or

22      b) Two months' rent for a tenant household with an income

23  during the past 12 months above 50 percent of the county median income;

*Template last revised December 2, 2019*                         13

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1      m. The owner seeks to discontinue use of an accessory dwelling unit for

2  which a permit has been obtained pursuant to Sections 23.44.041 and 23.45.545 after receipt of a

3  notice of violation of the development standards provided in those sections. The owner is

4  required to pay relocation assistance to the tenant household residing in such a unit at least two

5  weeks prior to the date set for termination of the tenancy, at the rate of:

6      1) $2,000 for a tenant household with an income during the past 12

7  months at or below 50 percent of the county median income, or

8      2) Two months' rent for a tenant household with an income during

9  the past 12 months above 50 percent of the county median income;

10     n. An emergency order requiring that the housing unit be vacated and

11  closed has been issued pursuant to Section 22.206.260 and the emergency conditions identified

12  in the order have not been corrected;

13     o. The owner seeks to discontinue sharing with a tenant of the owner's

14  own housing unit, i.e., the unit in which the owner resides, seeks to terminate the tenancy of a

15  tenant of an accessory dwelling unit authorized pursuant to Sections 23.44.041 and 23.45.545

16  that is accessory to the housing unit in which the owner resides, or seeks to terminate the tenancy

17  of a tenant in a single-family dwelling unit and the owner resides in an accessory dwelling unit

18  on the same lot. This subsection 22.206.160.C.1.o does not apply if the owner has received a

19  notice of violation of the development standards of Section 23.44.041. If the owner has received

20  such a notice of violation, subsection 22.206.160.C.1.m applies;

21     p. A tenant, or with the consent of the tenant, the tenant's subtenant,

22  sublessee, resident, or guest, has engaged in criminal activity on the premises, or on the property

23  or public right-of-way abutting the premises, and the owner has specified in the notice of

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1   termination the crime alleged to have been committed and the general facts supporting the

2   allegation, and has assured that the Seattle Department of Construction and Inspections has

3   recorded receipt of a copy of the notice of termination. For purposes of this subsection

4   22.206.160.C.1.p, a person has "engaged in criminal activity" if the person:

5                   1) Engages in drug-related activity that would constitute a

6   violation of chapters 69.41, 69.50, or 69.52 RCW, or

7                   2) Engages in activity that is a crime under the laws of this state,

8   but only if the activity substantially affects the health or safety of other tenants or the owner.

9           2. Any rental agreement provision which waives or purports to waive any right,

10  benefit or entitlement created by this subsection 22.206.160.C shall be deemed void and of no

11  lawful force or effect.

12          3. With any termination notices required by law, owners terminating any tenancy

13  protected by this Section 22.206.160 shall advise the affected tenant or tenants in writing of the

14  reasons for the termination and the facts in support of those reasons.

15          4. If a tenant who has received a notice of termination of tenancy claiming

16  subsection 22.206.160.C.1.e, 22.206.160.C.1.f, or 22.206.160.C.1.m as the ground for

17  termination believes that the owner does not intend to carry out the stated reason for eviction and

18  makes a complaint to the Director, then the owner must, within ten days of being notified by the

19  Director of the complaint, complete and file with the Director a certification stating the owner's

20  intent to carry out the stated reason for the eviction. The failure of the owner to complete and file

21  such a certification after a complaint by the tenant shall be a defense for the tenant in an eviction

22  action based on this ground.

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1          5. In any action commenced to evict or to otherwise terminate the tenancy of any

2    tenant, it shall be a defense to the action that there was no just cause for such eviction or

3    termination as provided in this Section 22.206.160.

4          6. It shall be a violation of this Section 22.206.160 for any owner to evict or

5    attempt to evict any tenant or otherwise terminate or attempt to terminate the tenancy of any

6    tenant using a notice that references subsections 22.206.160.C.1.e, 22.206.160.C.1.f,

7    22.206.160.C.1.h, 22.206.160.C.1.k, 22.206.160.C.1.l, or 22.206.160.C.1.m as grounds for

8    eviction or termination of tenancy without fulfilling or carrying out the stated reason for or

9    condition justifying the termination of such tenancy.

