# Exhibit I

Complaint/Sea. Ord. 126081, May 15, 2020

Court: W.D. Wash.  Case No. _____

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, WA 98104 - 425.576.0484

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

1  **CITY OF SEATTLE**
2  ORDINANCE __126081__
3  COUNCIL BILL __119788__

AN ORDINANCE relating to residential rental agreements; allowing residential tenants to pay rent in installments when the tenant is unable to timely pay rent; declaring an emergency; and establishing an immediate effective date; all by a 3/4 vote of the City Council.

WHEREAS, the coronavirus disease 19 (COVID-19) outbreak was declared a pandemic by the World Health Organization on March 11, 2020; and

WHEREAS, self-distancing (keeping at least 6 feet of distance between individuals) has been recommended to deter the spread of the virus; and

WHEREAS, the Governor of Washington has declared a state of emergency, prohibited gatherings of 50 or more people, and closed K-12 schools statewide in an effort to slow transmission and contraction of the disease; and

WHEREAS, such a ban in conjunction with self-distancing means cancellations of large events and a decrease in the number of people patronizing places of business, resulting in reduced work and loss of income for workers in multiple industries, including the service and entertainment industries; and

WHEREAS, a decrease in income can result in financial instability and uncertainty about how to allocate resources to continuing expenses, including rent; and

WHEREAS, the economic disruptions caused by COVID-19 will increase the likelihood that tenants will have difficulty paying rent; and

WHEREAS, the Council recognizes that economic impacts from the COVID-19 emergency are likely to last much longer than the civil emergency itself and that the timing of when such impacts will cause tenants to be unable to pay rent will vary; and

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

1  WHEREAS, mitigating the housing and economic impacts of the COVID-19 outbreak is in the
2      interest of the City and its residents; and
3  WHEREAS, the Mayor signed an emergency order, amended by the Council in Resolution
4      31938 on March 16, 2020, creating a moratorium on residential evictions that could last
5      through the end of the civil emergency or until May 15, 2020, whichever is earlier; and
6  WHEREAS, the Governor has issued an eviction moratorium extending to June 4, 2020
7      including a prohibition on treating unpaid rent as enforceable debt unless a landlord
8      offered and a tenant refused a payment plan; and
9  WHEREAS, allowing tenants to pay rent in installments without penalty or interest will help
10     people to stay housed, provide housing stability, and help prevent homelessness resulting
11     from eventual eviction for non-payment of rent; and
12 WHEREAS, the Council intends that upon a tenant's successful assertion of a defense to
13     eviction, a court will prohibit the award of attorneys' fees to a landlord, regardless of
14     whether the court finds that the landlord or tenant is the prevailing party.
15 WHEREAS, on March 24, the National Multifamily Housing Council recommended, and some
16     landlords have adopted, a plan to support tenants by halting evictions for 90 days,
17     offering lease renewals without a rent increase, creating payment plans for overdue rent,
18     and waiving late fees; and
19 WHEREAS, the Council recognizes the impact of allowing installment rent payments on small
20     landlords and intends to assess the continuing need for such protections on a weekly
21     basis, in conjunction with consideration of the weekly reports requested from the Mayor
22     in Section 5 of Resolution 31937, which modified the Mayor's Proclamation of Civil
23     Emergency, beginning March 20, 2020; and

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

1   WHEREAS, the Council will continue to explore and implement strategies to support small

2   landlords during the state of emergency; NOW, THEREFORE,

3   **BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:**

4   Section 1. The City Council ("Council") makes the following legislative findings of fact

5   and declarations:

6   A. In the exercise of the City of Seattle's police powers, the City is granted authority to

7   pass regulations designed to protect and promote public peace, health, safety, welfare, and

8   prosperity.

9   B. On January 24, 2020, the Seattle Office of Emergency Management announced that

10  the first reported case in Washington and in the United States of novel coronavirus (COVID-19)

11  occurred in Snohomish County.

12  C. On February 28, 2020, Public Health – Seattle and King County announced the first

13  King County and United States death due to COVID-19 at Evergreen Hospital in Kirkland,

14  Washington.

15  D. On February 29, 2020, Washington Governor Jay Inslee declared a state of emergency

16  in response to new cases of COVID-19, directing state agencies to use all resources necessary to

17  prepare for and respond to the outbreak.

