Hon. Richard A. Jones
Hon. J Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

El PAPEL LLC, *et al.*,                          )     No. 2:20-cv-01323-RAJ-JRC
                                                 )
                              Plaintiffs,        )     CITY OF SEATTLE'S
                                                 )     OPPOSITION TO PLAINTIFFS'
            vs.                                  )     MOTION FOR PRELIMINARY
                                                 )     INJUNCTION [Dkt. # 16]
JAY R INSLEE, *et al.*,                          )
                                                 )
                              Defendants.        )     NOTED ON MOTION CALENDAR:
                                                 )     Friday, Oct. 23, 2020

## **Contents**

I.   Introduction and Relief Requested ........................................................................1

II.  Facts .......................................................................................................................2

     A.   The pandemic's economic impacts increase evictions. ...................................2

     B.   Evictions exacerbate the pandemic's health risks. .........................................3

     C.   The Mayor proclaimed a civil emergency and the Mayor and Council enacted a
          temporary eviction moratorium, six-month defense, and repayment plan
          requirement. ....................................................................................................4

III. Argument ................................................................................................................6

     A.   Because of the CDC Order, Plaintiffs lack standing to challenge the City's
          moratorium or six-month defense. ..................................................................6

     B.   Plaintiffs are not entitled to a preliminary injunction. ...................................7

          1.   Plaintiffs face no irreparable harm. ..........................................................8

2.   Plaintiffs' Contract Clause claim is unlikely to succeed.........................................11

a.   The City's enactments do not substantially impair a contractual relationship...................................................................................................12

(1)   The enactments could not interfere with Plaintiffs' reasonable expectations given the highly regulated nature of the residential rental business. ................................................................................12

(2)   The enactments do not significantly undermine Plaintiffs' contractual bargain or prevent them from safeguarding or reinstating their rights. ...........................................................................13

(3)   Plaintiffs' arguments for substantial impairment fail. ...........................14

b.   Significant and legitimate public purposes back the City's enactments........14

c.   Especially applying required deference, the City's enactments are drawn appropriately and reasonably to advance their purposes. .............................15

(1)   The City's judgment that the enactments appropriately and reasonably advance their public purposes is entitled to deference. .......16

(2)   Plaintiffs' arguments that the enactments are more extensive than necessary are untenable...............................................................16

(3)   The City need not ensure continuing payments by tenants as a prerequisite for pausing evictions. ........................................................19

3.   Plaintiffs' takings claim is unlikely to succeed.....................................................20

a.   Injunctive relief is inappropriate for a takings claim. ...................................20

b.   Plaintiffs' takings claim lacks merit. ...........................................................21

4.   Neither the balance of equities nor the public interest favors a preliminary injunction.......................................................................................................23

IV.   Conclusion .......................................................................................................24

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - ii
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

## I.      INTRODUCTION AND RELIEF REQUESTED

Because maintaining stable housing is a public health and economic imperative in the face of the COVID-19 pandemic, federal, state, and local governments—including Washington and Seattle—have enacted temporary measures to protect tenants from evictions. Landlords have challenged these measures, but to date it appears every court has rejected those challenges. *See, e.g.*, *Baptiste v. Kennealy*, __ F. Supp. 3d __, 2020 WL 5751572 (D. Mass. Sept. 25, 2020); *HAPCO v. City of Philadelphia*, __ F. Supp. 3d __, 2020 WL 5095496 (E.D. Pa. Aug. 28, 2020); *Auracle Homes, LLC v. Lamont*, __ F. Supp. 3d. __, 2020 WL 4558682 (D. Conn. Aug. 7, 2020); *Elmsford Apartment Associates, LLC v. Cuomo*, __ F. Supp. 3d. __, 2020 WL 3498456 (S.D.N.Y. June 29, 2020), *appeal docketed*, No. 20-2565 (2nd Cir. July 28, 2020); *Matorin v. Commonwealth of Massachusetts*, No. 2084CV01334 (Suffolk Cty., Mass. Super. Ct. Aug. 26, 2020); *San Francisco Apt. Ass'n v. City & Cty. of San Francisco*, No. CPF-20-517136 (Cal. Super. Ct., Cty. of San Francisco Aug. 3, 2020), *appeal abandoned*, No. A160924 (Cal. Ct. App. Oct. 1, 2020); *JL Props. Grp. B, LLC v. Pritzker*, No. 20-CH-601 (12th Cir. Ct., Will Cty., Ill. July 31, 2020); *Gregory Real Estate & Mgmt. v. Keegan*, No. CV2020-007629 (Super. Ct. of Ariz., Maricopa Cty. July 22, 2020). *See* Dkt. #s 25-10 – 25-14 (copies of state court rulings).

Plaintiffs—a collection of Seattle landlords—now ask this Court to buck that consensus. The City of Seattle respectfully asks this Court to decline their request and deny Plaintiffs' motion for a preliminary injunction against the City's enactments.[1] Plaintiffs lack standing to challenge two of the City's three measures, but even with standing they would not be entitled to relief. They face no irreparable harm—an alleged constitutional harm is insufficient, their

---

[1] The City joins Defendant Governor Inslee in asking the Court to deny preliminary injunctive relief against the Governor's eviction ban. To avoid duplication, the City limits its briefing to the City's enactments.

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

potential harm can be reduced to damages, and their attempts to recast their claims in non-economic terms are unavailing. Their Contract Clause claim is unlikely to succeed because the City's enactments do not substantially impair a contractual relationship in the highly regulated landlord-tenant arena and, especially applying the deference due the City's judgment, the enactments are drawn appropriately and reasonably to advance significant and legitimate public purposes. Injunctive relief is not appropriate for a takings claim, and Plaintiffs' takings claim would fail because the enactments do not cause them to suffer a physical invasion. And neither equity nor the public interest favors a preliminary injunction—a temporary deprivation of income for a handful of rental units pales in comparison to the profound impact of mass evictions in the midst of a global pandemic.

