Hon. Richard A. Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | | |
|---|---|---|
| EL PAPEL, LLC; BERMAN 2, LLC; and KARVELL LI, an individual, | ) ) ) | Civil Action No. 2:20-cv-01323-RAJ-JRC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| JAY R. INSLEE, in his official capacity as Governor of the State of Washington; JENNY A. DURKAN, in her official capacity as the Mayor of the City of Seattle; and THE CITY OF SEATTLE, a municipal Corporation, | ) ) ) ) ) ) ) ) | **Noted on Motion Calendar: October 23, 2020** |
| Defendants. | ) ) | **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE EVICTION BANS ............. 1

   a.    Redressability does not require that relief remove all barriers. ...................... 1

   b.    The CDC order does not bar Plaintiffs from regaining possession. ............... 2

II.   THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS ............. 4

III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................................... 4

*P. Reply ISO Mot. for Prelim. Injunct. - i*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

a.   The eviction bans violate the Contract Clause by denying landlords the right to enforce their residential lease agreements without providing compensation or limiting the bans to the government's legitimate interests. ............................................... 4

   i.   The bans substantially impair contractual obligations by removing the key remedy for lease violations. ........................................................ 5

   ii.   The Defendants fail to compensate for the duration of the bans. ................................. 7

   iii.   The bans are more extensive than necessary. ............................................. 9

b.   The eviction bans cause a physical taking. .................................................. 11

   i.   Plaintiffs' takings claim is ripe. ........................................................... 11

   ii.   The eviction bans compel physical invasion. ............................................ 12

   iii.   An injunction is proper. .................................................................... 13

IV.   PLAINTIFFS FACE IRREPARABLE HARM. ...................................................... 14

a.   Constitutional violations constitute irreparable harm ............................... 14

b.   Restrictions on use of real property cause irreparable harm ......................... 15

V.   THE PUBLIC INTEREST AND BALANCE OF HARDSHIPS FAVOR INJUNCTIVE RELIEF. ............................................................................. 17

CONCLUSION .................................................................................................... 18

CERTIFICATE OF SERVICE .............................................................................. 19

*P. Reply ISO Mot. for Prelim. Injunct. - ii*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) ................................................9, 10

*American Trucking Associations, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ...............................................................................................15

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ...............................................17

*Arkansas Game & Fish Comm'n v. United States*,
568 U.S. 23 (2012)...................................................................................................................12

*Armstrong v. United States*, 364 U.S. 40 (1960) .........................................................................18

*Assoc. Gen. Contractors of California, Inc. v. Coalition for Economic Equity*,
950 F.2d 1401 (9th Cir. 1991) ................................................................................................14

*Auracle Homes, LLC v. Lamont*,
No. 20-829, 2020 WL 4558682 (D. Conn. Aug. 7, 2020) ......................................................12

*Baptiste v. Kennealy*,
No. 1:20-cv-11335-MLW, 2020 WL 5751572
(D. Mass. Sept. 25, 2020) .........................................................................1, 5, 7, 10, 11, 12

*Barnitz v. Beverly*, 163 U.S 118 (1896) ..................................................................................5, 9

*Block v. Hirsh*, 256 U.S. 135 (1921)...........................................................................................9

*Bronson v. Kinzie*, 42 U.S. (1 How.) 311 (1843).......................................................................7, 9

*Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020) ...........................................1

*Edwards v. Kearzey*, 96 U.S. (6 Otto) 595 (1877).......................................................................6

*Elmsford Apartment Associates, LLC v. Cuomo*,
No. 20-4062, 2020 WL 3498456 (S.D.N.Y. June 29, 2020) ..................................................12

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
549 F.3d 1079 (7th Cir. 2008) ...........................................................................................15, 16

*Goodwin v. Walton Cty., Florida*, 248 F. Supp. 3d 1257 (N.D. Fla. 2017)............................13, 14

*HAPCO v. City of Philadelphia*,
No. 20-3300, 2020 WL 5095496 (E.D. Penn. Aug. 28, 2020) ...............................................12

*Hirsh v. Block*, 267 F. 614 (D.C. Cir. 1920)...............................................................................9

*Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) ......................................6, 7, 8, 9

*Horne v. Dep't of Agric.*, 576 U.S. 350 (2015)........................................................................1, 14

*Howard v. Bugbee*, 65 U.S. (24 How.) 461 (1860) ..................................................................8, 9

*Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983 (9th Cir. 2012) ...........................................2

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*Kucera v. State, Dep't of Transp.*, 995 P.2d 63 (Wash. 2000) ...............................13, 14

*Larson v. Valente*, 456 U.S. 228 (1982) ..................................................................2

*Lockary v. Kayfetz*, 917 F.2d 1150 (9th Cir. 1990).............................................12

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)......................................................................13, 16

*Los Angeles Coliseum Commission v. National Football League*,
    634 F.2d 1197 (9th Cir. 1980) .........................................................16

*Lynch v. United States*, 292 U.S. 571 (1934)...........................................................5

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) .......................................................2

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)...........................................17

*Pakdel v. City & Cty. of San Francisco*,
    952 F.3d 1157 (9th Cir. 2020) .........................................................11

*Pennsylvania Coal Co. v. Mahon*,
    260 U.S. 393 (1922)...............................................................................1

*Peters v. Vill. of Clifton*, 498 F.3d 727 (7th Cir. 2007) ...............................13, 14

*Rhodes v. Wells Fargo Home Mortgage, Inc.*,
    No. 09-1042, 2009 WL 10672064 (S.D. Cal. June 3, 2009) ..............16

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) ..........................................10

*RUI One Corp.v. City of Berkeley*,
    371 F.3d 1137 (9th Cir. 2004) ..........................................................8

