Hon. Richard A. Jones
Hon. J. Richard Creatura

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

EL PAPEL, LLC; BERMAN 2, LLC; and KARVELL LI, an individual,

Plaintiffs,

v.

JAY R. INSLEE, in his official capacity as Governor of the State of Washington; JENNY A. DURKAN, in her official capacity as the Mayor of the City of Seattle; and THE CITY OF SEATTLE, a municipal Corporation,

Defendants.

Civil Action No. 2:20-cv-01323-RAJ-JRC

**PLAINTIFFS' CONSOLIDATED RESPONSE TO AMICI CURIAE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........ iii

I. THE CASES UPHOLDING OTHER EVICTION BANS ARE DISTINGUISHABLE ........ 1

A. Other Eviction Bans Still Allow Landlords To Evict in a Broader Range of Circumstances ........ 1

B. Other Eviction Bans Are Shorter in Duration ........ 2

C. Other Eviction Bans Still Allowed Landlords to Enforce Rental Obligations by Means Other Than Eviction ........ 3

II. AMICI EMPLOY THE WRONG LEGAL TEST ........ 4

III. EXISTING DATA DAMPEN FEARS OF MASS EVICTIONS ........ 5

CONCLUSION ........ 7

CERTIFICATE OF SERVICE ........ 8



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) .....4, 5

*Armour v. City of Indianapolis, Ind.*, 566 U.S. 673 (2012) .....5

*Baptiste v. Kennealy*, No. 1:20-cv-11335-MLW, 2020 WL 5751572 (D. Mass. Sept. 25, 2020) .....2, 3, 4

*Elmsford Apartment Associates, LLC v. Cuomo*, 20-cv-4062 (CM), 2020 WL 3498456 (S.D.N.Y. June 29, 2020) .....1, 3, 4

*Gregory Real Estate v. Keegan*, CV2020-007629 (Maricopa Cty. Super. Ct. July 22, 2020) .....1

*HAPCO v. City of Philadelphia*, No. 20-3300, 2020 WL 5095496 (E.D. Penn. Aug. 28, 2020) .....1, 2

*Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) .....5

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) .....5

*San Francisco Apartment Association v. City and County of San Francisco*, No. CPF-20-517136 (San Francisco Cty. Super. Ct. Aug. 3, 2020) .....1

*State of Washington v. JRK Residential Group*, No: 20-2-05933-7 (Pierce Cty. Super. Ct. Apr. 20, 2020) https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Another/News/Press_Releases/2_Complaint.pdf .....4

*U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977) .....5

*W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935) .....5

**Other Authorities**

Arizona Executive Order 2020-14 .....1

County of San Francisco, Ordinance 93-20 § 37.9(a)(1)(D) .....1

Furth, Salim, False Alarm: The Popular Prediction of an Eviction Apocalypse is Overstated (Aug. 24, 2020), https://www.mercatus.org/bridge/commentary/false-alarm .....6

Illinois Executive Order 2020-59 .....2

National MultiFamily Housing Council, NMHC Rent Payment Tracker (Oct. 27, 2020), https://www.nmhc.org/research-insight/nmhc-rent-payment-tracker/ .....6



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

Plaintiffs file this consolidated reply in response to the two amicus briefs filed in support of the City's Opposition to Plaintiffs' Motion for Preliminary Injunction. *See* Amicus Brief, American Civil Liberties Union of Washington, et al., Dkt. #43 (ACLU Brief); Brief of *Amici Curiae* Cities and Counties, Dkt. #49 (Cities Brief).

**I. THE CASES UPHOLDING OTHER EVICTION BANS ARE DISTINGUISHABLE**

The Cities' brief cites to courts rejecting Plaintiffs' merits arguments in challenges to other eviction bans across the country. *See* Cities Brief at 3 n.2. In several of the cases cited by Amici, the bans at issue were narrower because they allowed for more circumstances in which a landlord retained the right to enforce their lease agreements through an eviction remedy. In some cases, the bans did not extend as long as the bans at issue in this matter. Moreover, the bans did not restrict landlords' ability to sue to collect overdue rent.

