Hon. Richard A. Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| EL PAPEL, LLC; BERMAN 2, LLC; and KARVELL LI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>JAY R. INSLEE, in his official capacity as Governor of the State of Washington; JENNY A. DURKAN, in her official capacity as the Mayor of the City of Seattle; and THE CITY OF SEATTLE, a municipal Corporation,<br><br>Defendants. | Civil Action No. 2:20-cv-01323-RAJ-JRC<br><br>**PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>**Noted for Consideration:**<br>**December 18, 2020** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD .............................................................................................................. 1

UPDATED STATEMENT OF FACTS ................................................................................... 1

ARGUMENT ........................................................................................................................... 2

   I.   SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS ...................... 2

   II.  THE EVICTION BANS ARE NOT REASONABLE AND NECESSARY ................... 2

       A.   The Contract Clause Requires Substantial Impairments on Contract
           To Be Precisely Tailored. .......................................................................................... 2

*P. Obj. to Report/Recommendation of USMJ - i*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

    B.    The Evictions Bans Are Not Adequately Tailored to the Defendants' Interests. ...................................................................... 3

    C.    *Blaisdell* Does Not Control This Case. ................................................... 5

III.    INJUNCTIVE RELIEF IS AVAILABLE FOR PLAINTIFFS' TAKINGS CLAIM ........ 6

IV.    PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE HARM ............................. 7

V.    AN INJUNCTION IS IN THE PUBLIC INTEREST ........................................................ 9

CONCLUSION ............................................................................................................................. 10

CERTIFICATE OF SERVICE ..................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) ...................................................... 2, 3

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) .................................................................................................. 7, 8

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) .................................................... 9

*Colan v. Mesa Petroleum Co.*, 951 F.2d 1512 (9th Cir. 1991) .......................................................... 1

*E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004) .................................................... 8

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................................................ 7

*Heller v. Doe*, 509 U.S. 312 (1993) .................................................................................................. 5

*Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) ................................................. 2, 5, 6

*Horne v. Dep't of Agric.*, 569 U.S. 513 (2013) ................................................................................. 6

*Knick v. Township of Scott, Pennsylvania*,
    139 S. Ct. 2162 (2019) ................................................................................................................ 6

*Kucera v. State, Dep't of Transp.*,
    995 P.2d 63 (Wash. 2000) ........................................................................................................... 6

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ..................................................................... 7, 9

*Olson v. California*, No. CV 19-109560-DMG, 2020 WL 905572
    (C.D. Cal. Feb. 10, 2020) ......................................................................................................... 7, 8

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*,
    560 U.S. 702 (2010) ..................................................................................................................... 6

*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997) ................................................... 7

P. Obj. to Report/Recommendation of USMJ - ii
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

*W.B. Worthen Co. v. Thomas*, 292 U.S. 426 (1935) .................................................................2, 3

*W.B. Worthen v. Kavanaugh*, 295 U.S. 56 (1935) ........................................................................3

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ............................................................................7

*Ex parte Young*, 209 U.S. 123 (1908) ...........................................................................................2

**Statutes**

28 U.S.C. § 636 ................................................................................................................................1

28 U.S.C. § 636(b) ...........................................................................................................................1

**Other Authorities**

85 Fed. Reg. 55,292 (Sept. 4, 2020) ...............................................................................................10

11A *Wright & Miller*, *Fed Pract. & Proc.* § 2948.1 (3d ed. 2018) ................................................7

Lopez, Rodrigo, *Remote Learning for At-Risk Students in Washington*, Redmond Reporter (Nov. 30, 2020) ........................................................................................................9

*P. Obj. to Report/Recommendation of USMJ - iii*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## INTRODUCTION

Pursuant to 28 U.S.C. § 636 and Local Rule 72(b), Plaintiffs file these objections to the December 2, 2020, Report and Recommendation of the United States Magistrate Judge in this matter (Recommendation). The Recommendation contains at least five legal errors that warrant rejection. Additionally, several factual developments require this Court's consideration.

