Hon. Richard A. Jones
Hon. J Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| El PAPEL LLC, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> JAY R INSLEE, *et al.*, <br><br> Defendants. | No. 2:20-cv-01323-RAJ-JRC <br><br> CITY OF SEATTLE'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION |

CONTENTS

I.   Updated Facts ............................................................................................................... 1

II.  Argument ..................................................................................................................... 2

    A.  Plaintiffs' Contract Clause claim is unlikely to succeed ..................................... 2

        1.  The Court must defer to the City's judgment as to whether the means chosen are appropriate and reasonable ................................................................. 2

        2.  The City's enactments are drawn appropriately and reasonably to advance their public purposes ........................................................................... 3

        3.  The City did not need to require continuing rent payments in order to pause evictions ............................................................................................ 5

    B.  Injunctive relief is inappropriate for a takings claim ........................................... 6

    C.  Plaintiffs face no irreparable harm ....................................................................... 8

    D.  Neither the balance of equities nor the public interest favors a preliminary injunction ............................................................................................... 10

III. Conclusion ................................................................................................................. 12

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND
RECOMMENDATION - i
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Magistrate Creatura correctly determined that the Court should deny Plaintiffs' motion for a preliminary injunction. Plaintiffs err in contending that Magistrate Creatura's Report and Recommendation contains legal errors. The City asks the Court to accept the substance of the recommendation and deny Plaintiffs' motion.[1]

## I.      UPDATED FACTS

The COVID-19 pandemic continues to accelerate. As of December 28, 2020, over 332,000 Americans have died from COVID-19. *See* Centers for Disease Control and Prevention ("CDC"), *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last visited December 29, 2020).

The Institute for Health Metrics and Evaluation ("IMHE") projects the total deaths from COVID-19 in the United States will pass 567,000 by April 1, 2021. *See* IMHE, *COVID-19 Projections, USA*, https://covid19.healthdata.org/united-states-of-america?view=total-deaths&tab=trend (last visited December 29, 2020).

Recognizing the ongoing threat posed by COVID-19, on December 15, 2020, Mayor Jenny Durkan extended the City eviction moratorium challenged in this action until March 31, 2021. *See* Executive Order 2020-12, Declaration of Jeffrey S. Weber ("Weber. Decl."), Ex. 1. The other two City enactments challenged in this action—the six-month defense and repayment plan requirement—remain unchanged.

---

[1] The City and State ask the Court to correct minor misstatements that have no material effect on the Magistrate's recommendation. City's Obj., Dkt. # 65; Dft. Inslee's Obj., Dkt. # 70.

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 1
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

## II.   ARGUMENT

### A.   Plaintiffs' Contract Clause claim is unlikely to succeed.

Magistrate Creatura "assume[d], without deciding, that there is a 'substantial' impairment of the leases." Report and Rec., Dkt. # 63 at p. 12.[2]  If a plaintiff proves a substantial impairment, "the inquiry turns to the means and ends of the legislation. In particular, the Court has asked whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018) (citations omitted).  Magistrate Creatura correctly determined that Plaintiffs failed to demonstrate a likelihood of success on the merits under this element of the Contract Clause inquiry.

### 1.   The Court must defer to the City's judgment as to whether the means chosen are appropriate and reasonable.

Where the government is not a contracting party, a court defers to lawmakers' judgment about the choice of means to implement the public purposes.  *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412-13, 418 (1983).  *See also Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 505-06 (1987); *Snake River Valley Elec. Ass'n v. Pacificorp*, 357 F.3d 1042, 1051 n.9 (9th Cir. 2004).

