1

2

Hon. Richard A. Jones
Hon. J Richard Creatura

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

El PAPEL LLC, *et al.*,                    )    No. 2:20-cv-01323-RAJ-JRC
                                           )
7

                        Plaintiffs,        )    DEFENDANT CITY OF SEATTLE'S
                                           )    OPENING/RESPONSE BRIEF ON
8

            vs.                            )    CROSS-MOTIONS FOR SUMMARY
                                           )    JUDGMENT
9

JENNY A. DURKAN, *et al.*,                  )
                                           )
                        Defendants.        )    NOTED ON MOTION CALENDAR:
10

                                           )    Friday, June 18, 2021
                                           )
11

_____)       ORAL ARGUMENT REQUESTED

12

## CONTENTS

13

I.   Introduction and Relief Requested ........................................................................1

14

II.  Statement of Facts ...........................................................................................2

15

     A.   The pandemic's economic impacts will continue to increase evictions. ........................2

16

     B.   Evictions exacerbate the pandemic's health risks. .........................................4

17

     C.   The Mayor proclaimed a civil emergency and the Mayor and Council enacted a
          temporary eviction moratorium, six-month defense, and repayment plan
          requirement. ...........................................................................................5

18

19

     D.   Rental assistance efforts will take time and will not fully alleviate economic
          disruptions and housing stability exacerbated by the pandemic. ....................................6

20

     E.   Plaintiffs sued and the court denied their motion for a preliminary injunction. ..............8

21

III. Authority .............................................................................................................8

22

     A.   Plaintiffs lack standing to maintain this action. ................................................9

23

          1.   Because the CDC Order may protect their tenants, Plaintiffs lack standing to
               challenge the City's moratorium or six-month defense. .........................................9

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

2.    Because Plaintiffs have not set forth evidence that tenants are paying or will pay rent through an alternative payment plan, Plaintiffs lack standing to challenge the repayment plan requirement. ..........................................................10

B.    Plaintiffs' Contract Clause claim fails. ........................................................11

1.    The City's enactments do not substantially impair a contractual relationship.......11

a.    The enactments could not interfere with Plaintiffs' reasonable expectations given the highly regulated nature of the residential rental business. ...............................................................................................12

b.    The enactments neither significantly undermine Plaintiffs' contractual bargain nor prevent them from safeguarding or reinstating their rights. .......13

c.    Plaintiffs' arguments for substantial impairment fail. ...................................14

2.    The City's enactments advance significant and legitimate public purposes.........16

3.    Especially applying required deference, the City's enactments are drawn appropriately and reasonably to advance their purposes......................................17

a.    The Court must defer to lawmakers' judgment when government is not a contracting party. ..........................................................................................17

b.    The City's judgment that the enactments appropriately and reasonably advance their public purposes is entitled to deference.................................18

c.    Federal courts have uniformly sustained similar measures. ..........................19

d.    Plaintiffs' arguments that the enactments are insufficiently tailored are untenable given the deference owed lawmakers............................................20

C.    Plaintiffs' takings claim fails. ......................................................................24

1.    Injunctive relief is inappropriate for a takings claim, as this Court already ruled..................................................................................................................24

2.    The City's measures effect no taking.................................................................27

IV.   Conclusion ...........................................................................................................29

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - ii
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1

## I.   INTRODUCTION AND RELIEF REQUESTED

2       Because maintaining stable housing is a public health and economic imperative in the

3   face of the COVID-19 pandemic, federal, state, and local governments—including Washington

4   and Seattle—enacted temporary measures to protect tenants from evictions. Landlords

5   challenged these measures, but to date it appears every court has rejected those challenges. *E.g.*,

6   *Heights Apts., LLC v. Walz*, ___ F. Supp. 3d ___, 2020 WL 7828818 (D. Minn. Dec. 31, 2020),

7   *appeal docketed*, No. 21-1278 (8th Cir. Feb. 5, 2021); *Apartment Ass'n of Los Angeles County v.*

8   *City of Los Angeles*, __ F. Supp. 3d __, 2020 WL 6700568 (C.D. Cal. Nov. 13, 2020), *appeal*

9   *docketed*, No. 20-56251 (9th Cir. Nov. 27, 2020); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D.

10  Mass. 2020); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337 (E.D. Pa. 2020); *Auracle*

11  *Homes, LLC v. Lamont*, 478 F. Supp. 3d. 199 (D. Conn. 2020); *Elmsford Apartment Associates,*

12  *LLC v. Cuomo,* 469 F. Supp. 3d. 148 (S.D.N.Y. 2020), *appeal docketed*, No. 20-2565 (2nd Cir.

13  July 28, 2020); *Matorin v. Commonwealth of Massachusetts*, No. 2084CV01334 (Suffolk Cty.,

14  Mass. Super. Ct. Aug. 26, 2020); *San Francisco Apt. Ass'n v. City & Cty. of San Francisco*,

15  No. CPF-20-517136 (Cal. Super. Ct., Cty. of San Francisco Aug. 3, 2020), *appeal abandoned*,

16  No. A160924 (Cal. Ct. App. Oct. 1, 2020); *JL Props. Grp. B, LLC v. Pritzker*, No. 20-CH-601

17  (12th Cir. Ct., Will Cty., Ill. July 31, 2020), *appeal docketed*, No.3-20-0305 (Ill. App. Ct. Aug. 1,

18  2020); *Gregory Real Estate & Mgmt. v. Keegan*, No. CV2020-007629 (Super. Ct. of Ariz.,

19  Maricopa Cty. July 22, 2020), *appeal dismissed as moot*, 2021 WL 1187398 (Ariz. Ct. App.

20  March 30, 2021). *See* Dkt. #s 25-10 – 25-14 (copies of state court rulings).

21      Plaintiffs—two Seattle landlords—now ask this Court to buck that consensus by ruling

22  that the City of Seattle's measures violate the Contract and Takings Clauses. This Court should

23  decline their request. Plaintiffs lack standing to challenge the City's measures. Their Contract

---

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 1
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Clause claim fails because the City's enactments do not substantially impair a contractual relationship in the highly regulated landlord-tenant arena and, especially applying the deference due the City's judgment, the enactments are drawn appropriately and reasonably to advance significant and legitimate public purposes. Injunctive relief is not appropriate for a takings claim, and Plaintiffs' takings claim would fail because the enactments do not cause them to suffer a physical invasion.

Because the parties raise no genuine issue of material fact and the City is entitled to judgment as a matter of law, the City respectfully asks this Court to grant summary judgment to the City.

## II.    STATEMENT OF FACTS

### A.    The pandemic's economic impacts will continue to increase evictions.

The world continues to deal with a public health crisis unprecedented in modern times. As of May 5, 2021, over 575,000 Americans have died from COVID. Centers for Disease Control and Prevention ("CDC"), *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days (last visited May 6, 2021). When the City filed its Opposition to Plaintiffs' Motion for Preliminary Injunction in October 2020, American COVID-19 deaths totaled 212,000. Dkt. # 27 at p. 4. The University of Washington's Institute for Health Metrics and Evaluation ("IMHE") projects that total will reach 948,859 by September 1, 2021. *See* IMHE, *COVID-19 Projections, USA,* https://covid19.healthdata.org/united-states-of-america?view=total-deaths&tab=trend (last visited May 7, 2021).

