The Honorable Richard A. Jones
The Honorable J. Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EL PAPEL, LLC, et al.,

                    Plaintiffs,

      vs.

ROBERT FERGUSON, et al.,

                    Defendants.

No.   2:20-cv-01323-RAJ-JRC

AMICUS BRIEF

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1

**TABLE OF CONTENTS**

Page

2

3   I.    INTRODUCTION ..................................................................................................1

4   II.   ARGUMENT.......................................................................................................2

5         A.    The State and City laws advance two significant and legitimate public
                purposes ...............................................................................................2

6
          B.    The State and City laws are drawn in an appropriate and reasonable
7               way.......................................................................................................3

8               1.    Eviction moratoria reduce the spread of COVID-19 .......................3

9               2.    Permitting tenants to gradually recover from the
                      financial impact of the pandemic is appropriate and
10                    reasonable .................................................................................5

11              3.    Time is needed to implement the new provisions
                      intended to pay landlords and assist tenants ...................................6

12  III.  CONCLUSION....................................................................................................9

13

14

15

16

17

18

19

20

21

22

23

24

- i -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1

## TABLE OF AUTHORITIES

**Page(s)**

2
**Cases**

3
*Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy*,
  54 F. Supp.2d 974 (E.D. Wash. 1999) ......................................................................................1

4
**Statutes**

5
E2SSB 5160, 2021 Laws Ch. 115 ...............................................................................................3, 6, 7

6
Pub. Laws 116-123, 116-136 ...............................................................................................................6

7
Pub. Law 117-2 ....................................................................................................................................6

8
**Regulations**

9
Centers for Disease Control and Prevention, March 31, 2021 Agency Order, 86
  Fed. Reg. 16731, 16733, 16737 .......................................................................................2, 3, 4, 5

10
**Other Authorities**

11
Alicia L. Bannon and Douglas Keith, *Remote Court: Principles for Virtual
  Proceedings During the COVID-19 Pandemic and Beyond*, 115 Nw. U. L.
12
  Rev. 1875 (2021) ............................................................................................................................8

13
Benfer, et al., Eviction, Health Inequity, and the Spread of COVID-19: Housing
  Policy as a Primary Pandemic Mitigation Strategy, Journal of Urban Health
14
  (Nov. 1, 2020) .................................................................................................................................4

15
CFPB, Housing Insecurity and the COVID-19 Pandemic (March 2021) .................................3, 5

16
Horowitz, et al., "A Year Into the Pandemic, Long-Term Financial Impact
  Weighs Heavily on Many Americans" (March 5, 2021) ..............................................................5
17

18
Joint Center for Housing Studies of Harvard University, Renters' Responses to
  Financial Stress During the Pandemic (April 2021) ...............................................................3, 6

19
Nande, et al., The Effect of Eviction Moratoria on the Transmission of SARS-
  CoV-2 (April 15, 2021)....................................................................................................................4

20

21

22

23

24

- ii -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1

**IDENTITY AND INTEREST OF AMICI CURIAE**

2

Amici Northwest Justice Project, King County Bar Association, Building Changes,

3

Washington Low Income Housing Alliance, Skagit Volunteer Lawyer Program, Fred T.

4

Korematsu Center for Law and Equality, Tenants Union of Washington State, American Civil

5

Liberties Union of Washington, Tenant Law Center, and Columbia Legal Services submit this

6

brief based on their experience working with tenants facing eviction and the impact of state and

7

local laws on preventing eviction and reducing the spread of COVID-19.

8

Amicus participation in the district court is allowed, in the discretion of the court, "when

9

the amicus has an interest in some other case that may be affected by the decision in the present

10

case, or when the amicus has unique information or perspective that can help the court beyond

11

the help that the lawyers for the parties are able to provide." *Cmty. Ass'n for Restoration of Env't*

12

*(CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp.2d 974, 975 (E.D. Wash. 1999). Here, all parties

13

have consented to the filing of this brief. The work of the amici is described in their prior motion

14

(ECF #41) for leave to file a brief in connection with plaintiffs' motion for preliminary

15

injunction. As prospective counsel for and providers of service to the thousands of tenants who

16

would face eviction in the event the laws in issue are struck down, and as organizations working

17

to implement the new programs designed to assist landlords and tenants in transitioning from the

18

moratoria, amici not only provide a unique perspective, but have an interest in thousands of

19

potential cases that would be impacted by the decision in this case.

20

**I.   INTRODUCTION**

21

Amici address the question whether the State and City laws in issue are drawn in an

22

appropriate and reasonable way to advance a significant and legitimate public purpose. *See* Dec.

23

2, 2020 Report & Recommendation (ECF #63) at 11.

