Hon. Richard A. Jones
Hon. J Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| El PAPEL LLC, *et al.*,<br><br>               Plaintiffs,<br><br>vs.<br><br>JENNY A. DURKAN, *et al.*,<br><br>               Defendants. | No. 2:20-cv-01323-RAJ-JRC<br><br>DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>NOTED ON MOTION CALENDAR:<br>Friday, June 18, 2021<br><br>ORAL ARGUMENT REQUESTED |

<u>CONTENTS</u>

I.    Introduction ............................................................................................................1

II.   Authority ................................................................................................................1

    A.   Plaintiffs lack standing to maintain this action. ............................................1

        1.   Because the CDC Order may protect their tenants, Plaintiffs lack standing to challenge the City's moratorium or six-month defense. ..........................1

        2.   Plaintiffs lack standing to challenge the repayment plan requirement because they fail to show their tenants will pay rent in installments or invoke the ordinance's defense to eviction. ...............................................................4

    B.   Plaintiffs' Contract Clause claim fails. .........................................................5

        1.   The City's enactments do not substantially impair a contractual relationship.........5

           a.   The enactments could not interfere with Plaintiffs' reasonable expectations given the highly regulated nature of the residential rental business. ................................................................................................5

           b.   The enactments neither significantly undermine Plaintiffs' contractual bargain nor prevent them from safeguarding or reinstating their rights. .........7

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - i
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

      2.    Especially applying required deference, the City's enactments are drawn appropriately and reasonably to advance their purposes..........................................9

          a.    The Court must defer to lawmakers' judgment when government is not a contracting party. ...................................................................................................9

          b.    The City's judgment that the enactments appropriately and reasonably advance their public purposes is entitled to deference..................................10

   C.   Plaintiffs' takings claim fails. .......................................................................................12

      1.    Injunctive relief is inappropriate for a takings claim, as this Court already ruled.............................................................................................................................12

      2.    The City's enactments effect no taking................................................................14

III.   Conclusion ............................................................................................................................16

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - ii
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

## I.  INTRODUCTION

This Court should grant judgment to the City. Plaintiffs lack standing to challenge the City's enactments. Their Contract Clause claim fails because the City's enactments do not substantially impair a contractual relationship in the highly regulated landlord-tenant arena and, especially applying the deference due the City's judgment, the enactments are drawn appropriately and reasonably to advance significant and legitimate public purposes. Injunctive relief is not appropriate for a takings claim, and Plaintiffs' takings claim would fail because the City's enactments neither press a property owner into serving as a landlord against their will nor forever prevent a landlord from terminating a tenancy.

## II.  AUTHORITY

### A.  Plaintiffs lack standing to maintain this action.

#### 1.  Because the CDC Order may protect their tenants, Plaintiffs lack standing to challenge the City's moratorium or six-month defense.

A plaintiff must prove it is likely, not merely speculative, that the relief they request will redress the injury they seek to avoid. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Redressability requires a plaintiff to show that a favorable decision will relieve a discrete injury. *Larson v. Valente*, 456 U.S. 228, 243 (1982). The redressability element is not met "when there exists an unchallenged, independent rule, policy, or decision that would prevent relief even if the court were to render a favorable decision." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 756 (4th Cir. 2013). Plaintiffs fail to demonstrate that the relief they request will likely redress their claimed, discrete injury because they have not shown that the CDC Order fails to cover their tenants and prevent evictions.

