The Honorable Richard A. Jones
The Honorable J. Richard Creatura

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

EL PAPEL, LLC, et al.,

                Plaintiffs,

    v.

ROBERT W. FERGUSON, in his official
capacity as Attorney General of the State
of Washington; JENNY A. DURKAN, in
her official capacity as the Mayor of the
City of Seattle; and THE CITY OF
SEATTLE, a municipal Corporation,

                Defendants.

NO.  2:20-cv-01323-RAJ-JRC

DEFENDANT ROBERT W.
FERGUSON'S REPLY IN
SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
June 18, 2021
Oral Argument Requested

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT .................................................................................................... 2

    A.   Jurisdictional Bars Foreclose the Landlords' Claims ................................. 2

        1.   The Landlords lack standing ........................................................ 2

        2.   The State Moratorium is set to expire on June 30, 2021 .................. 4

    B.   The State Moratorium Comports with the Contracts Clause ....................... 5

        1.   The State Moratorium does not substantially impair contractual relationships between the Landlords and their tenants ...................... 6

        2.   The State Moratorium is appropriate and reasonable ....................... 8

    C.   The State Moratorium Does Not Violate the Takings Clause ................... 13

        1.   The State Moratorium does not effect a physical taking ................. 13

        2.   The State has not taken physical possession of the Landlords' properties, not even temporarily .................................. 15

        3.   The Landlords are not entitled to equitable relief ........................... 16

III. CONCLUSION ............................................................................................... 18

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

### TABLE OF AUTHORITIES

**Cases**

*Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*,
No. 21-5093, 2021 WL 2221646 (D.C. Cir. June 2, 2021) .................................................. 2

*Allied Structural Steel Co. v. Spannaus*,
438 U.S. 234 (1978)............................................................................................................. 9

*Anderson v. Colvin*,
No. CV14-05137-BJR, 2014 WL 4929328 (W.D. Wash. Oct. 1, 2014).............................. 18

*Apt. Ass'n of Los Angeles Cnty. v. City of Los Angeles*,
500 F. Supp. 3d 1088 (C.D. Cal. 2020) ......................................................................... 1, 5, 7

*Arkansas Game & Fish Commission v. United States*,
568 U.S. 23 (2012)............................................................................................................. 16

*Auracle Homes, LLC v. Lamont*,
478 F. Supp. 3d 199 (D. Conn. 2020).................................................................... 1, 5, 8, 13

*Baptiste v. Kennealy*,
490 F. Supp. 3d 353 (D. Mass 2020) ............................................................... 1, 5, 8, 13, 18

*Block v. Hirsh*,
256 U.S. 135 (1921)....................................................................................................... 7, 14

*Brown v. Azar*,
No. 1:20-CV-03702-JPB, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) .............................. 3

*Campanelli v. Allstate Life Ins. Co.*,
322 F.3d 1086 (9th Cir. 2003)............................................................................................. 8

*Chambless Enterprises, LLC v. Redfield*,
No. 3:20-CV-01455, 2020 WL 7588849 (W.D. La. Dec. 22, 2020) ...................................... 3

*County of Butler v. Wolf*,
No. 2:20-cv-677, 2020 WL 2769105 (W.D. Pa. May 28, 2020) .......................................... 18

*Culinary Studios, Inc. v. Newsom*,
No. 1:20-CV-1340 AWI EPG, 2021 WL 427115 (E.D. Cal. Feb. 8, 2021)........................ 18

*Doe v. Virginia Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) ........................................................................................... 2, 3

*Duke Power Co. v. Carolina Env't Study Group, Inc.*,
438 U.S. 59 (1978)............................................................................................................. 18

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*El Papel LLC v. Inslee*,
  No. 2:20-CV-01323-RAJ-JRC, 2020 WL 8024348 (W.D. Wash. Dec. 2, 2020),
  *report and recommendation adopted*, 2021 WL 71678 (Jan. 8, 2021) .......... 1, 5, 9-11, 17, 18

*Elmsford Apt. Assocs., LLC v. Cuomo*,
  469 F. Supp. 3d 148 (S.D.N.Y. 2020) .................................................................. 2, 5-7, 8, 13

*Energy Rsrvs. Grp. v. Kansas Power & Light Co.*,
  459 U.S. 400 (1983)............................................................................................................ 11

*F.C.C. v. Fla. Power Corp.*,
  480 U.S. 245 (1987)............................................................................................................ 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)............................................................................................................. 3

*HAPCO v. City of Philadelphia*,
  482 F. Supp. 3d 337 (E.D. Pa. 2020) ................................................................. 1, 5, 7, 8, 18

*Heights Apts., LLC v. Walz*,
  No. 20-CV-2051 (NEB/BRT), 2020 WL 7828818 (D. Minn. Dec. 31, 2020)........ 1, 5, 11, 13

*Hendler v. United States*,
  952 F.2d 1364 (Fed. Cir. 1991) ......................................................................................... 15

*Home Bldg. & Loan Ass'n v. Blaisdell*,
  290 U.S. 398 (1934)...................................................................................................... 6, 8, 9

Ibrahim v. Dep't of Homeland Sec.,
  69 F.3d 983 (9th Cir. 2012) ................................................................................................. 4

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.*,
  669 F.3d 928 (9th Cir. 2011) ............................................................................................. 16

*Kimball Laundry Co. v. United States*,
  338 U.S. 1 (1949)............................................................................................................... 15

*Knick v. Township of Scott*,
  139 S. Ct. 2162 (2019).................................................................................................. 17, 18

*Kucera v. State, Dep't of Transp.*,
  995 P.2d 63 (Wash. 2000) ................................................................................................. 17

*Lamplighter Vill. Apts. LLP v. City of St. Paul*,
  No 21-413 (PAM/HB), 2021 WL 1526797 (D. Minn. Apr. 19, 2021) ............................... 17

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982)............................................................................................... 7, 13, 16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................. 4

*McKay v. Ingleson*,
   558 F.3d 888 (9th Cir. 2009) ................................................................. 18

*Mussetter Distrib., Inc. v. DBI Beverage Inc.*,
   685 F. Supp. 2d 1028 (N.D. Cal. 2010) ..................................................... 6