10          7. An owner who evicts or attempts to evict a tenant or who terminates or

11    attempts to terminate the tenancy of a tenant using a notice which references subsections

12    22.206.160.C.1.e, 22.206.160.C.1.f or 22.206.160.C.1.h as the ground for eviction or termination

13    of tenancy without fulfilling or carrying out the stated reason for or condition justifying the

14    termination of such tenancy shall be liable to such tenant in a private right for action for damages

15    up to $2,000, costs of suit, or arbitration and reasonable attorney's fees.

16          8. Except as provided in subsection 22.206.160.C.8.d, it is a defense to eviction if:

17          a. The eviction would result in the tenant having to vacate the housing unit

18    at any time between December 1 and March 1; and

19          b. The tenant household is a moderate-income household as defined in

20    Section 23.84A.016; and

21          c. The housing unit that the tenant would have to vacate is owned by a

22    person who owns more than four rental housing units in The City of Seattle. For purposes of this

23    subsection 22.206.160.C.8.c, "owns" includes having an ownership interest in the housing units.

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    d. If the reason for termination of the tenancy is due to conditions

2    described in subsections 22.206.160.C.1.e, 22.206.160.C.1.f provided that the tenant was

3    provided at least 90 days' written notice prior to the date set for vacating the unit,

4    22.206.160.C.1.j, 22.206.160.C.1.k, 22.206.160.C.1.m, 22.206.160.C.1.n, 22.206.160.C.1.o, or

5    22.206.160.C.1.p, or if the reason for termination is due to the tenant's failure to comply with a

6    three day or ten day notice to vacate for a drug-related activity nuisance pursuant to chapter 7.43

7    RCW or maintenance of an unlawful business or conduct pursuant to RCW 59.12.030(5) or

8    because the tenant's conduct has a substantial detrimental impact on, or constitutes an imminent

9    threat to, the health or safety of other tenants in the rental building or the owner, the eviction may

10    occur as otherwise allowed by law.

11    e. A rent mitigation fund is created to provide funds to eligible low-

12    income tenant households at risk of residential eviction during the period described in subsection

13    22.206.160.C.8, if other sources of funds are not available to assist the tenant, or to provide

14    financial assistance to a non-profit corporation or other housing provider that cannot evict a

15    tenant from a rental housing unit during the period described in subsection 22.206.160.C.8

16    because the unit is subject to restrictions on tenant incomes or rent as a condition of that

17    assistance.

18    1) Tenant eligibility. To be eligible to receive funds, (1) the reason

19    for termination must include nonpayment of rent; and (2) the tenant household must be a low-

20    income household as defined in Section 23.84A.016; and (3) the tenant must demonstrate that the

21    tenant does not have the financial resources to avoid eviction; and (4) the tenant must request

22    mitigation funds on or before the date a writ of restitution is executed.

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1      2) Housing provider eligibility. To be eligible to receive funds the

2 housing provider shall (1) demonstrate that an eviction was delayed during this period because

3 the tenant raised the defense described in subsection 22.206.160.C.8; and (2) demonstrate that

4 the tenant does not have financial resources available to pay rent during the period described in

5 subsection 22.206.160.C.8; and (3) demonstrate that the tenant resides in a unit that is subject to

6 restrictions on tenant incomes or rent; and (4) sign an agreement stating that the housing provider

7 will not report the tenant's delinquency on rent payment to credit reporting agencies.

8      3) The Director shall have rulemaking authority to administer the

9 fund. This authority includes the ability to have the fund administered by a public or private

10 organization having experience administering or capable of administering similar tenant

11 assistance programs. If by rule the Director determines that payments shall be made directly to a

12 landlord, the landlord shall sign an agreement with the Director prior to payment stating that the

13 landlord will not report the tenant's delinquent rent payment to credit reporting agencies.