18  E. On March 3, 2020, Mayor Jenny Durkan issued a proclamation of civil emergency in

19  response to new cases of COVID-19, authorizing the Mayor to exercise the emergency powers

20  necessary for the protection of the public peace, safety, and welfare.

21  F. On March 11, 2020, Washington Governor Jay Inslee amended his emergency order to

22  prohibit gatherings of 250 people or more for social, spiritual and recreational activities

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities.

G. On March 13, 2020, Washington Governor Jay Inslee amended his emergency order closing all schools in King, Snohomish, and Pierce Counties through April 24, 2020 to apply statewide.

H. On March 13, 2020, the U.S. President declared that the COVID-19 outbreak constituted a national emergency.

I. Mayor Durkan signed an emergency order, amended by the Council in Resolution 31938 on March 16, 2020, creating a moratorium on residential evictions through the earlier of the end of the civil emergency or 60 days after the effective date of the emergency order, prohibiting a landlord from issuing a notice of termination or initiating an eviction action or otherwise acting on a termination notice and creating a defense to an eviction action that would occur during the moratorium, except if the eviction action or notice is due to actions by the tenant constituting an imminent threat to the health or safety of neighbors, the landlord, or the tenant's or landlord's household members.

J. On March 16, 2020, Washington Governor Jay Inslee mandated the immediate two-week closure of all restaurants, bars, and entertainment and recreational facilities and amended his emergency order to prohibit gatherings of 50 people or more.

K. On March 17, 2020, Public Health – Seattle and King County confirmed 518 cases of COVID-19, including 46 deaths, in King County.

L. On March 18, 2020, Washington Governor Jay Inslee announced a statewide moratorium on evictions, prohibiting landlords from serving a notice of unlawful detainer for default payment of rent and issuing a 20-day notice for unlawful detainer, unless the landlord

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

1  provides an affidavit stating that the action is believed necessary to ensure the health and safety

2  of the tenant or others.

3  M. On March 23, 2020, Washington Governor Jay Inslee announced a "Stay-Home Stay

4  Healthy" order that required that all non-essential businesses be closed and banned all gatherings

5  for two weeks, and on April 2, extended the order until May 4.

6  N. On April 6, 2020, Washington Governor Jay Inslee extended school closures through

7  the end of the 2019-2020 school year and prohibited most forms of in-person instruction through

8  June 19.

9  O. On April 16, 2020, Washington Governor Jay Inslee extended the statewide

10 moratorium on evictions until June 4, 2020 and expanded the order to: include more types of

11 dwelling situations; prohibit enforcement of agreements to vacate; prohibit a landlord from

12 assessing or threatening to assess late fees; prohibit rent where access to the unit was prevented

13 as a result of COVID-19; prohibit increased rent or deposits; and prohibit landlords from treating

14 unpaid rent and charges as enforceable debt unless the landlord demonstrates by a preponderance

15 of the evidence to a court that the resident was offered, and refused or failed to comply with, a

16 reasonable repayment plan that was reasonable based on the individual financial, health, and

17 other circumstances of that resident.

18 P. In light of COVID-19 spreading person-to-person and particularly between people who

19 are in close contact with one another, the Centers for Disease Control and Prevention (CDC) has

20 recommended that: those who are mildly ill self-isolate by staying home, avoiding public areas,

21 and avoiding transportation; sensitive populations avoid people who are sick; and everyone

22 practice self-distancing.

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

Q. Public Health – Seattle and King County has recommended that people at higher risk of severe illness stay home and away from large groups of people as much as possible. People at higher risk include people: over 60 years of age; with underlying health conditions, including heart disease, lung disease, or diabetes; with weakened immune systems; and who are pregnant.

R. Public Health – Seattle and King County has recommended that employers take steps to make it more feasible for their employees to work in ways that minimize close contact with large numbers of people, including maximizing telecommuting options and maximizing flexibility in sick leave benefits for those who are ill or at high risk.

S. The Washington State Legislature has declared a state policy to help residents who are experiencing a temporary crisis in retaining stable housing to avoid eviction from their homes, as expressed in Laws of 2019, ch. 356, § 1.

T. The Federal Reserve's 2018 Survey of Household Economics and Decision Making found that 40 percent of adults, if faced with an unexpected expense of $400 would not be able to cover that expense and that over 20 percent of adults are not able to pay all of their current month's bills in full.