## II.     FACTS

### A.     The pandemic's economic impacts increase evictions.

The world is in a public health crisis unprecedented in modern times. As of October 9, 2020, over 212,000 Americans have died from COVID-19. *See* Centers for Disease Control and Prevention ("CDC") *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days (last visited Oct. 9, 2020). To stem the spread of the pandemic, many levels of government—particularly Washington State—have taken such extraordinary measures as restricting businesses, closing schools for in-person learning, and calling for social distancing.[2] This crisis is far from over. On October 2, 2020, the Institute for Health Metrics and Evaluation ("IMHE") at the University of Washington projected the total deaths from COVID-19 in the

---

[2] These measures are documented in the challenged City enactments' findings and the State's response to Plaintiffs' motion. *See, e.g.*, Dkt. #s 17-11 and -12 (Ords. 126075 and 126081); Dkt. # 25-8 (Res. 31938). The City will not recite them here.

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 2
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

United States will pass 360,000 by the new year. *See* IMHE, *COVID-19 Projections, USA*, https://covid19.healthdata.org/united-states-of-america?view=total-deaths&tab=trend (last visited Oct. 9, 2020).

Efforts to stem the pandemic have devastated the economy. Washington lost half a million jobs in March and April of 2020, with the unemployment rate reaching 16.3% in April—the highest in decades. *See* Dkt. # 25-1 at p. 4 (Wash. State Econ. and Revenue Forecast Council ("WSERFC"), Econ. & Revenue Update (Sept. 16, 2020)). This economic fallout likely will last. By August, Washington had recovered nearly half the jobs lost in March and April, but the unemployment rate was still 8.5%. *Id.* This is roughly twice the level at the end of 2019. *See* Dkt. # 25-2 at p. 4 (WSERFC, Econ. & Revenue Update (Dec. 16, 2019)). The State forecasts unemployment will still be 6.6% during 2021. Dkt. # 25-3 at p. 6 (WSERFC, Revised Sept. 2020 Econ. Forecast (Sept. 2020)).

Unemployment leads to evictions. A 2019 Federal Reserve Report found that 40% of Americans could not come up with $400 if an emergency occurred, and a survey of Seattle residents who faced eviction found most cited loss of employment or income as the reason they fell behind on rent. *See* Dkt. # 25-4 at pp. 8–9 (Seattle Women's Comm'n & King Cty. Bar Ass'n Housing Justice Project, Losing Home: The Human Cost of Eviction in Seattle (2018) ("Losing Home")).

**B.      Evictions exacerbate the pandemic's health risks.**

Evictions lead to homelessness. Losing Home found most evicted respondents became homeless, with 37.5% completely unsheltered, 25% living in a shelter or transitional housing, and 25% staying with family or friends. *Id.* at p. 6.

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 3
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Evictions exacerbate the pandemic's dangers for evictees and others. The virus that causes COVID-19 spreads easily between people in close contact. *See* Dkt. # 25-5 at p. 2 (CDC, Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,293 (Sept. 4, 2020) ("CDC Order")). Evictees must move, many into shared housing or other congregate settings fostering COVID-19's spread. *Id*. p. 4. Extensive outbreaks have been identified in homeless shelters. *Id*. p. 5. Evictees who become unsheltered face additional problems with exposure and inadequate access to hygiene, furthering the virus's spread. *Id*. The CDC recognizes eviction moratoria as an effective public health measure to prevent the spread of COVID-19, by allowing those who become ill to self-isolate, supporting stay-at-home and social distancing directives, and keeping individuals away from congregate settings. *Id*. p. 4. LOSING HOME reports evicted persons face other harmful outcomes, including worsened mental health and cardiovascular conditions in adults and, for children, increased likelihood of teenage pregnancy and alcoholism, worse educational outcomes, and higher dropout rates. Dkt. # 25-4 at p. 21.

**C.      The Mayor proclaimed a civil emergency and the Mayor and Council enacted a temporary eviction moratorium, six-month defense, and repayment plan requirement.**

In response to the pandemic, the CDC and state and local governments adopted temporary measures to protect tenants from eviction. *See* Dkt. # 25-5 (CDC Order); Ballotpedia, *Changes to rent, mortgage, eviction, and foreclosure policies in response to the coronavirus (COVID-19) pandemic, 2020*, https://ballotpedia.org/Changes_to_rent,_mortgage,_eviction,_and_foreclosure_policies_in_response_to_the_coronavirus_(COVID-19)_pandemic,_2020 (last visited Oct. 9, 2020).

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Seattle is among them. The Mayor issued a Proclamation of Civil Emergency on March 3, 2020. Dkt. # 17-6. The City Council amended the Proclamation by Resolution 31937 two days later. Dkt. # 25-6. The amended Proclamation remains the operative one and will remain in effect until the Mayor or Council terminates it. *See id*. pp. 10–14. The Mayor and Council also enacted the three measures Plaintiffs challenge.

**The eviction moratorium**. On March 14, 2020, the Mayor issued an emergency order temporarily establishing a residential eviction moratorium, Dkt. # 25-7**,** which the Council amended by Resolution 31938 two days later. Dkt. # 25-8**.** The Council's version remains the operative one, *see id*. pp. 10–14, the effective date of which the Mayor has extended to the end of 2020 (or until the termination of the Proclamation of Civil Emergency, if earlier). Dkt. #s 17-8, 17-9, 17-10. The moratorium establishes a defense to an eviction action that the eviction would occur during the moratorium "unless the eviction action is due to actions by the tenant constituting an imminent threat to the health or safety of neighbors, the landlord, or the tenant's or landlord's household members." Dkt. # 25-8 at p. 12.