*Sierra Club v. Trump*, 379 F. Supp. 3d 883 (N.D. Cal. 2019)...........................15

*Skyworks, Ltd., et al. v. Centers for Disease Control, et al.*,
    No. 5:20-cv-02407 (N.D. Ohio filed Oct. 23, 2020).............................2

*Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179 (9th Cir. 1997) ...............4

*Staacke v. U.S. Sec. of Labor*, 841 F.2d 278 (9th Cir. 1988).............................6

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection*,
    560 U.S. 702 (2010)......................................................................13–14

*Sveen v. Melin*, 138 S. Ct. 1815 (2018) .................................................................7

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002)............................................................................12

*Thomas v. Zachry*, 256 F. Supp. 3d 1114 (D. Nev. 2017) .................................16

*U.S. Trust Co. of New York v. New Jersey*,
    431 U.S. 1 (1977).......................................................................5, 6, 8

*US West Commc'ns v. MFS Intelenet, Inc.*,
    193 F.3d 1112 (9th Cir. 1999) ..........................................................11

*P. Reply ISO Mot. for Prelim. Injunct. - iv*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ......................................................14

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)..................................................................................................................1

*W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935) .........................................................6, 8–10

*W.B. Worthen Co. v. Thomas*, 292 U.S. 426 (1934) ....................................................................8, 10

*Yee v. City of Escondido*,
    503 U.S. 519 (1992)................................................................................................................13

*Ex parte Young*, 209 U.S. 123 (1908) .............................................................................................4

**Statutes**

RCW 59.12.030(1)...................................................................................................................2, 7, 16

**Other Authorities**

85 Fed. Reg. 55,292 (Sept. 4, 2020) .......................................................................................2, 3, 18

Eviction Lab, COVID-19 Resources, Eviction Tracking System,
    https://evictionlab.org/eviction-tracking/.............................................................................17

Furth, Salim, *False Alarm*, https://www.mercatus.org/bridge/
    commentary/false-alarm ........................................................................................................17

Merrill, Thomas W., *Anticipatory Remedies for Takings*,
    128 Harv. L. Rev. 1630 (2015)..............................................................................................14

*P. Reply ISO Mot. for Prelim. Injunct. - v*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

**INTRODUCTION**

As a federal district court in Massachusetts recently put it, "the COVID-19 pandemic is not a blank check for the Governor and other elected officials." *Baptiste v. Kennealy*, No. 1:20-cv-11335-MLW, 2020 WL 5751572, at *6 (D. Mass. Sept. 25, 2020). *See also Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2605 (2020) (Alito, J., dissenting) ("[A] public health emergency does not give Governors and other public officials *carte blanche* to disregard the Constitution for as long as the medical problem persists."). Yet Defendants speak as if violating Plaintiffs' constitutional rights is the only means available for confronting the pandemic's impact on housing. Perhaps they "are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922). *See also Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015) ("The Constitution, however, is concerned with means as well as ends."). Plaintiffs do not ask Defendants to stand idle while the pandemic rages. They simply ask that they avoid inflicting collateral damage on constitutional rights.[1]

**ARGUMENT**

**I.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE EVICTION BANS**

    **a.    Redressability does not require that relief remove all barriers.**

Defendants argue that Plaintiffs lack standing because—should this Court grant relief—the CDC order would still limit Plaintiffs' right to possess their property. *See* Governor Jay Inslee's Response to Plaintiffs' Motion for Preliminary Injunction, Dkt #28 (State's Response) at 8:14–9:5; City of Seattle's Opposition to Plaintiffs' Motion for Preliminary Injunction, Dkt #27 (City's Response) at 6:8–7:11. This argument fails for two reasons: (1) redressability is satisfied even if judgment would remove only one barrier to full relief; and (2) the CDC order will not bar Plaintiffs from evicting at least some of their tenants.

A plaintiff can seek redress even if the challenged action is only one of several obstacles to full relief. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260–64

---

[1] When Plaintiffs' Motion was filed, the Governor's eviction ban was scheduled to expire on October 15, 2020. Before that date, however, the Governor extended the ban to December 31, 2020. Second Decl. of Ethan Blevins, Exh. 17.

*P. Reply ISO Mot. for Prelim. Injunct. - 1*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

(1977) (holding that a plaintiff cannot be denied standing just because additional obstacles would remain after relief was granted); *see also Larson v. Valente*, 456 U.S. 228, 243 (1982) (holding that a favorable decision need not relieve a plaintiff's every injury to satisfy the redressability requirement). Defendants wrongly assume that "a small incremental step" does not provide redress. *Massachusetts v. E.P.A.*, 549 U.S. 497, 524 (2007). Such an assumption "would doom most challenges to regulatory action" because lawmakers "do not generally resolve massive problems in one fell swoop." *Id.* The Ninth Circuit has likewise held that a plaintiff "is not required to solve all roadblocks simultaneously and is entitled to tackle one roadblock at a time." *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012) (citation omitted).[2]

Even where other regulations continue to apply, relief from one of several regulations has important consequences. Such relief reduces the number and stringency of regulatory requirements, the range of possible punishments, and the number of governments or agencies regulating an activity. Plaintiffs' requested relief would, at minimum, bring them one step closer to being able to use their property as they wish. That suffices for standing purposes.