**A. Other Eviction Bans Still Allow Landlords To Evict in a Broader Range of Circumstances**

The eviction bans addressed in several of the cases cited by the Cities were narrower than both the Washington and Seattle bans. The Philadelphia ban challenged in *HAPCO v. City of Philadelphia*, No. 20-3300, 2020 WL 5095496 (E.D. Penn. Aug. 28, 2020), only prohibited evictions where tenants could prove financial hardship due to the pandemic. *Id.* at *3–4. The New York ban challenged in *Elmsford Apartment Associates, LLC v. Cuomo*, 20-cv-4062 (CM), 2020 WL 3498456 (S.D.N.Y. June 29, 2020), only prohibited residential evictions for non-payment of rent. *Id.* at *3–4. The Arizona ban challenged in *Gregory Real Estate v. Keegan*, CV2020-007629 (Maricopa Cty. Super. Ct. July 22, 2020), only prohibited evictions of quarantined individuals or individuals suffering income loss caused by the pandemic, and it allowed for a "judicial override," giving judges the discretion to carry out an otherwise prohibited eviction order if it is "in the interest of justice." Arizona Executive Order 2020-14. The San Francisco ordinance challenged in *San Francisco Apartment Association v. City and County of San Francisco*, No. CPF-20-517136 (San Francisco Cty. Super. Ct. Aug. 3, 2020), only prohibited evictions for non-payment if the tenant documented a substantial income loss caused by the pandemic. City and County of San



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

Francisco, Ordinance 93-20 § 37.9(a)(1)(D). In short, the cases cited by the Cities only underscore the uniquely burdensome approach taken by Defendants in comparison to other governments across the country. Indeed, Washington now appears to be one of the few states in the nation with an eviction ban that does not require a showing of hardship related to the pandemic.

**B. Other Eviction Bans Are Shorter in Duration**

Additionally, Defendants' bans last longer than the bans challenged in the cases cited by the Cities. For example, in *Baptiste v. Kennealy*, No. 1:20-cv-11335-MLW, 2020 WL 5751572 (D. Mass. Sept. 25, 2020), the ban expired on October 17, 2020.[1] The *Baptiste* court's ruling denying a motion for preliminary injunction[2] emphasized that its decision was limited solely to whether the statute was likely constitutional as of April 2020. *See id.* at *7, *14. The court was clear, however, that a different question would arise as to whether "in view of changed facts [the Moratorium is] now still compatible with the requirements of the Constitution." *Id.* at *7. Indeed, even as of April 2020, the court called the Contract Clause issue raised by plaintiffs a "close question." *Id.* at *14. The eviction bans here have lasted far beyond April 2020 and go well beyond the Massachusetts ban's expiration on October 17, 2020. What was a close question in April has likely transformed into an answer at this late stage, particularly given the extraordinary length of Seattle's eviction ban through June 2021, over a year after the *Baptiste* court's consideration of the merits.

In several other cases cited by the Cities, the bans were much shorter than the ones at issue here and have already expired. *See HAPCO*, 2020 WL 509496, at *3–4 (ban expired August 31, 2020); Arizona Executive Order 2020-49 (extending Arizona's ban through October 31, 2020); Illinois Executive Order 2020-59 (extending Illinois's ban through November 14, 2020). Even the New York ban, set to last until January 1, 2021,[3] is not as long as Seattle's. The extended duration

---

[1] *See* Mass.gov, Expiration of Moratorium on Evictions and Foreclosures, *available at* https://www.mass.gov/info-details/expiration-of-moratorium-on-evictions-and-foreclosures#:~:text=The%20temporary%20moratorium%20on%20non,expired%20on%20October%2017%2C%202020.

[2] The Court held that plaintiffs were likely to succeed on the merits as to a compelled speech claim challenging a separate part of the statute that is not relevant to this litigation. *See id.* at *38.