## LEGAL STANDARD

Objections to a recommendation are reviewed under "a de novo determination of those portions of the . . . unspecified findings or recommendations to which objection is made." 28 U.S.C. § 636(b). De novo review entails "an independent, non-deferential, determination concerning the question whether the [Magistrate Judge] correctly applied the law." *Colan v. Mesa Petroleum Co.*, 951 F.2d 1512, 1518 (9th Cir. 1991).

## UPDATED STATEMENT OF FACTS

Several changes in the underlying facts that were not part of the record considered by the Magistrate warrant attention. El Papel, LLC, has decided to temporarily take the rental home currently occupied by holdover tenants off the rental market. *See* Second Declaration of Mark Travers, Dkt. # 67. Once the holdover tenants have vacated the premises, El Papel will hire a contractor to repair the significant wear-and-tear caused by the current occupants. *Id.* The governors of El Papel, Mark Travers and Michele Ruess, will then temporarily occupy the home while performing renovations on their own primary residence. *Id.* They anticipate that the home will be off the rental market for 4–6 months.[1] *Id.*

El Papel has also recently discovered that the two holdover tenants are allowing an additional occupant to live in the unit without consent or any lease agreement with El Papel. Declaration of Christopher Gardner, Dkt. # 68, ¶¶ 3–4. El Papel, meanwhile, has recently accepted payment from the King County Rental Assistance Program to cover about sixty percent of the holdover tenants' past due rent up through November 2020. *Id.*

---

[1] It is unclear whether temporary occupancy while maintaining a separate primary residence would qualify under the state moratorium's exception for a property owner who intends to personally occupy a unit as a primary residence. *See* Second Blevins Decl., Exh. 17, Dkt. # 52-1 at 6.

P. Obj. to Report/Recommendation of USMJ - 1
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

# ARGUMENT

The Recommendation erred with regard to the following conclusions: (1) Governor Inslee enjoys immunity; (2) the eviction bans are reasonable and appropriate; (3) injunctive relief is not proper for a Takings Clause violation; (4) Plaintiffs have not shown irreparable harm; and (5) an injunction is not in the public interest. Moreover, the Recommendation's conclusions require reconsideration in light of changed circumstances.

## I. SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS

The Recommendation would hold that the state enjoys sovereign immunity in this matter because Governor Inslee is not a proper defendant. *See* Recommendation, Dkt. # 63 at 10. Governor Inslee has promulgated an order pursuant to emergency authority granted directly to him by statute. That order does not delegate enforcement of his order to any other agency or officer. He has "some connection" to enforcement, which is all that *Ex parte Young* demands. *See Ex parte Young*, 209 U.S. 123, 157 (1908).

## II. THE EVICTION BANS ARE NOT REASONABLE AND NECESSARY

### A. The Contract Clause Requires Substantial Impairments on Contract To Be Precisely Tailored.

A substantial impairment on contract must be tailored to achieving the government's ends.[2] *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 438 (1934). Courts look to whether "the relief was appropriately tailored to the emergency that it was designed to meet." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978). For instance, in *W.B. Worthen Co. v. Thomas*, 292 U.S. 426 (1935), the Supreme Court held that a law exempting life insurance proceeds from debt collection "was not precisely and reasonably designed to meet a grave temporary emergency." *Allied Structural Steel Co.*, 438 U.S. at 243.

The Recommendation wrongly held that this tailoring requirement applies only to cases involving public contracts. While courts do impose heightened scrutiny on impairment of public contracts, cases involving private contracts still demand that a law be "precisely" designed to meet

---

[2] The Recommendation assumed, without deciding, that the impairment on contractual obligations caused by the eviction bans is substantial. *See* Recommendation, Dkt. # 63 at 12.

P. Obj. to Report/Recommendation of USMJ - 2
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

legitimate government ends. *Id.*; *see also W.B. Worthen*, 292 U.S. at 434 (laws impairing private contracts must be "limited to the exigency to which the legislation was addressed") (citation omitted); *W.B. Worthen v. Kavanaugh*, 295 U.S. 56, 60 (1935) ("Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage *without moderation* . . . .") (emphasis added) (citation omitted).