Offering no authority, Plaintiffs urge the Court to replace this mandatory deference with a requirement that a substantial impairment be "precisely tailored," even when the government is not a contracting party.  Pls.' Obj., Dkt. # 69 at pp. 2-3.  The cases Plaintiffs cite predate *Energy Reserves*.  None supports a rule that, when the state is not a contracting party, the court may

---

[2] As set forth in the City's briefing, Plaintiffs cannot establish a "substantial impairment" of a contractual relationship, and Plaintiffs err in suggesting otherwise.  *Compare* City's Opp., Dkt. # 27 at pp. 14-16 *with* Pls.' Obj., Dkt. # 69 at p. 9 (discussing contracting parties' reasonable expectations).

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 2
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

independently determine whether the legislative purposes could have been achieved by means that impair the contract less.

Contrary to Plaintiffs' implication, the word "tailored" does not even appear in *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934). *Cf.* Pls.' Obj., Dkt. # 69 at p. 5. Plaintiffs cite statements in *Allied Structural Steel Co. v Spannaus,* 438 U.S. 234, 242-43 (1978), that a factor in *Blaisdell* was that "the relief was appropriately tailored to the emergency that it was designed to meet" and that *W.B. Worthen Co. v. Thomas,* 292 U.S. 426 (1934), invalidated a measure because it "was not precisely and reasonably designed to meet a grave temporary emergency." Pls.' Obj., Dkt. # 69 at p. 5. But these statements gain Plaintiffs nothing because *Allied Structural Steel* did not turn on tailoring to an emergency, and cases after *Blaisdell* and *W.B. Worthen v. Thomas* abandoned the existence of an emergency and the challenged measure's limited duration as requirements in determining an impairment's reasonableness. *United States Trust Co. of New York v. New Jersey*, 431 US. 1, 22 n.19 (1977). Finally, *W.B. Worthen Co. ex rel. Bd. of Comm'rs of Street Improvement Dist. No. 513,* 295 U.S. 56 (1935), featured government as a contracting party, so no deference was due the government.

> **2. The City's enactments are drawn appropriately and reasonably to advance their public purposes.**

Plaintiffs err in contending that "the eviction bans are not adequately tailored to the defendants' interests" because "they do not require a showing of hardship or likelihood of becoming homeless." Pls.' Obj., Dkt. # 69 at p. 6. As Plaintiffs admit, the City's six-month defense requires the tenant to declare they suffered a financial hardship and therefore are unable to pay rent. Dkt. # 17-11 at p. 20 (Ordinance 126075). Although the eviction moratorium ordered by the Mayor (and amended by the City Council) contains no such requirement, the

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 3
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

moratorium nonetheless reasonably advances its purposes given the deference due legislative judgment.

The eviction moratorium aims to protect public health by reducing the number of people entering into homelessness, thereby reducing the spread of COVID-19. Dkt. # 25-8 at p. 11 (Resolution 31938). As the City noted, the Losing Home report found most evicted respondents became homeless, in the sense that they became completely unsheltered (37.5%), lived in a shelter or transitional housing (25%), or stayed with family or friends (25%); only 12.5% found another apartment or home to move into. Dkt. # 25-8 at p. 3; *see also* Dkt. # 25-4 at p. 6 (Losing Home Report). The virus that causes COVID-19 spreads easily between people in close contact, such that moving into shared housing or other congregate settings fosters the disease's spread. Dkt. # 25-5 at pp. 3-4 (CDC Order). The CDC recognizes that eviction moratoria help prevent the spread of COVID-19 by allowing self-isolation by those who become ill, supporting stay-at-home and social distancing directives, and keeping individuals away from congregate settings. *Id.* at p. 4.

Plaintiffs misstate the moratorium's purpose by suggesting that it is aimed "exclusively" at helping those "who are at risk of becoming homeless" (such that the moratorium could serve its purpose only if it required a showing of financial hardship). Pls.' Obj., Dkt. # 69 at p. 8. Plaintiffs ignore the moratorium's public health purpose that is furthered by preventing tenants from becoming homeless. Dkt. # 25-8 at p. 11. Plaintiffs fail to show that the moratorium does not reasonably advance the public health interest in reducing the spread of COVID-19.