Although vaccinations are being administered in Washington, 25% of the population 65 or older are not yet vaccinated, and over 70% of the overall population remains susceptible to COVID-19 transmission. Dkt. # 100-9 at p. 3 (Wash. State Dept. of Health, COVID-19

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 2
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1   TRANSMISSIONS ACROSS WASH. STATE (April 21, 2021)). As of May 3, 2021, King County

2   estimated that 610,537 County residents over the age of 16 have yet to receive a vaccination

3   dose. Dkt. # 100-10 (King County Dept. of Health vaccination summary). Across the state,

4   positive COVID-19 case rates are increasing in most age groups—with particularly sharp

5   increases among younger age groups (ages 10–49). Dkt. # 100-9 at pp. 3, 9–10. Current trends

6   indicate Washington is in the early stages of a fourth surge of infection, with many similarities to

7   early November 2020. *Id*. at p. 3.

8         To stem the spread of the pandemic, many levels of government—particularly

9   Washington State—have taken such extraordinary measures as restricting businesses, closing

10  schools for in-person learning, and calling for social distancing.[1] Efforts to stem the pandemic

11  have devastated the economy. Washington lost half a million jobs in March and April of 2020,

12  with the unemployment rate reaching 16.3% in April—the highest in decades. *See* Dkt. # 25-1 at

13  p. 4 (Wash. State Econ. and Revenue Forecast Council, ECON. & REVENUE UPDATE (Sept. 16,

14  2020)). Of those job losses, the U.S. Bureau of Labor Statistics estimates that the leisure and

15  hospitality industry was hit hardest, with 74,900 job losses between March 2020 and March

16  2021. Dkt. # 100-1 (Employment Security Dept./WITS and U.S. Bureau of Labor Statistics,

17  *Estimated employment change by industry over the year, not seasonally adjusted* (updated April

18  14, 2021)). King County unemployment rates remain higher than pre-pandemic levels, with 5.4%

19  unemployment in March 2021 compared to 2.6% in January 2020. Dkt. # 100-11 (Wash. State

---

[1] These measures are documented in the challenged City enactments' findings and the State's response to Plaintiffs' Motion for Preliminary Injunction. *See, e.g.*, Dkt. # 17-11 (Ord. 126075); Dkt. # 17-12 (Ord. 126081); Dkt. # 25-8 (Res. 31938). The City will not recite them here.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 3
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Employment Security Dept. Monthly Employment Report); Dkt. # 101-1 at p.  9 (King County

Eviction Prevention & Rental Assistance Program 2020 Summary).

Unemployment leads to evictions. A 2019 Federal Reserve Report found that 40% of

Americans could not come up with $400 if an emergency occurred, and a survey of Seattle

residents who faced eviction found most cited loss of employment or income as the reason they

fell behind on rent. *See* Dkt. # 25-4 at pp. 8–9 (Seattle Women's Comm'n & King Cty. Bar

Ass'n Housing Justice Project, Losing Home: The Human Cost of Eviction in Seattle (2018)

("Losing Home")).

### B. Evictions exacerbate the pandemic's health risks.

Evictions lead to homelessness. Losing Home found most evicted respondents became

homeless, with 37.5% completely unsheltered, 25% living in a shelter or transitional housing,

and 25% staying with family or friends. Dkt. # 25-4 at p. 6.

Evictions exacerbate the pandemic's dangers for evictees and others. The virus that

causes COVID-19 spreads easily between people in close contact. *See* Dkt. # 25-5 at p. 2 (CDC,

Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed.

Reg. 55,293 (Sept. 4, 2020) ("CDC Order")). Evictees must move, many into shared housing or

other congregate settings fostering COVID-19's spread. *Id*. at p. 4. Extensive outbreaks have

been identified in homeless shelters. *Id*. at p. 5. Evictees who become unsheltered face additional

problems with exposure and inadequate access to hygiene, furthering the virus's spread. *Id*. The

CDC recognizes eviction moratoria as an effective public health measure to prevent the spread of

COVID-19, by allowing those who become ill to self-isolate, supporting stay-at-home and social

distancing directives, and keeping individuals away from congregate settings. *Id*. at p. 4. Losing

Home reports evicted persons face other harmful outcomes, including worsened mental health

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 4
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

and cardiovascular conditions in adults and, for children, increased likelihood of teenage

pregnancy and alcoholism, worse educational outcomes, and higher dropout rates. Dkt. # 25-4 at

p. 21.

### C. The Mayor proclaimed a civil emergency and the Mayor and Council enacted a temporary eviction moratorium, six-month defense, and repayment plan requirement.

In response to the pandemic, the CDC and state and local governments adopted

temporary measures to protect tenants from eviction. *See* Dkt. # 25-5 (CDC Order);

https://web.archive.org/web/20201031155744/https://ballotpedia.org/Changes_to_rent,_mortgag

e,_eviction,_and_foreclosure_policies_in_response_to_the_coronavirus_(COVID-

19)_pandemic,_2020 (last visited May 6, 2021).

Seattle is among them. The Mayor issued a Proclamation of Civil Emergency on

March 3, 2020. Dkt. # 17-6. The City Council amended the Proclamation by Resolution 31937

two days later. Dkt. # 25-6. The amended Proclamation remains the operative one and will

remain in effect until the Mayor or Council terminates it. *See id*. pp. 10–14. The Mayor and

Council also enacted the three measures Plaintiffs challenge.

**The eviction moratorium**. On March 14, 2020, the Mayor issued an emergency order

temporarily establishing a residential eviction moratorium, Dkt. # 25-7**,** which the Council

amended by Resolution 31938 two days later. Dkt. # 25-8**.** The Mayor has extended the

moratorium several times—it is now set to end on June 30, 2021. Dkt. # 100-8 (Mayor's

extension). The moratorium establishes a defense to an eviction action that the eviction would

occur during the moratorium "unless the eviction action is due to actions by the tenant

constituting an imminent threat to the health or safety of neighbors, the landlord, or the tenant's

or landlord's household members." Dkt. # 25-8 at p. 12.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 5
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**The six-month defense.** The Council adopted additional eviction protections on May 4, 2020. Dkt. # 17-11 (Ord. 126075). The Council created a defense to an eviction action that the eviction would cause the tenant to vacate within six months after the termination of the eviction moratorium if: (1) the landlord seeks eviction because the tenant violated a 14-day notice to pay rent or vacate for rent due during, or within six months after, the eviction moratorium or habitually failed to pay rent resulting in four or more pay-or-vacate notices in a 12-month period; and (2) the tenant declares they suffered a financial hardship and cannot pay rent. *Id*. at p. 20, § 2.