24

- 1 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## II.     ARGUMENT

### A.     The State and City laws advance two significant and legitimate public purposes

The eviction moratoria and related provisions advance two significant and legitimate public purposes: (1) preventing widespread evictions, and (2) limiting the spread of COVID-19. These two purposes, each significant in its own right, are related, as evictions lead to increased homelessness, which leads to greater spread of the disease.

Plaintiffs' briefing does not address the significance and legitimacy of these two public purposes. Plaintiffs tacitly concede that the government has a significant and legitimate interest in preventing an eviction tsunami and in preventing the spread of COVID-19.

At the time plaintiffs' motion for preliminary injunction was before the Court, the Court found that "the economic hardship caused by COVID-19 will likely result in many renters being unable to pay their rent." Report & Recommendation at 17. *See also* id. at 26-28; Oct. 21, 2020 Amicus Brief (ECF #43) ("Oct. Amicus") at 10-13. The Court determined that "softening the economic blow that this pandemic is having on everyone by providing stable housing for those who would otherwise be evicted" constituted a "'legitimate state interest' of protecting the public from the harms associated with this public emergency," Report & Recommendation at 17-18, and further determined that preventing evictions would serve the public by slowing the spread of COVID-19. Id. at 20, 26; *see also* Oct. Amicus at 14-17.

In the months since the briefing and decision on the preliminary injunction motion, while COVID-19's prevalence has waned, danger from the disease remains.[1] The economic

---

[1] *See, e.g.,* Centers for Disease Control and Prevention, March 31, 2021 Agency Order, 86 Fed. Reg. 16731, 16733, 16737 (May 6, 2021 Declaration of Derrick De Vera Ex. 2) ("March 31, 2021 CDC Order") ("the fundamental public health threat . . . –the risk of large numbers of residential evictions contributing to the spread of COVID-19 throughout the United States – continues to exist."); May 7, 2021 Declaration of Dr. Scott Lindquist ¶ 47.

- 2 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1  devastation the pandemic has caused, through loss of income[2], inability to pay rent[3], and risk of

2  eviction[4], continues to affect tenants. And the risk that "an unprecedented wave of evictions,

3  which would threaten new spikes in SARS-CoV-2 transmission at a critical juncture" continues

4  to exist.[5] Preventing evictions and limiting the spread of COVID-19 remain significant and

5  legitimate public purposes.

6  **B.      The State and City laws are drawn in an appropriate and reasonable way**

7           **1.      Eviction moratoria reduce the spread of COVID-19**

8           This Court has already determined that "most evicted tenants become homeless" and that

9  moratoria on evictions "will keep people in their homes and reduce COVID-19 transmission."

10

11  [2] *See, e.g.,* Joint Center for Housing Studies of Harvard University, Renters' Responses to Financial
Stress During the Pandemic (April 2021) (June 11, 2021 Declaration of Scott Crain Ex. A) ("April 2021
12  Harvard Report") at 1, 7-10, 14-19 (40 percent of renters reported loss of income, including 10 percent
who lost all income and additional 13 percent who lost more than half of income), 20-22 ("renter financial
13  distress remains high"); ESSB 5160 § 1 (May 7, 2021 Declaration of Kathryn Leathers Ex. R) (finding
"unprecedented numbers of layoffs and reduced work hours for a significant percentage of
[Washington's] workforce"); May 7 Declaration of Jim Baumgart ¶¶ 7, 9 & Exs. F-I, P (1.9 million
14  Washingtonians filed initial unemployment claims); May 7 Declaration of Cristina Sepe Ex. H at 1, 4 (5.2
percent unemployment rate for March 2021, more than double rate for February 2020; U-6
15  unemployment rate of 14.8 percent for 2020, approximately double the rate for 2019); May 7 De Vera
Decl. Exs. 1 (net loss of 166,400 nonfarm jobs year over year), 11 (5.2 percent unemployment rate for
16  King County for March 2021, more than double the rate for February 2020); Crain Decl. Ex. B (As of
May 24, 2021, 17.6 percent of Washingtonians experienced loss of income during the preceding four
17  weeks).
[3] *See, e.g.,* CFPB, Housing Insecurity and the COVID-19 Pandemic (March 2021) (Crain Decl. Ex. C)
18  ("March 2021 CFPB Report") at 2 ("we are facing a rental crisis, with over 8 million rental households
behind in their rent"), 6-8, 18; April 2021 Harvard Report (Crain Decl. Ex. A) at 7, 33-37; ESSB 5160
19  (Leathers Decl. Ex. R) § 1 ("Hundreds of thousands of tenants in Washington are unable to consistently
pay their rent."); Baumgart Decl. ¶ 9 & Ex. O (over 300,000 Washingtonians in need of rental assistance);
De Vera Decl. Ex. 7 (over 39,000 King County residents behind in their rent as of March 2021); Crain
20  Decl. Ex. B (As of May 24, 2021, 23.2 percent of Washington tenants expressed no or slight confidence
they could pay next month's rent; 31.3 percent for Black tenants; 34.7 percent for Hispanic tenants).
21  [4] *See, e.g.,* CDC March 31, 2021 Order (De Vera Decl. Ex. 2) at 16734 ("over 4 million adults who are
not current on rent perceive that they are at imminent risk of eviction. A wave of evictions on that scale
22  would be unprecedented in modern times."); March 2021 CFPB Report (Crain Decl. Ex. C) at 14-16;
April 2021 Harvard Report (Crain Decl. Ex. A) at 38-39; Baumgart Decl. ¶¶ 9, 10 & Ex. S.
23  [5] March 31, 2021 CDC Order (De Vera Decl. Ex. 2) at 16737; *see also* id. at 16734 ("[E]victions
substantially contribute to COVID-19 transmission."), 16735 (discussing link between eviction,
24  homelessness, and COVID transmission); Baumgart Decl. ¶ 8 & Exs. J-M; Lindquist Decl. ¶¶ 4, 49-65.