Notwithstanding Plaintiffs' claim to the contrary, the CDC Order remains in effect here. *Cf.* Dkt. # 111 at p. 9 (Pls.' Resp./Reply). *Alabama Ass'n of Realtors* imposes no nationwide

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 1
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

injunction. *Alabama Ass'n of Realtors v. United States Dep't of Health & Human Servs.*, No. 21-5093, 2021 WL 2221646 (D.C. Cir. June 2, 2021) (order denying motion to vacate stay pending appeal), *application to vacate stay docketed*, No. 20A169 (S. Ct. June 3, 2021). The other actions Plaintiffs cite have resulted in no injunction or one with limited geographic reach. *Tiger Lily, LLC v. United States Dep't of Hous. & Urban Dev.*, __ F. Supp. 3d __, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021) (limited to the Western District of Tennessee); *id.*, 992 F.3d 518 (6th Cir. 2021) (denying motion for stay pending appeal); *Terkel v. Centers for Disease Control & Prevention*, __ F. Supp. 3d __, 2021 WL 742877, at *11 (E.D. Tex. Feb. 25, 2021) (declaratory judgment entered, no injunction issued), *appeal docketed*, No. 21-40137 (5th Cir. Mar. 3, 2021); *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, __ F. Supp. 3d __, 2021 WL 2228678 (N.D. Ohio March 10, 2021), *appeal docketed*, No. 21-3443 (6th Cir. May 12, 2021); *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, __ F. Supp. 3d __, 2021 WL 2228676, at *6 (N.D. Ohio June 3, 2021) (clarifying that its order binds only the parties and their members).

Plaintiffs' contention that they can seek redress even if the challenged action is only one of several obstacles to full relief finds no support in the case law they cite. *See* Dkt. # 111 at p. 3. Although a favorable decision need not relieve every injury to satisfy redressability, a plaintiff must at least show that a favorable decision will relieve a discrete injury. *Larson*, 456 U.S. at 243. Plaintiffs fail to do so. The authority they cite is distinguishable. *Village of Arlington Heights* addressed racially discriminatory zoning practices, holding that a nonprofit housing developer had standing because the challenged zoning conduct stood as an absolute barrier to the developer's proposed construction. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 260–62 (1977). The Court did not need to speculate about other barriers to

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 2
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

relief because it found that the zoning conduct was the absolute barrier and was "likely to be redressed by a favorable decision." *Id*. at 262. None of the City's enactments erects an absolute barrier to Plaintiffs' relief because the CDC Order is still in effect. The City is not arguing that Plaintiffs must solve "all roadblocks simultaneously" to satisfy standing. *Cf*. Dkt. # 111 at p. 10 (quoting *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012)). Plaintiffs simply cannot prove that a decision invalidating the City's moratorium or six-month defense, while leaving the CDC Order in place, is likely to redress their claimed injury of being prohibited from evicting tenants.

Plaintiffs gain nothing from *Maldonado v. Morales*, 556 F.3d 1037, 1043–44 (9th Cir. 2009). They misinterpret the City's use of *Maldonado*, which the City introduced with "*cf.*" to distinguish it. *Compare* Dkt. # 111 at p.10 (miscasting *Maldonado* as "the single Ninth Circuit case that the City cites for support") *with* Dkt. # 103 at p. 12 (distinguishing *Maldonado*). Under *Maldonado*, if a decision invalidating a challenged law would apply with equal force to a similarly worded unchallenged law, likely allowing the plaintiff to surmount the unchallenged law too, failing to challenge the unchallenged law may not preclude redressability. *Maldonado*, 556 F.3d at 1043–44. Plaintiffs present no such facts.

Plaintiffs cannot rely on *Uzuegbunam*'s nominal damages holding to satisfy standing. *Cf*. Dkt. # 111 at p. 11 (citing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021)). *Uzuegbunam* held that a request for nominal damages satisfies the redressability element where a plaintiff's claim is based on a completed violation of a legal right. *Uzuegbunam*, 141 S. Ct. at 802. "Nominal damages . . . are unavailable where a plaintiff has failed to establish a past, completed injury." *Id*. Because Plaintiffs complain of future violations and cannot show a completed, past constitutional violation, they fail to satisfy the redressability element. Plaintiffs lack standing.