*Nw. Grocery Ass'n v. City of Seattle*,
   No. C21-0142-JCC, 2021 WL 1055994 (W.D. Wash. Mar. 18, 2021) ................ 7

*Penn Central Trans. Co. v. City of New York*,
   438 U.S. 104 (1978) ............................................................................ 16

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ............................................................................ 16

*San Diego Cnty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir.1996) ................................................................... 3

*SKS & Assocs. v. Dart*,
   619 F.3d 674 (7th Cir. 2010) .................................................................. 7

*Skyworks, Ltd. v. Centers for Disease Control & Prevention*,
   No. 5:20-CV-2407, 2021 WL 2228676 (N.D. Ohio June 3, 2021) .................... 2

*Sullivan v. Nassau Cnty. Interim Fin. Auth.*,
   959 F.3d 54 (2d Cir. 2020) .................................................................... 6

*Sveen v. Melin*,
   138 S. Ct. 1815 (2018) ................................................................. 5, 6, 8, 9

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   535 U.S. 302 (2002) ...................................................................... 13-15

*Terkel v. CDC*,
   No. 6:20-CV-00564, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021) .................... 2

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urban Dev.*,
   No. 2:20-CV-02692-MSN-atc, 2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021),
   *den'g stay pending appeal*, 992 F.3d 518 (6th Cir. 2021) .............................. 2

*United States v. General Motors Corp.*,
   323 U.S. 373 (1945) ............................................................................ 15

*United States v. Petty Motor Co.*,
   327 U.S. 372 (1946) ............................................................................ 15

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) ........................................................................... 3

*W.B. Worthen Co. v. Kavanaugh*,
   295 U.S. 56 (1935) .............................................................................. 10

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO. 2:20-cv-01323-RAJ-JRC

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Yee v. City of Escondido, Cal.*,
   503 U.S. 519 (1992)................................................................................ 13, 14

## Constitutional Provisions

U.S. Const. amend. V ................................................................................ 16

## Statutes

2021 Wash. Sess. Laws, ch. 115 § 5(1)(b) ............................................... 11

2021 Wash. Sess. Laws, ch. 115 § 5(1)(d)(i) ........................................... 11

2021 Wash. Sess. Laws, ch. 115 § 5(4) .................................................... 11

Engrossed Second Substitute S.B. 5160, 67th Leg., Reg. Sess. (Wash. 2021),
   *enacted as* 2021 Wash. Sess. Laws, ch. 115 ............................... 5, 11, 12

Engrossed Substitute S.B. 5092, 67th Leg., Reg. Sess. (Wash. 2021),
   *enacted as* 2021 Wash. Sess. Laws, ch. 334 .................................... 11

Seattle Mun. Code 22.206.160.C.8 ............................................................ 7

## Regulations

86 Fed. Reg. 16731, 16738 ....................................................................... 12

86 Fed. Reg. 16731-01 (Mar. 31, 2021) .................................................... 3

## Other Authorities

Wash. Office of the Governor, Proclamation 20-19.6 (Mar. 18, 2021),
   https://www.governor.wa.gov/sites/default/files/
   proclamations/proc_20-19.6.pdf .......................................... 1, 5, 7, 8, 10, 15, 18

Christine Mai-Duc & Dan Frosch,
   *Billions in Covid-19 Aid Is Slow to Reach Renters and Landlords*,
   Wall St. J. (Apr. 13, 2021),
   https://www.wsj.com/articles/billions-in-coronavirus-aid-is-slow-to-reach-renters-
   and-landlords-11618324561 ......................................................... 13

Department of Health's COVID-19 Data Dashboard,
   https://www.doh.wa.gov/Emergencies/COVID19/DataDashboard .......... 12

Jason DeParle,
   *Federal Aid to Renters Moves Slowly, Leaving Many at Risk*,
   N.Y. Times (updated May 4, 2021),
   https://www.nytimes.com/2021/04/25/us/politics/rental-assistance-pandemic.html ........... 13

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Jennifer Tolbert, et al.,
    *Vaccination is Local: COVID-19 Vaccination Rates Vary by*
    *County and Key Characteristics*,
    Kaiser Family Found. (May 12, 2021),
    https://www.kff.org/coronavirus-covid-19/issue-brief/vaccination-is-local-covid-19-
    vaccination-rates-vary-by-county-and-key-characteristics/ .................................................. 12

Mike Baker,
    *Seattle's Virus Success Shows What Could Have Been*,
    N.Y. Times, Mar. 17, 2021,
    https://www.nytimes.com/2021/03/11/us/coronavirus-seattle-success.html ........................ 12

Othering & Belonging Inst., Univ. Cal. at Berkeley,
    *2020 Inclusiveness Index* 34, Mar. 2021,
    https://belonging.berkeley.edu/inclusivenessindex/reports ................................................... 12

Tucker Doherty, *et al.*,
    *Which states had the best pandemic response?*,
    Politico, Oct. 15, 2020,
    https://www.politico.com/news/2020/10/14/best-state-responses-to-pandemic-429376 ...... 12

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# I.    INTRODUCTION

The Governor placed a moratorium on certain evictions to mitigate the health and economic impacts of COVID-19 on Washington residents. The Landlords do not dispute that limiting evictions has slowed the spread of COVID-19, reduced housing instability, and saved lives. Renters covered by Proclamation 20-19.6 (the State Moratorium) have been able to stay home and adhere to public health guidelines. And the State Moratorium has—during a time of immense economic fragility and hardship—protected renters from homelessness or from moving into shared or congregate living spaces, where the risk of COVID-19 transmission is high.