14      4) The availability of funds is subject to the existence of budget

15 appropriations for that purpose. A request for funding shall be denied if insufficient funds are

16 available. The City is not civilly or criminally liable for failure to provide funding and no penalty

17 or cause of action may be brought against the City resulting from the provision or lack of

18 provision of funds.

19      5) When a landlord issues a notice to terminate tenancy due to

20 nonpayment of rent, the notice must contain information to the tenant about how to access the

21 tenant mitigation fund. The landlord is not required to provide this information if insufficient

22 funds have been appropriated by the City Council to provide the funds for mitigation. The

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    information for the notice shall be adopted by the Seattle Department of Construction and

2    Inspections by rule.

3                    9.

4                    a. Subject to the requirements of subsection 22.206.160.C.9.b, it is a

5    defense to eviction if the eviction would result in the tenant having to vacate the housing unit

6    within six months after the termination of the Mayor's eviction moratorium, and if the reason for

7    terminating the tenancy is:

8                    1) The tenant fails to comply with a 14-day notice to pay rent or

9    vacate pursuant to RCW 59.12.030(3) for rent due during , or within six months after the

10   termination of, the Mayor's residential eviction moratorium; or

11                   2) The tenant habitually fails to pay rent resulting in four or more

12   pay-or-vacate notices in a 12-month period.

13                   For purposes of this subsection 22.206.160.C.9, "termination of the

14   Mayor's residential eviction moratorium" means termination of subsection 1.C (creating a

15   defense to a pending eviction action) of the moratorium on residential evictions ordered by the

16   Mayor's civil emergency order, as amended by the Council in Resolution 31938 on March 16,

17   2020.

18                   b. The tenant may invoke the defense provided in subsection

19   22.206.160.C.9.a only if the tenant has submitted a declaration or self-certification asserting the

20   tenant has suffered a financial hardship and is therefore unable to pay rent.

21                   b. If a landlord issues a notice to terminate a tenancy due to a reason listed

22   in subsections 22.206.160.C.9.a.1-2, and if the landlord issues that notice within six months after

23   the termination of the Mayor's residential eviction moratorium, the notice must contain the

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1    following statement: "If you cannot pay rent, during or within 6 months after the end of the

2    Mayor's moratorium on evictions, your inability to pay is a defense to eviction that you may

3    raise in court." It is a defense to eviction if the notice does not contain that statement.

4                    d. An award of attorneys' fees and statutory court costs to a landlord

5    arising from an eviction proceeding arising from a notice to terminate a tenancy due to a reason

6    listed in subsections 22.206.160.C.9.a.1-2 is prohibited unless otherwise allowed by law.

7            Section 3. Based on the findings of fact set forth in Section 1 of this ordinance, the

8    Council finds and declares that this ordinance is a public emergency ordinance, which shall take

9    effect immediately and is necessary for the protection of the public health, safety, and welfare.

10           Section 4. The provisions of this ordinance are declared to be separate and severable. If

11   any clause, sentence, paragraph, subdivision, section, subsection, or portion of this ordinance, or

12   the application thereof to any landlord, prospective occupant, tenant, person, or circumstance, is

13   held to be invalid, it shall not affect the validity of the remainder of this ordinance, or the validity

14   of its application to other persons or circumstances.

15

Asha Venkataraman
LEG Emergency Defense to Eviction ORD
D2

1          Section 5. By reason of the findings set out in Section 1, and the emergency that is hereby

2   declared to exist, this ordinance shall become effective immediately upon its passage by a 3/4

3   vote of the Council and its approval by the Mayor, as provided by Article 4, subsection 1.l of the

4   Charter of the City.

5          Passed by a 3/4 vote of all the members of the City Council the ___4th___ day of

6  ___May_____, 2020, and signed by me in open session in authentication of its

7  passage this __4th__ day of _____May_____, 2020.

8                          _____

9                          President _____ of the City Council

10  Approved by me this ___6th___ day of ___May_____, 2020.

11                         _____

12                          Jenny A. Durkan, Mayor

13  Filed by me this ___6th___ day of ___May_____, 2020.

14                         _____

15                          Monica Martinez Simmons, City Clerk

16  (Seal)