U. The September 2018 Seattle Women's Commission and the King County Bar Association's report *Losing Home: The Human Cost of Eviction in Seattle* ("Losing Home Report") found that the most disadvantaged groups face the highest likelihood of eviction.

V. The Losing Home report found that most evicted respondents became homeless, with 37.5 percent completely unsheltered, 25.0 percent living in a shelter or transitional housing, and 25.0 percent staying with family or friends. Only 12.5 percent of evicted respondents found another apartment or home to move into.

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

W. The impacts of the emerging public health crisis on the economy, employment, job retention, child care, and businesses may result in: workers being unable to go to work because of illness; the need to care for children home from day care or school or for other family members without paid sick or safe time; and reduced hours due to reduced demand, furlough, or unemployment as businesses struggle during the state of emergency. These risks are compounded especially for workers without paid sick or safe time, those in the "gig economy," and others without protections that help stabilize income. Historically disadvantaged populations are already at greater risk of eviction.

X. Requiring that tenants be allowed to pay rent in installments because of difficulties arising during and from the COVID-19 pandemic is immediately necessary to protect public health, support stable housing, and decrease the likelihood that individuals and families will fall into homelessness.

Y. Governor's Proclamation 20-28 allows certain actions under the Open Public Meetings Act for actions that are 1) necessary and routine; or 2) necessary in response to the COVID-19 public health emergency.

Z. By reason of the findings set out above, this legislation is necessary in response to the COVID-19 public health emergency.

Section 2.

A. A tenant who fails to pay rent when due during, or within six months after the termination of, the civil emergency proclaimed by Mayor Durkan on March 3, 2020, may elect to pay such overdue rent in installments. The tenant shall pay one month or less of overdue rent in three consecutive, equal monthly installments. The tenant shall pay over one month and up to two months of overdue rent in five consecutive, equal monthly payments. The tenant shall pay

over two months of overdue rent in six consecutive, equal monthly payments. Any remainder from an uneven division of payments will be part of the last payment. The tenant may propose an alternative payment schedule, which, if the landlord agrees to it, shall be described in writing and signed by the tenant and landlord and deemed an amendment to any existing rental agreement.

B. No late fee, interest, or other charge due to late payment of rent shall accrue during, or within one year after the termination of, the civil emergency proclaimed by Mayor Durkan on March 3, 2020.

C. If a landlord issues a notice to terminate tenancy for nonpayment of rent that was due during, or within six months after the termination of, the civil emergency proclaimed by Mayor Durkan on March 3, 2020, the notice must contain the following statement: "City law entitles you to pay overdue rent in installments.  If your landlord does not accept payment according to the installment schedule, you may raise this as a defense to eviction in court." It is a defense to eviction if the notice does not contain the required information.

D. An award of attorneys' fees and statutory court costs to a landlord arising from an eviction proceeding raising defenses authorized by this ordinance is prohibited unless otherwise allowed by law.

E. Failure of the owner to accept payment under the installment schedule provided in subsection 2.A of this ordinance is a defense to eviction.

Section 3. The provisions of this ordinance are declared to be separate and severable. If any clause, sentence, paragraph, subdivision, section, subsection, or portion of this ordinance, or the application thereof to any landlord, prospective occupant, tenant, person, or circumstance, is held to be invalid, it shall not affect the validity of the remainder of this ordinance, or the validity of its application to other persons or circumstances.

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

1    Section 4. Based on the findings of fact set forth in Section 1 of this ordinance, the

2 Council finds and declares that this ordinance is a public emergency ordinance, which shall take

3 effect immediately and is necessary for the protection of the public health, safety, and welfare.

Asha Venkataraman
LEG Emergency Rental Payment Plans ORD
D2

1     Section 5. By reason of the findings set out in Section 1, and the emergency that is hereby

2 declared to exist, this ordinance shall become effective immediately upon its passage by a 3/4

3 vote of the Council and its approval by the Mayor, as provided by Article 4, subsection 1.1 of the

4 Charter of the City.

5     Passed by a 3/4 vote of all the members of the City Council the __11th__ day of

6 __May_____, 2020, and signed by me in open session in authentication of its

7 passage this __11th__ day of __May_____, 2020.

8     _____

9     President _____ of the City Council

10     Approved by me this __15th__ day of __May_____, 2020.

11     _____

12     Jenny A. Durkan, Mayor

13     Filed by me this __15th__ day of __May_____, 2020.

14     _____

15     Monica Martinez Simmons, City Clerk

16 (Seal)