**The six-month defense.** The Council adopted additional eviction protections on May 4. Dkt. # 17-11 (Ord. 126075). The Council created a defense to an eviction action that the eviction would cause the tenant to vacate within six months after the termination of the eviction moratorium if: (1) the landlord seeks eviction because the tenant violated a 14-day notice to pay rent or vacate for rent due during, or within six months after, the eviction moratorium or habitually failed to pay rent resulting in four or more pay-or-vacate notices in a 12-month period; and (2) the tenant declares they suffered a financial hardship and cannot pay rent. *Id*. p. 20, § 2.

**The repayment plan requirement.** The Council adopted a repayment plan requirement on May 11. Dkt. # 17-12 (Ord. 126081). Under it, a tenant who fails to pay rent when due

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 5
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

during, or within six months after the termination of, the Proclamation of Civil Emergency may elect to pay the overdue rent in installments over three to six months, depending on the number of months the tenant is in arrears. *Id*. pp. 8–9, § 2. Failure of the landlord to accept payment under the installment schedule constitutes a defense to an eviction action. *Id.* p. 9. The ordinance also prohibits late fees, interest, and other charges due to late payment of rent from accruing during the Proclamation or within one year after its termination. *Id.*

## III.     ARGUMENT

### A.     Because of the CDC Order, Plaintiffs lack standing to challenge the City's moratorium or six-month defense.

To have standing, a plaintiff must prove more than an injury; the plaintiff must prove it is likely, not merely speculative, that the relief they request will redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs cannot prove redressability as to the City's moratorium or six-month defense because Plaintiffs do not challenge the CDC Order and can only speculate about whether the Order will shield their tenants from eviction.[3]

Relief from one law cannot redress a claimed injury if the relief leaves in place another law causing the same injury. *See*, *e.g.*, *Maverick Media Group, Inc. v. Hillsborough County, Fla.*, 528 F.3d 817, 820–21 (11th Cir. 2008); *American Waterways Operators v United States Coast Guard*, ___ F. Supp. 3d ___, 2020 WL 360493, at *4 (D. Mass. Jan. 22, 2020). *Cf. Maldonado v. Morales*, 556 F.3d 1037, 1043–44 (9th Cir. 2009) (recognizing an exception if a decision invalidating a challenged law would apply with equal force to a similarly-worded unchallenged law, likely allowing the plaintiff to surmount the unchallenged law too).

---

[3] Because the CDC Order does not contain a repayment plan requirement, Plaintiffs' failure to challenge the CDC Order does not deprive them of standing to challenge that requirement.

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 6
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs cannot prove a decision invalidating the City's moratorium or six-month defense—but leaving the CDC Order in place—is likely to redress their claimed injury of being prohibited from evicting tenants. Plaintiffs have not alleged the CDC Order omits their tenants. To the contrary, Plaintiffs cast the Order as "a backstop should the Court enjoin the state and local eviction bans." Dkt. # 16 p. 29. And Plaintiffs must concede a ruling from this Court would not apply with equal force to the CDC Order because Plaintiffs admit the Order "is not as broad as Defendants' bans." *Id.* Plaintiffs can merely speculate they "may be able to evict tenants who are not making any partial payments under the federal ban," *id.*, but offer no evidence supporting that assertion. *See* Dkt. #s 18–20 (Plaintiff declarations). Because Plaintiffs leave this Court to provide piecemeal and incomplete relief that Plaintiffs cannot demonstrate will redress their claimed injury, they lack standing.

### B.        Plaintiffs are not entitled to a preliminary injunction.

No matter the number of City enactments Plaintiffs have standing to challenge, they are not entitled to a preliminary injunction. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm absent preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Id.* at 20. Alternatively, under the Ninth Circuit's "sliding scale" approach, a plaintiff may obtain a preliminary injunction by establishing "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff," so long as the plaintiff can also establish the two remaining *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted). "Under either standard, Plaintiffs

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 7
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

bear the burden of making a clear showing that they are entitled to this extraordinary remedy." *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 905 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *cert. petition filed*, No. 20-138 (Aug. 7, 2020). Under either standard, Plaintiffs fail to meet their burden.[4]

### 1.      Plaintiffs face no irreparable harm.

Plaintiffs fall short of establishing a likelihood of irreparable harm. Even if Plaintiffs were likely to succeed on the merits, their constitutional claims alone would not establish irreparable harm. *Cf.* Dkt. # 16 at p. 27 (citing *American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009)). Under the "theory of irreparable harm" espoused in *American Trucking*, "Plaintiffs must demonstrate some likely irreparable harm in the absence of a preliminary injunction barring the challenged action, and not simply a constitutional violation." *Sierra Club*, 379 F. Supp. 3d at 925. Plaintiffs can establish no such harm.

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "For this reason, economic harm is not generally considered irreparable." *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020). Plaintiffs' alleged injury—delayed pursuit of rent payments—is purely economic and redressable through monetary damages; it is not irreparable. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (a "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury").

---

[4] Should the Court grant a preliminary injunction, the Court should decline to waive the bond required under Fed. R. Civ. Proc. 65(c). *See* Dkt. # 16, p. 30 n.2 (Plaintiffs' requested waiver). Waiver is appropriate only where the defendant is unlikely to suffer harm from an injunction. *E.g.*, *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). An injunction would impose significant harm on the City and its residents.

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Arguing otherwise, Plaintiffs misconstrue the nature of their claimed injury. They purport to face an inability to "regain possession of their property," Dkt. # 16 at p. 27, but no Plaintiff has expressed a desire to repossess their property for a purpose other than collecting rent. *See generally* Dkt. #s 18–20 (Plaintiff declarations). Although couched in real property terms, Plaintiffs' alleged harm is nothing more than a temporary loss in rental income.