**b.    The CDC order does not bar Plaintiffs from regaining possession.**

Even if Defendants were correct on the law, Plaintiffs' injuries are still redressable because the CDC order would not apply to at least some of the Plaintiffs' tenants. The CDC order does not prohibit a landlord from evicting a tenant for a reason other than nonpayment of rent. *See* 85 Fed. Reg. 55,294 (Sept. 4, 2020); Center for Disease Control and Prevention, HHS/CDC Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19: Frequently Asked Questions (CDC FAQ) at 4 (Oct. 12, 2020) (noting that renters "may still be evicted for reasons other than not paying full rent").[3] The tenants occupying El Papel's rental unit have remained on the property after their lease has expired. *See* Complaint at 7:17–19; Travers Decl. ¶ 3. Washington law provides that a tenant is subject to eviction if the tenant "holds over or continues in possession" of the property after the residential lease agreement has expired. RCW 59.12.030(1). Thus,

---

[2] Pacific Legal Foundation, which represents Plaintiffs in this action, is also challenging the legality of the CDC order on behalf of several other parties. *See Skyworks, Ltd., et al. v. Centers for Disease Control, et al.*, No. 5:20-cv-02407 (N.D. Ohio filed Oct. 23, 2020).

[3] Available at https://www.cdc.gov/coronavirus/2019-ncov/downloads/eviction-moratoria-order-faqs.pdf.

*P. Reply ISO Mot. for Prelim. Injunct. - 2*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

El Papel has grounds for eviction that are not related to nonpayment of rent. The CDC order therefore would not bar El Papel from evicting its holdover tenants.

Karvell Li likewise has a tenant who is not eligible for relief under the CDC order. Li's tenant has worked as a podiatrist with the Veterans Health Administration for the entire period of her residential lease. Second Decl. of Karvell Li ¶¶ 3–5. In that capacity, she has earned well over the CDC order's eligibility threshold of $99,000 for single filers (the tenant is not married) for the last seven years. *Id.* ¶ 4. She has also violated multiple lease terms, such as failing to adequately maintain the premises and failing to provide proof of renters insurance. *Id.* ¶¶ 7–9. Hence, Mr. Li can pursue eviction under the CDC order.

Even if the allegations and declarations did not demonstrate the irrelevance of the CDC order, relief from this Court would at least provide landlords with the opportunity to try to evict under the CDC order, which is less onerous than Defendants' bans. The CDC order would only prevent Plaintiffs from evicting someone who makes less than $99,000 a year, who has tapped all possible resources of rental assistance, who is unable to pay rent, who is making best efforts to make partial payments, and who is likely to become homeless if evicted. 85 Fed. Reg. at 55,297. It is far from clear that all Plaintiffs' tenants satisfy these criteria, and Plaintiffs' injuries are at least partially redressed by offering them the opportunity to seek relief under the more moderate CDC order. Moreover, guidance from the CDC confirms that Plaintiffs can challenge the veracity of a tenant declaration, an additional opportunity that Plaintiffs lack under the current eviction bans. CDC FAQ, *supra*, at 6.

Finally, the relative lengths of the bans at issue demonstrate that Plaintiffs satisfy redressability. The CDC order is scheduled to last through December 31, 2020. 85 Fed. Reg. at 55,292. Yet the City's ordinance expressly extends at least six months beyond that date. *See* Blevins Decl., Exh. 11 at 19:4–6. Hence, the CDC order will not pose an additional barrier to relief during at least that six-month period. Moreover, the possibility of extensions beyond December 31 underscore the importance of allowing Plaintiffs to remove at least some barriers to eviction, even if others remain. Plaintiffs have standing.

*P. Reply ISO Mot. for Prelim. Injunct. - 3*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## II.   THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS

"[F]ederal courts have jurisdiction over suits against state officers to enjoin official actions that violate federal law." *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997); *see also Ex parte Young*, 209 U.S. 123 (1908). The State nonetheless wrongly argues that Plaintiffs' claims for prospective relief against the very officer who issued the challenged proclamation are barred by sovereign immunity.

The State argues that the Governor is an improper defendant because "enforcement power lies with others." State's Response at 9:19. Yet nowhere in the Governor's proclamation does he delegate enforcement authority to an independent state officer or agency. Indeed, the Governor's office has issued enforcement guidance with respect to other COVID-19 proclamations, indicating that he plays a role in the enforcement of his proclamations relating to the pandemic. *See* Washington Governor's Office, *Inslee provides guidance on 'Stay Home, Stay Healthy' order* (Mar. 30, 2020).[4] Moreover, the Governor not only issued the proclamation, but continues to remain closely involved in its enforcement by repeatedly deciding whether or not to extend it. He has not simply wound the clock and walked away.

Moreover, the State offers no insight into who these other enforcing officers might be, though the State is in a far superior position than Plaintiffs to know. Without any indication that the Governor has assigned enforcement to a particular agency, he remains a proper defendant with "some connection" to enforcement of the proclamation he promulgated. *Ex parte Young*, 209 U.S. at 157.

If the Court decides that Governor Inslee is not a proper defendant, Plaintiffs ask for leave to amend their complaint to add other state officers as defendants in in their official capacities.

## III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### a.   The eviction bans violate the Contract Clause by denying landlords the right to enforce their residential lease agreements without providing compensation or limiting the bans to the government's legitimate interests.

---

[4] Available at https://www.governor.wa.gov/news-media/inslee-provides-enforcement-guidance-%E2%80%98stay-home-stay-healthy%E2%80%99-order.

*P. Reply ISO Mot. for Prelim. Injunct. - 4*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

i.    **The bans substantially impair contractual obligations by removing the key remedy for lease violations.**

The Supreme Court has consistently held that restrictions on enforcement can substantially impair obligations of contract without actually altering the terms of the agreement itself. *See, e.g.*, *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 20 n.17 (1977) ("The obligations of a contract long have been regarded as including not only the express terms but also the contemporaneous state law pertaining to interpretation and enforcement. . . . The parties may rely on the continued existence of adequate statutory remedies for enforcing their agreement . . . ."); *Barnitz v. Beverly*, 163 U.S 118, 131 (1896) ("[T]he change of remedy [can be] detrimental to such a degree as to amount to an impairment of the plaintiff's right[.]"). A federal district court recently held that a Massachusetts eviction ban substantially impaired contractual obligations by removing the remedy of eviction because the "rights to evict and recover property if a tenant does not pay rent are important elements of the contractual relationship that a lease creates." *See Baptiste*, 2020 WL 5751572, at *16–17.