[3] Governor Cuomo Announces Moratorium on COVID-Related Residential Evictions Will Be Extended Until January 1, 2021 (Sept. 28, 2020), *available at* https://www.governor.ny.gov/news/governor-cuomo-announces-moratorium-covid-related-residential-evictions-will-be-extended-until#:~:text=September%2028%2C%202020-



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

of Defendants' bans, as compared to those challenged in other courts across the country, bears on their reasonableness and necessity.

### C. Other Eviction Bans Still Allowed Landlords to Enforce Rental Obligations by Means Other Than Eviction

In most of the cases cited by the Cities, landlords still retained the right to sue for delinquent rent. *See, e.g., Elmsford*, 2020 WL 3498456 at *8 (upholding New York eviction ban in part because it "preserves Plaintiffs' rights as property owners . . . to sue their tenant . . . for back rent."); *Baptiste*, 2020 WL 5751572 at *16 (the Massachusetts ban did not "prevent a landlord from suing a tenant for rent owed"). By contrast, the state eviction ban restricts landlords from engaging in lawsuits or other attempts to collect overdue rent unless the landlord can demonstrate to a court's satisfaction that they've tried and failed to come to a reasonable repayment plan with the tenant. Second Blevins Decl., Exh. 17 at 6. The City's repayment ordinance, meanwhile, forbids any attempt to collect overdue rent save through a repayment plan dictated by the city. *Id.* Exh. 12. Hence, the eviction bans in this case constitute a more harmful impairment of contractual obligations than those cases cited by the Cities in which the eviction bans did not forbid lawsuits for delinquent rent. The bar on rent collection, moreover, is unrelated to the Defendants' claimed interests in ensuring people have a home to shelter in place in order to prevent viral spread.

The Washington eviction ban's narrow exception to the bar on seeking overdue rent says that a landlord may treat delinquent rent as a collectable debt only if the landlord "demonstrates by a preponderance of the evidence to a court that the resident was offered, and refused or failed to comply with, a re-payment plan that was reasonable based on the individual financial, health, and other circumstances of the resident." Second Blevins Decl., Exh. 17 at 6. Requiring a landlord to go through an additional court action, complete with fact-finding and discovery, simply in order to enforce a payment obligation, is a substantial impairment and is not reasonably related to the Defendants' interests in preventing spread of COVID-19.

---

,Governor%20Cuomo%20Announces%20Moratorium%20on%20COVID%2DRelated%20Residential%20Evictions%20Will,Extended%20Until%20January%201%2C%202021&text=%22As%20New%20York%20continues%20to,COVID%2C%22%20Governor%20Cuomo%20said.



Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

Moreover, enforcement actions and guidance from the Attorney General's office indicate that this payment-plan exception is quite difficult for landlords to satisfy. The Attorney General's website offers an "Unpaid Rent Repayment Plan Worksheet." *See* Washington State, Office of the Attorney General, Unpaid Rent Repayment Plan Worksheet.[4] The sheet states that the "[r]esident should make the first proposal for a reasonable repayment rate and schedule," *id.* at 3, indicating that a landlord's ability to satisfy the exception rests in the tenant's hands. If the landlord makes a counter-proposal, it must be reasonable "based on the information the Resident has provided." *Id.* Again, this leaves landlords largely helpless if, as is the case with Berman 2 and Karvell Li, the tenant simply declines to respond to landlord attempts to communicate. *See* Berman Decl. ¶ 5; First Li Decl. ¶ 6. And landlord email communications with the Attorney General's office indicate that landlord efforts to create a payment plan will not suffice if the tenant declines to respond. *See* Declaration of Joe Wall, Exh. 18.[5] Hence, unlike other eviction bans upheld in cases like *Elmsford* and *Baptiste*, the eviction bans at issue here impose an additional impairment on contractual obligations by restricting landlords' right to collect delinquent rent.