### B. The Evictions Bans Are Not Adequately Tailored to the Defendants' Interests.

The eviction bans are not "precisely and reasonably designed to meet a grave temporary emergency" because they do not require a showing of hardship or likelihood of becoming homeless. *Allied Structural Steel Co.*, 438 U.S. at 243. The Defendants have asserted that their interests are in preventing homelessness, which increases transmission risks, and mitigating economic hardship caused by the pandemic. *See* Governor Jay Inslee's Response to Pl.s' Motion for Prelim. Inj. (State's Response) at 4–6, Dkt. # 28 at 10–12; City of Seattle's Opposition to Pl.s' Motion for Prelim. Inj. (City's Response) at 2–4, Dkt. # 27 at 4–6. Neither interest is furthered by preventing landlords from evicting tenants who are not experiencing financial hardship. Hence, Karvell Li's tenant who earns well over six digits a year cannot be evicted under either eviction ban, though the Defendants have no asserted interest in barring her eviction.

While accepting that the fit "is not perfect here," the Recommendation granted the Defendants "latitude" in their approach. Recommendation, Dkt. # 63 at 22. This conclusion came from a rejection of the proper tailoring standard discussed above and an overly deferential acceptance of the Defendants' rationale for declining to impose some kind of hardship showing.

The Recommendation accepted the Defendants' argument that a hardship requirement would be impractical because some renters might struggle to prove hardship. *Id.* at 20. But the Defendants are in the position to define proof of hardship. Indeed, the City's ordinance extending a defense to eviction beyond the length of the Mayor's ban includes a hardship requirement, and other eviction bans allow for flexibility in proving hardship. *See, e.g.*, Order of the Governor of the State of Maryland Temporarily Prohibiting Evictions of Tenants Suffering Substantial Loss of

P. Obj. to Report/Recommendation of USMJ - 3
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

Income Due to COVID-19 (Mar. 16, 2020) (protecting against eviction "if the tenant can demonstrate to the court, through documentation or other objectively verifiable means, that the tenant suffered a substantial loss of income resulting from COVID-19 . . . due to job loss, reduction in compensated hours of work, closure of place of employment, or the need to miss work to care for a homebound school-age child"); City and County of San Francisco Ordinance 93-20 (2020) (allowing that documentation of hardship "may include, without limitation, bank statements, pay stubs, employment termination notices, proof of unemployment insurance claim filings, sworn affidavits, and . . . third-party documentation such as a letter from an employer"). There is no reason the Defendants cannot craft similar standards of proof.

The Recommendation deferred to the State's claim that most people become homeless upon eviction. Recommendation, Dkt. # 63 at 21. That claim, however, derives from a survey of only 72 tenants, all of whom received service from the Housing Justice Project, which only helps low-income individuals. *See* Rowe Decl. Exh. C at 18–19, Dkt. # 33 at 31–32. This small, unrepresentative survey admits that "[i]t is difficult to track what happens to tenants after they are evicted." *Id.* at 18, Dkt. # 33 at 31. The state's claim clashes with more reliable research on homelessness following eviction. *See* Declaration of Erin Babich Runge, Dkt. # 66, Exh. 19 at 3–4 (compiling research showing that about 37.5 percent of evicted individuals become homeless upon eviction and that a small percentage of homeless blame eviction for their homeless status). It also appears that, to date, none of the eviction filings in King County since April have resulted in a single tenant becoming homeless. *Id.*

The Recommendation, moreover, agreed with ACLU's erroneous analysis of data compiled by Eviction Lab regarding eviction rates. Recommendation, Dkt. #63 at 28. The ACLU analysis, Amicus Brief, Dkt. #43 at 13–14, equated eviction filing rates and actual evictions even though the filing rate is substantially higher than the rate of actual evictions, and wrongly claimed that rates were above average during the pandemic in the absence of moratoria. Babich Runge Decl., Exh. 19 at 1. Eviction rates in Washington, moreover, are typically lower than the national average. *Id.* at 2. Finally, it is worth noting that the Defendants repeatedly make conflicting

P. Obj. to Report/Recommendation of USMJ - 4  
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation  
255 South King Street, Suite 800  
Seattle, Washington 98104  
(425) 576-0484

arguments: they insist that landlords can just retrieve unpaid rent from tenants at a later time, yet they also insist that almost all tenants will become homeless upon eviction. It defies belief to think that people who cannot afford a home will be able to afford to pay back a mounting rent debt, and vice versa.