Plaintiffs agree with the data cited by the City showing that 37.5% of evictees become completely unsheltered, while an additional 50% move in with friends or family or into other settings other than a new permanent home. Dkt. # 66-1 at p. 5 (Runge Memorandum). But

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND
RECOMMENDATION - 4
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs contend that only those evictees who become completely unsheltered qualify as "homeless" and that the moratorium is overbroad to the extent it protects others. *Id.*; Pls.' Obj., Dkt. # 69 at pp. 7-8.

Plaintiffs' definitional gymnastics gain them nothing. As the CDC recognizes, moving in with family or friends or into congregate housing increases the risk of spreading COVID-19. Dkt. # 25-5 at p. 4. The moratorium reasonably advances its public health purpose by preventing this from occurring. That the moratorium would protect a small percentage of evictees who would otherwise move into a new home or apartment does not create a Contract Clause violation given the deference due the City as to the means chosen to implement the public purpose. *Cf. United States Trust Co.*, 431 US at 30-31 (considering whether a more moderate course would serve the state's purposes equally well where state *was* a contracting party).

Finally, there is no inherent conflict between evictions rendering tenants homeless and the possibility that landlords could ultimately obtain back rent if evictions were paused. Pls.' Obj., Dkt. # 69 at pp. 7-8. Because most tenants facing eviction fall behind on rent because of loss of employment or income (Dkt. # 25-4 at pp. 8-9), re-employment could allow many tenants the ability to gradually become current on rent if given time to do so.

> **3.  The City did not need to require continuing rent payments to pause evictions.**

Plaintiffs misplace reliance on *Blaisdell* in arguing that the Contract Clause forces the City—as a condition of pausing evictions—to require tenants to make regular rental payments. Pls.' Obj., Dkt. # 69 at pp. 8-9. The statute in *Blaisdell* allowed courts to create a new period of possession for the mortgagor along with an obligation for the mortgagor to pay rental value for the possession. *Blaisdell*, 290 U.S. at 416-17. Here, the City's enactments preserve tenants' legal obligation to pay for their entire period of possession. So even if *Blaisdell* relied on the

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 5
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

statute's payment provision, that does not mean requiring regular rental payments would be a prerequisite to pausing evictions here.

The Supreme Court has rejected the idea that specific limitations relied on in *Blaisdell* are required in every case, and instead has regarded them as subsumed in the overall determination of reasonableness. *United States Trust Co.*, 431 US. at 22 n.19. Plaintiffs cite no post-*Blaisdell* case law articulating a rule that regular rental payments are always necessary to delay repossession. Another federal court recently rejected the argument that a city must require regular rental payments to impose an eviction moratorium. *Apartment Ass'n of Los Angeles County, Inc., v. City of Los Angeles*, __ F. Supp. 3d __, 2020 WL 6700568, at *5-7 (C.D. Cal. Nov. 13, 2020), *appeal docketed*, No. 20-56251 (9th Cir. Nov. 27, 2020).

### B. Injunctive relief is inappropriate for a takings claim.

Plaintiffs cannot evade authority holding that injunctive relief is unavailable for a takings claim. *Knick* did more than "simply affirm[] that just compensation is the ordinary remedy for a taking." Pls.' Obj., Dkt. # 69 at p. 9 (citing *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2175 (2019)). *Knick* concluded that the compensation remedy forecloses injunctive relief: "As long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed." *Knick*, 139 S. Ct. at 2179. Plaintiffs overlook that and the other binding and persuasive authority echoing it. *See* City's Opp., Dkt. # 27 at p. 22 (citing *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1016 (1984); *In re Nat'l Sec. Agency Telecomm. Records Litig.,* 669 F.3d 928 (9th Cir. 2011); *Baptiste v. Kennealy*, __ F. Supp. 3d __, 2020 WL 5751572, at *20 (D. Mass. Sept. 25, 2020); *HAPCO v. City of Philadelphia*, __ F. Supp. 3d __, 2020 WL 5095496, at *12 (E.D. Pa. Aug. 28, 2020).