**The repayment plan requirement.** The Council adopted a repayment plan requirement on May 11, 2020. Dkt. # 17-12 (Ord. 126081). Under it, a tenant who fails to pay rent when due during, or within six months after the termination of, the Proclamation of Civil Emergency may elect to pay the overdue rent in installments over three to six months, depending on the number of months the tenant is in arrears. *Id*. pp. 8–9, § 2. Failure of the landlord to accept payment under the installment schedule constitutes a defense to an eviction action. *Id.* at p. 9. The ordinance also prohibits late fees, interest, and other charges due to late payment of rent from accruing during the Proclamation or within one year after its termination. *Id.*

> D.    **Rental assistance efforts will take time and will not fully alleviate economic disruptions and housing stability exacerbated by the pandemic.**

Even before the pandemic, research showed that low-income households are most likely to be evicted where stagnant wages and inadequate welfare cannot keep up with increases in rent. *See* Dkt. # 100-5 (Timothy Thomas, *et al.*, THE STATE OF EVICTIONS: RESULTS FROM THE UNIVERSITY OF WASHINGTON EVICTIONS PROJECT (updated Feb. 17, 2019)). To have afforded to rent an average-priced home in King County in 2019, where rents had reached $2,200, tenants needed to make about $90,000. *Id.* In 2017, 46% of Washington households were rent burdened

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 6
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1   (contributing over 30% of household income), with about half of those households contributing

2   over 50% of their income to rent. *Id.*

3          The pandemic has increased economic and housing disruptions. Many tenants remain at

4   risk of eviction over a year into the pandemic. According to estimates, as of March 29, 2021

5   about ten percent of Washington households were behind on rent, 44,270 King County

6   households were behind on rent, and the rent debt per household in King County was $4,903.

7   Dkt. # 100-6 (U.S. Census Bureau Household Pulse Survey); Dkt. # 100-7 (National Equity

8   Atlas Rent Debt Graphics).

9          Local governments have implemented a variety of rental assistance programs to help

10  tenants by making rental payments to their landlords. The City, in partnership with other entities,

11  raised millions and expanded the Home Base Rental Assistance Program in April 2020. Dkt.

12  # 102 (Alvarado Decl.); Dkt. # 26-1 (attachment to original Alvarado Decl.). The King County

13  Eviction Prevention & Rental Assistance Program ("EPRAP') funded approximately $47 million

14  in August 2020 through programs designed to distribute rental assistance quickly, efficiently, and

15  equitably. *See generally* Dkt. # 101 (Ellerbrook Decl.). By the end of 2020, EPRAP provided

16  rental assistance to just over 9,000 landlords while receiving 25,000 landlord and tenant interest

17  forms, with the average landlord receiving just over $4,100 in rental assistance. Dkt. # 101.

18         Officials expect subsequent versions of City and County rental assistance programs to

19  appropriate additional federal stimulus funds by mid-May 2021, including $22.7 million through

20  the City and approximately $145 million through the County. Dkt. # 101, Dkt. #102. Based on

21  prior funding administration, those officials estimate that landlords will receive funding several

22  weeks after landlords or tenants apply for rental assistance. Dkt. # 101-1 at p. 8; Dkt. # 102.

23  Programs involving community-based organizations distributing targeted rental assistance to

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 7
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

certain populations may take additional time to disburse funds. Dkt. # 101; Dkt. # 102 The

County estimates that even with the additional funding, about 30,000–40,000 households will

still need rental assistance—and some households may still require assistance even if they

received funds in 2020. Dkt. # 101.

> **E.     Plaintiffs sued and the court denied their motion for a preliminary injunction.**

Plaintiffs sued on September 3, 2020, pressing facial and as-applied challenges to the

City's eviction moratorium, six-month defense, and repayment plan requirement, as well as

Washington's eviction ban. Dkt. # 1 (Complaint). They seek injunctive and declaratory relief

only; not damages. *Id.* On September 21, 2020, Plaintiffs filed a motion for preliminary

injunction, Dkt. # 16, which the Court denied. Dkt. # 63 (Report and Recommendation); Dkt.

# 78 (Order Adopting Report and Recommendation).

The sole individual Plaintiff, Karvell Li, voluntarily withdrew, leaving only the other

two, corporate Plaintiffs: El Papel LLC and Berman 2 LLC. Dkt. # 84 (Stipulation of Voluntary

Dismissal of Plaintiff Karvell Li). Plaintiffs filed an amended complaint on January 14, 2021.

Dkt. # 81 (Corrected First Amended Complaint).

The parties have agreed to resolve this case through the cross-motions for summary

judgment they now bring to the Court. Dkt. # 90 (Order Granting Stipulated Motion Regarding

Summary Judgment Briefing Schedule).

## III.     AUTHORITY

There is no genuine dispute as to any material fact and the City is entitled to judgment as

a matter of law because Plaintiffs lack standing to maintain this action and their Contract Clause

and takings claims fail. *See* Fed. R. Civ. P. 56(a).

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 8
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1

### A.    Plaintiffs lack standing to maintain this action.

2

####        1.    Because the CDC Order may protect their tenants, Plaintiffs lack
             standing to challenge the City's moratorium or six-month defense.

3

4    To have standing, a plaintiff must prove it is likely, not merely speculative, that the relief

5    they request will redress the injury they seek to avoid. *Lujan v. Defenders of Wildlife*, 504 U.S.

6    555, 560–61 (1992). Relief from one law cannot redress a claimed injury if the relief leaves in

place another law causing the same injury. *See*, *e.g.*, *Maverick Media Group, Inc. v.*

7    *Hillsborough County, Fla.*, 528 F.3d 817, 820–21 (11th Cir. 2008); *American Waterways*

8    *Operators v United States Coast Guard*, ___ F. Supp. 3d ___, 2020 WL 360493, at *4 (D. Mass.

9    Jan. 22, 2020). Plaintiffs cannot prove redressability as to the City's moratorium because

10   Plaintiffs do not challenge the CDC Order, which has been extended at least through this June

11   and causes the same alleged injury by imposing a moratorium on evictions. *See* Dkt. # 25-5

12   (CDC Order); Dkt. # 100-2 (latest CDC extension).[2] Depending on further extensions of the

13   CDC Order, the same might be true of the six-month defense if it overlaps with an extended

14   CDC Order.

15       Plaintiffs have not shown that the CDC Order fails to cover their tenants. To the contrary,

16   Plaintiffs suggest the Order would protect their tenants, casting the Order as "a backstop should

17   the Court enjoin the state and local eviction bans." Dkt. # 16 at p. 29 (Plaintiffs' Motion for

18   Prelim. Injunction). Plaintiffs can merely speculate they "may be able to evict tenants who are

19   not making any partial payments under the federal ban," *id.*, but offer no evidence supporting

20   that assertion. *See* Dkt. #s 18–20 (Plaintiff declarations). *See also* Dkt. # 100-3 (Berman 2 LLC's

21

22   [2] A federal court recently vacated the CDC Order, but administratively stayed that ruling to resolve an emergency
motion for a stay pending appeal. *Alabama Ass'n of Realtors v. United States Dept. of Health and Human Services*,
No. 20-cv-3377 (DLF), 2021 WL 1779282 (D.D.C. May 5, 2021) (Mem. Op.); *id.*, Minute Order (May 5, 2021)
23   (granting administrative stay).

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 9
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Answers to City of Seattle's First Interrogatories); Dkt. # 100-4 (El Papel LLC's Answers to City of Seattle's First Interrogatories). The only Plaintiff who alleged that the CDC Order did not protect his tenant (due to earning high income) was Karvell Li, who has been dismissed. Dkt. # 51 at p. 2 (Second Li Decl.); Dkt. # 84 (Stipulation of Voluntary Dismissal).