- 3 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1  Report & Recommendation at 20-21, 26. There is ample evidence supporting the Court's

2  conclusion that eviction moratoria reduce the spread of COVID-19.

3        "An analysis of observational data from state-based eviction moratoria in the 43 states

4  and the District of Columbia showed significant increases in COVID-19 incidence and mortality

5  approximately 2-3 months after eviction moratoria were lifted." March 31, 2021 CDC Order (De

6  Vera Decl. Ex. 2) at 16734 (citing Leifheit, et al., Expiring Eviction Moratoriums and COVID-

7  19 Incidence and Mortality (Nov. 30, 2020) (Lindquist Decl. Ex. Q)). Mathematical modeling

8  determined that lifting eviction moratoria created a 40 percent increased risk of contracting

9  COVID-19 among those who were evicted and those with whom they subsequently shared

10  housing, as well as 5-50 percent increased risk of infection for others. March 31, 2021 CDC

11  Order at 16734. An additional modeling analysis, which focused on Washington, examined two

12  scenarios. Under the more conservative scenario, evictions led to 18,235 additional COVID

13  cases, 1,741 additional hospitalizations, and 191 additional deaths. Under an alternative scenario,

14  evictions led to 59,008 additional COVID cases, 5,623 additional hospitalizations, and 621

15  additional deaths. May 7, 2021 Declaration of Dr. Christopher Murray Ex. B.[6]  There can be no

16  doubt that "evictions substantially contribute to COVID-19 transmission," March 31, 2021 CDC

17  Order (De Vera Decl. Ex. 2) at 16734, and that moratoria on evictions are an appropriate and

18  reasonable means of limiting the spread of the disease.

19

20

21

22

---

[6] *See also* Nande, et al., The Effect of Eviction Moratoria on the Transmission of SARS-CoV-2 (April 15,
23  2021) (Baumgart Ex. S); Lindquist Decl. ¶¶ 49-65 & Exs. O-Q; Leathers Decl. ¶ 5; Benfer, et al.,
Eviction, Health Inequity, and the Spread of COVID-19: Housing Policy as a Primary Pandemic
24  Mitigation Strategy, Journal of Urban Health (Nov. 1, 2020) (Crain Decl. Ex. D) at 2-4, 6-7.

- 4 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1

2

### 2.   Permitting tenants to gradually recover from the financial impact of the pandemic is appropriate and reasonable

Government actions, including moratoria, "have reduced . . . evictions so far; however, as these measures begin to expire, many households will face difficulties navigating significant payment arrearages or permanent income losses." March 2021 CFPB Report (Crain Decl. Ex. C) at 3. Tenants who have lost jobs and income and who have fallen months behind on their rent during the pandemic will not magically have their prior financial condition restored on July 1, 2021 and will not be able to instantly pay back-due rent.[7] Additionally, the economic devastation of the pandemic continues to disproportionally impact communities of color and make them more at risk of eviction. Crain Decl. Ex. B. Accordingly, the State and City provisions in issue (1) forbid the imposition of late fees and other charges, (2) provide an additional six months' protection from eviction after the expiration of the state of emergency, and (3) require reasonable repayment arrangements over time, based on the tenant's individual circumstances. These are appropriate and reasonable rules, designed to facilitate an orderly transition from the current state of affairs in a way that protects the interests of both tenants and landlords. As this Court has noted, these provisions are "eminently reasonable and appropriate to the underlying public purpose." Report & Recommendation at 21; *see also* id. at 21-22. [8]

---

[7] Horowitz, et al., "A Year Into the Pandemic, Long-Term Financial Impact Weighs Heavily on Many Americans" (March 5, 2021) (Crain Decl. Ex. E) (44 percent of Americans report it would take them three years to recover to where they were financially last year).