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 3
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**2.   Plaintiffs lack standing to challenge the repayment plan requirement because they fail to show their tenants will pay rent in installments or invoke the ordinance's defense to eviction.**

Plaintiffs lack standing to challenge the repayment plan requirement because they lack evidence that their tenants have taken or will take action to trigger the requirement's defense to eviction. Parties cannot manufacture standing by responding to hypothetical future harm that is not "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (quoting other authority). Plaintiffs must show more than conjecture.

Plaintiffs argue their tenants are "implicitly availing themselves of the right granted by the ordinance" by not paying rent. *See* Dkt. # 111 at p. 13. This rests on an untenable interpretation of the ordinance. The ordinance protects tenants from eviction if they pay overdue rent in installments. Dkt. # 17-12, pp. 8–9 (Ordinance 126081 § 2). The defense to eviction provided by the ordinance is "[f]ailure of the owner to accept payment under the installment schedule." *Id.* at p. 9. The defense requires action by the tenant: making an installment payment, which the landlord does not accept. Simply failing to pay rent triggers no defense. Plaintiffs concede that none of their tenants is paying overdue rent in installments under the ordinance. Dkt. # 100-3 at pp. 14–16 (Berman 2 LLC's Answers to City of Seattle's First Interrogatories); Dkt. # 100-4 at pp. 14–16 (El Papel LLC's Answers to City of Seattle's First Interrogatories). Nor can one infer from the mere failure to pay rent that a tenant will seek to repay rent in installments. Indeed, Plaintiff El Papel LLC's experience demonstrates that rental assistance programs may repay several months of overdue rent in one lump sum. Dkt. # 100-4 at p. 14. Because Plaintiffs have suffered no harm from the ordinance, they lack standing to challenge it.

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 4
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

B.  **Plaintiffs' Contract Clause claim fails.**

Plaintiffs' Contract Clause fails because they cannot establish a substantial impairment of a contractual relationship and, even if they could, they trip over the rest of the Contract Clause inquiry.

1.  **The City's enactments do not substantially impair a contractual relationship.**

In assessing whether a law substantially impairs a contractual relationship, "the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018).

a.  **The enactments could not interfere with Plaintiffs' reasonable expectations given the highly regulated nature of the residential rental business.**

Given the highly regulated nature of the residential rental business, landlords reasonably should have expected amendments temporarily delaying their ability to pursue evictions or back rent.

Plaintiffs err in contending that not only must the heavily regulated nature of the industry render the regulation foreseeable, but the challenged regulation must also be "on the same topic" as previous regulation in a highly specific way. Dkt. # 111 at pp. 17–18. *Energy Reserves* held that a state law imposing price controls on natural gas did not impair the plaintiff's reasonable expectations because the parties were operating in a heavily regulated industry, even though "[a]t the time of the execution of these contracts, Kansas did not regulate natural gas prices specifically." *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 413, 416 (1983). *Veix* likewise considered not just that the state had regulated the withdrawal of shares in building and loan associations, but also that the challenged statute "was one of a long series

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR
SUMMARY JUDGMENT - 5
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

regulating the many integrated phases of the building and loan business such as formation, membership, powers, investments, reports, liquidations, foreign associations and examinations." *Veix v. Sixth Ward Bldg. and Loan Ass'n*, 310 U.S. 32, 37 (1940).

Even if it were legally relevant, Plaintiffs' suggestion that the City's enactments are insufficiently related to the subject of previous regulation is untenable. The City's Just Cause Eviction Ordinance already provides a defense for an eviction under certain circumstances or for a cause not enumerated in the Ordinance. Dkt. # 17-11 at pp. 9–21. Plaintiffs suggest that the City's enactments are fundamentally different because they "are instead an *abrogation* of the pre-existing landlord regulations" (Dkt. # 111 at p. 19), but this is an invented distinction. The City already prevented evictions in some circumstances, and the challenged enactments prevent evictions in more circumstances. The existing and new regulations address the same subject: limiting the ability to evict.