The Landlords' Opposition to the State's Cross-Motion for Summary Judgment, Dkt. # 111, distorts the governing law, mischaracterizes the State Moratorium, and fails to establish a genuine dispute of material fact as to any of their claims. The State Moratorium invalidates no leases, discharges no tenants' debts, appropriates no property, and merely regulates the landlord-tenant relationship. Instead, as this Court has held, the State Moratorium is a "reasonable and appropriate" strategy to "address vital public interests during a national public crisis." *El Papel LLC v. Inslee*, No. 2:20-CV-01323-RAJ-JRC, 2020 WL 8024348, at *12 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 71678 (Jan. 8, 2021). The Court should grant summary judgment in favor of the State on the Landlords' Contracts Clause and Takings Clause claims. This Court's prior order denying preliminary injunctive relief to the Landlords provides the blueprint for providing this relief here and now. This outcome would be in accord with numerous federal courts across the country that have denied property owners relief from state and local evictions moratoria bringing the same or similar constitutional claims. *See Heights Apts., LLC v. Walz*, No. 20-CV-2051 (NEB/BRT), 2020 WL 7828818 (D. Minn. Dec. 31, 2020); *Apt. Ass'n of Los Angeles Cnty. v. City of Los Angeles*, 500 F. Supp. 3d 1088 (C.D. Cal. 2020); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass 2020); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337 (E.D. Pa. 2020); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199 (D. Conn. 2020); *Elmsford Apt. Assocs., LLC v.*

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020). It would also be consistent with the Thurston County Superior Court's recent order granting summary judgment in favor of the State on all claims, including claims under the Washington State Constitution's Takings and Contracts clauses. *See* Second Declaration of Cristina Sepe, Exs. N, O.

## II.    ARGUMENT

### A.    Jurisdictional Bars Foreclose the Landlords' Claims

#### 1.    The Landlords lack standing

The CDC Moratorium, which is currently in effect, remains an obstacle to the Landlords "establishing traceability and redressability" because it is an independent policy "that would prevent relief even if the court were to render a favorable decision" to the Landlords. *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 756 (4th Cir. 2013).

The Landlords first argue that the CDC moratorium is not in effect, Dkt. # 111 at 9, but this is flatly wrong. The four courts that have decided against the CDC moratorium have stayed or circumscribed their orders such that the CDC moratorium would still be in effect in Washington State if the State Moratorium is enjoined or not in effect. *See Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 21-5093, 2021 WL 2221646, at *1 (D.C. Cir. June 2, 2021) (denying motion to vacate the district court's order staying its vacatur order pending appeal); *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, No. 5:20-CV-2407, 2021 WL 2228676, at *14 (N.D. Ohio June 3, 2021) (clarifying that the declaratory judgment the court entered "binds the parties and their members" and declining to expand the scope of the judgment more broadly); *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urban Dev.*, No. 2:20-CV-02692-MSN-atc, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021), *den'g stay pending appeal*, 992 F.3d 518 (6th Cir. 2021) (determining the CDC moratorium was "unenforceable in the Western District of Tennessee" only); *Terkel v. CDC*, No. 6:20-CV-00564, 2021 WL 742877, at *2 (E.D. Tex. Feb. 25, 2021) (declining to issue an injunction); *see also* Dkt. # 109-1, Ex. K (DOJ news release explaining that the *Terkel* decision "does not extend beyond the particular plaintiffs");

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Chambless Enterprises, LLC v. Redfield*, No. 3:20-CV-01455, 2020 WL 7588849 (W.D. La. Dec. 22, 2020) (CDC moratorium did not exceed statutory authority of the CDC); *Brown v. Azar*, No. 1:20-CV-03702-JPB, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) (same).

The Landlords' second argument is that they can still seek redress even if the State Moratorium is "one of several obstacles to full relief." Dkt. # 111 at 9. But the Landlords must show that a favorable decision here is *likely* to redress their injuries. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). They are unable to do so. If the State Moratorium were not in effect, the CDC moratorium would be—prohibiting the Landlords from evicting their non-paying tenants and blocking redress. *See* 86 Fed. Reg. 16731-01 (Mar. 31, 2021).

The Landlords next argue that their request for nominal damages satisfies redressability. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), addressed whether a plaintiff who met the first two elements of standing (injury and traceability) for a completed injury could meet the third (redressability) by requesting nominal damages. But *Uzuegbunam* did not evaluate the actions of an independent third party, not a party to the lawsuit, who stood between the plaintiff and the challenged action. *Cf. Doe*, 713 F.3d at 757 ("declining to find redressability where an additional, unchallenged rule could prevent a plaintiff from having her injury cured"). For example, in *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir.1996), the Ninth Circuit found an absence of standing for plaintiffs who alleged, among other things, that the Crime Control Act, which banned certain guns (but excepted others) increased the price of guns and ammunition the plaintiffs wished to purchase. *Id.* at 1124–30. Even granting that the law restricted supply and that the purported economic injury was an "injury in fact," that court found it to be a "fatal flaw" in the plaintiff's standing argument that "nothing in the Act directs manufacturers or dealers to raise the price of regulated weapons." *Id.* at 1130. Rather, third parties such as weapon dealers and manufacturers broke the chain of causation by independently charging higher prices. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). By

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

contrast, the Ninth Circuit was unpersuaded by the federal government's redressability argument in *Ibrahim v. Dep't of Homeland Sec.*, because the government mischaracterized the plaintiff's injury and ignored other aspects of how her placement on the No Fly List injured her beyond the inability to return to the United States. 69 F.3d 983, 993 (9th Cir. 2012). Here, the CDC moratorium would block the Landlords from the whole relief they seek: evicting tenants for non-payment of rent.

The Landlords additionally argue that they do not know whether their tenants would be eligible for eviction reprieve under the CDC moratorium. Dkt. # 111 at 12. This argument ignores that standing to maintain this lawsuit is the Landlords' burden—not the State's. *See Lujan*, 504 U.S. at 561 ("Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). Thus, it remains the Landlords' burden to explain why the CDC moratorium poses no obstacle to their abilities to evict tenants for nonpayment.

Finally, Plaintiff Berman asserts there are independent grounds for evicting certain tenants who would not be protected by the CDC moratorium. Dkt. # 111 at 12. Assuming there indeed has been a change in occupancy, Mr. Berman does not contend that he would evict those tenants living with other occupants not approved by him *See* Dkt. # 97; Dkt. # 112. Instead, he asserts "[b]ut for the Defendants' eviction moratoria, I would start eviction proceedings against *my non-paying tenants.*" Dkt. # 97 ¶ 9 (emphasis added).

## 2.     The State Moratorium is set to expire on June 30, 2021

The State concedes that the Landlords' request for nominal damages is not entirely moot. The Landlords, however, do not address arguments that the expiration of Proclamation 20-19.6 will moot the Landlords' requests for injunctive and declaratory relief. *See* Dkt. # 111 at 13; Dkt. # 104 at 21 (State's brief citing cases supporting mootness argument).