Nor does the mere involvement of real property transform Plaintiffs' purely economic harm into irreparable harm. *Cf.* Dkt. # 16 at p. 27. In myriad cases involving real property, courts have declined to find irreparable harm where, as here, damages could remedy the purported injuries. *E.g., Los Angeles Mem'l Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *Thomas v. Zachry*, 256 F. Supp. 3d 1114, 1122 (D. Nev. 2017); *Rhodes v. Wells Fargo Home Mortgage, Inc.,* 09-CV-1042 W (CAB), 2009 WL 10672064, at *4 (S.D. Cal. June 3, 2009).

Plaintiffs also attempt to convert their claimed injuries into something other than pecuniary harm by asserting that delayed rent payments may damage their credit scores, force them into foreclosure, or endanger the viability of their businesses. Dkt. # 16 at p. 28. But "[s]peculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). Instead, "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). Plaintiffs' declarations, Dkt. #s 18–20, merely indicate Plaintiffs rely on rent for some portion of their expenses; they provide no support for a contention that delayed payments will cause foreclosure, damaged credit scores, or failed

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 9
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

businesses—much less that irreparable harm is "likely." *See Winter*, 555 U.S. at 22; *HAPCO*, 2020 WL 5095496, at *16 (rejecting a similar proposition).

Other facts undercut Plaintiffs' fears of irreparable harm. The corporate Plaintiffs' apparent ability to offset the temporary loss of income associated with the City's enactments casts doubt on their contention that they risk foreclosure, damage to credit scores, or other irreparable harm absent an injunction. Those Plaintiffs or their principals own more rental units than they disclosed in their declarations—and they do not claim any tenant in those other units is behind in rent. State, King County, and City records indicate El Papel LLC—whose principal disclosed only two units—owns property with a total of 27 rental units. *Compare* Dkt. #s 24, 24-7 – 24-11 (Menzel Decl.) *with* Dkt. # 18 at p. 2 (Travers Decl.). Osho Berman is principal for Plaintiff Berman 2 LLC, which claims over twenty units, Dkt. # 19 (Berman Decl.), and also principal for Berman 1 LLC and Berman 3 LLC, which County records indicate collectively own four other units outside Seattle. *See* Dkt. #s 24, 24-1 – 24-6 (Menzel Decl.). That only a fraction of Plaintiffs' tenants are in arrears is consistent with national surveys showing 79–85% of tenants have been making timely payments this summer and fall—a rate not appreciably different from last year. *See* National Multifamily Housing Council, *NMHC Rent Payment Tracker*, https://www.nmhc.org/research-insight/nmhc-rent-payment-tracker/ (last visited Oct. 9, 2020); U.S. Census Bureau, *Week 13 Household Pulse Survey: Aug. 19–3*1, Housing Table 1b, https://www.census.gov/data/tables/2020/demo/hhp/hhp13.html (last visited Oct. 9, 2020).

And Plaintiffs fail to account for various programs supporting landlords facing temporary rent shortfalls. King County's Eviction Prevention and Rent Assistance Program and United Way of King County's Home Base Rental Assistance Program assist tenants struggling to pay rent during the pandemic, which in turn assists landlords facing delinquent rent payments. *See*

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 10
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*generally* Dkt. # 23 (Ellerbrook Decl.); Dkt. # 26 (Alvarado Decl.). Relief for struggling

landlords is also available at the federal level. *See HAPCO*, 2020 WL 5095496, at *17–18

(describing "myriad of programs currently protecting landlords from foreclosure" and finding

plaintiff's "speculation cannot support an injunction" given available sources of relief).

### 2.   Plaintiffs' Contract Clause claim is unlikely to succeed.

Plaintiffs cannot prove their Contract Clause claim is likely to succeed. "No State

shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const., Art. I, § 10,

cl. 1. "Although the language of the Contract Clause is facially absolute, its prohibition must be

accommodated to the inherent police power of the State 'to safeguard the vital interests of its

people.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410 (1983)

(quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 434 (1934)).

Whether a regulation violates the Contract Clause is governed by a three-step inquiry:

> "The threshold inquiry is 'whether the state law has, in fact, operated as a
> substantial impairment of a contractual relationship.'" If this threshold inquiry is
> met, the court must inquire whether "the State, in justification, [has] a significant
> and legitimate public purpose behind the regulation, such as the remedying of a
> broad and general social or economic problem," to guarantee that "the State is
> exercising its police power, rather than providing a benefit to special interests."
> Finally, the court must inquire "whether the adjustment of 'the rights and
> responsibilities of contracting parties is based upon reasonable conditions and is
> of a character appropriate to the public purpose justifying the legislation's
> adoption.'"

*RUI One Corporation v. City of Berkeley,* 371 F.3d 1137, 1147 (9th Cir. 2004) (citations

omitted). Plaintiffs cannot establish a substantial impairment of a contractual relationship. Even

if they could, they falter on the inquiry's second and third steps.

### a. The City's enactments do not substantially impair a contractual relationship.

In assessing whether a law has operated as a substantial impairment of a contractual relationship, "the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018).

### (1) The enactments could not interfere with Plaintiffs' reasonable expectations given the highly regulated nature of the residential rental business.

Consistent with this focus on expectations, "[i]n determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past." *Energy Reserves*, 459 U.S. at 411. *Accord Veix v. Sixth Ward Bldg. and Loan Ass'n*, 310 U.S. 32, 37–38 (1940).