Defendants emphasize the temporary nature of the eviction bans in arguing that the bans do not substantially impair contractual obligations. *See* City's Response at 13:14–16; State's Response at 11:15–16. Yet Defendants do not dispute Plaintiffs' allegations and declarations establishing that timeliness of payment is a key element of Plaintiffs' residential lease agreements, and thus even a temporary suspension substantially impairs the contractual obligation to pay rent in installments. *See, e.g.*, Travers Decl., Exh. 5 at 1 ("Rent payable . . . in advance on the 1st day of each calendar month . . . . Any rent received after the third (3rd) day of any month shall be considered late . . . ."). Where timeliness of payment is incorporated into an agreement, imposed delays on fulfillment of that obligation substantially impair contractual obligations.

The City goes a step further in arguing that removal of an enforcement mechanism as a general matter does not impair contractual obligations. City's Response at 14:12–17. The City argues that the Supreme Court uttered dicta when it said in *Lynch v. United States*, 292 U.S. 571, 580 (1934), that removal of enforcement can result in substantial impairment. City's Response at

*P. Reply ISO Mot. for Prelim. Injunct. - 5*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

14:9–11. But this Court is not free to ignore Supreme Court dicta. *Staacke v. U.S. Sec. of Labor*, 841 F.2d 278, 281 (9th Cir. 1988) ("Supreme Court dicta are something the lower federal courts do not lightly ignore."). Even so, *Lynch*'s statement of law restates what a century of caselaw before it had established repeatedly. *See* Plaintiffs' Motion for Preliminary Injunction (MPI) at 9:6–23 (listing cases); *see also Edwards v. Kearzey*, 96 U.S. (6 Otto) 595, 600 (1877) ("The obligation of a contract includes every thing within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence.").

The City views this caselaw as outdated. City's Response at 14:12–14. The single footnote that the City quotes as support for the idea that modern government is free to render contracts a dead letter by removing statutory remedies, *U.S. Trust Co. of New York*, 431 U.S. at 19 n.17, did not overrule any cases recognizing that removal or alteration of statutory remedies can cause substantial impairment. Rather, *U.S. Trust* made the unremarkable point that "obligations as well as remedies may be modified without *necessarily* violating the Contract Clause." *Id.* (emphasis added). Instead of a distinction between remedy and obligation, *U.S. Trust* simply viewed statutory remedies as part of the "legitimate expectations of the contracting parties," which remains a valid part of the Contract Clause inquiry. *Id. See also W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 60 (1935) ("Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected."). Hence, changes to statutory remedies still constitute a substantial impairment where the changes "make the remedy a shadow." *Id.* at 62.

The State argues that no substantial impairment occurs because Plaintiffs' "lease agreements do not provide that nonpayment of rent constitutes grounds for eviction." State's Response at 11:10–11. This ignores a fundamental tenet of Contract Clause jurisprudence, that laws bearing on contractual enforcement are part of the contractual bargain: "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, *as if they were expressly referred to or incorporated in its terms*." *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429–30 (1934) (quoting *Von Hoffman v. City of*

*P. Reply ISO Mot. for Prelim. Injunct. - 6*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*Quincy*, 71 U.S. (4 Wall.) 535, 550 (1867)) (emphasis added). Washington landlord-tenant law, which makes up part of the bargain entered into by parties to a lease, provides that a tenant is liable for unlawful detainer when the tenant continues in possession after a default in rent. RCW 59.12.030(1). Plaintiffs do not need to copy and paste the Revised Code of Washington into every lease agreement in order to avail themselves of contractual rights granted by statute. The statutory right directly bears on the obligation of contract, and abrogating the right to timely payment by pausing the enforcement mechanism substantially impairs contractual obligations. The eviction bans thus prevent landlords "from safeguarding or reinstating [their] rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018).

The State also argues that landlords operate in a heavily regulated industry and therefore should have anticipated that a global pandemic would prompt their state and local governments to suspend landlords' longstanding right to evict for an indefinite length of time, an action with no known precedent in Washington. *See* State's Response at 13:1–7. The Massachusetts federal district court recently rejected this strained reasoning. While recognizing the landlord-tenant relationship is heavily regulated, the Massachusetts court nonetheless found "that a reasonable landlord would not have anticipated a virtually unprecedented event such as the COVID-19 pandemic that would generate a ban on even initiating eviction actions against tenants who do not pay rent and on replacing them with tenants who do pay rent." *Baptiste*, 2020 WL 5751572, at *16.

ii.     **The Defendants fail to compensate for the duration of the bans.**

Plaintiffs' motion lists Supreme Court cases that establish a clear pattern: where a property owner's right of return is protected, a ban on foreclosure or eviction withstood Contract Clause challenge. MPI at 11:18–13:24. Where that right is not protected, the law was struck down. *Id.*

According to the State, this Court should effectively ignore these cases because they came before *Blaisdell*. State's Response at 16 n.8. But *Blaisdell* did not overturn any of the cases cited by Plaintiffs. In fact, *Blaisdell* acknowledged those cases and distinguished them on the basis that the Minnesota law in *Blaisdell*, unlike the foreclosure delays struck down in cases like *Bronson v.*

P. Reply ISO Mot. for Prelim. Injunct. - 7
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

*Kinzie*, 42 U.S. (1 How.) 311 (1843), and *Howard v. Bugbee*, 65 U.S. (24 How.) 461 (1860), protected the mortgagee's right to receive interim relief during foreclosure delay. *Blaisdell*, 290 U.S. at 432.