## II. AMICI EMPLOY THE WRONG LEGAL TEST

In urging this Court to deny Plaintiffs' motion, the Cities smuggle in the wrong constitutional test. The Cities rely on a Due Process test employing a rational basis standard that looks only to whether the government's actions are rationally related to a legitimate government interest. *See* Cities Brief at 2–3. That test does not apply to Plaintiffs' Contract Clause or Takings Clause claims.

Contrary to the rational basis test, which only requires reasonableness, the Contract Clause requires that legislation both be reasonable *and necessary* to satisfy an important government interest. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 247 (1978) ("Yet there is no

---

[4] *Available at* https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Home/Office_Initiatives/Unpaid%20Rent%20Repayment%20Plan%20Worksheet_October2020v2.pdf.

[5] Landlords may legitimately fear an enforcement action by the Attorney General's office if they try *too* hard to reach out to their tenants about a payment plan. In an action brought by the Attorney General against a property management company, the Attorney General argued that the company engaged in an unlawful "pressure tactic" by urging tenants with lapsed payments to contact management to arrange a payment plan. *See State of Washington v. JRK Residential Group*, No: 20-2-05933-7, Complaint at ¶¶ 4.18–19, 7.3 (Pierce Cty. Super. Ct. Apr. 20, 2020), *available at* https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Another/News/Press_Releases/2_Complaint.pdf.



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

showing in the record before us that this severe disruption of contractual expectations was necessary to meet an important general social problem.”). Necessity demands that a law substantially impairing contractual obligations be “tailored to the emergency that it is designed to meet.” *Id. See also U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 31 (1977) (analyzing whether “an evident and more moderate course would serve [the government’s] purposes equally well”); *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 60 (1935) (striking down a law that substantially impaired contracts “without moderation”); *Home Building & Loan Ass’n v. Blaisdell*, 290 U.S. 398, 445 (1934) (laws impairing contracts must “be of a character appropriate to that emergency”). Rational basis lacks this tailoring requirement. *See Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 685 (2012) (rational basis review “does not require the City to draw the perfect line nor even to draw a line superior to some other line it might have drawn. It requires only that the line actually drawn be a rational line.”).

Contrary to the Cities’ argument, Plaintiffs do not claim this Court should employ a “least restrictive means” test. *See* Cities Brief at 2. Rather, the availability of other, less onerous means of achieving the government’s interests serves as evidence that the government could have chosen a “more moderate course” and that the chosen path is therefore not necessary to meeting the government’s ends. *U.S. Trust*, 431 U.S. at 31. Plaintiffs’ Motion points to a number of alternative means of achieving the government’s interests. MPI at 13–14.

Nor is a rational basis test appropriate for addressing Plaintiffs’ Takings claim. The legitimacy of the government’s purpose is a “separate question” from “whether an otherwise valid regulation so frustrates property rights” that a taking has occurred. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425 (1982). This Court should reject the Cities’ attempt to insert an overly deferential standard from constitutional provisions irrelevant to Plaintiffs’ claims.

## III. EXISTING DATA DAMPEN FEARS OF MASS EVICTIONS

Amici argue enjoining the Defendants’ bans will cause a “tsunami” of evictions, devastating already struggling communities and further spreading COVID-19. *See* ACLU Brief at 1–24; Cities Brief at 2–13. Amici’s claims are overblown.