Further, the Recommendation notes that the bans are properly tailored because both rich and poor deserve protection from being forced to move during the pandemic. Recommendation, Dkt. # 63 at 20. But the Defendants' asserted interests do not extend to all individuals forced to move—the Defendants have specifically and exclusively expressed an interest in helping those who are genuinely struggling to pay rent and who are at risk of becoming homeless. *See* State Response at 4–6, Dkt. # 28 at 10–12; City Response at 2–4, Dkt. # 27 at 4–6. If the Defendants were pursuing an effort to prevent anyone from relocating, then the bans are not a reasonable or tailored means of doing so because they do not restrict people from voluntarily moving.

The Recommendation also concluded that it is reasonable for the Defendants to forestall eviction proceedings to reduce transmission risks at in-person court appearances. Recommendation, Dkt. # 63 at 27. But neither the City nor the State raised this as an objective of the eviction bans in either findings or litigation, and this Court may not uphold a government action on a rationale distinct from the government's express purpose. *See Heller v. Doe*, 509 U.S. 312, 321 (1993) ("[E]ven the standard of rationality as we so often have defined it must find some footing in the realities of the subject addressed by the legislation."). Even if this were one of the eviction bans' purposes, the bans are not a reasonable or properly tailored means of addressing this concern. For one, eviction proceedings are only one of many types of court proceedings—it is neither reasonable nor properly tailored for the governments to bar only one type of proceeding. Moreover, there is no indication in this record that eviction proceedings cannot be conducted virtually, as is already being done with many other hearings.

C. ***Blaisdell* Does Not Control This Case.**

The Recommendation also misread *Blaisdell* to mean that "delaying payment of certain financial obligations during a civil emergency is constitutional." Recommendation, Dkt. # 63 at

P. Obj. to Report/Recommendation of USMJ - 5
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

13. But *Blaisdell* did not so hold—the Minnesota law delayed the right to repossession, but not the right to timely payment, which was protected during the extended redemption period. *Blaisdell*, 290 U.S. at 424. The Recommendation notes that Minnesota law placed authority in the individual judge to decide time and manner of ongoing payment. Recommendation, Dkt. # 63 at 14. But the law required such payment to be made—it simply delegated the details to the judge. *Blaisdell*, 290 U.S. at 416–17. This case is more akin to the cases *Blaisdell* distinguished, where the unconstitutional extended redemption periods delayed *both* repossession and contractually owed compensation. *See* Pl.s' Motion for Prelim. Inj. at 11–13, Dkt. # 16 at 17–19.

Furthermore, statutorily extended redemption periods, like in *Blaisdell*, do not unsettle contractual expectations to the same degree as temporary bans on eviction. Courts have long exercised the equitable authority to adjust the time and terms of foreclosure sales. *Blaisdell*, 290 U.S. at 446–47. Thus, a statutory adjustment to redemption periods did not significantly or unreasonably alter reasonable expectations or the preexisting legal landscape in which parties bargained. *See id.* (the statutory redemption period was reasonable because the statute was a "cognate to the historic exercise of the equitable jurisdiction"). By contrast, here there is no preexisting statutory or judicial authority to delay payment obligations or outright bar eviction.

### III. INJUNCTIVE RELIEF IS AVAILABLE FOR PLAINTIFFS' TAKINGS CLAIM

Relying on *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2175–79 (2019), the Recommendation held that any taking caused by the bans does not warrant injunctive relief. *Knick* simply affirmed that just compensation is the ordinary remedy for a taking. *Id.* at 2175. *Knick* did not overrule the Supreme Court's past recognition that injunctive relief for a taking is sometimes appropriate. *See, e.g.*, *Horne v. Dep't of Agric.*, 569 U.S. 513, 528 (2013); *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 723 (2010).