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 6
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

    *Knick* did not need to overrule *Horne* or *Stop the Beach Renourishment*, neither of which recognized, as Plaintiffs claim, "that injunctive relief for a taking is sometimes appropriate." Pls.' Obj., Dkt. # 69 at p. 9 (citing *Horne v. Dep't of Agric.*, 569 U.S. 513, 528 (2013); *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 723 (2010)). *Horne*, which involved no claim for injunctive relief, merely noted a property owner could raise a takings claim as a defense to an enforcement action because "it would make little sense to require the party to pay the fine in one proceeding and then turn around and sue for recovery of that same money in another proceeding." *Horne*, 569 U.S. at 529. There is no risk of money taking a senseless round trip here. The *Stop the Beach Renourishment* passage Plaintiffs cite is in a part of the decision supported by only four justices. *See Stop the Beach Renourishment*, 560 U.S. 706 (voting on Part II); *id.* at 713–25 (Part II). Even if it carried weight, that passage merely opined that where a state supreme court provides declaratory relief on a takings claim and the U.S. Supreme Court rules that relief effected a "judicial taking," the remedy is to reverse the state court decision. *Id.* at 710–11 (describing how the state court answered a certified question; mentioning no injunctive relief); *id.* at 723 (four justices' proposed remedy).

    *Kucera* undercuts Plaintiffs' claimed injunctive relief. *See* Pls.' Obj., Dkt. # 69 at pp. 9–10 (citing *Kucera v. State, Dep't of Transp.*, 140 Wn.2d 200, 995 P.2d 63 (2000)). *Kucera* dissolved a lower court's preliminary injunction because the plaintiff property owners had an adequate remedy: an inverse condemnation claim under Washington's Takings Clause for compensation or damages for any ongoing harm. *Kucera*, 140 Wn.2d at 211–12.[3] Plaintiffs'

---

[3] In *dicta* in a footnote, *Kucera* suggested that "[a]rguably, the trial court could enjoin activities constituting an uncompensated taking or damaging to have the property damage ascertained and paid *before* permitting the alleged inverse condemnation to continue," but only because, unlike the U.S. Constitution, the Washington Constitution allows the government to take or damage property only if compensation is "*first* made." *Kucera*, 140 Wn.2d at 211 n.7.

| | |
|---|---|
| CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 7<br>*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC | **Peter S. Holmes**<br>Seattle City Attorney<br>701 Fifth Ave., Suite 2050<br>Seattle, WA 98104-7095<br>(206) 684-8200 |

suggestion that compensation for them—unlike for the *Kucera* property owners—would be incalculable sells the litigation process short. *See* Pls.' Obj., Dkt. # 69 at p. 10.

Plaintiffs neither cite the source of El Papel's claimed "statutorily protected property right to repossess its property for temporary personal occupancy" nor explain how that statutory right overrules authority foreclosing injunctive relief under the Takings Clause. *See* Pls.' Obj., Dkt. # 69 at p. 10. They just quote a passage from *Yee*, a decision addressing no requested injunction. *Id.* (quoting *Yee v. City of Escondido*, 503 U.S. 519, 528 (1992)).[4] To the extent Plaintiffs quote *Yee* to support their takings claim, the passage provides no help. In rejecting a takings claim brought by landlords, *Yee* noted: "A different case would be presented were the statute . . . to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy." *Yee* 503 U.S. at 528. The Ordinances neither force property owners to become landlords nor prevent evictions in perpetuity.

### C. Plaintiffs face no irreparable harm.

Plaintiffs push the law too far in alleging that deprivation of constitutional rights automatically constitutes irreparable injury. Pls.' Obj., Dkt. # 69 at p. 10. The Ninth Circuit has recently cautioned that the irreparable harm element of the preliminary injunction standard does not "collapse into the merits question." *Cuviello v. City of Vallejo*, 944 F.3d 816, 831 (9th Cir. 2019). Although *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), states that the deprivation of constitutional rights "unquestionably constitutes irreparable injury," that case involved irreparable harm in the form of unlawful detention—a very different type of harm from the economic harm at issue here. Plaintiffs find no support in the other cases they cite. *Valley v.*

---

[4] The *Yee* property owners sought damages, a declaration, and an injunction. *Yee*, 503 U.S. at 525. Having found no taking, the Court did not address remedies. *See id.* at 539.