Because Plaintiffs have not shown that the CDC Order fails to cover their tenants, Plaintiffs cannot prove that a decision invalidating the City's moratorium or six-month defense—but leaving the CDC Order in place—is likely to redress their claimed injury of being prohibited from evicting tenants. *Cf. Maldonado v. Morales*, 556 F.3d 1037, 1043–44 (9th Cir. 2009) (finding standing if a decision invalidating a challenged law would apply with equal force to a similarly-worded unchallenged law, likely allowing the plaintiff to surmount the unchallenged law too). The only Plaintiff that pleaded that the moratoria prevented it from enforcing lease terms against its holdover tenants was El Papel. *See* Dkt. # 81 at p 7. El Papel provides in discovery that those tenants have since vacated, which eliminates any injury on those grounds. Dkt. # 100-4 at pp. 12–14. Because the remaining Plaintiffs leave this Court to provide piecemeal and incomplete relief that Plaintiffs cannot demonstrate will redress their claimed injury, they lack standing.

### 2.   Because Plaintiffs have not set forth evidence that tenants are paying or will pay rent through an alternative payment plan, Plaintiffs lack standing to challenge the repayment plan requirement.

Plaintiffs also lack standing to challenge the repayment plan requirement. Because Plaintiffs have not shown that a tenant has elected, or will elect, to pay in installments under the rent repayment plan requirement, Plaintiffs cannot prove injury in fact, a key component of standing. *See Lujan*, 504 U.S. at 560 (injury requirement). The injury must be actual or imminent, not conjectural. *Id*. Plaintiffs cannot rest on "mere allegations," but must "set forth . . .

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 10
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

specific facts." *Id.* at 561. Injury in fact requires an intent that is concrete, not one with "some day intentions." *Carney v. Adams*, 141 S. Ct. 493, 502 (2020). El Papel and Berman 2 indicate that none of their tenants is paying rent through an installment plan and concede that they are unaware of any tenant's intent to use such a plan. Dkt. # 100-3 at pp. 14–16 (Berman 2 LLC's Answers to City of Seattle's First Interrogatories); Dkt. # 100-4 at pp. 14–16 (El Papel LLC's Answers to City of Seattle's First Interrogatories). Because Plaintiffs do not set forth specific facts about how the repayment plan will injure them, they lack standing to challenge it.

> **B.   Plaintiffs' Contract Clause claim fails.**

"No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const., Art. I, § 10, cl. 1. "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 434 (1934)).

The threshold issue in the Contract Clause inquiry is "whether the . . . law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018) (citations omitted). If a plaintiff proves a substantial impairment, "the inquiry turns to the means and ends of the legislation. In particular, the Court has asked whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* at 1822. Plaintiffs cannot establish a substantial impairment of a contractual relationship. Even if they could, they trip over the rest of the inquiry.

> **1.   The City's enactments do not substantially impair a contractual relationship.**

In assessing whether a law substantially impairs a contractual relationship, "the Court has considered the extent to which the law undermines the contractual bargain, interferes with a

party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1821–22.

>    a.    **The enactments could not interfere with Plaintiffs' reasonable expectations given the highly regulated nature of the residential rental business.**

In assessing the reasonableness of a party's expectations, courts "are to consider whether the industry the complaining party has entered has been regulated in the past." *Energy Reserves*, 459 U.S. at 411. *Accord Veix v. Sixth Ward Bldg. and Loan Ass'n*, 310 U.S. 32, 37–38 (1940).

The residential rental business is highly regulated. That is true nationally. *See, e.g.*, *Yee v. City of Escondido*, 503 U.S. 519, 528–29 (1992) (recognizing the Court's approval of various types of landlord-tenant regulations). And it is especially true in Washington and Seattle. The Residential Landlord Tenant Act ("RLTA," RCW ch. 59.18) regulates such aspects of the landlord-tenant relationship as: establishing a duty to keep the premises fit for human habitation (RCW 59.18.060); requiring notice of rent increases (RCW 59.18.140); and regulating late fees (RCW 59.18.170), notices of termination (RCW 59.18.200), tenant screening (RCW 59.18.257), and security deposits (RCW 59.18.260–.280). The Forcible Entry and Forcible and Unlawful Detainer Act (RCW ch. 59.12) and the RLTA regulate evictions, including the bases and process for eviction. *See* RCW ch. 59.12, RCW 59.18.365–.410. And the City's Just Cause Eviction Ordinance provides a defense for an eviction under certain circumstances or for a cause not enumerated in the Ordinance. *See* Dkt. # 17-11 at pp. 9–21 (amending the Ordinance).

Under this pervasive regulatory scheme, the City's enactments do not substantially impair Plaintiffs' contractual relationships because landlords reasonably should have expected amendments temporarily delaying their ability to pursue evictions or back rent. "The parties may rely on the continued existence of adequate statutory remedies for enforcing their agreement, but

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 12
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

they are unlikely to expect that state law will remain entirely static. Thus, a reasonable

modification of statutes governing contract remedies is much less likely to upset expectations

than a law adjusting the express terms of an agreement." *United States Trust Co. of New York v.*

*New Jersey*, 431 U.S. 1, 19 n.17 (1977).

Plaintiffs misplace reliance on *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), to

advocate a different result. Dkt. # 93 at p. 17. *Patel* involved no Contract Clause claim—it

considered whether an industry had such a history of governmental oversight that a proprietor

could have no reasonable expectation of privacy under the Fourth Amendment. *Patel*, 576 U.S.

at 424.

> **b.     The enactments neither significantly undermine Plaintiffs'
> contractual bargain nor prevent them from safeguarding or
> reinstating their rights.**

The City's enactments do not significantly undermine Plaintiffs' contractual rights, which

Plaintiffs may still safeguard. The enactments do not absolve tenants from their obligation to pay

rent. The eviction moratorium and six-month defense at most delay the landlords' ability to

pursue one statutory remedy they have for nonpayment of rent (eviction) and the repayment plan

requirement allows tenants to elect to pay overdue rent in installments and prevents eviction

while they do so.

Once those protections and any installment repayment plan end, landlords may pursue

evictions to regain possession, recover all rent they are owed, and seek damages for fair rental

market value from a tenant holding over. RCW 59.18.410; *Owens v. Layton*, 133 Wn. 346, 347–

48, 233 P. 645 (1925). Indeed, by allowing tenants extra time to pay overdue rent, the repayment

plan requirement could increase the likelihood of landlords receiving back rent without resorting

to litigation.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 13
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### c.      Plaintiffs' arguments for substantial impairment fail.

Plaintiffs err in contending that the City's enactments substantially impair Plaintiffs' leases "by removing the key enforcement mechanism" of eviction. *See* Dkt. # 93 at p. 13. The City's enactments do not "remove" the right to pursue an eviction or back rent—they only delay that pursuit. Plaintiffs' contention that substantial impairment occurs when a law "handicaps enforcement" of an obligation is legally unsupported. *Id*. Plaintiffs invoke a sentence from *Lynch*: "Contracts between individuals or corporations are impaired within the meaning of the Constitution (article 1, s 10, cl. 1) whenever the right to enforce them by legal process is taken away or materially lessened." *Id*. (quoting *Lynch v. United States*, 292 U.S. 571, 580 (1934)). But that statement is *dicta*—*Lynch* turned on whether the United States could be sued without its consent. *Lynch*, 292 U.S. at 580.