[8] Plaintiffs contend that tenants should be required to affirmatively establish hardship before being granted protection under the moratoria. As previously noted, however, proof of hardship is not feasible for many people in economic distress. Report & Recommendation at 20-21; Baumgart Decl. ¶ 18. And the risk of transmission of disease would exist for most evicted tenants, not merely for those who have established hardship.

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### 3. Time is needed to implement the new provisions intended to pay landlords and assist tenants

Both the state and federal governments have passed new laws designed to assist with the payment of back-due rent and otherwise assist landlords and tenants. But time is needed to implement these programs and get money into the hands of landlords.

The federal CARES Act and Coronavirus Response and Relief Supplemental Appropriations Act established the Eviction Rent Assistance Program (ERAP) and the Treasury Rent Assistance Program (T-RAP). Pub. Laws 116-123, 116-136; Baumgart Decl. ¶ 12. The American Rescue Plan Act, Pub. Law 117-2, enacted March 11, 2021, vastly expanded the federal funds available under T-RAP to assist landlords and tenants, providing $21.6 billion of additional rental assistance. In addition, Washington's E2SSB 5160, 2021 Laws Ch. 115 § 5 (Leathers Decl. Ex. R), enacted April 22, 2021, established a landlord mitigation program to reimburse landlords for lost rent.

The funding from these programs is crucial to solving the problem of back-due rent arising from the pandemic and avoiding the threatened wave of evictions that otherwise would be expected. But the funding is not yet widely available.  Crain Decl. ¶ 9 & Ex. F.  For example, the first wave of the T-RAP program, funded in December, is still processing applications.  In some counties, applications have been processed but money has not yet been distributed.  In other counties, funds remain to be committed.  Id.  In addition, many tenants who could benefit from T-RAP have had difficulty accessing the program or have not yet been made aware of it. Id. ¶ 9; April 2021 Harvard Report (Crain Decl. Ex. A) at 4-5, 30-32.

Washington's Department of Commerce has just received the second, much larger wave of T-RAP funding.  The processing of applications and payments for these funds will be done by

- 6 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1    grantees located in each county.  They will need time to staff their programs and process

2    applications. Crain decl. ¶ 9.

3            Commerce also directly administers several programs, such as the Limited Landlord

4    Relief Program or the Landlord COVID Relief Program. These programs are still being created

5    and made operational and will need time to make their resources available. Id. ¶ 9.

6            Washington's E2SSB 5160, 2021 Laws Ch. 115 (Leathers Decl. Ex. R), in addition to

7    requiring reasonable repayment plans and establishing the landlord mitigation program to

8    reimburse landlords for lost rent, established an eviction resolution pilot program (ERP) to

9    mediate potential eviction matters arising from nonpayment of rent. 2021 Laws Ch. 115 § 7. A

10   pilot version of the program had been implemented in six counties. Baumgart Decl. ¶ 19. In these

11   six counties, over 8000 requests for mediation have been submitted to Dispute Resolution

12   Centers to date. Crain Decl. ¶¶ 6-7. The superior courts in each of the remaining 33 counties

13   have the option of when or whether to opt into the program. At the present time, the dispute

14   resolution centers serving many of these counties do not know whether or when their courts will

15   choose to implement the program. It is expected that it will take several more months for many

16   to decide whether they will participate in the mediation program and for the program to become

17   operational in those counties.  Id. ¶ 6.

18           Moreover, the main driver of successful mediations in these cases will be the availability

19   of the rental assistance funds discussed above. Id. ¶ 9. As noted, the flow of funds under these

20   programs has been slow and the newest sources of funds are not yet ready to be distributed. Id.