Plaintiffs cite no case suggesting that the "subject matter" of the City's enactments is different enough from the pre-existing State and City regulation of the residential rental business—and of evictions in particular—to have "destroyed reasonable expectations." Dkt. # 111 at pp. 17–18 (Pls.' Resp./Reply). *Sveen* did not involve a question of expectations based on regulation of an industry. *Cf. id*. at p. 18 (citing *Sveen*, 138 S. Ct. at 1822). Plaintiffs pull language from *Blaisdell* that is unconnected to any discussion of expectations. *Id*. at p. 17 (citing *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 447 (1934)). And Plaintiffs misplace reliance on *Texaco*. *Id*. at p. 19 (citing *Texaco, Inc. v. Short*, 454 U.S. 516 (1982)). That case involved no issue of expectations; the Court just rejected a Contract Clause claim because the contracts did not exist when the challenged statute was enacted. *Texaco*, 454 U.S. at 531.

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR
SUMMARY JUDGMENT - 6
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

As Plaintiffs note, *Apartment Ass'n of Los Angeles County* held that "no amount of prior regulation could have led landlords to expect anything like the blanket Moratorium." Dkt. # 111 at p. 17 (citing *Apartment Ass'n of Los Angeles County v. City of Los Angeles*, __ F. Supp. 3d __, 2020 WL 6700568, at *5 (C.D. Cal. Nov. 13, 2020), *appeal docketed*, No. 20-56251 (9th Cir. Nov. 27, 2020)). But other federal courts addressing eviction moratoriums during the COVID-19 pandemic have relied on the fact that landlords operate in a heavily regulated industry in holding that they were unlikely to prove their Contract Clause claims. *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 352 (E.D. Pa. 2020); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d. 199, 224 (D. Conn. 2020). This Court should follow those courts' lead.

### b. The enactments neither significantly undermine Plaintiffs' contractual bargain nor prevent them from safeguarding or reinstating their rights.

The City's enactments do not significantly undermine Plaintiffs' contractual rights, which Plaintiffs may still safeguard. The enactments do not absolve tenants from their obligation to pay rent. The eviction moratorium and six-month defense at most delay the landlords' ability to pursue one statutory remedy they have for nonpayment of rent (eviction) and the repayment plan requirement allows tenants to elect to pay overdue rent in installments and prevents eviction while they do so.

Plaintiffs miss the point when responding that "laws acting on contractual remedies can impair a contract just as surely as laws restricting contractual rights." Dkt. # 111 at p. 15. The City did not assert that adjustment of a statutory remedy could never be a substantial impairment, but that Plaintiffs erred in contending that any such adjustment must be a substantial impairment. Plaintiffs still offer no authority supporting their contention, citing the same cases that the City already distinguished, principally *Lynch v. United States,* 292 U.S. 571 (1934). *Compare* Dkt.

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 7
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

# 111 at p. 15 *with* Dkt. # 103 at pp. 16–17 (City's Opening/Resp.). Plaintiffs gain nothing from *Kendall* because the language Plaintiffs quote was not from the Court's opinion and did not relate to a Contract Clause claim. Dkt. # 111 at p. 15 (quoting *Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 567 (1838) (stating a party's position)).

The City's enactments—not the arbitrary rule advanced by Plaintiffs—confirm that they do not substantially impair Plaintiffs' contracts. The enactments do not "wip[e] out substantive rights." Dkt. # 111 at p. 15. The enactments merely delay the ability to evict. Plaintiffs gain no assistance from *Blaisdell*, which rejects the notion that interposing a delay in enforcement must constitute a substantial impairment. *Blaisdell*, 290 U.S. at 416, 447. *Compare* Dkt. # 111 at p. 16 (citing *Blaisdell*) *with* Dkt. # 103 at p. 17 (City's Opening/Resp.).