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

As the State previously briefed, the State Moratorium under Proclamation 20-19.6 will end on June 30, 2021. *See* Dkt. # 104 at 8–9, 21–22; Engrossed Second Substitute S.B. 5160, 67th Leg., Reg. Sess. (Wash. 2021), *enacted as* 2021 Wash. Sess. Laws, ch. 115. Some requirements under this bill will not be fully operationalized by July 1, 2021. *See, e.g.*, Second Sepe Decl., Ex. P (letter from bill's prime sponsor describing implementation of appointing counsel for tenants). In candor to the Court and the parties, counsel for the State has recently learned that the Office of the Governor is considering whether interim, bridge measures should be put in place between when Proclamation 20-19.6 ends and E2SSB 5160, and access to hundreds of millions of federal rental assistance dollars, is fully operationalized. Such measures would likely differ from Proclamation 20-19.6, relieving some current restrictions, retaining some current restrictions, and providing a pathway for implementing E2SSB 5160. To counsel's knowledge, final decisions remain to be made. If any interim actions are taken, counsel for the State will re-evaluate whether its mootness argument can be continued in good faith. Based on the current status of the State Moratorium at the time of this filing, the State would like to preserve its mootness argument.

**B.      The State Moratorium Comports with the Contracts Clause**

At the preliminary injunction phase, this Court held that the State Moratorium "do[es] not violate the Contracts Clause." *El Papel*, 2020 WL 8024348, at *9. It should do so again here because the State Moratorium does not substantially impair the Landlords' contractual rights and it also reasonably and appropriately advances "a significant and legitimate public purpose." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018).[1]

---

[1] At least six other federal courts have rejected Contracts Clause claims against eviction moratoria. *See Heights Apts.*, 2020 WL 7828818, at *12; *Apt. Ass'n of L.A. Cnty.*, 500 F. Supp. 3d at 1100; *Baptiste*, 490 F. Supp. 3d at 353; *HAPCO*, 482 F. Supp. 3d at 355–56; *Auracle Homes*, 478 F. Supp. 3d at 199; *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 172.

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

2

### 1.   The State Moratorium does not substantially impair contractual relationships between the Landlords and their tenants

The State Moratorium does not substantially impair the Landlords' contracts because the Moratorium does not: (1) undermine the contractual bargain; (2) interfere with reasonable expectations; or (3) prevent the Landlords from safeguarding or reinstating their rights. *See Sveen*, 138 S. Ct. at 1822.

The Landlords first argue the inability to "enforce[e] their lease agreements . . . undermines the contractual bargain." Dkt. # 111 at 15. But the State Moratorium does not undermine the Landlords' contractual bargain with their tenants, because the mere *delay* in the right to exercise one type of statutory remedy does not materially alter the lease agreements. *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 447–48 (1934) (upholding mortgage moratorium that extended mortgagor's redemption period for up to two years). The State Moratorium does not eliminate or even reduce tenants' obligations to pay rent. Moreover, the Landlords can treat unpaid rent as an enforceable debt if a tenant was offered, and refused or failed to comply with, a reasonable repayment plan based on the individual financial, health, and other circumstances of that tenant. *See* Procl. 20-19.6. The Landlords still retain the ability to enforce the bargained-for terms of the rental contracts. *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 172 ("The eviction moratorium does not eliminate the suite of contractual remedies available to the Plaintiffs; it merely postpones the date on which landlords may commence summary proceedings against their tenants.").

Nor does the State Moratorium interfere with the Landlords' reasonable expectations given the regulatory scheme governing landlord-tenant relationships. "The reasonableness of expectations depends, in part, on whether . . . action was foreseeable, and this, in turn, is affected by whether the relevant party operates in a heavily regulated industry." *Sullivan v. Nassau Cnty. Interim Fin. Auth.*, 959 F.3d 54, 64 (2d Cir. 2020); *see also Mussetter Distrib., Inc. v. DBI Beverage Inc.*, 685 F. Supp. 2d 1028, 1034 (N.D. Cal. 2010) (upholding statute governing

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

"the beer manufacturer/distributor relationship" because "existing statutes govern various aspects of" that relationship and therefore "[f]urther regulation in this field would not be unexpected."). *Cf. Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982) (affirming in the Takings context that "States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular . . ." and citing as examples fire regulations, a mortgage foreclosure moratorium, and rent control statutes as powers the states may exercise). Significantly, the State is not inserting itself into "a field it had never sought to regulate." *Nw. Grocery Ass'n v. City of Seattle*, No. C21-0142-JCC, 2021 WL 1055994, at *8 (W.D. Wash. Mar. 18, 2021) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 249 (1978)). Courts have looked at the extent to which an industry or field has been regulated—a broader analysis than, as the Landlords contend, whether the regulation "only deviates minimally from a pre-existing statutory regime." Dkt. # 111 at 18.

This pandemic has no precedent in the modern era, but residential leases have been heavily regulated for many years and temporary moratoria on evictions are nothing new. *See, e.g.*, *Block v. Hirsh*, 256 U.S. 135, 153 (1921) (upholding law prohibiting eviction of holdover tenants); *SKS & Assocs. v. Dart*, 619 F.3d 674 (7th Cir. 2010) (eviction moratorium during certain winter conditions); Seattle Mun. Code 22.206.160.C.8 (defense to eviction if eviction would result in tenant vacating between December 1 and March 1). Such "past regulation puts industry participants on notice that they may face further government intervention in the future," *Elmsford Apt. Associates*, 469 F. Supp. 3d at 169, so the Moratorium does not substantially impair the Landlords' contract rights. *See also HAPCO*, 2020 WL 5095496, at *7 (upholding Philadelphia eviction moratorium because "residential leases have been heavily regulated for many years").[2]

_____

[2] The Landlords point out that the court in *Apartment Association of Los Angeles County* found that the Los Angeles moratorium was a substantial impairment. *See* Dkt. # 111 at 10, 14. The Landlords omit that the court ultimately concluded that the plaintiff was not likely to succeed on the merits of its Contract Clause claim. *See Apt. Ass'n of L.A. Cnty.*, 500 F. Supp. 3d at 1100. Moreover, several other courts examining Contract Clause challenges to eviction moratoria, have relied upon the history of regulation to conclude that eviction moratoria are relatively minor alterations to existing regulatory frameworks and therefore do not interfere with landlords' reasonable

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

The third factor—whether the Landlords can safeguard or reinstate their rights—strongly supports the conclusion that the State Moratorium does not substantially impair the Landlords' contractual relationship with their tenants. The State Moratorium does not affect the schedule of when rent is due and does not reduce or eviscerate the rent obligation of any tenant. The Landlords can seek to collect all they are owed if they have offered their non-paying tenants a reasonable repayment plan that the tenants have refused or failed to comply with. *See* Procl. 20-19-6. There remain ways for the Landlords to safeguard or reinstate their rights, even while the State Moratorium is in effect.