The residential rental business is highly regulated. That is true nationally. *See, e.g.*, *Yee v. City of Escondido*, 503 U.S. 519, 528–29 (1992) (recognizing the Court's approval of various types of landlord-tenant regulations). And it is especially true in Washington and Seattle. The Residential Landlord Tenant Act ("RLTA," RCW ch. 59.18) regulates such aspects of the landlord-tenant relationship as: establishing a duty to keep the premises fit for human habitation (RCW 59.18.060); requiring notice of rent increases (RCW 59.18.140); and regulating late fees (RCW 59.18.170), notices of termination (RCW 59.18.200), tenant screening (RCW 59.18.257), and security deposits (RCW 59.18.260–.280). The Forcible Entry and Forcible and Unlawful Detainer Act (RCW ch. 59.12) and the RLTA regulate evictions, including the bases and process for eviction. *See* RCW ch. 59.12, RCW 59.18.365–.410. And the City's Just Cause Eviction Ordinance provides a defense for an eviction under certain circumstances or for a cause not enumerated in the Ordinance. *See* Dkt. # 17-11 at pp. 9–21 (amending the Ordinance).

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 12
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Under this pervasive regulatory scheme, the City's enactments do not substantially impair Plaintiffs' contractual relationships because landlords reasonably should have expected amendments temporarily delaying their ability to pursue evictions or back rent. "The parties may rely on the continued existence of adequate statutory remedies for enforcing their agreement, but they are unlikely to expect that state law will remain entirely static. Thus, a reasonable modification of statutes governing contract remedies is much less likely to upset expectations than a law adjusting the express terms of an agreement." *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 19 n.17 (1977).

> **(2)** **The enactments do not significantly undermine Plaintiffs' contractual bargain or prevent them from safeguarding or reinstating their rights.**

Even if Plaintiffs could prove a substantial contractual impairment despite their highly regulated business, the City's enactments do not significantly undermine Plaintiffs' contractual bargain or prevent them from safeguarding or reinstating their rights. The enactments do not absolve tenants from their obligation to pay rent. The eviction moratorium and six-month defense at most delay the landlords' ability to pursue one statutory remedy they have for nonpayment of rent: eviction. Once those protections and any installment repayment plan end, landlords may pursue evictions to regain possession, recover all rent they are owed, and seek damages for fair rental market value from a tenant holding over. RCW 59.18.410; *Owens v. Layton*, 133 Wn. 346, 347–48 (1925). Indeed, by allowing tenants extra time to pay overdue rent, the repayment plan requirement could increase the likelihood of landlords receiving back rent without resorting to litigation.

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 13
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### (3)     Plaintiffs' arguments for substantial impairment fail.

Plaintiffs' argument that the City's enactments impermissibly "remove" the "primary enforcement mechanism" of eviction fails. *See* Dkt. # 16 at p. 16. The City's enactments do not "remove" the right to pursue an eviction or back rent—they only delay that pursuit. Plaintiffs' contention that substantial impairment occurs when a law "handicaps enforcement" of an obligation is legally unsupported. *Id*. at 15. Plaintiffs invoke a sentence from *Lynch*: "Contracts between individuals or corporations are impaired within the meaning of the Constitution (article 1, s 10, cl. 1) whenever the right to enforce them by legal process is taken away or materially lessened." *Id*. (quoting *Lynch v. United States*, 292 U.S. 571, 580 (1934)). But that statement is *dicta*—*Lynch* involved contracts where the government is a party and turned on whether the United States could be sued without its consent. *Lynch*, 292 U.S. at 580.

Plaintiffs then cite cases from the 1800's, focusing on the distinction they drew between "the obligation of a contract" and "the remedy." Dkt. # 16 at p. 15. That language is irrelevant because the remedy/obligation distinction is "now largely an outdated formalism." *U.S. Trust*, 431 U.S. at 19 n.17. Those cases—none of which dealt with today's regulated landlord-tenant relationship—do not replace modern Contract Clause jurisprudence with a rule that any modification of the ability to enforce a contract constitutes a substantial impairment.

### b.     Significant and legitimate public purposes back the City's enactments.

Even though the Court need not undertake the rest of the inquiry because Plaintiffs fail to pass the threshold step of substantial impairment, the City's enactments pass the other steps.

The eviction moratorium has the purpose of protecting "the public health, safety, and welfare by reducing the number of individuals and families entering into homelessness" thereby "lowering the number of people who may develop the disease or spread the disease." Dkt. # 25-8

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 14
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

p. 11. The six-month defense is similarly aimed at "preventing more individuals and families from becoming homeless to avoid the increased risk of transmission and spread of COVID-19" by providing a defense to eviction the Council deems necessary to "protect public health," "support stable housing," and "decrease the likelihood that individuals and families will fall into homelessness." Dkt. # 17-11, pp. 3, 8. The rent repayment requirement is based on a similar need and seeks to mitigate the pandemic's housing and economic impacts. Dkt. # 17-12, pp. 3, 8.

These purposes are "significant and legitimate" within the meaning of the Contract Clause analysis. *Veix*, 310 U.S. at 38–39 (state's authority over contracts includes "health, morals and safety" and "economic needs as well"). *See also Blaisdell*, 290 U.S. at 436–38. If measures to address the health, economic, and homelessness consequences of a pandemic do not pass muster, little could.

Plaintiffs contend landlords suffer from the current crisis just like tenants, yet the governments offer landlords no help. Dkt. # 16 at pp. 16–17. Plaintiffs cite no case law rendering such considerations relevant, and they overlook rental assistance programs local governments (including the City) have instituted in response to the pandemic that help landlords whose tenants cannot pay rent. *See, e.g.*, Dkt. #s 23, 26 (Ellerbrook and Alvarado Decls.).

> **c.   Especially applying required deference, the City's enactments are drawn appropriately and reasonably to advance their purposes.**

The City's enactments are also justified under the third step of the Contract Clause inquiry, in which the court asks whether adjusting the contracting parties' rights and responsibilities is based upon reasonable conditions and appropriate to the public purpose justifying the legislation's adoption. *RUI*, 371 F.3d at 1147. Where the government is not a

contracting party, courts defer to lawmakers' judgment in this step. *Energy Reserves,* 459 U.S. at 412–13; *Snake River Valley Elec. Ass'n v. Pacificorp*, 357 F.3d 1042, 1051 n.9 (9th Cir. 2004).