Defendants' contention that *Blaisdell* whitewashed prior caselaw is also undermined by a case on the heels of *Blaisdell*, *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56. There, the Court followed the pattern preceding *Blaisdell* when it invalidated a statute delaying foreclosure because the statute did not provide for the property owners' right of return during the delay. *Id.* at 60–61.

The Defendants' attempts to distinguish *W.B. Worthen* are unavailing. They argue *W.B. Worthen* employed heightened scrutiny because the state was an "interested party." State's Response at 16 n.8; *see also* City's Response at 17:17–19. There are two problems with this distinction. First, the holding in *W.B. Worthen* did not turn on the state's supposed financial interest in delaying foreclosure. Rather, the Court said that its rule of decision came from *W.B. Worthen Co. v. Thomas*, 292 U.S. 426 (1934), a case that did not involve a contract with any government entity. *See W.B. Worthen v. Kavanaugh*, 295 U.S. at 63. Moreover, the modern Contract Clause doctrine that contractual impairments warrant less deference where the government is an interested party came long after *W.B. Worthen v.Kavanaugh* was decided, in *U.S. Trust Co. of New York*, 431 U.S. at 26.

Second, the state in *W.B. Worthen v. Kavanaugh* was not an interested party. The bonds backed by the mortgages that received foreclosure protection from the challenged state statute were *municipal* bonds. *W.B. Worthen v. Kavanaugh*, 295 U.S. at 57. Certainly, the state could be viewed as an ally of the municipalities, but the same is true of the state's relationship with any party whose interests it seeks to protect, such as tenants here. The rule establishing that less deference is due where the government is an interested party only applies where the government's "*self*-interest is at stake." *RUI One Corp.v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) (quoting *U.S. Trust*, 431 at 25–26) (emphasis added).

The State also seeks to distinguish *W.B. Worthen v. Kavanaugh* on the grounds that the delay placed on foreclosure remedies was longer than the delay at issue here. State's Response at

*P. Reply ISO Mot. for Prelim. Injunct. - 8*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

16 n.8. The Court did note the length of the delay in distinguishing *Blaisdell*, but it also noted that in *Blaisdell* the delays were set on a case-by-case basis predicated on a "proper showing of necessity" based on individual circumstances and payment of rental value. *W.B. Worthen v. Kavanaugh*, 295 U.S. at 63. Hence, it appears that *W.B. Worthen v. Kavanaugh* was more concerned about the fixed nature of the redemption period under the Arkansas law, which did not allow for individual circumstances, than its overall length. *Id.* The eviction bans here likewise do not allow for case-by-case consideration. Moreover, the delays in *Bronson*, *Howard*, and *Barnitz* were all much shorter than the delay imposed in *W.B. Worthen v. Kavanaugh* (one year, two years, and eighteen months, respectively), and the Supreme Court still struck down those extensions. *See Blaisdell*, 290 U.S. at 481 (Sutherland, J., dissenting).

Hence, the Defendants cannot ignore all the cases prior to *Blaisdell* applying the same rule as *W.B. Worthen v. Kavanaugh*. Those cases display a pattern: if the landowner received compensation during the delay in foreclosure or eviction, then the law was upheld; otherwise, it was invalidated.[5] The City argues that *Bronson* and *Howard* said nothing about any requirement that the property owner receive compensation to survive Contract Clause scrutiny, City's Response at 19:16–17, yet that is precisely the rationale used in *Blaisdell* to distinguish both cases. 290 U.S. at 432.[6]

### iii.    The bans are more extensive than necessary.

The eviction bans are not "appropriately tailored to the emergency that [they are] designed to meet." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978). The City argues that this tailoring requirement is not properly deferential. According to the City, the standard quoted in

---

[5] The City wrongly portrays *Block v. Hirsh*, 256 U.S. 135 (1921), as not presenting a Contract Clause claim. *See* City's Response at 19:6–7. While the majority did not directly address the Contract Clause, the dissenters would have held that the law violated the Clause, *Block*, 256 U.S. at 159–70, something no justice would have done had the issue not been raised. The issue was likewise discussed in the court below. *See Hirsh v. Block*, 267 F. 614, 623–24 (D.C. Cir. 1920) (Smyth, C.J., dissenting).

[6] The City points to King County's local rental assistance program as a possible source for landlord compensation. That program, however, has limited eligibility and funding, and it places unacceptable conditions on rental assistance, such as promises to forgive existing rent debt and not to evict prior to March 31, 2021. *See* Ellerbrook Decl., Dkt # 23, ¶¶ 3, 5, 9.

*P. Reply ISO Mot. for Prelim. Injunct. - 9*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*Allied Structural Steel* was just a "summary" of prior caselaw, City's Response at 17:5–10, as if interpretation of caselaw by the Supreme Court warrants dismissal.

Moreover, *Allied Structural Steel* is not the only case that established a tailoring standard for interference with private contracts. In *W.B. Worthen v. Thomas*, 292 U.S. at 432, the Supreme Court struck down an emergency measure protecting life insurance proceeds from garnishment by creditors because "the legislation was not limited to the emergency and set up no conditions apposite to emergency relief." The Court stated that the government, even in meeting a "pressing public disaster," must employ means that are "limited by reasonable conditions appropriate to the emergency." *Id.* at 433. The Supreme Court again affirmed this principle in *W.B. Worthen v. Kavanaugh*, 295 U.S. at 63, holding that governments cannot impair contracts "*without moderation* or reason or in a spirit of oppression." (Emphasis added.) Hence, government impairment of contracts, even in an emergency, must be moderate and limited to the emergency.