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

ACLU misconstrues eviction statistics to support a false narrative, namely that eviction rates have skyrocketed since the pandemic began. *See* Eviction Lab;[6] ACLU Brief at 13–14. ACLU has picked certain weeks (Aug. 16–22, Aug. 30–Sept. 5, and Sept. 6–12) while ignoring others to weave a narrative that eviction bans protect tenants from a rash of evictions. *Id.* However, when examined in their totality, the data ACLU relies on indicate that monthly eviction rates throughout the pandemic have been much lower than the historical average, even in locations without eviction bans. *See, e.g.*, Eviction Tracking Charleston, South Carolina, Eviction Lab (Oct. 31, 2020);[7] Eviction Tracking Cincinnati, Ohio, Eviction Lab (Oct. 31, 2020);[8] Eviction Tracking Cleveland, Ohio, Eviction Lab (Oct. 31, 2020);[9] Eviction Tracking Columbus, Ohio, Eviction Lab (Oct. 31, 2020);[10] Eviction Tracking Fort Worth, Texas, Eviction Lab (Oct. 31, 2020);[11] Eviction Tracking Greenville, South Carolina, Eviction Lab (Oct. 31, 2020);[12] Eviction Tracking Kansas City, Missouri, Eviction Lab (Oct. 31, 2020).[13] This is likely due to the fact that most tenants have remained faithful to paying their rent. *See* National MultiFamily Housing Council, NMHC Rent Payment Tracker (Oct. 27, 2020).[14] Significantly, in September 2019, 93.7% of tenants paid their rent, and that number remained virtually the same this year, dropping only to 92.2% despite COVID-19. *Id.* The data reflect similarly low eviction rates during the Great Recession, despite similar fears at the time that evictions would surge. *See* Salim Furth, False Alarm: The Popular Prediction of an Eviction Apocalypse is Overstated (Aug. 24, 2020).[15] Consequently, eviction bans are not necessary to protect the vast majority of tenants.

Further, the percentages ACLU uses are incorrect. ACLU Brief at 13–14. For example, in Richmond, during the weeks ACLU highlights (Aug. 16–22, Aug. 30–Sept. 5, and Sept. 6–12), Eviction Lab lists the number of eviction filings as 186, 347, and 74 respectively. ACLU Brief at

---

[6] *Available at* https://evictionlab.org/.
[7] https://evictionlab.org/eviction-tracking/charleston-sc/.
[8] https://evictionlab.org/eviction-tracking/cincinnati-oh/.
[9] https://evictionlab.org/eviction-tracking/cleveland-oh/.
[10] https://evictionlab.org/eviction-tracking/columbus-oh/.
[11] https://evictionlab.org/eviction-tracking/fort-worth-tx/.
[12] https://evictionlab.org/eviction-tracking/greenville-sc/.
[13] https://evictionlab.org/eviction-tracking/kansas-city-mo/.
[14] https://www.nmhc.org/research-insight/nmhc-rent-payment-tracker/.
[15] *Available at* https://www.mercatus.org/bridge/commentary/false-alarm.



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

13–14; Eviction Tracking Richmond, Virginia, Eviction Lab (Oct. 31, 2020). Those numbers do not mathematically equate to 24%, 410%, and 24% higher than the historical average, as ACLU alleges. *Id.* Consequently, when the eviction statistics are viewed in their entirety, Amici's fears are overblown.

Moreover, to the extent ACLU argues eviction bans protect tenants from unlawful evictions, Eviction Lab's statistics show evictions have remained steady despite any ban in place. ACLU Brief at 13–14. For example, despite the Center for Disease Control's (CDC) national eviction ban, evictions have remained steady. Eviction Tracking Richmond, Virginia, Eviction Lab (Oct. 31, 2020). This is in part because landlords generally try to avoid evicting tenants whenever possible. Furth, *supra*. Evictions are costly, time-consuming, and stressful for all parties. Consequently, for the Plaintiffs and other similarly situated landlords, it is often easier to work with noncompliant tenants than proceed through the eviction process. Eviction bans, however, make negotiation and compromise much more difficult to attain, as tenants have little incentive to reach an agreement.

**CONCLUSION**

Plaintiffs respectfully ask this Court to grant their Motion for Preliminary Injunction.

DATED: November 6, 2020.

Respectfully submitted:

s/ ETHAN W. BLEVINS
s/ BRIAN T. HODGES
Ethan W. Blevins, WSBA # 48219
Brian T. Hodges, WSBA # 31976
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
Email: EBlevins@pacificlegal.org
Email: BHodges@pacificlegal.org

s/ KATHRYN D. VALOIS
Kathryn D. Valois**
Fla. Bar. No. 1010150
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
Email: KValois@pacificlegal.org

** Pro hac vice

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

*Attorney for Plaintiffs*



*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*