Specifically, injunctive relief is appropriate when the injury complained of by its nature cannot be compensated by monetary damages, the damages cannot be ascertained with any degree of certainty, and the remedy at law would not be efficient because the injury is of a continuing nature. *See Kucera v. State, Dep't of Transp.*, 995 P.2d 63, 69 (Wash. 2000). Compensation will

P. Obj. to Report/Recommendation of USMJ - 6
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

not fully remedy the Plaintiffs' harm. Currently, the Plaintiffs are suffering an injury that is "of a continuing nature." *Id.* With every month the Defendants' eviction bans are in place, the Plaintiffs suffer additional harm. Additionally, quantifying the Plaintiffs' injuries is not as simple as calculating overdue rent and late fees, which are not collectable under the Defendants' bans. For example, El Papel has holdover tenants who are residing in its property without a valid lease. Without a lease it is impossible to calculate the exact amount of damages El Papel is owed. Further, now that a squatter has moved into one of El Papel's rental properties, it is even more difficult to quantify what this individual owes because no valid lease exists and any damage to the property is not covered by an existing contract. Even if the holdovers and the squatter were to pay fair market rent, El Papel still has a statutorily protected property right to repossess its property for temporary personal occupancy, a right that can only be protected through injunctive relief. *See Yee v. City of Escondido*, 503 U.S. 519, 528 (1992) ("A different case would be presented were the statute . . . to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy."). El Papel's intent to reoccupy remains even after King County pays part of El Papel's tenants' rental debt, leaving its nonmonetary interest in repossession as the primary injury.

**IV.   PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE HARM**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). *See also* 11A *Wright & Miller*, *Fed Pract. & Proc.* § 2948.1 (3d ed. 2018) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary."). This presumption has been applied to a diverse array of constitutional claims. *See, e.g.*, *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (Supremacy Clause); *Melendres*, 695 F.3d at 1002 (Fourth Amendment); *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1055–56 (5th Cir. 1997) (due process); *Olson v. California*, No. CV 19-109560-DMG, 2020 WL 905572, at *13 n.16 (C.D. Cal. Feb. 10, 2020) (recognizing presumption in the context of Equal Protection, Due

P. Obj. to Report/Recommendation of USMJ - 7
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

Process, and Contract Clause claims). Despite this steady drumbeat of precedent, the Recommendation does not even acknowledge this longstanding rule. *See* Recommendation, Dkt. # 63 at 25–26.

The Defendants tried to evade this presumption by arguing that Plaintiffs' grievances are really about money, but the fact that Plaintiffs wish to exercise constitutional rights for economic gain does not affect the presumption. Indeed, the Ninth Circuit has expressly recognized that constitutional harms are presumptively irreparable in cases where the heart of Plaintiffs' grievances were economic in nature. For instance, in *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, truck drivers who earned their living as independent contractors brought a preemption and Commerce Clause claim against port authorities that imposed rules denying independently contracted drivers access to the port. Since preemption sounds in the Supremacy Clause of the Federal Constitution, the Ninth Circuit held that the truck drivers' injury was presumptively irreparable, even though the impact of the port regulations was economic in nature. *Id.* at 1058. And the Central District of California recently acknowledged that a Contract Clause claim against a law requiring businesses to classify independent contractors as employees would constitute irreparable harm if the underlying claim had merit. *Olson*, 2020 WL 905572, at *13 n.16. This Court should reject the Recommendation because it failed to acknowledge, much less apply, this Circuit's longstanding rule that constitutional injuries are presumptively irreparable.

Even if no presumption existed, Plaintiffs have demonstrated irreparable harm because harm to real property interests is irreparable. *See E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 828–29 (4th Cir. 2004). The Recommendation disagreed that Plaintiffs suffer harm to real property interests because they intend to continue to rent the property, rendering their injury compensable. But the presumption that harm to real property interests is irreparable does not depend on whether

P. Obj. to Report/Recommendation of USMJ - 8
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

intended use for real property is principally economic. *See id.* In any case, Plaintiffs' circumstances have changed recently in this regard because El Papel intends to reoccupy the premises.[3]

**V.   AN INJUNCTION IS IN THE PUBLIC INTEREST**

Plaintiffs object to the Recommendation's finding that the balance of equities or the public interest weighs in the Defendants' favor. The Recommendation found the constitutional nature of the Plaintiffs' claims was inapposite, yet courts have repeatedly held that violations of federal law, particularly constitutional law, are always against the public interest. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *Melendres*, 695 F.3d at 1002.