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 8
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Rapides Parish School Bd.*, 118 F.3d 1047, 1055-56 (5th Cir. 1997), did not hold that deprivation of constitutional rights alone constitutes irreparable injury; the existence of irreparable injury in that case was supported by the threat of injury to the plaintiff's reputation and her ability to procure comparable employment.  Similarly, *Olson v. California*, __ F. Supp. 3d __, 2020 WL 905572, *13 n.16 (C.D. Cal. Feb. 10, 2020), *appeal docketed*, No. 20-55267 (9th Cir. March 11, 2020), stated only that an alleged constitutional infringement "will often alone" constitute irreparable harm.

Nor does *American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), support Plaintiffs' argument.  *American Trucking* involved economic harm "coupled with" the constitutional violation that was irreparable: if the companies did not accept the unconstitutional agreement, they would lose their businesses.  *American Trucking*, 559 F.3d at 1058-59.  Under the "theory of irreparable harm" espoused in *American Trucking,* "Plaintiffs must demonstrate some likely irreparable harm in the absence of a preliminary injunction barring the challenged action, and not simply a constitutional violation."  *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 925 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *cert. granted*, 2020 WL 6121565 (Oct. 19, 2020).

As the City explained and Magistrate Creatura recognized, economic harm is not generally considered irreparable, because it can be remedied by an award of damages.  City's Opp., Dkt. # 27 at p. 10; Report and Rec., Dkt. # 63 at p. 25.  Plaintiffs offer no authority for their contention that the mere involvement of real property turns economic harm into irreparable harm.  Pls.' Obj., Dkt. # 69 at p. 8.  *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 828-29 (4th Cir. 2004), is inapposite.  That case involved use of a preliminary injunction to address timing issues related to the exercise of eminent domain for construction of a pipeline; the injuries

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 9
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

included the inability to comply with a federal order, inability to serve customers' demand for gas, and hindrance of regional economic development. Plaintiffs' alleged injury—delayed pursuit of rent payments—is purely economic and not irreparable. Plaintiffs offer no evidence that delayed payments will cause foreclosure or endanger the viability of their businesses.

As Plaintiffs' counsel confirmed at oral argument, they seek eviction to re-let the premises to other tenants. Report and Rec., Dkt. # 63 at p. 7. After Magistrate Creatura's report, one of Plaintiff El Papel LLC's governors expressed a desire to briefly occupy the LLC's property once the current tenants vacate, after which the governor reports the LLC intends to re-let the property to a new tenant. Dkt. # 67 at p. 2 (Second Travers Decl.). The governor does not own the property (the LLC does) and the period of re-occupancy could be only four to six months. Dkt. # 67 at p. 2. That does nothing to change Plaintiff El Papel LLC's fundamental objective to use the property for a rental business, or to demonstrate that, if El Papel LLC cannot evict the current tenants, it will suffer irreparable harm that cannot be compensated by damages.

### D. Neither the balance of equities nor the public interest favors a preliminary injunction.

Plaintiffs err in contending that a constitutional violation always satisfies the balance of equities and public interest factors for the issuance of a preliminary injunction. Pls.' Obj., Dkt. # 69 at p. 12. Plaintiffs cite cases involving harms that differ from the economic harms alleged here. *See Arizona Dream Act Coalition v. Brewer,* 757 F.3d 1053, 1068 (9th Cir. 2014) (irreparable harm of a personal and professional nature due to inability to obtain drivers licenses); *Melendres*, 695 F.3d at 1002 (irreparable harm from unlawful detention).