Plaintiffs then cite cases from the 1800s, focusing on the distinction they drew between "the obligation of the contract" and the "remedy." Dkt. # 93 at pp. 13–14. That language is irrelevant because the remedy/obligation distinction is "now largely an outdated formalism." *U.S. Trust*, 431 U.S. at 19 n.17. Those cases—none of which dealt with today's regulated landlord-tenant relationship—do not replace modern Contract Clause jurisprudence with a rule that any modification of the ability to enforce a contract constitutes a substantial impairment.

As case law cited by Plaintiffs points out (Dkt. # 93 at p. 14), "[t]he obligations of a contract long have been regarded as including not only the express terms but also the contemporaneous state law pertaining to interpretation and enforcement." *U.S. Trust*, 431 U.S. at 19 n.17. This does not mean that any adjustment of statutory remedies constitutes a substantial impairment—the same case makes clear that "[i]t is not always unconstitutional . . . for changes

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 14
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

in statutory remedies to affect pre-existing contracts." *Id.* "[O]bligations as well as remedies may be modified without necessarily violating the Contract Clause." *Id.*

*Blaisdell*—decided after the ancient case law Plaintiffs cite—rejects Plaintiffs' argument that any change to the law governing enforcement of a contract violates the Contract Clause. *Blaisdell* upheld against a Contract Clause challenge a new statute that allowed the district court to extend the mortgage redemption period beyond the period provided under the law in effect when the contract was made. *Blaisdell*, 290 U.S. at 416, 447. Because *Blaisdell* rejects the contention—now asserted by Plaintiffs—that an extension of a mortgage redemption period is automatically a substantial impairment, *Blaisdell* undermines Plaintiffs' argument that a delay in the ability to evict is, by analogy, automatically a substantial impairment. Dkt. # 93 at p. 15. Plaintiffs gain nothing from mischaracterizing Defendants' temporary eviction moratoriums as "bar[ring] landlords from exiting the contract." Dkt. # 93 at p. 16. The enactments here simply interpose a delay, just like the statute in *Blaisdell*.

*W.B. Worthen Co. ex rel Bd. of Com'rs of Street Improvement Dist. No. 513 v. Kavanaugh*, 295 U.S. 56 (1935), cannot support Plaintiffs' argument that a delay in the ability to enforce a contract automatically constitutes a substantial impairment. Dkt. # 93 at p. 16. *W.B. Worthen* considered the cumulative effect of the restrictions in that case; it did not focus on any one restriction. *W.B. Worthen*, 295 U.S. at 61–62.

Plaintiffs misplace reliance on two recent federal district court cases for the proposition that "COVID-19 eviction bans cause a substantial impairment." Dkt. #93 at p. 15. Although *Apartment Ass'n* held that the plaintiff there was likely to demonstrate a substantial impairment of its contractual rights, the court rejected the argument Plaintiffs make: that the eviction moratorium deprived landlords of the "primary enforcement mechanism embodied in residential

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 15
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

leases" and that contract enforcement measures are sacrosanct. *Apartment Ass'n*, 2020 WL 6700568 at *4. *Baptiste* held that it was impossible on a motion for preliminary injunction to determine whether there was a substantial impairment. *Baptiste,* 490 F. Supp. 3d at 385.

Finally, Plaintiffs err in characterizing the City's repayment plan requirement as "clos[ing] off other avenues for enforcing rent" or depriving landlords of "the right to sue for delinquent rent." Dkt. # 93 at pp. 15, 25. The repayment plan requirement allows tenants to pay overdue rent—it bars no action for contract damages should the tenant not meet its rent obligation.

### 2.    The City's enactments advance significant and legitimate public purposes.

Even though the Court need not undertake the rest of the Contract Clause inquiry because Plaintiffs fail to pass the threshold step of substantial impairment, the City's enactments pass the other steps, the first of which asks whether the enactments advance a significant and legitimate public purpose. *Sveen*, 138 S. Ct. at 1822.

The eviction moratorium has the purpose of protecting "the public health, safety, and welfare by reducing the number of individuals and families entering into homelessness," thereby "lowering the number of people who may develop the disease or spread the disease." Dkt. # 25-8 p. 11 (Resolution 31938). Recognizing that the City has an interest in avoiding the spread of COVID-19 and "that economic impacts from the COVID-19 emergency are likely to last much longer than the civil emergency itself," the City Council adopted the six-month defense to "protect public health," "support stable housing," and "decrease the likelihood that individuals and families will fall into homelessness." Dkt. # 17-11, pp. 3, 8 (Ordinance 126075). The rent repayment requirement is based on a similar need and seeks to mitigate the pandemic's housing and economic impacts. Dkt. # 17-12, pp. 3, 8 (Ordinance 126081).

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 16
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

These purposes are "significant and legitimate" within the meaning of the Contract Clause analysis. *Veix*, 310 U.S. at 38–39 (state's authority over contracts includes "health, morals and safety" and "economic needs as well"). *See also Blaisdell*, 290 U.S. at 436–38. If measures to address the health, economic, and homelessness consequences of a pandemic do not pass muster, little could.

> 3.      **Especially applying required deference, the City's enactments are drawn appropriately and reasonably to advance their purposes.**

The City's enactments are also justified under the final step of the Contract Clause inquiry, in which the court asks "whether the state law is drawn in an 'appropriate' and 'reasonable' way" to advance its purposes. *Sveen*, 138 S. Ct. at 1822.

> a.      **The Court must defer to lawmakers' judgment when government is not a contracting party.**

For this step in the Contract Clause inquiry, when the government is not a contracting party, a court defers to lawmakers' judgment about the choice of means to implement the law's public purposes. *Energy Reserves*, 459 U.S. at 412–13, 418. *See also Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 505–06 (1987) ("We refuse to second-guess the Commonwealth's determination that these are the most appropriate ways of dealing with the problem.").

Plaintiffs ignore the required deference when they suggest that, even when government is not a contracting party, the law must be "*precisely* and reasonably designed to meet" its objective. Dkt. # 93 at p. 13 (emphasis added). None of the cases Plaintiffs cite supports a rule that, when the state is not a contracting party, the court may independently determine whether the legislative purposes could have been achieved by means that impair the contract less. The

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 17
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

"test is not strict scrutiny, which would require that there was no less restrictive alternative to the terms of the Moratorium." *Baptiste*, 490 F. Supp. 3d at 385 n.10.

Plaintiffs misconstrue *U.S. Trust* in contending that, in the final step of the Contract Clause inquiry, a court may inquire whether a "more moderate course would serve [the government's] purposes equally well." Dkt. # 93 at p. 20 (citing *U.S. Trust*, 431 U.S. at 31). Because *U.S. Trust* involved a contract to which the state was party, the Court did not accord the government the deference the Court recognized would be due if the challenged law impaired only a private contract. *U.S. Trust*, 431 U.S. at 22–23, 25–26.

Plaintiffs also cite *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004), but it too recognized the deference due to lawmakers' judgment when the state is not a contracting party. *See* Dkt # 93 at p. 13.