21   Thus, it will take some time for the ERP mediation program to be not only operational, but most

22   effective. Id. Successful implementation of the ERP mediation programs across the state is

23   critical not only for "the general benefit of softening the economic blow" of the pandemic but

24

- 7 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

Northwest Justice Project
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1   also to ensure courts are not crowded, as "requiring tenants to appear in court to defend their

2   eviction increases the number of contacts for everyone including court personnel." Report &

3   Recommendation at 17; *See also* Baumgart Decl. ¶¶ 18, 19.

4          E2SSB 5160 also established a right to counsel for indigent tenants in unlawful detainer

5   proceedings. 2021 Laws Ch. 115 § 8. But courts and legal service organizations are not yet

6   ready to implement the right-to-counsel program. Several nonprofit legal services programs

7   across the state must first hire dozens of attorneys, train them, and coordinate with local courts

8   and bar associations to implement the program. It is currently estimated that the soonest many

9   counties will begin to implement the program is in October 2021, with full implementation

10  across the state being targeted for December 31, 2021. Crain Decl. ¶¶ 10-14 & Ex. G.

11         Courts, legal service providers, dispute resolution centers, and organizations distributing

12  payments under the mitigation program must be given sufficient time to prepare for the

13  upcoming demand for their services. If they are not, the courts will be flooded with a massive

14  number of unlawful detainer actions, many of which could be avoided by the new provisions. It

15  is also likely that many of these actions will result in evictions that could be avoided if the

16  tenants had access to representation. *See* Oct. Amicus Brief at 7-8 (Seattle tenants in unlawful

17  detainer actions who had counsel were twice as likely to remain in their homes and more than

18  three times as likely to receive settlement or stipulation as were unrepresented tenants).

19         Finally, in order for these programs to be successful, courts and legal service

20  organizations must account for technological barriers that lead to inequitable access to services

21  and threaten a tenant's right to due process. Report & Recommendation at 27. This will require

22  programs to implement additional systems to ensure that lack of access to technology does not

23

24

- 8 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1    hinder a tenant's right to access courts or other services that can help tenants respond to the

2    pandemic.

3                                    **III.    CONCLUSION**

4            Amici request that the Court take into consideration amici's concerns regarding the

5    decision on summary judgment and the people represented and served by amici who will be

6    impacted by the Court's decision.

7    DATED this 11th day of June, 2021

8    NORTHWEST JUSTICE PROJECT

9    /s/ Scott Crain
     Scott Crain, WSBA#37224

10   401 Second Ave. S, Suite 407
     Seattle, WA 98104

11   Ph.: (206) 707-0900
     Email: ScottC@nwjustice.org

12
     /s/ David Tarshes

13   David Tarshes, WSBA #13658
     401 2nd Ave. S, Suite 407

14   Seattle, WA 98104
     Ph.: (206) 464-1519

15   Email DavidT@nwjustice.org

16   Counsel for Amicus Curiae
     Northwest Justice Project

17   Building Changes
     Tenants Union of Washington State

18   Skagit Volunteer Lawyers Program
     Washington Low Income Housing Alliance

19

20

21   //

22   //

23   //

24
                                          - 9 -

1    FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY

2    /s/ Robert S. Chang
     Robert S. Chang, WSBA #44083
3    Ronald A. Peterson Law Clinic
     1112 E. Columbia St.
4    Seattle, WA 98122
     Phone: (206) 398-4025
5    Email: changro@seattleu.edu

6    Counsel for Amicus Curiae
     Fred T. Korematsu Center for Law and Equality
7
     AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
8
     /s/ Breanne Shuster
9    Breanne Schuster, WSBA #49993
     P.O. Box 2728
10   Seattle, WA 98111
     Ph: (206) 624-2184
11   Email: bschuster@aclu-wa.org

12   Counsel for Amicus Curiae
     American Civil Liberties Union of Washington
13
     COLUMBIA LEGAL SERVICES
14
     /s/ Janet S. Chung
15   Janet S. Chung, WSBA #28535
     Columbia Legal Services
16   101 Yesler Way, Suite 300
     Seattle, WA 98104
17   (206) 464-6911
     Email: janet.chung@columbialegal.org
18
     /s/ Sarah Nagy
19   Sarah Nagy, WSBA# 52806
     Columbia Legal Services
20   711 Capitol Way S., Ste. #706
     Olympia, WA 98501
21   Ph.: (360) 943-6260
     Email: sarah.nagy@columbialegal.org
22   Counsel for Amicus Curiae
     Columbia Legal Services
23

24
                                   - 10 -

AMICUS BRIEF
No. 2:20-CV-01323-RAJ-JRC

**Northwest Justice Project**
401 Second Ave. S #407
Seattle, WA 98104
Tel 206-707-0900 Fax 206-624-7501

1    TENANT LAW CENTER

2    /s/ Anne E. Mjaatvedt
     Anne E. Mjaatvedt, WSBA #46937
3    100 23rd Avenue South
     Seattle, WA  98144
4    Phone: (206) 328-5936
     Email: AnneMj@ccsww.org
5    Counsel for Amicus Curiae
     Tenant Law Center

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
                                           - 11 -