Plaintiffs fail to salvage their argument by contending that tenants may be evicted for reasons other than nonpayment of rent, such that a delay in eviction allegedly interferes with a "right to exclude." Dkt. # 111 at p. 20. Plaintiffs cite no authority suggesting that a delay in eviction for reasons other than nonpayment of rent is subject to a different analysis. In either case, the City's enactments do not preclude a landlord from ultimately regaining possession—and where eviction is based on nonpayment, landlords may recover all rent they are owed.

Although Plaintiffs point out that landlords "face numerous ongoing expenses" (Dkt. # 111 at p. 20), no Plaintiff alleges specific financial hardship due to nonpaying tenants that would prevent a Plaintiff from keeping their property. *See* Dkt. #s 18–19, 95, 97 (Plaintiffs' declarations). Plaintiffs can only speculate that tenants will not be able to repay back rent. Dkt. # 111 at p. 21. Even if some tenants are unable to do so, the City and other levels of government have implemented rental assistance programs to help tenants by making rental payments to their landlords. *See* Dkt. # 103 at pp. 9-10 (City's Opening/Resp.; describing the programs). Although

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR
SUMMARY JUDGMENT - 8
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

these programs will not meet the entire need of all tenants, they rebut Plaintiffs' implication that landlords as a rule will be unable to recoup back rent.

### 2. Especially applying required deference, the City's enactments are drawn appropriately and reasonably to advance their purposes.

Even if Plaintiffs could establish a substantial impairment of a contractual relationship, the City's enactments still do not violate the Contract Clause because they are "drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Sveen*, 138 S. Ct. at 1822. Plaintiffs do not dispute the significance or legitimacy of the enactments' public purposes; Plaintiffs just complain that the enactments do not meet those purposes precisely enough. Dkt. # 111 at p. 23.

#### a. The Court must defer to lawmakers' judgment when government is not a contracting party.

Plaintiffs ignore the deference due lawmakers' judgment about the choice of means to implement a law's public purposes where, as here, the government is not a contracting party. *Energy Reserves*, 459 U.S. at 412–13, 418. Plaintiffs' contention that *Energy Reserves* calls for the court to "analyze reasonableness and necessity with a skeptical eye" is simply wrong. Dkt. # 111 at p. 21. To support that contention, Plaintiffs cite language from *Energy Reserves*'s discussion of a substantial impairment of a contractual relationship. *Id.* (quoting *Energy Reserves*, 459 U.S. at 411). That language is irrelevant to the question of deference, which relates to the next step in the Contract Clause inquiry, which is triggered if substantial impairment is established. *Energy Reserves*, 459 U.S. at 411–13. Likewise, in the language upon which Plaintiffs rely, *Energy Reserves* cited a discussion in *Allied Structural Steel* about whether the measure would pass the substantial impairment inquiry, not about the deference due in the next

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 9
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

step of the Contract Clause inquiry. *Id*. at 411 (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245 (1978)).

Plaintiffs misread *Allied Structural Steel*, arguing that it requires laws adjusting contracts to be "precisely and reasonably designed" to meet the government's objectives. Dkt. # 111 at pp. 22–23 (citing *Allied Structural Steel*, 438 U.S. at 243). *Allied Structural Steel* predates *Energy Reserves*'s clear holding about the deference due the government when it is not a contracting party. And the phrase "precisely and reasonably designed" in *Allied Structural Steel* (and language regarding "tailor[ing] to the emergency" upon which Plaintiffs also rely, *see* Dkt. # 111 at p. 24) is from *Allied Structural Steel's* discussion of two other cases that addressed the relationship of a measure to an emergency—a question on which *Allied Structural Steel* did not turn and on which the two cases it cited do not reflect current law. *Allied Structural Steel*, 438 U.S. at 242–43. *See* Dkt. # 103 at p. 24 (City's Opening/Resp.; discussing this issue).

### b. The City's judgment that the enactments appropriately and reasonably advance their public purposes is entitled to deference.