### 2.     The State Moratorium is appropriate and reasonable

The Court need not reach this second step because the State Moratorium does not substantially impair the Landlords' contractual rights. But should the Court reach the second prong of the Contracts Clause test, the State Moratorium also passes muster because it is an "appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct. at 1822 (cleaned up). Where, as here, the state is not a party to the contracts at issue, "courts 'defer to legislative judgment as to the necessity and reasonableness of a particular measure.'" *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003) (quoting *Energy Rsrvs. Grp.*, 459 U.S. at 412–13); *see also Baptiste*, 490 F. Supp. 3d at 386 n.10 (noting that where the government is not a party to the contract, there must have been a rational basis for the legislation that allegedly impairs contracts; *Blaisdell*, 290 U.S. at 447–48 ("Whether the legislation is wise or unwise as a matter of policy is a question with which [the Court is] not concerned.").

The Landlords do not dispute that there is a significant and legitimate purpose behind this COVID-19 emergency measure. *See* Dkt. # 111 at 21. Instead, the Landlords attempt to impose a strict scrutiny type standard, contending that the Court should assess whether the State

---

expectations and are not substantial impairments. *See Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 169–170; *HAPCO*, 482 F. Supp. 3d at 351–53; *Auracle Homes*, 478 F. Supp. 3d at 224–25.

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1  Moratorium "extend[s] beyond what is necessary for the government to fulfill its interests." *Id.*

2  at 22. Although the Supreme Court in *Spannaus*, 438 U.S. at 243, used the terms "precisely and

3  reasonably designed" when describing another case, whether the government's actions are

4  necessary is not the appropriate test. The Contracts Clause analysis most recently articulated in

5  *Sveen* was "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance

6  'a significant and legitimate public purpose.'" 138 S. Ct. at 1822 (quoting *Energy Rsrvs. Grp.*,

7  459 U.S. at 411–12).

8          There is no question that the State Moratorium is appropriately and reasonably tailored

9  to the emergency wrought by COVID-19. *See El Papel*, 2020 WL 8024348, at *12 (holding the

10  Landlords were unlikely to show the State Moratorium violated the Contracts Clause because it

11  was "designed to address vital public interests during a national public crisis"). For one, the State

12  Moratorium does not eliminate or reduce rent obligations, so like in *Blaisdell*, their

13  "indebtedness is not impaired." *Blaisdell*, 290 U.S. at 447. Second, although the State

14  Moratorium generally prohibits landlords from treating unpaid rent "as an enforceable debt or

15  obligation that is owing or collectable," that prohibition applies only when nonpayment was "a

16  result of the COVID-19 outbreak and occurred on or after February 29, 2020." Procl. 20-19-6.

17  That is, the Landlords can pursue actions other than eviction to collect unpaid rent that predates

18  or is unrelated to the pandemic. Third, the Landlords can collect *any* unpaid rent if a tenant

19  refuses or fails to comply with an offered "re-payment plan that was reasonable based on the

20  individual financial, health, and other circumstances of that resident." *Id.* Fourth, the State

21  Moratorium does not foreclose *all* evictions. The Landlords are permitted to evict tenants if their

22  tenants pose a significant risk to the health, safety, or property of others, or if the Landlords seek

23  to personally occupy the premises as a primary resident (with timely notice) or sell the property

24  (also with timely notice). *See* Procl. 20-19.6. Fifth, the State Moratorium is "temporary in

25  operation[ ]" and limited to this emergency. *Blaisdell*, 290 U.S. at 447. For all these reasons and

26  more, the State Moratorium is appropriately and reasonably tailored. It strikes a balance between

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

property owners and tenants; it is "not for the mere advantage of particular individuals but for the protection of a basic interest of society[,]" that is, to prevent mass evictions and the spread of COVID-19. *Id.* at 445.

The Landlords continue to complain that the State Moratorium "extend[s] to those tenants who are not suffering financial hardship and are not at risk of homelessness." Dkt. # 111 at 23. But this Court has already rejected this very argument: "Seeking to avoid housing instability, whether of the rich or of the poor, will keep people in their homes and reduce COVID-19 transmission." *El Papel*, 2020 WL 8024348, at *10. And the Court has already credited the State's reasoning for why it considered but ultimately did not include a hardship requirement: "In many cases, tenants in genuine economic distress due to the pandemic are unable to provide adequate proof of their distress." *Id.* at *11; *see* Dkt. # 105 ¶ 18 (explaining the State's reasoning). As the Court concluded, these "rationale[s] support[ ] the State's decision not to include a hardship requirement in its moratorium and show[ ] that the State acted reasonably." *Id.*[3] The Court has also explained that cases relied on by the Landlords, like *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935), "represent an inquiry into the reasonableness of the legislation under the circumstances[,]" *id.* at *8—not that a law impairing contracts must require a showing of hardship.

The Landlords again suggest several policy alternatives, such as caps on eviction rates, a priority system for eviction processing, and eviction delays to be set by courts. Dkt. # 111 at 24. The question is not whether alternatives might exist, but whether the governmental choice meets constitutional standards. The current Moratorium allows for unlawful detainer actions in certain scenarios, such as where the tenant causes a significant risk of harm or where the landlords intends to sell or self-occupy. Moreover, the State considered some of these options but

---

[3] The State does not disagree that courts routinely deal with complicated evidence and parse messy facts. *See* Dkt. # 111 at 24. For example, courts may have to grapple with messy facts when determining whether the Landlords offered tenants a "reasonable repayment plan" and whether tenants have a defense in actions to collect unpaid rent.