### (1)    The City's judgment that the enactments appropriately and reasonably advance their public purposes is entitled to deference.

This Court should defer to the City's judgment that a pause on evictions, as well as a temporary defense to evictions where tenants pay rent according to an installment schedule, would mitigate the pandemic's harms. The City reasonably determined the eviction moratorium and six-month defense advance the public health purpose of reducing the number of people contracting and spreading COVID-19. Evidence indicates preventing evictions reasonably achieves this purpose. *See supra*, § II. The pandemic has increased unemployment, which predictably increases evictions. *See id*. Eviction moratoria help prevent the spread of COVID-19 by allowing self-isolation by those who become ill, supporting stay-at-home and social distancing directives to mitigate the spread of COVID-19, and keeping individuals from moving into congregate settings where COVID-19 risk is higher. *See id*. The six-month defense and repayment plan requirement are intended not only to protect public health but also to address the pandemic's persistent economic impacts and prevent homelessness. *See id*.

### (2)    Plaintiffs' arguments that the enactments are more extensive than necessary are untenable.

Plaintiffs argue the City's enactments should have been more narrowly tailored. *See* Dkt. # 16 at pp. 17–23. These arguments are based on an incorrect legal premise because, where the state is not a contracting party, a court defers to lawmakers' judgment about the choice of means to implement the public purposes. *Energy Reserves,* 459 U.S. at 412–13, 418.

Plaintiffs misconstrue *U.S. Trust* in contending the City's enactments "extend well beyond the government's interests" because a "more moderate course would serve [the

government's] purposes equally well." *See* Dkt. # 16 at pp. 19–20. Because *U.S. Trust* involved a

contract to which the state was party, the Court did not accord the government the deference the

Court recognized would be due if the challenged law impaired only a private contract. *U.S.

Trust*, 431 U.S. at 22–23, 25–26.

Plaintiffs misread *Allied Structural Steel* for the proposition that a law substantially

impairing a contract must be "tailored to the emergency that it was designed to meet." *See* Dkt.

# 16 at p. 19 (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978)). They quote

language from a summary of a different case—*Allied Structural Steel* neither turned on such

tailoring nor required that impairment be justified by an emergency. *Allied Structural Steel*, 438

U.S. at 242, 249 n.24.

Given the deference due the City, the fact that the eviction moratorium temporarily

pauses evictions of tenants regardless of their ability to pay (as opposed to continuing to allow

evictions of "well-to-do" tenants, as Plaintiffs advocate) does not mean the moratorium fails the

third step of the Contract Clause inquiry. *See* Dkt. # 16 at p. 20. Pausing all evictions (unless the

tenant poses a threat to others) serves the public health purpose of the enactment by enabling

infected persons to self-isolate, fostering stay-at-home strategies, and reducing congregate-living

arrangements. Plaintiffs misplace reliance on *W.B. Worthen* to argue that "a showing of

hardship" is needed to justify delaying an eviction—because that case, which involved

foreclosures not evictions, featured the government as contracting parties, no deference was due.

*See* Dkt. # 16 at p. 21 (citing *W.B. Worthen Co. ex rel. Bd. Of Comm'rs of Street Improvement

Dist. No. 513*, 295 U.S. 56 (1935)).

Plaintiffs mistakenly contend the six-month defense and repayment plan requirement are

insufficiently tailored because they extend beyond the Mayor's Proclamation of Civil

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 17
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Emergency. *See* Dkt. # 16 at pp. 21–22.[5] The six-month defense begins when the moratorium ends (either before or with the Proclamation), and the repayment plan requirement covers periods before and after the Proclamation. To the extent the six-month defense and repayment plan requirement overlap the Proclamation, Plaintiffs are left contending they know best when the pandemic emergency has passed—a contention that would falter on the deference owed legislative judgment. If the measures extend beyond the Proclamation, Plaintiffs still would not prevail because a substantial impairment of a contractual relationship need not be justified by an emergency, *Energy Reserves*, 459 U.S. at 412, and the measures are designed not just to limit the disease's spread but also to mitigate its persistent economic and housing impacts.

Plaintiffs mischaracterize *United Auto.* to contend substantial impairments of contractual obligations should be "limited to the duration of the emergency." Dkt. # 16 at p. 21 (quoting *United Auto., Aerospace, Agr. Implement Workers of Am. Int'l Union v. Fortuno*, 633 F.3d 37, 46 (1st Cir. 2011)). *United Auto.* did not turn on the duration of an emergency; it simply referenced the quoted language in a list of factors the Supreme Court said might be considered. *United Auto.*, 633 F.3d at 46.

Finally, Plaintiffs err in contending the City's enactments violate the Contract Clause because the City's interests allegedly would be served by "more moderate courses." Dkt. # 16 at pp. 22–23. Given the deference due the City, the City did not need to structure its actions to suit Plaintiffs' preferences.

---

[5] Plaintiffs quote language from the Proclamation of Emergency but misattribute it to the Mayor's eviction ban order. *Compare* Dkt. # 16, p. 21, lines 18–20 (Plaintiffs' motion) *with* Dkt. # 17-6, p. 5 (Proclamation).