The eviction bans do not satisfy this standard. As detailed in Plaintiffs' motion, both eviction bans extend beyond what is necessary to achieve the government's interests. *See* MPI at 14:14–16:11. The eviction bans restrict landlords from seeking delinquent rent, which has no relation to facilitating stay-at-home and social distancing guidelines. *See id.* Neither eviction ban requires some showing of hardship that would indicate a likelihood of homelessness upon eviction. *See id.* at 14:4–9. The eviction bans do not allow for individual circumstance. *Id.* at 14:10–16. And the eviction bans ignore less-restrictive alternatives that other states and cities have employed. *See id.* at 16:12–17:15. While the government need not select the least restrictive means of pursuing its interests, the availability of less-restrictive means bears on whether the government has acted "without moderation." *W.B. Worthen v. Kavanaugh*, 295 U.S. at 60; *cf. Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995) ("We agree that the availability of these options, all of which could advance the Government's asserted interest in a less intrusive manner to respondent's First Amendment rights, indicates that § 205(e)(2) is more extensive than necessary.").

While the Massachusetts district court determined that the Massachusetts eviction ban did not violate the Contract Clause, it stated: "It is . . . a close question whether the Moratorium is a

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

reasonable means of addressing the undisputed significant and legitimate need to combat the spread of the COVID-19 virus." *Baptiste*, 2020 WL 5751572, at \*14. The Court expressed the specific concern that an extension beyond the October 17, 2020, expiration date might push the ban past the constitutional limit. *See id.* at \*7. If the Massachusetts ban was a close question, then the Washington and Seattle bans likely cross the line. First, the bans extend well beyond the length of the Massachusetts ban at the time the federal district court decided the case, which was set to expire on October 17. Second, the Massachusetts ban at least left open the opportunity to pursue unpaid rent through a breach of contract claim. The State ban places severe restrictions on landlords' ability to seek that lesser remedy, while the Seattle repayment ordinance denies it entirely.

**b.     The evictions bans cause a physical taking.**

**i.     Plaintiffs' takings claim is ripe.**

The State argues that a takings claim is unripe because the Governor's proclamation banning evictions statewide is not a "final decision." *See* State's Response at 18:15–19:1. The State misunderstands the final decision requirement.

A government action is a "final decision" ripe for challenge when "a decision has been made about how a plaintiff's own land may be used" and  the government "has exercised its judgment regarding a particular use of a specific parcel of land, eliminating the possibility that it may soften the strictures of the general regulations it administers." *See Pakdel v. City & Cty. of San Francisco*, 952 F.3d 1157, 1164 (9th Cir. 2020) (cleaned up).

The Governor's action is a final decision. His proclamation dictates how property owners may or may not use their land by prohibiting eviction, and there is no opportunity for a variance or waiver from the Governor that leaves the door open for further decision-making as to the ongoing applicability of the proclamation to Plaintiffs' properties.

Nevertheless, the State compares the Governor's repeated proclamations to an "interim" policy that has yet to reach finality. *See* State's Response at 18:20–21. The State cites *US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118–19 (9th Cir. 1999), where US West sought

*P. Reply ISO Mot. for Prelim. Injunct. - 11*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

to challenge an agency's arbitration order even though there were ongoing agency proceedings that could ultimately obviate the order. Here, there is no ongoing proceeding in which the State might yet change its policy or relieve landlords. Indeed, the State's implication that the proclamation is "interim" and nonfinal simply because it is temporary would clash with a long and uncontroversial history of takings challenges to government moratoria and other temporary actions. *See, e.g.*, *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002) (addressing merits of challenge to temporary moratorium on development); *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990) (holding that takings challenge to water hook-up moratorium raised triable issues of fact and rejecting ripeness defense). Unsurprisingly, none of the recent federal court cases addressing eviction bans have expressed ripeness concerns. *See generally, e.g.*, *Baptiste*, 2020 WL 5751572; *HAPCO v. City of Philadelphia*, No. 20-3300, 2020 WL 5095496 (E.D. Penn. Aug. 28, 2020); *Auracle Homes, LLC v. Lamont*, No. 20-829, 2020 WL 4558682 (D. Conn. Aug. 7, 2020); *Elmsford Apartment Associates, LLC v. Cuomo*, No. 20-4062, 2020 WL 3498456 (S.D.N.Y. June 29, 2020).

### ii.   The eviction bans compel physical invasion.

A physical occupation of property is a categorical taking. *Tahoe-Sierra*, 535 U.S. at 322. The eviction bans cause a physical taking of Plaintiffs' properties by authorizing current occupants to remain on the properties in violation of lease agreements and without Plaintiffs' consent.

Defendants argue that Plaintiffs' takings claim is meritless because the regulation of landlord-tenant relationships, as a general matter, falls outside physical takings liability. State's Response at 19–20; City's Response at 21–23. The suggestion that landlord-tenant laws can never result in a physical taking defies the Supreme Court's refusal to recognize more than a handful of per se rules in the takings context. *See Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012) ("[N]o magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area."); *Tahoe-Sierra*, 535 U.S. at 342 ("The temptation to adopt what

*P. Reply ISO Mot. for Prelim. Injunct. - 12*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

amount to *per se* rules in either direction must be resisted.") (cleaned up). The Supreme Court, moreover, has held that "a landlord's ability to rent his property may not be conditioned on forfeiting the right to compensation for a physical occupation. . . . The right of a property owner to exclude a stranger's physical occupation of his land cannot be so easily manipulated." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 n.17 (1982).

Defendants cite *Yee v. City of Escondido*, 503 U.S. 519, 528 (1992), which only stands for the proposition that states can regulate landlord-tenant relationships where the tenants are "invited" onto the property. Here, however, the tenants have exceeded the scope of Plaintiffs' invitation. In El Papel's case, the invitation to occupy the premises ended with their lease agreements on July 31, 2020. Travers Decl. ¶ 3. For the other Plaintiffs, their consent to tenant occupancy ended when the tenants ceased honoring a material term of their lease agreements—payment of rent. *See* Berman Decl.; Li Decl.