Although the Defendants argue that injunctive relief will lead to a rash of evictions that will harm minorities and exacerbate the COVID-19 pandemic, the Defendants' concerns about mass eviction rely on speculation. There is no evidence that enjoining the Defendants' bans will result in mass evictions. Instead, enjoining the bans will only allow Plaintiffs to institute eviction proceedings. These proceedings do not guarantee an eviction will occur and give delinquent tenants their constitutionally protected day in court, which can occur safely and socially distanced online like other court proceedings in Seattle and Washington State. Additionally, although the Recommendation states that many low-income families lack access to technology and legal resources to attend such proceedings, the recommendation fails to recognize that these same families are currently using technology to attend virtual school and to work remotely. *See Washington State Schools Provide Devices for Remote Learning*, Associated Press (Sept. 8, 2020);[4] Rodrigo Lopez, *Remote Learning for At-Risk Students in Washington*, Redmond Reporter (Nov. 30, 2020).[5] Further, none of the Plaintiffs in the current case have claimed such a hardship; to the contrary, at least one of the Plaintiffs in this case is employed and has the means not only to

---

[3] Even if El Papel meets an exception under the state ban, Plaintiffs still have standing to challenge the state ban, as Mr. Berman and Mr. Li still have nonpaying tenants that they cannot evict under the eviction bans.

[4] Available at https://apnews.com/article/technology-virus-outbreak-bremerton-washington-redskins-fb4b536f79b053172d3ac31f053d7a4a.

[5] Available at https://www.redmond-reporter.com/marketplace/remote-learning-for-at-risk-students-in-washington/.

P. Obj. to Report/Recommendation of USMJ - 9
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

pay rent but also to obtain legal representation. Thus, the tenants have fair and equal access to the courts and there is no evidence that a rash of evictions will occur.

Existing data also indicate that eviction rates were below average in metropolitan areas without a moratorium. *See* Eviction Lab, COVID-19 Resources, Eviction Tracking System;[6] Babich Runge Decl., Exh. 19 at 1–2. However, even if an eviction surge were likely, as the Recommendation suggests, the majority of tenants' interests would still be protected by the CDC order banning nationwide evictions. *See* 85 Fed. Reg. 55,292–97 (Sept. 4, 2020). Consequently, the majority of Washington tenants are still protected from eviction and enjoining the Defendants' bans is not against the public interest.

Finally, allowing the eviction bans to remain in place harms the public interest by placing the entire burden of the pandemic on landlords. This will likely result in widespread foreclosures as landlords fail to make mortgage payments. Landlords should not have to bear this burden alone, a fact the Recommendation acknowledges but fails to alleviate.

## CONCLUSION

Plaintiffs ask that the District Court grant their Motion for Preliminary Injunction.

DATED:  December 16, 2020.

Respectfully submitted:

| | |
|---|---|
| s/ ETHAN W. BLEVINS | s/ KATHRYN D. VALOIS |
| s/ BRIAN T. HODGES | Kathryn D. Valois* |
| Ethan W. Blevins, WSBA # 48219 | Fla. Bar. No. 1010150 |
| Brian T. Hodges, WSBA # 31976 | Pacific Legal Foundation |
| Pacific Legal Foundation | 4440 PGA Blvd., Suite 307 |
| 255 South King Street, Suite 800 | Palm Beach Gardens, FL 33410 |
| Seattle, Washington 98104 | Email: KValois@pacificlegal.org |
| Telephone: (425) 576-0484 | Telephone: (561) 691-5000 |
| Email: EBlevins@pacificlegal.org | |
| Email: BHodges@pacificlegal.org | * Pro hac vice |

*Attorneys for Plaintiffs*

---

[6] Available at https://evictionlab.org/eviction-tracking/.

P. Obj. to Report/Recommendation of USMJ - 10
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

*Attorney for Plaintiffs*

P. Obj. to Report/Recommendation of USMJ - 11
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484