Plaintiffs' contention that "[t]here is no evidence that enjoining the Defendants' bans will result in mass evictions" defies belief. Pls.' Obj., Dkt. # 69 at p. 12. Plaintiffs' skepticism that the pandemic would lead to many evictions finds no support in the record. It is beyond dispute

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 10
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

that the pandemic has substantially increased unemployment, that unemployment will be high for some time, and that unemployment leads to evictions. Dkt. # 25-1 at p. 4, Dkt. # 25-2 at p. 4, and Dkt. # 25-3 at p. 6 (Washington State Econ. and Revenue Forecast Council data); Dkt. # 25-4 at pp. 8-9. Amici also presented ample evidence supporting the likelihood of widespread evictions absent the moratoria. Dkt. # 43 at pp. 19-23. Plaintiffs only speculate that many cases in which eviction proceedings would be instituted absent the moratoria would not end in evictions once tenants have their "day in court." Pls.' Obj., Dkt. # 69 at p. 12.[5] Nor will the CDC moratorium provide protection that obviates the challenged City and State enactments—that moratorium (which Plaintiffs concede is less restrictive than the enactments here) has been extended only until January 31, 2021. HR 133, Consolidated Appropriations Act, 2021, § 502.

Plaintiffs' quibbles over the number of expected evictions relative to historical averages do nothing to rebut the likelihood of a very large number of evictions absent the City's and State's moratoria. Pls.' Obj., Dkt. # 69 at pp. 7, 13. More fundamentally, Plaintiffs ignore that the public health interest supporting denial of a preliminary injunction is ultimately measured by the number of human lives saved by preventing evictions in the midst of the pandemic. Statistical evidence indicates that eviction moratoria are saving thousands of Americans from death due to COVID-19. A recent study concluded that the lifting of eviction moratoria in 27 states during the study period resulted in 10,700 excess deaths. *See* Leifheit, *et al.,* Expiring Eviction Moratoriums and COVID-19 Incidence and Mortality (Nov. 30, 2020), pp. 4-5,

---

[5] Moreover, in the face of the contrary evidence marshalled by amici (Dkt # 43 at pp. 27-28), Plaintiffs offer no support for their contention that disadvantaged tenants could participate "virtually" in eviction hearings, except to reference students' ability to "attend virtual school" (Pls.' Obj., Dkt. # 69 at p. 12)—an analogy that ignores the well-documented difficulties low-income students face in accessing the internet. *See* Buses Bring School to Students, New York Times, December 17, 2020, www.nytimes.com/interactive/2020/12/17/us/school-bus-remote-learning-wifi.html (last visited December 29, 2020).

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 11
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3739576 (last visited Dec. 30, 2020), Weber Decl., Ex. 2.  The public interest in preventing deaths from COVID-19, addressing the pandemic's persistent economic effects, and preventing homelessness outweigh the interests Plaintiffs assert in support of a preliminary injunction.

### III.     CONCLUSION

Because Magistrate Creatura correctly applied the relevant legal standards in reviewing the City's response to a nearly unprecedented public health and economic crisis, and because Plaintiffs fail to demonstrate any error, the City respectfully asks this Court to accept Magistrate Creatura's recommendation (with the minor corrections suggested by Defendants) and deny Plaintiffs' preliminary injunction motion.

Respectfully submitted December 30, 2020.

PETER S. HOLMES
Seattle City Attorney

By:     /s/ Jeffrey S. Weber, WSBA #24496
        /s/ Roger D. Wynne, WSBA #23399
        /s/ Erica R. Franklin, WSBA #43477
Seattle City Attorney's Office
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
Ph: (206) 684-8200
jeff.weber@seattle.gov
roger.wynne@seattle.gov
erica.franklin@seattle.gov
Assistant City Attorneys for Defendants City of Seattle and Jenny A. Durkan, in her official capacity as the Mayor of the City of Seattle

CITY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - 12
*El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200