> **b.    The City's judgment that the enactments appropriately and reasonably advance their public purposes is entitled to deference.**

This Court should defer to the City's judgment that a pause on evictions, and a temporary defense to evictions where tenants pay rent according to an installment schedule, would mitigate the pandemic's harms. The City reasonably determined the eviction moratorium and six-month defense advance the public health purpose of reducing the number of people contracting and spreading COVID-19. Evidence indicates that preventing evictions reasonably achieves this purpose. *See supra*, § II. The pandemic has increased unemployment, which predictably increases evictions. *See id*. Eviction moratoria help prevent the spread of COVID-19 by allowing those who become ill to self-isolate, supporting stay-at-home and social distancing directives to mitigate the spread of COVID-19, and keeping individuals from moving into congregate settings where COVID-19 risk is higher. *See id*.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 18
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The six-month defense and repayment plan requirement are also intended to address the pandemic's persistent economic impacts and prevent homelessness. *See id*. The City Council recognized that the economic impacts from the COVID-19 emergency are likely to last longer than the civil emergency itself. *See* Dkt. # 17-11 at p. 3; Dkt. # 17-12 at p. 2. Even over a year into the pandemic, the economic recovery is still incomplete and many tenants remain unable to timely pay rent. *See supra*, § II. The six-month defense and repayment plan requirement provide tenants with additional time to regain their economic footing without being evicted so they can better avoid the harms, including homelessness, that flow from eviction.

### c. Federal courts have uniformly sustained similar measures.

Every federal district court case cited by Plaintiffs, and every similar case of which the City is aware, has rejected Contract Clause challenges to temporary protections against evictions adopted during the COVID-19 pandemic. *E.g.*, *Heights Apts.*, 2020 WL 7828818, at *11–12; *Apartment Ass'n*, 2020 WL 6700568, at *3–8; *Baptiste*, 490 F. Supp. 3d at 382–87; *HAPCO*, 482 F. Supp. 3d at 349–56; *Auracle Homes*, 478 F. Supp. 3d. at 223–26; *Elmsford,* 469 F. Supp. 3d. at 171–72.

Plaintiffs' suggestions that this Court should reach a different result because of the specific facts of those cases fails. Because the City's enactments are drawn reasonably and appropriately to advance their purposes, it does not matter that "[o]ther challenged eviction bans still allow landlords to evict in a broader range of circumstances." *See* Dkt. # 93 at p. 24. And because the duration of the City's enactments is reasonable in light of their purposes, it also is of no consequence that "[o]ther challenged eviction bans have been shorter in duration." *Id*. at p. 25 The City's eviction moratorium is set to expire on June 30, 2021— a reasonable duration given the continuing public health need to prevent the spread of COVID-19 as case numbers remain

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

high and many persons eligible for vaccinations have yet to receive them. *See supra*, § II.

Similarly, the duration of the six-month defense—which starts when the eviction moratorium

ends—is reasonable given the defense's purpose of mitigating economic and housing impacts

and preventing homelessness. The economy has yet to fully recover and many tenants remain

unable to timely pay rent. *See supra*, § II.

Plaintiffs misread *Baptiste*, which denied a motion for preliminary injunction against an

eviction moratorium, considering the conditions in existence when the moratorium was enacted.

*Baptiste*, 490 F. Supp. 3d at 370–71. The court noted that if, after its ruling, the moratorium was

further extended and the court needed to reach the merits, the facts then in existence could be

relevant. *Id.* at 371, 374. At most, *Baptiste* suggests that this Court, when addressing the merits

on the current cross-motions, may consider facts existing now. The City's enactments are drawn

reasonably and appropriately given the situation that existed when they were adopted and now.

d.    <b>Plaintiffs' arguments that the enactments are insufficiently<br>tailored are untenable given the deference owed lawmakers.</b>

In denying Plaintiffs' motion for a preliminary injunction, this Court found that

"plaintiffs have been unable to demonstrate that they have a likelihood of success in claiming

that the moratoria violate the Contract Clause because the moratoria are designed to address vital

public interests during a national public crisis." Dkt. # 63 at p. 22 (Report and

Recommendation). Plaintiffs point to no change in circumstances or the law justifying a different

result at the merits stage.

Rather, Plaintiffs just rehash arguments this Court has rejected, especially that the City's

enactments should have been more narrowly tailored. *See* Dkt. # 93 at pp. 21–23. Those

arguments—which fall under three broad categories—remain unpersuasive because they fail to

defer to lawmakers' judgment about the choice of means to implement public purposes.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-<br>MOTIONS FOR SUMMARY JUDGMENT - 20<br>*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**<br>Seattle City Attorney<br>701 Fifth Ave., Suite 2050<br>Seattle, WA 98104-7095<br>(206) 684-8200

**Limiting to hardships.** On Plaintiffs' motion for a preliminary injunction, this Court was "not persuaded by plaintiffs' arguments that protections applying equally to well-to-do tenants as to low-income tenants during the COVID-19 health crises are unreasonable." *See* Dkt. # 63 at p. 20. Plaintiffs offer no reason for the Court to change its mind.

It does not matter that the enactments' protections are not limited to those who prove they cannot pay or would be unable to find alternative housing if evicted. *Cf.* Dkt. # 93 at p. 21. Pausing evictions regardless of tenants' financial circumstances serves the City's COVID-19 public health purpose, and the fact that the City's enactments might protect some tenants who would not become homeless upon eviction does not violate the Contract Clause given the deference owed lawmakers. Besides, the six-month defense requires a tenant to declare that they cannot pay rent because of financial hardship—Plaintiffs' complaint that such hardship "need not be caused by the pandemic" rings hollow given the obvious inseparability of the pandemic and the current economic crisis many tenants face. *See* Dkt. # 93 at p. 22.

The case law Plaintiffs cite does not help them. *W.B. Worthen* featured the government as contracting parties, so no deference was due. *W.B. Worthen*, 295 U.S. at 57–59. *Cf.* Dkt. # 93 at p. 21. And although the moratorium upheld in *HAPCO* required tenants to certify a financial hardship due to a COVID-19-related condition, the court did not mention that feature in rejecting a Contract Clause challenge. *HAPCO*, 482 F. Supp. 3d at 349–56. *Cf.* Dkt. # 93 at p. 24.

**Tailoring to an emergency.** Even though a substantial impairment of a contractual relationship need not be justified by an emergency, *Energy Reserves*, 459 U.S. at 412, and the City Council determined "that economic impacts from the COVID-19 emergency are likely to last much longer than the civil emergency itself" (Dkt. # 17-11 at p. 3; Dkt. # 17-12 at p. 2), Plaintiffs insist that the City's enactments are insufficiently tailored to an emergency.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 21
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs cite a statement in *Allied Structural Steel Co. v Spannaus,* 438 U.S. 234, 242–43 (1978), that a factor in *Blaisdell* was that the law was appropriately "tailored to the emergency that it was designed to meet" and note that *W.B. Worthen Co. v. Thomas,* 292 U.S. 426 (1934)*,* invalidated a measure because it was not "precisely and reasonably designed to meet" a grave temporary emergency. Dkt. # 93 at pp. 13, 20. *Allied Structural Streel*—which did not turn on tailoring to an emergency—predates *Energy Reserves*'s holding that a court must defer to legislative judgment when the government is not a contracting party. And cases after *Blaisdell* and *W.B. Worthen v. Thomas* abandoned the existence of an emergency and the challenged measure's limited duration as requirements in determining an impairment's reasonableness. *U.S. Trust*, 431 U.S. at 22 n.19 (1977).