The City reasonably determined that the eviction moratorium and six-month defense advance the public health purpose of reducing the number of people contracting and spreading COVID-19. *See* Dkt. # 103 at pp. 4–10 (City's factual statement). The six-month defense and repayment plan requirement also reasonably address the pandemic's persistent economic impacts and prevent homelessness, as the economic recovery is incomplete and many tenants remain unable to timely pay rent. *Id.* While the public health danger posed by COVID-19 is diminishing as vaccinations proceed, one cannot conclude (and Plaintiffs do not contend) that the danger has passed.

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 10
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs' complaint that the eviction bans "are not precisely and reasonably designed to meet the governments' objectives because their protection extend to those tenants who are not suffering financial hardship and are not at risk of homelessness" fails legally and factually. Dkt. # 111 at p. 23. Plaintiffs' insistence on a "precise" fit between means and ends ignores the deference due government when it is not a contracting party. S*ee* § II.B.2.a, *supra.*

Plaintiffs misplace reliance on *W.B. Worthen* to support a requirement for a showing of hardship. Dkt. # 111 at p. 23 (citing *W.B. Worthen Co. ex rel. Bd. of Com'rs of Street Improvement Dist. No. 513 v. Kavanaugh*, 295 U.S. 56 (1935)). Plaintiffs suggest that *W.B. Worthen's* holding must have incorporated deference to the state because the case involved a state statute affecting municipal improvement district bonds, but Plaintiffs ignore that the municipal improvement districts were organized under state law. *W.B. Worthen*, 295 U.S. at 57. In any event, Plaintiffs' suggestion that *W.B. Worthen* means that a hardship is always required to justify an impairment ignores that the Court considered the cumulative effect of the restrictions in that case and did not focus on any one provision. *Id.* at 61–62.

Pausing evictions regardless of tenants' financial circumstances serves the City's COVID-19 public health purpose. Contrary to Plaintiffs' contention (Dkt. # 111 at p. 23), even if evicted tenants would not end up on the street, avoiding eviction still helps prevent the spread of COVID-19 by allowing those who become ill to self-isolate, supporting stay-at-home and social distancing directives, and keeping individuals from moving into congregate settings. Dkt. # 25-5 at p. 4 (CDC Order). Besides, the six-month defense requires a tenant to declare that they cannot pay rent because of financial hardship. Dkt. # 17-11 at p. 20, § 2.

Plaintiffs' argument that the City should have adopted "less extreme approaches that preserve the government's ability to cope with the pandemic while better honoring Plaintiffs'

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 11
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

rights" (Dkt. # 111 at pp. 24) also founders on the deference due the City when it is not a contracting party. S*ee* § II.B.2.a, *supra*. *Compare United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 22–23, 30–31 (1977) (considering whether a "more moderate course" would serve the State's purpose equally well where the State's own contract was involved).

*Allied Structural Steel* provides Plaintiffs no support for their continued insistence that *Blaisdell* requires the City to require regular rental payments to impose an eviction moratorium. Dkt. # 111 at pp. 24–25. In characterizing *Blaisdell*, *Allied Structural Steel* stated that "the Court found five factors significant." *Allied Structural Steel*, 438 U.S. at 242. The list of factors omits a requirement for continuing compensation; rather, the fourth factor is simply that "the imposed conditions were reasonable." *Id.*

Although Plaintiffs maintain that eviction restrictions adopted by other jurisdictions during the pandemic are less severe than the City's enactments (Dkt. # 111 at pp. 26–27), the validity of the City's enactments does not turn on such a comparison. Because the City's enactments are drawn reasonably and appropriately to advance their purposes, they do not violate the Contract Clause even if Plaintiffs could establish substantial impairment of their contracts.