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

concluded that placing a cap would be ineffective at halting the rise in evictions. *See* Dkt. # 105 ¶ 15. The State's response appropriately and reasonably curbs mass evictions and increased COVID-19 transmission. The Landlords' policy prescriptions also ignore the deference due to the Governor's judgment as to the reasonableness of the State Moratorium. *Energy Rsrvs. Grp. v. Kansas Power & Light Co.*, 459 U.S. 400, 412–13 (1983). They also ignore that the State Moratorium need not be narrowly tailored or the least burdensome to prevent the spread of COVID-19 and mitigate housing instability. *See El Papel*, 2020 WL 8024348, at *10 ("The law should be tailored to the emergency justifying its enactment—although it need not be a perfect fit."); *Heights Apts.*, 2020 WL 7828818, at *12 (explaining that the Minnesota eviction moratorium "need not be drawn with surgical precision to avoid constitutional infirmity. Contracts Clause analysis is not, after all, strict scrutiny.").

The Landlords also inaccurately describe state rental assistance measures, specifically the Landlord Mitigation Program. Dkt. # 111 at 26. E2SSB 5160 offers, under certain conditions, up to $15,000 in reimbursement for unpaid rent that accrued between March 1, 2020 and six months following the expiration of the eviction moratorium. *See* 2021 Wash. Sess. Laws, ch. 115 § 5(1)(d)(i). It offers up to $5,000 for certain reimbursements and unpaid rent for those renting private market rental units to low-income tenants using a housing subsidy program. *See id.* §§ 5(4), 5(1)(b). The recently passed budget includes over $1 billion in rental assistance, foreclosure prevention, and utility assistance to assist economically distressed renters and homeowners. *See* Engrossed Substitute S.B. 5092, *enacted as* 2021 Wash. Sess. Laws, ch. 334.

Finally, the Landlords ask the Court to look at the State Moratorium in light of "changed circumstances," given that the daily case counts of COVID-19 are in decline in the State. *See* Dkt. # 111 at 22. While true that the epidemiologic curve is trending down, the coronavirus pandemic is not yet over.[4] Data as of June 12, 2021, shows that 55% of the 12 and over

---

[4] In addition to vaccinations, the State's success in addressing the pandemic is attributable to the State's implementation of public health guidance, like the Moratorium, to slow the virus's spread and mitigate its devastating impacts on the health and welfare of Washingtonians. The State's and City of Seattle's responses to the

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

population is fully vaccinated, and the vaccine is currently available only for those 12 years of age and older.[5] Those at risk of eviction are disproportionately less likely to be vaccinated. *See* Jennifer Tolbert, et al., *Vaccination is Local: COVID-19 Vaccination Rates Vary by County and Key Characteristics*, Kaiser Family Found. (May 12, 2021), https://www.kff.org/coronavirus-covid-19/issue-brief/vaccination-is-local-covid-19-vaccination-rates-vary-by-county-and-key-characteristics/ (finding higher county uninsured and poverty rates associated with lower vaccination rates) (Second Sepe Decl., Ex. Q). And a significant percentage of renter households who have fallen behind on rent have children, many of whom cannot currently get vaccinated. Dkt. # 105-2, Ex. N (finding eviction risk disproportionately impacting renters with children). The State continues to encourage the public to take precautions, particularly those who are not yet vaccinated against COVID-19.

But even if most renters were vaccinated, there remains a need for a temporary pause on evictions until E2SSB 5160, which provides certain tenant protections during and after the public health emergency, and perhaps rental assistance programs are fully operationalized.[6] Economic recovery takes time, and many tenants cannot pay full rent while the State continues to progressively reopen. *See* Dkt 105-2, Ex. N (up to 789,000 Washingtonians at risk of eviction without moratorium), Ex. Z (265,000 Washington state households have little to no confidence in ability to make next month's rent); *see also* 86 Fed. Reg. 16731, 16738 ("[T]he risk of large numbers of residential evictions contributing to the spread of COVID-19 throughout the United

---

emergency has been hailed as among the most effective in the nation. *See, e.g.*, Othering & Belonging Inst., Univ. Cal. at Berkeley, *2020 Inclusiveness Index* 34, Mar. 2021, https://belonging.berkeley.edu/inclusivenessindex/reports (ranking Washington as seventh-best performing effective state in addressing COVID-19); Mike Baker, *Seattle's Virus Success Shows What Could Have Been*, N.Y. Times, Mar. 17, 2021, https://www.nytimes.com/2021/03/11/us/coronavirus-seattle-success.html (estimating that the country could have avoided more than 300,000 coronavirus deaths if it kept pace with the Seattle area's death rate); Tucker Doherty, *et al.*, *Which states had the best pandemic response?*, Politico, Oct. 15, 2020, https://www.politico.com/news/2020/10/14/best-state-responses-to-pandemic-429376.

[5] Up-to-date vaccination data for the State can be accessed at the Department of Health's COVID-19 Data Dashboard at: https://www.doh.wa.gov/Emergencies/COVID19/DataDashboard.

[6] *See also* Jason DeParle, *Federal Aid to Renters Moves Slowly, Leaving Many at Risk*, N.Y. Times (updated May 4, 2021), https://www.nytimes.com/2021/04/25/us/politics/rental-assistance-pandemic.html; Christine Mai-Duc & Dan Frosch, *Billions in Covid-19 Aid Is Slow to Reach Renters and Landlords*, Wall St. J. (Apr. 13, 2021), https://www.wsj.com/articles/billions-in-coronavirus-aid-is-slow-to-reach-renters-and-landlords-11618324561.

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

States . . . continues to exist. Without this [CDC eviction moratorium], there is every reason to expect that evictions will increase."). The Landlords cannot deny that many Washingtonians continue to experience financial hardships due to the pandemic and that the State's economic and public health recovery is fragile.

This Court should follow its prior holding that the State Moratorium does not violate the Contracts Clause, in line with several other courts across the country. *See supra* p. 5, n.1.

## C.   The State Moratorium Does Not Violate the Takings Clause

The Landlords' physical takings claim has several fatal defects: First, the State Moratorium does not effect a physical taking because the Landlords are not suffering permanent physical invasion of their properties. Second, the State has not directly appropriated, even temporarily, the Landlords' properties. Third, and finally, the Landlords cannot obtain equitable relief under this claim.