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 18
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**(3)**   **The City need not ensure continuing payments by tenants as a prerequisite for pausing evictions.**

Plaintiffs mischaracterize decisions from the 1800's and early 1900's as standing for the proposition that the U.S. Supreme Court has upheld "relief from foreclosure or eviction" against Contract Clause challenges "only when the statutes provided safeguards and enforceable requirements that tenants or mortgagors continue making payments during the extended forbearance period." Dkt. # 16 at p. 17. *Block*—the only decision involving the landlord-tenant relationship—addressed takings and due process claims without mentioning the Contract Clause. *Block v. Hirsch*, 256 U.S. 135, 153 (1921). *W.B. Worthen* (from 1935, and in which no deference was due because the government was a contracting party) and *Barnitz* (1896), involved enactments allowing defaulting mortgage borrowers to remain in possession without paying rent, unlike tenants under the City's enactments who remain liable for rent owed. *W.B. Worthen*, 295 U.S. at 61; *Barnitz v. Beverly*, 163 U.S. 118, 130 (1896). Likewise, that *Blaisdell* upheld a statute that provided for extension of the mortgage redemption period and required the mortgagor to pay the rental value during the extension does not impugn the City's moratorium, which preserves the tenants' rent obligation and entitles the landlord to be made whole. *See Blaisdell*, 290 U.S. at 425. Plaintiffs also mention *Bronson v. Kinzie*, 42 U.S. 311 (1843), and *Howard v. Bugbee*, 65 U.S. 461 (1860), but they contain no discussion salient to Plaintiffs' point.

Plaintiffs are left insisting the Contract Clause obligates the City to require tenants to continue to pay rent to pause evictions. Dkt. # 16 at p. 19. That insistence cannot be squared with the deference owed the City over the enactments' appropriateness and reasonableness. In this economic crisis, many tenants would face eviction because they could not timely pay rent. Insisting on payments as a prerequisite for pausing evictions is tantamount to saying the City

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 19
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

cannot pause evictions at all. Plaintiffs simply ask the Court to value the landlords' interests over the public interests advanced by the enactments. This Court must deny that request.

This Court should likewise dismiss Plaintiffs' complaint that the repayment plan requirement "does not protect landlords' right to a return." *See* Dkt. # 16 at p. 19. Plaintiffs cite no case law establishing such a right, and their suggestion that the requirement "encourage[es] renters not to pay" defies logic—it encourages them to at least make partial payments to qualify for the defense from eviction.

### 3.      Plaintiffs' takings claim is unlikely to succeed.

#### a.      Injunctive relief is inappropriate for a takings claim.

Injunctive relief is not available for a takings claim because the Takings Clause does not bar the government from taking property, only taking it without compensation. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984); *In re Nat'l Sec. Agency Telecomm. Records Litig.*, 669 F.3d 928 (9th Cir. 2011); *Baptiste*, 2020 WL 5751572, at \*20; *HAPCO*, 2020 WL 5095496, at \*12.

None of the authority Plaintiffs invoke revives injunctive relief for a takings claim. *See* Dkt. # 16 at p. 26. They cite *Washington Legal Foundation* ("*WLF*"), but *WLF* repeated the rule that "prospective injunctive relief is an inappropriate remedy" for a takings claim. *Washington Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 849 (9th Cir. 2001), *aff'd on other grounds by Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003).[6] Plaintiffs invoke *Peters* from the Seventh Circuit, but it also repeated the rule that "ordinarily, compensation, not an

---

[6] *WLF* noted equitable relief may be available to obtain a declaration or, quoting a District of Columbia Circuit decision, "in the few cases where a Claims Court remedy" would be so inadequate as to prevent just compensation. *WLF*, 271 F.3d at 850 (quoting *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 613 (D.C. Cir. 1992), *abrogated on other grnds.*, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir 2017)). Claims Court practice is irrelevant to Plaintiffs' case.

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 20
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

injunction, is the appropriate remedy for a taking" and mentioned an exception for an allegation of an unlawful taking for a private (not public) use—an allegation Plaintiffs do not make. *Peters v. Village of Clifton*, 498 F.3d 727, 731–32 (7th Cir. 2007).[7]

Plaintiffs point to *Phillip Morris*, which granted injunctive relief for a takings claim, and *D.A.B.E.*, which denied it, but neither opinion suggested the litigants or courts considered the Supreme Court's rule against injunctive relief for such claims. *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670 (1st Cir. 1998); *D.A.B.E., Inc. v. City of Toledo*, 292 F. Supp. 2d 968 (N.D. Ohio 2003). And *Goodwin*—the Florida District Court ruling on which Plaintiffs principally rely—misread *Peters*, *Phillip Morris*, and *D.A.B.E* as creating an exception to that rule. *Goodwin v. Walton County*, 248 F. Supp. 3d 1257, 1266 (N.D. Fla. 2017).

### b.    Plaintiffs' takings claim lacks merit.

Even if injunctive relief were available, it would not be appropriate because Plaintiffs' takings claim fails. Government implicates the Takings Clause by directly appropriating or invading private property or by effectively ousting the owner from their domain through regulation. *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 537–39 (2005). Plaintiffs claim a *Loretto*-style *per se* regulatory taking: a regulation forcing them to suffer a physical invasion. Dkt. # 16 at pp. 23–26. *See Lingle*, 544 U.S. at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)).

---

[7] Plaintiffs mistakenly latch onto a passage in *Peters* noting an exception due to the unavailability or inadequacy of just compensation. That was an exception not to the rule banning injunctive relief for takings claims, but to the requirement to exhaust state remedies before pursuing a takings claim in federal court—a requirement the Supreme Court later overruled. *Peters*, 498 F.3d at 731 ("If a property owner demonstrates that state procedures for obtaining just compensation are either unavailable or inadequate, the claim is immediately ripe in federal court") (citing *Williamson County Reg'l Planning Comm' v. Hamilton Bank*, 473 U.S. 172 (1985), *overruled by Knick v. Township of Scott*, 139 S. Ct. 2162 (2019)).