Additionally, because the Defendants' bans prevent the Plaintiffs from initiating any eviction proceedings against their nonpaying tenants, the Plaintiffs are forced to maintain their tenancies in perpetuity, or at least until the Defendants decide, at their leisure, to lift their bans. Therefore, the Plaintiffs are compelled against their objections to not terminate their tenancies, going far beyond the rent-control ordinance at issue in *Yee*. *Yee*, 503 U.S. at 528 ("A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy.").

### iii. An injunction is proper.

While the conventional remedy for a taking is just compensation, injunctive relief is available in limited circumstances. *See, e.g.*, *Goodwin v. Walton Cty., Florida*, 248 F. Supp. 3d 1257, 1266 (N.D. Fla. 2017); *Peters v. Vill. of Clifton*, 498 F.3d 727, 732–33 (7th Cir. 2007). Indeed,

> Courts have generally found remedies to be inadequate [thus permitting injunctions] in three circumstances: (1) the injury complained of by its nature cannot be compensated by money damages, (2) the damages cannot be ascertained with any degree of certainty, and (3) the remedy at law would not be efficient because the injury is of a continuing nature.

*P. Reply ISO Mot. for Prelim. Injunct. - 13*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*Kucera v. State, Dep't of Transp.*, 995 P.2d 63, 69 (Wash. 2000). *See also Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection*, 560 U.S. 702, 723 (2010) (stating that there was "no reason why [compensation] would be the exclusive remedy for a judicial taking") (plurality opinion); *Horne*, 569 U.S. at 528 (allowing a party to raise takings as a defense to a fine rather than "require the party to pay the fine in one proceeding and then turn around and sue for recovery of that same money in another proceeding").

Defendants fail to recognize that federal courts have long shown a willingness to allow for injunctive relief in situations where damages do not fully remedy the harm or where compensation would result in duplicative litigation. *See, e.g.*, *Goodwin*, 248 F. Supp. 3d at 1266; *Peters*, 498 F.3d at 732–33. *See also Stop the Beach*, 560 U.S. at 723 (describing the remedy of compensation as "even rare for a legislative or executive taking").

Currently, Plaintiffs are suffering an injury that is "of a continuing nature." *Kucera*, 995 P.2d at 69. With every ban extension the Defendants issue, the Plaintiffs suffer additional harm. Further, quantifying the Plaintiffs' injuries is not as easy as calculating overdue rent and late fees. For example, as previously mentioned, in El Papel's case, the tenants' rental agreement has expired. Therefore, the tenants are holdovers, and El Papel is losing more than monetary resources—they are losing the right to repossess their property. Moreover, an injunction is appropriate and more economical because it offers a far less costly means of settling the takings claims that will arise from these bans than case-by-case litigation. *See Horne*, 569 U.S. at 528 (allowing a party to raise takings as a defense to a fine to avoid duplicative litigation); Thomas W. Merrill, *Anticipatory Remedies for Takings*, 128 Harv. L. Rev. 1630, 1662 (2015) (finding that courts generally allow anticipatory relief in order to avoid duplicative litigation).

## IV.   PLAINTIFFS FACE IRREPARABLE HARM

### a.   Constitutional violations constitute irreparable harm.

Constitutional violations create a presumption of irreparable harm. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (citing other Ninth Circuit cases for the proposition that constitutional violations constitute irreparable injury); *Assoc. Gen. Contractors of California,*

*P. Reply ISO Mot. for Prelim. Injunct. - 14*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) ("We have stated that '[a]n alleged constitutional infringement will often alone constitute irreparable harm.'") (quoting *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984)).

Despite a long line of precedent to this effect, the City argues that Plaintiffs must also demonstrate likely irreparable harm independent of a constitutional violation. City's Response at 8:9–12. This argument, as a practical matter, would do away with the longstanding presumption that constitutional violations are irreparable as a matter of law. The City's support for this proposition comes from a federal district court opinion in *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 925 (N.D. Cal. 2019), which misreads the Ninth Circuit's decision in *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058–59 (9th Cir. 2009). In *Sierra Club*, the district court read *American Trucking* to mean that "Plaintiffs must demonstrate some likely irreparable harm in the absence of a preliminary injunction barring the challenged action, and not simply a constitutional violation." *Sierra Club*, 379 F. Supp. 3d at 925. This is incorrect. *American Trucking* said that a constitutional violation constituted irreparable harm when coupled with *economic harm*, which is generally not considered irreparable. *American Trucking*, 559 F.3d at 1058. Here, Plaintiffs have established via declaration that they are suffering economic harm due to nonpayment and other lease violations, which Defendants do not dispute. Defendants' constitutional violations, when coupled with that economic harm, cause irreparable injury.

### b.     Restrictions on use of real property cause irreparable harm.

Defendants do not dispute that "[a]s a general rule, interference with the enjoyment or possession of land is considered 'irreparable' since land is a unique commodity." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1090 (7th Cir. 2008); *see also* MPI at 21:9–23 (listing cases). Defendants insist, however, that eviction bans that wrest control over Plaintiffs' property nonetheless are less about property than missing rent from nonpaying tenants. *See* State's Response at 21:19–21; City's Response at 9:1–12.