Plaintiffs mistakenly contend that the six-month defense and repayment plan requirement are insufficiently tailored because they extend beyond the Mayor's Proclamation of Civil Emergency. *See* Dkt. # 93 at pp. 22. The six-month defense begins when the eviction moratorium ends, which is now set to occur June 30, 2021. *See* Dkt. # 100-8. It is unclear whether the Mayor's Proclamation of Civil Emergency will terminate before June 30, 2021.[3] The repayment plan requirement covers periods before and after the Proclamation. To the extent the six-month defense and repayment plan requirement overlap the Proclamation, Plaintiffs are left contending they know best when the pandemic emergency has passed—a contention that would falter on the deference owed legislative judgment. To the extent the measures extend beyond the

---

[3] Plaintiffs mischaracterize the start date of the six-month defense. They quote language from the Proclamation of Emergency but misattribute it to the Mayor's eviction ban order. *Compare* Dkt. # 93 at p. 22, lines 8-10 (Plaintiffs' motion) *with* Dkt. # 17-6 at p. 5 (Proclamation).

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 22
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Proclamation, Plaintiffs still would not prevail because the measures are designed not just to limit the disease's spread, but also to mitigate its persistent economic and housing impacts.

Federal courts have recently upheld post-emergency eviction protections as reasonable and appropriate under the Commerce Clause—including measures like the City's rent repayment requirement. *E.g., Apartment Ass'n*, 2020 WL 6700568 at *3, 8 (denying a preliminary injunction against an ordinance allowing tenants one year after the end of a local emergency to make missed rent payments without being subject to eviction); *HAPCO*, 482 F. Supp. 3d at 347, 355 (denying a preliminary injunction against a law allowing tenants nine months after the emergency to pay back rent without being evicted for nonpayment, noting that it was "not unreasonable for City Council to determine that, after the havoc that COVID-19 has wreaked on the economy, renters would need protections that extended past the emergency period"). *See* Dkt. # 17-12 at pp. 8–9 (City's repayment plan requirement allowing installment payments up to a year after the emergency proclamation terminates). *Cf.* Dkt. # 93 at p. 22 (relying on *United Auto., Aerospace, Agr. Implement Workers of Am. Int'l Union v. Fortuno*, 633 F.3d 37, 46 (1st Cir. 2011), even though it did not turn on the duration of an emergency).

**Ensuring continuing payments.**  This Court should not revisit its previous rejection of Plaintiffs' assertion that "the moratoria are unconstitutional because they fail to secure regular rental payments." *See* Dkt. # 63 at pp. 12–14. Plaintiffs cite decisions from the 1800s and early 1900s that long predate modern Contract Clause jurisprudence represented by *Blaisdell*. Dkt. # 93 at pp. 18–19 (citing *Block v. Hirsch*, 256 U.S. 135 (1921); *Barnitz v. Beverly*, 163 U.S. 118 (1896); *Howard v. Bugbee*, 65 U.S. 461 (1860); *Bronson v. Kinzie*, 42 U.S. 311 (1843)).

*Blaisdell* provides Plaintiffs no support. Dkt. # 93 at pp. 19–20. They confuse *Blaisdell's* facts (a statute requiring payment of the property's rental value to extend mortgage redemption)

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 23
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

Peter S. Holmes
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

with its holding that the statute's contract adjustment had to be "upon reasonable conditions." *Blaisdell*, 290 U.S. at 416–17, 445. While the payment of rental value was a factor *Blaisdell* considered, the Supreme Court has rejected the idea that specific factors relied on in *Blaisdell* are always required—they are subsumed in the overall determination of reasonableness. *U.S. Trust*, 431 U.S. at 22 n.19.

Rejecting the reading of *Blaisdell* advanced by Plaintiffs, a federal court recently ruled that a city need not require regular rental payments to impose an eviction moratorium. *Apartment Ass'n*, 2020 WL 6700568, at *5–7. In finding the moratorium to be reasonable, the court reasoned that "although the Moratorium does not mandate that tenants pay a reasonable, or any, amount of rent, neither has the City Council simply thrown landlords to the wolves," noting that the city had implemented a substantial rental assistance program that paid rent subsidies to landlords. *Id.* at *7. The City and King County have similarly implemented substantial rental assistance programs that pay rent to landlords whose tenants cannot do so. *See* Dkt. # 101 (Ellerbrook Decl.); Dkt. # 102 (Alvarado Decl.).

## C.     Plaintiffs' takings claim fails.

### 1.     Injunctive relief is inappropriate for a takings claim, as this Court already ruled.

In denying Plaintiffs' preliminary injunction motion, this Court agreed with Defendants "that [P]laintiffs cannot obtain injunctive relief for a violation of the Takings Clause because even if there is an alleged 'taking,' money damages are an available remedy." Dkt. # 63 at p. 22 (Report and Recommendation). Plaintiffs offer this Court no reason to change its mind—they just rehash their arguments. *Compare* Dkt. # 93 at pp. 28–29 (Pls.' Mot. for Sum. Jud.) *with* Dkt. # 16 at p. 26 (Pls.' Mot. for Prelim. Injunct.) *and* Dkt. # 40 at pp. 18–19 (Pls.' Reply ISO Mot. for Prelim. Injunct.). Those arguments gain no currency through repetition.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 24
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

Peter S. Holmes
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The rule is clear: injunctive relief is not available for a takings claim because the Takings Clause does not bar the government from taking property, only taking it without compensation. *See* Dkt. # 63 at pp. 22–25 (Report and Recommendation). *Accord Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1016 (1984); *In re Nat'l Sec. Agency Telecomm. Records Litig.,* 669 F.3d 928, 932 (9th Cir. 2011); *Baptiste*, 490 F. Supp. 3d at 387–88; *HAPCO*, 482 F. Supp. 3d at 358. As this Court observed, an injunction here is unnecessary because a court could readily calculate just compensation if Plaintiffs established a regulatory taking. Dkt. # 63 at p. 24.

None of the authority Plaintiffs invoke revives injunctive relief for a takings claim. *See* Dkt. # 93 at pp. 23–24. They cite *Peters* from the Seventh Circuit, but it repeated the rule that "ordinarily, compensation, not an injunction, is the appropriate remedy for a taking" and mentioned an exception for an allegation of an unlawful taking for a private (not public) use—an allegation Plaintiffs do not make. *Peters v. Village of Clifton*, 498 F.3d 727, 731–32 (7th Cir. 2007). Plaintiffs mistakenly invoke a passage in *Peters* noting an exception due to the unavailability or inadequacy of just compensation. That was an exception not to the rule banning injunctive relief for takings claims, but to the requirement to exhaust state remedies before pursuing a takings claim in federal court—a requirement the Supreme Court later overruled. *Id.* at 731 ("If a property owner demonstrates that state procedures for obtaining just compensation are either unavailable or inadequate, the claim is immediately ripe in federal court") (citing *Williamson County Reg'l Planning Comm' v. Hamilton Bank,* 473 U.S. 172 (1985), *overruled by Knick*, 139 S. Ct. at 2170).