### C. Plaintiffs' takings claim fails.

#### 1. Injunctive relief is inappropriate for a takings claim, as this Court already ruled.

As this Court already recognized, injunctive relief is not available for a takings claim because the Takings Clause does not bar the government from taking property, only taking it without compensation. *See* Dkt. # 63 at pp. 22–25 (Report and Recommendation). That rule has been repeated by the Supreme Court, Ninth Circuit, and other District Courts addressing similar challenges. Dkt. # 103 at p. 27 (City's Opening/Resp.; citing case law). Plaintiffs question none of that authority.

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR
SUMMARY JUDGMENT - 12
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Instead, as though the City had not already explained why the Washington and Northern District of Florida decisions Plaintiffs cite fail to support their contention that injunctive relief is appropriate, Plaintiffs just cite that case law again. Dkt. # 111 at pp. 28–29 (citing *Kucera v. Department of Transp.*, 140 Wn.2d 200, 995 P.2d 63 (2000); *Goodwin v. Walton County*, 248 F. Supp. 3d 1257, 1266 (N.D. Fla. 2017)). The City relies on its existing explanation. *See* Dkt. # 103 at pp. 27–29 (City's Opening/Resp.).

The two decisions Plaintiffs add to the mix do not address whether injunctive relief is appropriate for a takings claim. *Cf.* Dkt. # 111 at pp. 28–29 (citing *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702 (2010); *Lamplighter Village Apts. LLP v. City of St. Paul*, No. 21-413, 2021 WL 1526797 (D. Minn. Apr. 19, 2021)). The *Stop the Beach Renourishment* passage Plaintiffs cite is in a part of the opinion supported by only four justices. *See Stop the Beach Renourishment*, 560 U.S. 706 (voting on Part II); *id*. at 713–25 (Part II). Even if it carried weight, that passage merely opined that where a state supreme court provides *declaratory* relief for a takings claim and the U.S. Supreme Court rules that relief effected a "judicial taking," the remedy is to reverse the state court decision. *Id*. at 710–11 (describing how the state court answered a certified question; mentioning no injunctive relief); *id.* at 723 (four justices' proposed remedy).

The unpublished *Lamplighter* preliminary injunction order from the U.S. District Court for Minnesota did not, as Plaintiffs suggest, say: "injunctive relief is available in limited circumstances." *See* Dkt. # 111 at p. 28. *Lamplighter* did not address whether injunctive relief is appropriate for a takings claim—it just assumed such relief is proper, likely because the defendant city did not raise the question. *See Lamplighter*, 2021 WL 1526797, at *2–4; Def. City of St. Paul's Mem. of Law In Opp. to Ps' Mot. for Prelim. Injunction, Dkt. # 47 at pp. 10–31,

| DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 13<br>*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC | **Peter S. Holmes**<br>Seattle City Attorney<br>701 Fifth Ave., Suite 2050<br>Seattle, WA 98104-7095<br>(206) 684-8200 |
|---|---|

2021 WL 1526797 (March 16, 2021). And the issue was moot because *Lamplighter* would have granted injunctive relief on the landlords' substantive due process claim alone. *See Lamplighter*, 2021 WL 1526797, at *4.

### 2.    The City's enactments effect no taking.

The City cites Supreme Court and Ninth Circuit case law reaffirming governments' latitude to regulate the landlord-tenant relationship without effecting a taking. Dkt. # 103 at p. 29 (City's Opening/Resp.). Plaintiffs do not question that case law.

The City notes six decisions recently rejecting takings challenges to rent-delaying tenant protections. *Id*. at p. 30. Plaintiffs question none and offer no contrary decision.