### 1.   The State Moratorium does not effect a physical taking

The State merely forecloses for a period of time a particular remedy—eviction—in certain circumstances for nonpayment of rent; this is not a physical taking.[7] "The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002) (physical takings are "relatively rare"). In contrast to such a compelled physical occupation, "[s]tates have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto*, 458 U.S. at 440. Here, the State Moratorium merely regulates the landlord-tenant relationship and does not subject the Landlords to a "permanent physical occupation" of their property. *Id.* at 434.

---

[7] This is in line with other federal courts that have reached this exact issue regarding other state and local evictions moratoria during the COVID-19 pandemic. *See Heights Apts.*, 2020 WL 7828818, at *14; *Baptiste*, 490 F. Supp. 3d at 388–90; *Auracle Homes*, 478 F. Supp. 3d at 220–21; *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 164.

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC                    13                    ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    The Landlords' attempts to distinguish this case from *Yee* are unpersuasive. In *Yee*, the

2    Supreme Court held that a rent control ordinance did not constitute a taking even when

3    considered in conjunction with a state statute restricting the ability of park owners to evict mobile

4    home tenants, including providing 6 or 12 months notice. *See Yee*, 503 U.S. at 527–28. Because

5    "[p]etitioners' tenants were invited by petitioners, not forced upon them by the government,"

6    they had not been subjected to a compelled physical invasion of their property; therefore, no

7    physical taking had occurred. *Id.* at 528. As in *Yee*, the State Moratorium does not compel the

8    Landlords to rent their properties. Instead, as the Landlords concede, *see* Dkt. # 111 at 31, they

9    voluntarily chose to rent to their tenants. And the Landlords' assertion that some tenants have

10   continued to occupy their properties "even after the 'invitation' has ended," Dkt. # 111 at 32, is

11   like the claim rejected in *Yee*, where the mobile park owners similarly argued they could not

12   evict their tenants. *Id.* at 526–27 ("Because under the California Mobilehome Residency Law

13   the park owner cannot evict a mobile home owner or easily convert the property to other uses,

14   the argument goes, the mobile home owner is effectively a perpetual tenant of the park . . . .").

15   The State Moratorium merely regulates the Landlords' "*use* of their land by regulating

16   the relationship between landlord and tenant," and is thus not a physical taking. *Id.* at 528; *see*

17   *also Tahoe*, 535 U.S. at 322–23 (explaining that a government regulation that merely prohibited

18   landlords from evicting tenants to pay a higher rent in *Block*, 256 U.S. 135, was not a categorical

19   taking); *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("statutes regulating the economic

20   relations of landlords and tenants are not *per se* takings").

21   Although "[a] different case would be presented were the statute, on its face or as applied,

22   to compel a landowner over objection to rent his property or to refrain in perpetuity from

23   terminating a tenancy," *Yee*, 503 U.S. at 528, that is not the case here. The Landlords "invited"

24   and "voluntarily rented" their units to renters. *Id.* at 527–28. The State Moratorium will not

25   continue in perpetuity, and it allows the Landlords to "change the use" of their land in some

26   circumstances, for example, by selling or occupying the property themselves. *Id.* at 528; *see*

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Procl. 20-19.6 (requiring 60-day notice for sale or re-occupation). The Moratorium also permits the Landlords to evict or terminate a tenancy if the action "is necessary to respond to a significant and immediate risk to the health, safety, or property of others created by the resident." Procl. 20-19.6.

The State Moratorium is a temporary regulation of the landlord-tenant relationship; it does not authorize a compelled physical invasion of property.

### 2. The State has not taken physical possession of the Landlords' properties, not even temporarily

The Landlords wrongly rely on cases where the government has temporarily occupied property to make their argument that "a temporary occupation of property can constitute a categorical taking." Dkt. # 111 at 33. The State agrees that the government must compensate a property owner when "the government occupies the property for its own purposes, even though that use is temporary." *Tahoe-Sierra*, 535 U.S. at 322. But here, the State itself is not occupying the Landlords' properties. Therefore, the cases the Landlords rely on do not support their argument.

For example, *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949), *United States v. Petty Motor Co.*, 327 U.S. 372 (1946), and *United States v. General Motors Corp.*, 323 U.S. 373 (1945), are cases where the federal government itself physically occupied buildings for temporary periods of time. *See Tahoe-Sierra*, 535 U.S. at 322 (citing *General Motors*, 323 U.S. 373, and *Petty Motor*, 327 U.S. 372, for the proposition that the government must compensate for its temporary occupation of property). None of those cases dealt with regulations between property owners and third-party tenants whom they had voluntarily invited to occupy the property; they were about the federal government's own occupation of facilities.

*Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991), is of no avail to the Landlords either. In *Hendler*, the government sunk concrete wells on landowners' property to monitor groundwater pollution. *See* 952 F.2d at 1367. The wells, and the workers who entered to install

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

and monitor them, permanently occupied plaintiffs' land, giving rise to a *per se* taking under *Loretto*. *Id.* at 1377. The decision rested squarely upon the permanent nature of the wells and the regular government intrusions to monitor them. *Id.* at 1376 ("There is nothing 'temporary' about the wells the Government installed on plaintiffs' property."). Again, by contrast, the State has not appropriated the Landlords' properties for its own use in this case.

The Landlords again return to *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23 (2012), to aid their argument that a temporary occupation can trigger takings liability. But this reliance is misplaced. The Court in *Arkansas Game & Fish Commission* held "simply and only, that government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection." 568 U.S. at 38. The Court then proceeded to apply a multi-factor test for government-created flooding different from the general regulatory-taking analysis under *Penn Central Trans. Co. v. City of New York*, 438 U.S. 104, 124 (1978). *See id.* at 38–40. "[I]ntermittent flooding cases reveal [that] such temporary limitations are subject to a more complex balancing process to determine whether they are a taking. The rationale is evident: they do not absolutely dispossess the owner of his rights to use, and exclude others from, his property." *Loretto*, 458 U.S. at 436 n.12.

The State has not directly appropriated the Landlords' properties, even temporarily. No physical taking has occurred.