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 21
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    That claim fails. The Supreme Court and Ninth Circuit reject claims that regulating the

2    landlord-tenant relationship can amount to a taking: "This Court has consistently affirmed that

3    States have broad power to regulate housing conditions in general and the landlord-tenant

4    relationship in particular without paying compensation for all economic injuries that such

5    regulation entails." *Loretto*, 458 U.S. at 440. *Accord Yee v. City of Escondido*, 503 U.S. 519

6    528–29 (1992); *FCC v. Florida Power Corp.,* 480 U.S. 245, 252 (1987); *MHC Fin. Ltd. P'ship*

7    *v. City of San Rafael*, 714 F.3d 1118 (9th Cir. 2013). This is especially true of a claimed *per se*

8    taking from a regulation allegedly denying a landlord the discretion to exclude individuals who

9    pay on terms the landlord disfavors. *Loretto*—the font of the "physical invasion" test—predicted

10   it would have no dire consequence for tenant-protection laws. *Loretto*, 458 U.S. at 440.

11   *Yee* proved *Loretto* correct. *Yee* rejected a "physical invasion" claim from mobile home

12   park landlords who complained a law limited their ability to evict tenants who did not pay the

13   higher rents landlords demanded. *Yee* at 526–27. *Yee* upheld the law because a landlord may

14   exclude *all* tenants by ceasing to be a landlord, just not *particular* tenants the landlord disfavors:

15   Put bluntly, no government has required any physical invasion of petitioners'
     property. Petitioners' tenants were invited by petitioners, not forced upon them by
16   the government. While the "right to exclude" is doubtless, as petitioners assert,
     "one of the most essential sticks in the bundle of rights that are commonly
17   characterized as property," we do not find that right to have been taken . . . .

18   Because they voluntarily open their property to occupation by others, petitioners
     cannot assert a *per se* right to compensation based on their inability to exclude
19   particular individuals.

20   *Id.* at 528, 531 (citations omitted).

21   *Yee* controls Plaintiffs' takings claim. *Cf.* Dkt. # 16 at p. 25 (Plaintiffs' attempt to

22   distinguish *Yee*). Like the *Yee* landlords, no Plaintiff alleges they want to abandon the landlord

23   business—they consent to "invasion" by tenants. Like the *Yee* landlords' claimed right to

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 22
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

exclude tenants who refuse to pay more than less, Plaintiffs assert a right to exclude tenants who opt to pay later or under a repayment plan. Because that demand finds no purchase in *Loretto*'s "physical invasion" test, Plaintiffs' takings claim fails.

Other courts recently turning away challenges to pandemic-motivated tenant protections follow *Yee* to reject "physical invasion" takings claims. *E.g., Baptiste*, 2020 WL 5751572, at *20; *Auracle Homes*, 2020 WL 4558682, at *13–15; *Elmsford*, 2020 WL 3498456, at *7–8; Dkt. # 25-10 at p. 20–22 (*Matorin*); Dkt. # 25-13 at p. 39–42 (*JL Props.*). This Court should too.

### 4.    Neither the balance of equities nor the public interest favors a preliminary injunction.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312 (1982). Where, as here, the government is a party, the third and fourth *Winter* factors—which both concern these public consequences—are collapsed into a single factor. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). This factor weighs heavily against granting Plaintiffs' motion for a preliminary injunction.

The profound public health consequences of mass evictions in a pandemic dwarf any economic harm that may result from Plaintiffs' temporary loss of rental income. By one estimate, up to 789,000 Washingtonians are at risk of eviction by the end of 2020. Baumgart Decl. at ¶ 8, Ex. N. *Compare* Dkt. # 16 at p. 30 (Plaintiffs' strained assertion that injunctive relief may not lead to actual evictions in an unprecedented economic crisis). Evictions increase the spread of COVID-19 and other serious harms. *See supra* § II. Providing hygiene kits to evicted individuals, as Plaintiffs suggest, Dkt. # 16 at p. 23, would do little to reduce transmission in congregate settings, as COVID-19 is principally transmitted via respiratory droplets. Dkt. # 25-9 (CDC, *SARS-CoV-2 & Potential Airborne Transmission* (Oct. 5, 2020)). And Plaintiffs offer

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 23
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

nothing to counter-balance the role the six-month defense and repayment plan requirement play in not only protecting public health but also addressing the pandemic's persistent economic impacts and preventing homelessness.

Against this factual backdrop, Plaintiffs' arguments fall flat. Plaintiffs suggest the City rely on the CDC Order as a backstop, Dkt. # 16 at p. 29, but replacing the City's enactments with the CDC Order (which Plaintiffs concede is less restrictive) would foster an inevitable rise in evictions. Plaintiffs again raise the specter of increased foreclosures, *id*. at p. 30, but, again, that speculation is undercut by rental assistance available to help tenants and their landlords. *See* Dkt. #s 23, 26 (Ellerbrook and Alvarado Decls.). And although Plaintiffs cast their constitutional claims in sweeping terms, Dkt. # 16 at p. 29, what is really at stake is a temporary deprivation of income for a handful of rental units—a harm that simply cannot compete with the devastating consequences of mass evictions for the community at large.

## IV.    CONCLUSION

The City—like the federal government and state and local governments across the nation—responded to a nearly unprecedented public health and economic crisis by enacting temporary tenant protection measures that delay landlords' ability to pursue rent tenants owe. Landlords may disagree with that approach, but that disagreement has no genuine constitutional dimension—it is a debate over the proper balance to strike as our society works through this crisis and its aftermath. The City respectfully asks this Court to defer to the reasonable and appropriate balance the City struck and deny Plaintiffs' motion for a preliminary injunction.

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 24
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

Peter S. Holmes
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Respectfully submitted October 14, 2020.

/s/ Jeffrey S. Weber, WSBA #24496
/s/ Roger D. Wynne, WSBA #23399
/s/ Erica R. Franklin, WSBA #43477
Seattle City Attorney's Office
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
Ph: (206) 684-8200
jeff.weber@seattle.gov
roger.wynne@seattle.gov
erica.franklin@seattle.gov
Assistant City Attorneys for Defendants City of Seattle
and Jenny A. Durkan, in her official capacity as the
Mayor of the City of Seattle

CITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 25
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200