The unique nature of property does not turn on the *purpose* that the property owner plans for the property. The eviction bans severely restrict Plaintiffs' use of their property—the uses to

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

which Plaintiffs may put that property should they regain possession are irrelevant. Moreover, the State wrongly asserts that the injury at issue here can be reduced solely to lost rent. State's Response at 21:20–22. An injury limiting use of real property cannot wholly be reduced to monetary relief because real property is a "unique commodity." *Girl Scouts of Manitou Council*, 549 F.3d at 1090. Compelled physical occupancy of property is a concrete injury above and beyond foregone rent. *Cf. Loretto*, 458 U.S. at 426 ("[W]e have long considered a physical intrusion by government to be a property restriction of an unusually serious character[.]"). For instance, if El Papel's tenants were paying monthly rent installments, El Papel would still have a right to evict them as holdover tenants, and refusing to allow El Papel to move forward with an unlawful detainer action would still constitute injury. *See* RCW 59.12.030(1).

The City's "myriad cases" where courts allegedly held that restrictions on real property are not irreparable do not stand for the proposition the City cites them for. *See* City's Response at 9:9–12. In *Los Angeles Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980), the Ninth Circuit held that no injury arose at all, much less an irreparable one. Even so, that case involved the attempted transfer of an NFL team, not a restriction on the use of any real property. *Id.* at 1198–99.

The City's other citations are district court cases that likewise fail to support its argument that restrictions on real property do not cause irreparable injury. *Thomas v. Zachry*, 256 F. Supp. 3d 1114 (D. Nev. 2017), involved a dispute over whether a road crossing plaintiff's property was public or not. The court's discussion of irreparable injury was dicta, since it had already determined that the plaintiff had not established likelihood of success on the merits. *Id.* at 1119. Even so, the court also held that the road was public, *id.* at 1121, so public use of the road did not restrict any valid property interest to which the plaintiff held actual title. The other case, *Rhodes v. Wells Fargo Home Mortgage, Inc.*, No. 09-1042, 2009 WL 10672064 (S.D. Cal. June 3, 2009), is an unreported ruling on a motion for a TRO brought by a pro se litigant attempting to halt a property sale. Again, the court's analysis of irreparable injury was dicta because the court had already decided the Plaintiff was unlikely to succeed on the merits. *Id.* at *3. The City has not presented adequate

*P. Reply ISO Mot. for Prelim. Injunct. - 16*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

authority to refute the raft of precedent from multiple circuits establishing that restrictions on real property result in irreparable injury.

## V.      THE PUBLIC INTEREST AND BALANCE OF HARDSHIPS FAVOR INJUNCTIVE RELIEF

The public interest and hardship inquiries favor Plaintiffs. Courts have repeatedly held that violations of federal law, particularly constitutional law, are always against the public interest. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("It is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law . . . .") (citation omitted); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (internal citation omitted).

Defendants argue that preliminary relief will lead to a rash of evictions that will harm minorities and exacerbate the crisis. State's Response at 23–24; City's Response at 23–24. Their concern is conjecture. As for Plaintiffs, preliminary relief will only allow Plaintiffs to institute eviction proceedings. There is no guarantee that by beginning these proceedings tenants will actually be evicted, as tenants still retain a variety of defenses to eviction.

On a broader level, the fear that preliminary relief will result in a flood of evictions does not appear to be grounded in reality. Existing data indicate that eviction rates during the pandemic have in fact been below average in metropolitan areas without a moratorium in place. *See* Eviction Lab, COVID-19 Resources, Eviction Tracking System.[7] This comports with data from the Great Recession showing that eviction filing rates actually dropped during the downturn. *See* Salim Furth, *False Alarm*, Mercatus Center (Aug. 24, 2020).[8] The reason is straightforward: many landlords would prefer to hold onto an existing tenant that's struggling than risk a lengthy vacancy in a troubled market. *See id.* Defendants' concerns therefore do not demonstrate a strong public interest disfavoring relief. Moreover, even if an eviction surge were likely, the majority of tenants'

---

[7]  Available at https://evictionlab.org/eviction-tracking/.
[8]  Available at https://www.mercatus.org/bridge/commentary/false-alarm.

*P. Reply ISO Mot. for Prelim. Injunct. - 17*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

interests would still be protected by the CDC order banning nationwide evictions. *See* 85 Fed. Reg. 55,292–97 (Sept. 4, 2020).

Defendants speak as if a ban on eviction is the sole means available for protecting tenants. But an injunction here is not contrary to the public interest because Defendants have alternative means available for satisfying their interests. *See* MPI at 16:12–17:15.

Moreover, permitting the Plaintiffs to have full access to eviction proceedings is in the public interest. While Defendants argue the public has an interest in preventing widespread evictions, they fail to acknowledge the public also has an interest in preventing widespread foreclosures. If foreclosures mount due to landlord default from unpaid rent, many tenants would immediately lose housing, bringing the Defendants' fear to fruition.

## CONCLUSION

The Defendants have decided to thrust the burden of the pandemic's economic fallout on landlords without availing themselves of alternative means of satisfying their interests. While the Defendants' interests in public health are grave, they cannot impose upon individual property owners public burdens "which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). Plaintiffs respectfully ask the Court to grant the Motion for Preliminary Injunction.

DATED:  October 23, 2020.

Respectfully submitted:

s/  ETHAN W. BLEVINS
s/  BRIAN T. HODGES
Ethan W. Blevins, WSBA # 48219
Brian T. Hodges, WSBA #
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
Email: EBlevins@pacificlegal.org
Email: BHodges@pacificlegal.org

s/ KATHRYN D. VALOIS
KATHRYN D. VALOIS**
Fla. Bar. No. 1010150
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Email: KValois@pacificlegal.org
Telephone: (561) 691-5000

** Pro hac vice

*Attorneys for Plaintiffs*

*P. Reply ISO Mot. for Prelim. Injunct. - 18*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/  ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

*Attorney for Plaintiffs*

*P. Reply ISO Mot. for Prelim. Injunct. - 19*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*