Plaintiffs point to *Phillip Morris*, which granted injunctive relief for a takings claim, and *D.A.B.E.*, which denied it, but neither decision suggested the litigants or courts considered the

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 25
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Supreme Court's rule against injunctive relief for such claims. *See Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670 (1st Cir. 1998); *D.A.B.E., Inc. v. City of Toledo*, 292 F. Supp. 2d 968 (N.D. Ohio 2003).

*Goodwin*—the Florida District Court ruling on which Plaintiffs principally rely—misread *Peters*, *Phillip Morris*, and *D.A.B.E* as creating an exception to that rule. *See Goodwin v. Walton County*, 248 F. Supp. 3d 1257, 1266 (N.D. Fla. 2017).

Plaintiffs miscast a law review essay as "finding that courts generally allow anticipatory relief in order to avoid duplicative litigation." Dkt. # 93 at p. 29 (citing Thomas W. Merrill, *Anticipatory Remedies for Takings*, 128 Harv. L. Rev. 1630 (2015)). The essay merely discusses what three U.S. Supreme Court decisions "suggest" about when declaratory—not injunctive— relief "may be useful." Merrill, 128 Harv. L. Rev. at 1663. As for injunctive relief, the essay suggests two "rare" circumstances "where injunctive rather than declaratory relief would be appropriate"—neither of which, even if a court had recognized it, relates to Plaintiffs' claims. *Id.* at 1632 n.14 (courts "should be allowed to enjoin" under the Takings Clause "when the government seeks to condemn property for something other than a public use . . . or when it lacks legislative authority to take private property").

*Kucera*—a Washington Supreme Court ruling Plaintiffs cite—undercuts Plaintiffs' claimed injunctive relief. Dkt. # 93 at p. 29 (citing *Kucera v. Department of Transp.*, 140 Wn.2d 200, 995 P.2d 63 (2000)). *Kucera* involved no takings claim, just a claim for ongoing damages from state ferries' wakes. *Kucera*, 140 Wn.2d at 203–06. Even for that claim, *Kucera* dissolved a lower court's injunction because the "injuries complained of by the property owners—decreased property values and damage to bulkheads, landscaping, and other structures—may be easily

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 26
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

compensated by money damages." *Id.* at 211. Plaintiffs offer no reason why their claimed harms would be any harder to calculate than those in *Kucera*.

### 2. The City's measures effect no taking.

No matter the relief Plaintiffs seek,[4] their takings claim lacks merit. Government implicates the Takings Clause by directly appropriating or invading private property or by effectively ousting the owner from their domain through regulation. *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 537–39 (2005). Plaintiffs claim a *Loretto*-style *per se* regulatory taking: a regulation forcing them to suffer a physical invasion. Dkt. # 93 at pp. 27–28. *See Lingle*, 544 U.S. at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)).

That claim fails. The Supreme Court and Ninth Circuit reject claims that regulating the landlord-tenant relationship can amount to a taking: "This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto*, 458 U.S. at 440. *Accord Yee*, 503 U.S. at 528–29; *FCC v. Florida Power Corp.*, 480 U.S. 245, 252 (1987); *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1126–27 (9th Cir. 2013). This is especially true of a claimed *per se* taking from a regulation allegedly denying a landlord the discretion to exclude individuals who pay on terms the landlord disfavors. *Loretto*—the font of the "physical invasion" test—predicted it would have no dire consequence for tenant-protection laws. *Loretto*, 458 U.S. at 440.

*Yee* proved *Loretto* correct. *Yee* rejected a "physical invasion" claim from mobile home park landlords who complained a law limited their ability to evict tenants who did not pay the

---

[4] The City does not dispute that declaratory relief is available for takings claims. *See* Dkt. # 81 at p. 18 (Plaintiffs' claim for declaratory relief).

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

higher rents landlords demanded. *Yee* at 526–27. *Yee* upheld the law because a landlord may

exclude *all* tenants by ceasing to be a landlord, just not *particular* tenants the landlord disfavors:

> Put bluntly, no government has required any physical invasion of petitioners' property. Petitioners' tenants were invited by petitioners, not forced upon them by the government. While the "right to exclude" is doubtless, as petitioners assert, "one of the most essential sticks in the bundle of rights that are commonly characterized as property," we do not find that right to have been taken . . . .
>
> Because they voluntarily open their property to occupation by others, petitioners cannot assert a *per se* right to compensation based on their inability to exclude particular individuals.

*Id.* at 528, 531 (citations omitted).

*Yee* controls Plaintiffs' takings claim. *Cf.* Dkt. # 93 at pp. 27–28 (Plaintiffs' attempt to

distinguish *Yee*). Like the *Yee* landlords, no Plaintiff alleges they want to abandon the landlord

business—they consent to "invasion" by tenants. Like the *Yee* landlords' claimed right to

exclude tenants who refuse to pay more than less, Plaintiffs assert a right to exclude tenants who

opt to pay later or under a repayment plan. Because that demand finds no purchase in *Loretto*'s

"physical invasion" test, Plaintiffs' takings claim fails. Although *Yee* recognizes that a different

test might govern a law compelling a landlord to "refrain in perpetuity from terminating a

tenancy," *Yee* 503 U.S. at 528, the temporary measures Plaintiffs challenge are no such law.

Other courts recently turning away challenges to rent-delaying tenant protections follow

*Yee* to reject "physical invasion" takings claims. *E.g., Heights Apts.*, 2020 WL 7828818, at *14;

*Baptiste*, 490 F. Supp. 3d at 387–88; *Auracle Homes*, 478 F. Supp. 3d. at 220–21; *Elmsford,* 469

F. Supp. 3d. at 162–64; *Matorin*, No. 2084CV01334, at 19–21; *JL Props. Grp. B*, No. 20-CH-

601, at 38–41. This Court should too.

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 28
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

## IV.    CONCLUSION

The City—like the federal government and state and local governments across the nation—responded to a nearly unprecedented public health and economic crisis by enacting temporary tenant protection measures that delay landlords' ability to pursue rent tenants owe. Landlords may disagree with that approach, but that disagreement has no genuine constitutional dimension—it is a debate over the proper balance to strike as our society works through this crisis and its aftermath. The City respectfully asks this Court to defer to the balance the City struck and grant summary judgment to the City.

Respectfully submitted May 7, 2021.

PETER S. HOLMES
Seattle City Attorney

By:      */s/ Jeffrey S. Weber*, WSBA #24496
         */s/ Roger D. Wynne*, WSBA #23399
         */s/ Derrick De Vera*, WSBA #49954
         */s/ Erica R. Franklin*, WSBA #43477
Seattle City Attorney's Office
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
Ph: (206) 684-8200
jeff.weber@seattle.gov
roger.wynne@seattle.gov
erica.franklin@seattle.gov
derrick.devera@seattle.gov
*Assistant City Attorneys for Defendants City of Seattle and Jenny A. Durkan, in her official capacity as the Mayor of the City of Seattle*

DEFENDANT CITY OF SEATTLE'S OPENING/RESPONSE BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 29
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

Peter S. Holmes
Seattle City Attorney
701 Fifth Ave, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200