Instead, Plaintiffs redraft *Yee*, the controlling Supreme Court precedent, to create an exception they then claim. *See* Dkt. # 111 at pp. 31–33 (citing *Yee v. City of Escondido*, 503 U.S. 519 (1992)). Again, *Yee* rejected a "physical invasion" takings claim—the same claim Plaintiffs press—because a landlord may exclude *all* tenants by ceasing to be a landlord, just not *particular* tenants who take advantage of regulations to maintain a tenancy on terms the landlord disfavors. *See* Dkt. # 103 at pp. 29–30 (City's Opening/Resp.; discussing and quoting *Yee*). *Yee* conceded the situation would be different if the regulation pressed a property owner into serving as a landlord against their will or meant a landlord could never cease being a landlord: "A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy." *Yee*, 503 U.S. at 528. Plaintiffs recast that exception to mean that a regulation effects a taking if it alters a lease so it prevents a landlord—even temporarily—from evicting a tenant for violating a pre-regulation lease term. Dkt. # 111 at pp. 31–33. Contrary to *Yee* and other precedent, Plaintiffs

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 14
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

would leave government powerless to regulate existing landlord-tenant relationships without effecting a *per se* taking.

Because the City's enactments are temporary and compel no one to become a landlord, *Baptiste* rejected landlords' attempt to embrace *Yee*'s exception

> As in *Yee*, the Moratorium did not compel plaintiffs to rent their properties. Rather, plaintiffs voluntarily chose to rent to their tenants prior to the Act. The Moratorium temporarily prevents the termination of those tenancies. "A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy." [*Yee*, 503 U.S. at 528] This is, however, not now the case.

*Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 388 (D. Mass. 2020). The same is true here.

Plaintiffs' other red herrings merit little attention. First, the *Murr* dissenting opinion Plaintiffs cite did not criticize *Yee* as formulaic—*Murr* discussed neither *Yee* nor the landlord-tenant relationship. *See* Dkt. # 111 at p. 30 (quoting *Murr v. Wisconsin*, 137 S. Ct. 1933, 1951 (2017) (Roberts, C.J., dissenting)).

Second, Plaintiffs distinguish *Block*, which neither the City nor State cited in support of their arguments to dismiss Plaintiffs' takings claim. *See id*. at p. 32 (discussing *Block v. Hirsch*, 256 U.S. 135 (1921)).

Third, the City takes no issue with the proposition that a "physical invasion" taking can result from the government allowing a third party to invade even a minor portion of private property, even if only temporarily. *Cf. id.* at pp. 30, 33–34. But *Yee* holds that no invasion occurs where, as here, government regulates the landlord-tenant relationship in a way that neither presses unwilling property owners into serving as landlords nor forces existing landlords "to refrain in perpetuity from terminating a tenancy." *Yee*, 503 U.S. at 528.

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 15
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Finally, the City does not question that declaratory relief is an appropriate remedy for a taking. *Compare* Dkt. # 111 at p. 29 *with* Dkt. # 103 at p. 29 n.4 (City's Opening/Resp.). But that remedy is moot because the City's enactments effect no taking.

### III. CONCLUSION

Like measures adopted across the nation, the City's enactments respond to a nearly unprecedented public health and economic crisis. Plaintiffs lack standing to challenge the balance the City struck. But even if they had standing, their challenge lacks foundation in law. The City respectfully asks this Court to grant summary judgment to the City.

Respectfully submitted June 18, 2021.

PETER S. HOLMES
Seattle City Attorney

By:   */s/ Jeffrey S. Weber*, WSBA #24496
      */s/ Roger D. Wynne*, WSBA #23399
      */s/ Derrick De Vera*, WSBA #49954
      */s/ Erica R. Franklin*, WSBA #43477
Seattle City Attorney's Office
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
Ph: (206) 684-8200
jeff.weber@seattle.gov
roger.wynne@seattle.gov
erica.franklin@seattle.gov
derrick.devera@seattle.gov
*Assistant City Attorneys for Defendants City of Seattle and Jenny A. Durkan, in her official capacity as the Mayor of the City of Seattle*

DEFENDANT CITY OF SEATTLE'S REPLY RE ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 16
*El Papel LLC v. Durkan*, No. 2:20-cv-01323-RAJ-JRC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200