### 3.    The Landlords are not entitled to equitable relief

Even if the Landlords could show that a taking has occurred—which they cannot—they are not entitled to equitable relief. The Takings Clause only prohibits states from taking private property for public use "without just compensation," U.S. Const. amend. V, so "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984); *see also In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 669 F.3d 928, 932 (9th Cir. 2011).

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   The Landlords offer no new arguments as to why the Court should depart from its prior

2   holding that "there is no basis for injunctive relief on the [Landlords'] takings claims." *El Papel*,

3   2020 WL 8024348, at *13. This is because "even if there is an alleged 'taking,' money damages

4   are an available remedy." *Id.* at *12; *see also Knick v. Township of Scott*, 139 S. Ct. 2162, 2176–

5   77 (2019) ("As long as an adequate provision for obtaining just compensation exists, there is no

6   basis to enjoin the government's action effecting a taking.").

7       Repeating arguments from the preliminary injunction stage, the Landlords argue that they

8   are entitled to injunctive relief because their injury is "of a continuing nature." *Compare*

9   Dkt. # 111 at 28 (quoting *Kucera v. State, Dep't of Transp.*, 995 P.2d 63, 69 (Wash. 2000));

10  Dkt. # 93 at 29 (same); *with* Dkt. # 50 at 19 (same). But *Kucera* does not support the Landlords

11  arguments, because as this Court observed, "[t]hat case did not involve a 'takings' claim."

12  *El Papel*, 2020 WL 8024348, at *13. Moreover, in *Kucera*, the Washington Supreme Court

13  actually overturned a preliminary injunction pending the outcome of the property owners'

14  lawsuit because the injuries complained of "may be easily compensated by money damages."

15  995 P.2d at 69. And tellingly, the Landlords do not respond as to how their injury could continue

16  after the Moratorium's expiration or how their purported harm is difficult to quantify when the

17  essence of their claim is lost rent. The Landlords also neglect to explain that the court in

18  *Lamplighter Vill. Apts. LLP v. City of St. Paul*, No 21-413 (PAM/HB), 2021 WL 1526797 (D.

19  Minn. Apr. 19, 2021) also granted the plaintiffs' request for preliminary injunctive relief based

20  on their due process claim.

21      The Landlords contend their purported injury is "not just monetary," arguing that the

22  Moratorium deprives them of their "rights to exclude and repossess their properties." Dkt. # 111

23  at 29. But this argument is unpersuasive. For one, if such injuries gave rise to injunctive relief,

24  then monetary damages would be insufficient for a wide swath of Takings claim cases. This

25  cannot be squared with the Supreme Court's admonition that "there is no basis to enjoin the

26  government's action effecting a taking" so long as there is an adequate way for obtaining just

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    compensation. *Knick*, 139 S. Ct. at 2176. Second, the Moratorium actually preserves a landlord's

2    right to "personally occupy the premises as the owner's primary residence." Procl. 20-19.6. As

3    this Court has explained, if the State Moratorium has effected a taking, the Landlords can be

4    compensated by damages measured by unpaid rent and late fees. *See El Papel*, 2020

5    WL 8024348, at *13.

6         The Landlords are not entitled to declaratory relief either. *See* Dkt. # 111 at 29. They

7    failed to affirmatively raise this alternative form of relief in their opening brief, Dkt. # 93, and

8    should not be entitled to make this argument on reply. *See, e.g.*, *McKay v. Ingleson*, 558 F.3d

9    888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the

10   opening brief, it has been waived."); *Anderson v. Colvin*, No. CV14-05137-BJR, 2014

11   WL 4929328, at *3 (W.D. Wash. Oct. 1, 2014) ("As plaintiff raised this argument for the first

12   time in his reply brief, it is waived.").[8]

13                          **III.    CONCLUSION**

14        The COVID-19 pandemic has brought devastating public health and economic

15   consequences, but the State Moratorium has been a critical—and constitutional—tool to reduce

16   the transmission of COVID-19 and housing instability. The Court should sustain the State

17   Moratorium, enter summary judgment in favor of the State, and dismiss the Landlords' claims

18   with prejudice.

19        DATED this 18th day of June 2021.

20                                    ROBERT W. FERGUSON
                                      Attorney General
21

22                                    *s/ Cristina Sepe*
                                      CRISTINA SEPE, WSBA No. 53609
                                      ZACHARY PEKELIS JONES, WSBA No. 44557
23                                    BRIAN H. ROWE, WSBA No. 56817
                                      Assistant Attorneys General
24

25        [8] Some courts evaluating the availability for declaratory relief for Takings claims have concluded that
     plaintiffs were not entitled to such relief. *See Baptiste*, 490 F. Supp. 3d at 391; *HAPCO*, 482 F. Supp. 3d at 358 &
     n.112; *see also Culinary Studios, Inc. v. Newsom*, No. 1:20-CV-1340 AWI EPG, 2021 WL 427115, at *14 (E.D.
26   Cal. Feb. 8, 2021); *County of Butler v. Wolf*, No. 2:20-cv-677, 2020 WL 2769105, *4 (W.D. Pa. May 28, 2020).
     *But see Duke Power Co. v. Carolina Env't Study Group, Inc.*, 438 U.S. 59, 71 n.15 (1978).

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    JEFFREY T. EVEN, WSBA No. 20367
        Deputy Solicitor General
2    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
3    (206)474-7744
     (360) 753-6200
4    cristina.sepe@atg.wa.gov
     zach.jones@atg.wa.gov
5    brian.rowe@atg.wa.gov
     jeffrey.even@atg.wa.gov
6
7    *Attorneys for Defendant Robert W. Ferguson,*
     *in his official capacity as Attorney General*
8    *of the State of Washington*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

**DECLARATION OF SERVICE**

2

    I hereby declare that on this day I caused the foregoing document to be electronically

3

filed with the Clerk of the Court using the Court's CM/ECF System which will send notification

4

of such filing to all counsel of record.

5

    DATED this 18th day of June, 2021, at Seattle, Washington.

6

7

                *s/ Cristina Sepe*
                Cristina Sepe, WSBA No. 53609

8

                *Assistant Attorney General*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT ROBERT W.
FERGUSON'S REPLY ISO CROSS-MSJ
NO.  2:20-cv-01323-RAJ-JRC

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744