Hon. Richard A. Jones
Hon. J. Richard Creatura

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | | |
|---|---|---|
| EL PAPEL, LLC, and BERMAN 2, LLC, | ) | Civil Action No. 2:20-cv-01323-RAJ-JRC |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **PLAINTIFFS' SUPPLEMENTAL** |
| | ) | **BRIEF ON CROSS MOTIONS FOR** |
| ROBERT W. FERGUSON, in his official | ) | **SUMMARY JUDGMENT, RE:** |
| capacity as Attorney General of the State of | ) | **PROCLAMATION 21-09 AND *CEDAR*** |
| Washington; JENNY A. DURKAN, in her | ) | ***POINT NURSERY V. HASSID*** |
| official capacity as the Mayor of the City of | ) | |
| Seattle; and THE CITY OF SEATTLE, a | ) | **Noted on Motion Calendar:** |
| municipal Corporation, | ) | **August 16, 2021** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

PROCLAMATION 21-09 ........................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.       Proclamation 21-09 Does Not Affect the Justiciability of Plaintiffs' Claims.................. 2

*P.s' Supplemental Brief - i*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

II.   By Permanently Imposing Serious Restrictions on Plaintiffs' Rights To Exclude and To Collect Rental Debt, Proclamation 21-09 Continues To Violate Plaintiffs' Constitutional Rights ................................................................................................. 3

III.  *Cedar Point Nursery* Supports the Plaintiffs' Claim That the Eviction Bans Cause a Categorical Taking of Plaintiffs' Property ....................................................... 6

CONCLUSION ................................................................................................................ 10

CERTIFICATE OF SERVICE ........................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978) ................................................................................................. 5

*Armstrong v. United States*, 364 U.S. 40 (1960) ........................................................... 9

*Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*,
    941 F.3d 1195 (9th Cir. 2019) ................................................................................. 3

*Cedar Point Nursery v. Hassid*,
    141 S. Ct. 2063 (June 23, 2021) .............................................................1, 6, 7, 8, 9

*City of Rapid City v. Boland*,
    271 N.W.2d 60 (S.D. 1978) ..................................................................................... 9

*Commw. v. Berrigan*, 509 Pa. 118 (Pa. 1985) ............................................................... 8

*Cty. of Butler v. Wolf*, 486 F. Supp. 3d 883 (W.D. Pa. 2020) ....................................... 6

*Fordyce v. City of Seattle*,
    55 F.3d 436 (9th Cir. 1995) ..................................................................................... 2

*Hendler v. United States*,
    952 F.2d 1364 (Fed. Cir. 1991) ............................................................................... 7

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013) ................................................................................................. 5

*Loretto v. Teleprompter Manhattan CATV Corporation*,
    458 U.S. 419 (1982) ................................................................................................. 6

*Northeastern Fla. Chapter of Ass'n Gen. Contractors of America v. City of
    Jacksonville, Fla.*, 508 U.S. 656 (1993) .............................................................2, 3

*Penn Central Transportation Company v. City of New York*,
    438 U.S. 104 (1978) ..............................................................................................6, 7

*Rossi v. DelDuca*, 181 N.E.2d 591 (Mass. 1962) .......................................................... 8

*P.s' Supplemental Brief - ii*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*Surocco v. Geary*, 3 Cal. 69 (Cal. 1853) ........................................................................8

*United States v. Caltex*, 344 U.S. 149 (1952) ...............................................................8

*Uzuegbunam v. Preczewski*,
    141 S. Ct. 792 (Mar. 8, 2021) ...............................................................................2

**Statutes**

RCW 7.75 (Dispute Resolution Centers) ........................................................................4

**Other Authorities**

King County Rental Assistance, Landlord Terms and Conditions, *available at*
    https://eprap-prod.powerappsportals.us/vendor/ ....................................................4

Restatement (Second) of Torts § 196 (1964) ..............................................................8, 9

*P.s' Supplemental Brief - iii*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## INTRODUCTION

This Court has called for supplemental briefing regarding Emergency Proclamation 21-09 as well as the effect of the recent Supreme Court decision, *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (June 23, 2021), on Plaintiffs' takings claims.

Proclamation 21-09 does not affect the justiciability of Plaintiffs' claims for two reasons: (1) Plaintiffs' request for nominal damages preserves their claims against the prior proclamations; and (2) Proclamation 21-09 imposes a substantially similar burden to the prior proclamations. Proclamation 21-09 continues to violate Plaintiffs' constitutional rights by placing undue restrictions on Plaintiffs' property and contract rights. Importantly, unlike any proclamation before it, Proclamation 21-09 has no end date and imposes heavy restrictions on eviction for non-payment not only for rent debt that accrued during the pandemic, but any future rent owed, permanently.

Additionally, *Cedar Point Nursery*, 141 S. Ct. 2063, confirms that the State and City's respective eviction bans cause a categorical physical taking. In *Cedar Point*, the Supreme Court affirmed that abrogating a property owner's fundamental right to exclude—even temporarily—triggers an obligation to compensate the property owner.

## PROCLAMATION 21-09

On June 29, 2021, Governor Inslee adopted Proclamation 21-09. *See* Second Declaration of Ethan W. Blevins in support of Plaintiffs' Motion for Summary Judgment (Blevins Decl.), Exhibit 24. Among other things, Proclamation 21-09 establishes new conditions on landlord efforts to evict or collect unpaid rent. Namely, a landlord cannot evict a tenant or collect on rental debt based "in whole or in part" on rental debt that accrued from February 29, 2020, through July 31, 2021, unless three conditions are met. *See id.*, Exh. 24 at 4–5. First, the county must have in place a rental assistance program and an eviction resolution pilot program in compliance with state law. *Id.* Second, the landlord must offer the tenant an opportunity to participate in these programs. *Id.* Third, a landlord cannot evict a tenant for rental debt that accrued after February 29, 2020, unless the landlord offers a reasonable payment plan to the tenant, which cannot exceed monthly payments equal to a third of the monthly rent due during the period the rent was originally due.

*P.s' Supplemental Brief - 1*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*See id.*, Exh. 24 at 5. A landlord's right to evict for any future non-payment of rent is likewise restricted, prohibiting eviction if a tenant has provided partial payment or if a rental assistance program "anticipat[es]" future funding or *might* take applications in the future. *Id.* Proclamation 21-09 does not have an end date.

## ARGUMENT

### I.   Proclamation 21-09 Does Not Affect the Justiciability of Plaintiffs' Claims

Plaintiffs' challenge to Governor Inslee's earlier proclamation and later extensions barring eviction still warrants relief because the Plaintiffs' complaint requests nominal damages. As discussed in prior briefing, *see* Dkt. #111 at 5, 7–8, nominal damages will preserve a claim against a challenged law that has expired. In *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (Mar. 8, 2021), the Supreme Court held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." Hence, a plaintiff can still obtain declaratory relief and nominal damages even after a challenged law that caused concrete injury is no longer in place. *Id.*

Here, Plaintiffs requested nominal damages in their complaint, and the State waived any sovereign immunity defense to that request. *See* Dkt. #111 at 7–8; Dkt. #121 at 3–4 (declining to refute Plaintiffs' argument that sovereign immunity as to nominal damages has been waived). *See also Fordyce v. City of Seattle*, 55 F.3d 436, 441 (9th Cir. 1995) (the state "waive[s] [its] Eleventh Amendment protection by voluntarily appearing and defending on the merits"). Hence, even if the Governor had ended the eviction moratorium altogether, Plaintiffs' challenge to the earlier proclamations would remain justiciable.

Moreover, Plaintiffs need not amend their complaint to bring new claims challenging Proclamation 21-09 because the proclamation harms them in a similar manner to the proclamation and extensions that preceded it. A claim does not become moot where the government entity has replaced a challenged law with a similar enactment. *See Northeastern Fla. Chapter of Ass'n Gen. Contractors of America v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993). So long as the enactment harms the Plaintiffs "in the same fundamental way," then the original claim remains

*P.s' Supplemental Brief - 2*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

alive, even if the new enactment "may disadvantage them to a lesser degree than the old one." *Id.*; *see also Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (recognizing that a legal challenge to a law is not mooted following repeal if the government "already has reenacted the challenged law or one substantially similar"). For the reasons discussed below, Proclamation 21-09 continues to harm Plaintiffs in the same fundamental way.

## II.   By Permanently Imposing Serious Restrictions on Plaintiffs' Rights To Exclude and To Collect Rental Debt, Proclamation 21-09 Continues To Violate Plaintiffs' Constitutional Rights

Proclamation 21-09 imposes a serious burden on a landlord's rights to collect accrued rental debt and evict tenants occupying landlords' properties for free. Moreover, like the proclamation and extensions before it, Proclamation 21-09 bars landlords from ever recovering late fees or other charges such as interest that has accrued due to late or unpaid rent. Blevins Decl., Exh. 24 at 5.

The eviction and debt repayment process established by Proclamation 21-09 erects a procedural labyrinth that depends on third-party actions and complicated conditions that continue to impose a substantial impairment on landlords' contractual obligations. First, a landlord's right to evict for non-payment of rent hinges on a local eviction resolution pilot program and local rental assistance program filing an "attestation to program implementation" with the Department of Commerce. Blevins Decl., Exh. 24 at 4. Since Proclamation 21-09 does not obligate these programs to provide such attestation, the programs can effectively hold a landlord's rights hostage by declining to follow this procedural step. To Plaintiffs' knowledge, neither the King County eviction resolution pilot program nor the rental assistance program have submitted this attestation, and therefore Proclamation 21-09 effectively bars any eviction actions for non-payment in King County until such attestation occurs.

Even if the local programs have satisfied this step, a landlord's rights to evict or collect rental debt remains burdened by the significant procedural hurdles erected by Proclamation 21-09. Before seeking to evict or collect rental debt, landlords must offer to participate in eviction

P.s' Supplemental Brief - 3
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

resolution and rental assistance programs with non-paying tenants. *Id.*, Exh. 24 at 4–5. In King County, this means that landlords, before availing themselves of a statutory and contractual right, must "meet and confer with the local DRC [Dispute Resolution Center][1] and the tenant and tenant's attorney to facilitate the resolution of the nonpayment of rent," *see id.*, Exh. 25 at 4, even where—as here—such negotiations are likely to be fruitless or impossible, given many landlords' repeated efforts throughout the pandemic to come to an agreement with tenants who refuse to respond. *See e.g.*, Dkt. #97 ¶ 6. The landlord must then file a certification form issued by the DRC certifying that the parties had met and conferred as required before pursuing eviction. *See* Blevins Decl., Exh. 25 at 4. Since the DRC is a non-government actor with no legal obligation to issue such certification, the requirement to participate in the resolution program places a landlords' right to evict at the mercy of a third party.

Plaintiffs must, moreover, offer to participate in King County's rental assistance program before exercising the right to evict under Proclamation 21-09. *See id.*, Exh. 24 at 4. This effectively prohibits landlords from terminating or declining to renew a tenancy until December 31, 2021, which landlords must agree to as a term of the King County Eviction Prevention and Rental Assistance Program. *See* King County Rental Assistance, Landlord Terms and Conditions, *available at* https://eprap-prod.powerappsportals.us/vendor/. Landlords cannot decline this term because of Proclamation 21-09, which compels participation in King County's program. *See* Blevins Decl., Exh. 24 at 4.

Importantly, these restrictions apply even where the rationale for evicting a tenant is "in part" due to accrued rental debt during the pandemic. *Id.* Hence, a landlord who has decided to sell a property in part because their tenant has not paid rent in months cannot evict without wading into the procedural morass imposed by Proclamation 21-09. In this sense, Proclamation 21-09 is more burdensome than the proclamation and extensions that preceded it, which allowed landlords to evict a tenant for the purpose of selling the property or self-occupancy. Compare *id.* with Dkt.

---

[1] DRCs are nonprofits established under state law to facilitate the informal resolution of disputes. *See* RCW 7.75.

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

#94, Exh. 21 at 5. That is no longer the case if the sale or self-occupancy is motivated "in part" by a tenant's failure to pay rent.

Proclamation 21-09 additionally requires landlords to offer a "reasonable" payment plan as defined by the Proclamation before exercising the right to evict. *See* Blevins Decl., Exh. 24 at 6. Such a payment plan cannot "exceed monthly payments equal to one-third of the monthly rental charges during the period of accrued debt." *Id.* Forcing landlords to acquiesce to this restriction on their contractual rights to collect rental debt as a condition to exercising their right to evict imposes a serious constitutional injury. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) ("[T]he unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.").

Most notably, Proclamation 21-09 has no end date. This differs markedly from the prior proclamation, which the State has argued did not impose constitutional injury because it was temporary. That is no longer true. Moreover, Proclamation 21-09 extends its control over evictions based on non-payment for the indefinite future, "August 1, 2021, or thereafter." Blevins Decl., Exh. 24 at 5.[2] Until Proclamation 21-09 is affirmatively rescinded, landlords cannot evict for any non-payment, whether during the pandemic or any time in the future, if the tenant has made full or partial rent based on individual circumstances, if an application for rental assistance is pending, or even if a dormant rental assistance program is "anticipating" additional funds at some point in the uncertain future or "is not yet accepting new applications for assistance" but might at some point. *Id.* Proclamation 21-09 thus places ongoing executive control over the eviction process throughout Washington. The State can no longer shrug off landlords' injuries as temporary or explain the Governor's actions as a narrow and time-limited response to the pandemic. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978) (to satisfy the Contract Clause's reasonableness standard, an emergency measure must be "appropriately tailored to the emergency

---

[2] The Section titled "FUTURE RENT OWED" is followed by "(August 1, 2021, through September 30, 2021)" but the language in the section itself repeatedly says "August 1, 2021, or thereafter" and "after August 1, 2021," expressly establishing an endless timeline for regulation of eviction for any future rent owed. *Id.*

*P.s' Supplemental Brief - 5*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

that it was designed to meet" and the legislation should be "limited to the duration of the emergency"). As a federal district court reasoned back in September 2020: "There is no question . . . that courts may provide state and local officials greater deference when making time-sensitive decisions in the maelstrom of an emergency. But that deference cannot go on forever." *Cty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 900–01 (W.D. Pa. 2020).

In short, Proclamation 21-09's labyrinthine control over landlord-tenant relations results in a de facto bar to eviction in most circumstances and, unlike any prior proclamation before it, is not limited in duration or to the context of the pandemic. Proclamation 21-09 therefore violates the Contract Clause and Takings Clause of the United States Constitution.

### III.   *Cedar Point Nursery* Supports the Plaintiffs' Claim That the Eviction Bans Cause a Categorical Taking of Plaintiffs' Property

As alleged in the Plaintiffs' prior briefing, the City of Seattle's and State of Washington's respective bans prohibiting landlords from evicting their tenants constitute a *per se* physical occupation by requiring Plaintiffs to house tenants indefinitely without payment of rent.

In June, the United States Supreme Court in *Cedar Point Nursery v. Hassid* evaluated whether a California statute requiring a property owner to grant physical access to union organizers for three hours per day, 120 days per year, affected a taking. 141 S. Ct. 2063. The Court concluded that even a temporary physical occupation, no matter how small or intermittent, was a *per se* categorical taking, requiring just compensation. *Id.* at 2074 ("The regulation appropriates a right to physically invade the growers' property . . . . It is therefore, a *per se* physical taking under our precedents.").

In so holding, the Court rejected the Ninth Circuit's reliance on the ad hoc balancing test for regulatory takings in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 124 (1978), instead of the categorical physical invasion analysis in *Loretto v. Teleprompter Manhattan CATV Corporation*, 458 U.S. 419, 435–41 (1982). *Cedar Point Nursery*, 141 S. Ct. at 2072 ("The essential question is not, as the Ninth Circuit seemed to think, whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree). It

*P.s' Supplemental Brief - 6*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

is when the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property. Whenever a regulation results in a physical appropriation of property, a *per se* taking has occurred, and *Penn Central* has no place.") (cleaned up). The Court reasoned that the union access regulations was a *per se* physical taking because it appropriated property for the use and enjoyment of a third party, decimating the property owner's fundamental right to exclude. *Id.* at 2072–73.

Additionally, the fact that the invasion did not run "around the clock" did not take it outside the *per se* takings rule. *Id.* at 2075. Instead, the Court acknowledged that the duration of the invasion affected only the amount of compensation owed, not whether a categorical taking occurred. *Id.* at 2074–75. The Court also found no difference between intermittent occupation and continuous occupation. *Id.* Consequently, *per se* takings exist even if the physical occupation is only temporary.

*Cedar Point Nursery* confirms that Plaintiffs' takings claim should prevail. The City and State's respective eviction bans force the Plaintiffs to endure their tenants' continuous physical occupation by eliminating their ability to evict their tenants in all but a few exceptional circumstances, which causes a *per se* taking under the Supreme Court's reasoning. *Id.* Additionally, contrary to the City and State's consistent position that their eviction bans are only temporary in nature, the Supreme Court again made it clear that a temporary physical occupation is a compensable *per se* taking. *Id.*

The few exceptions to this rule articulated by the Court, *see id.* at 2078–80, do not apply to the eviction bans. First, the Court indicated that mere trespass would not trigger *per se* takings liability. *Id.* at 2078 ("Isolated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts rather than appropriations of a property right."). *See also Hendler v. United States*, 952 F.2d 1364, 1377 (Fed. Cir. 1991) (identifying a "truck driver parking on someone's vacant land to eat lunch" as an example of a mere trespass). Second, the Court indicated that physical invasions are less likely to constitute a taking when those restrictions are consistent with background principles of property law. *Cedar Point Nursery*, 141

P.s' Supplemental Brief - 7
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

S. Ct. at 2079. For example, the abatement of a nuisance or the government's ability to occupy or destroy property for public or private necessity. *Id.* Notably, the necessity exception is limited to instances of immediate peril or momentary invasions. *Id.* Finally, the Court stated that physical invasions were less likely to cause a taking where the government requires access as a condition of receiving governmental benefits. *Id.* at 2079.

The Defendants cannot argue that this is a case of fleeting trespass or a condition imposed for a government benefit, so only the "background principles" exception warrants attention. Even this exception, however, does not save the eviction bans from takings liability.

Specifically, the ability to enter or destroy property "in the event of public or private necessity," 141 S. Ct. at 2079, one of the background principles discussed in *Cedar Point Nursery*, does not apply to the eviction bans. *Id.* at 2079. Courts have defined necessity as essential actions required "to protect against or repel a public enemy, or to prevent or mitigate the effects of an impending public disaster such as a conflagration, flood, earthquake, or pestilence." Restatement (Second) of Torts § 196 (1964).

These are typically situations far afield from the eviction bans here. For example, such a necessity may arise where the invasion is isolated and brief, such as a right to use another's property to escape an imminent disaster, *see e.g.*, *Rossi v. DelDuca,* 181 N.E.2d 591, 593 (Mass. 1962) (child entering another's property to escape dog attack). Another common example arises where the property destroyed or seized would have been rendered unusable anyway. *See, e.g.*, *United States v. Caltex*, 344 U.S. 149 (1952) (holding that a taking had not occurred where the army destroyed a factory to prevent it from falling into enemy hands); *see Surocco v. Geary*, 3 Cal. 69 (Cal. 1853) (approving the destruction of a home to stop a conflagration from destroying surrounding structures where the home was likely to be consumed anyway). In general, circumstances subject to this background principle involve a split-second decision without time for deliberation in order to escape an immediate disaster. *See Commw. v. Berrigan*, 509 Pa. 118, 123 (Pa. 1985) ("As codified by the Restatement of Torts Second, the law will excuse a trespass onto the land of another, 'if it is, or if the actor reasonably believes it to be necessary for the

*P.s' Supplemental Brief - 8*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

purpose of averting an *imminent* public disaster' (Section 196). Similarly, trespass to the chattel of another or its conversion is excusable 'if the act is or is reasonably believed to be necessary for the purpose of avoiding a public disaster' (Section 262). . . . The threatened disaster (manmade or act of God) must be real and *immediate*, not imagined or speculative, and must threaten not only the actor but others as well. The actions to avoid the public disaster must support a *reasonable belief* or inference that the actions would be effective in avoiding or alleviating the impending harm.") (emphasis added); *City of Rapid City v. Boland*, 271 N.W.2d 60, 65 (S.D. 1978) ("The public necessity privilege is an extension of every individual's privilege to take whatever steps appear reasonable to prevent an imminent public disaster. . . . To fall within the privilege, there must be a '(a) necessity, extreme, imperative, or overwhelming, (to) constitute such a justification, but mere expediency, or public good, or utility, will not answer.'") (internal citation omitted).

Here, the City and State's eviction bans were not split-second decisions for "avoiding or alleviating" an immediate harm from the COVID-19 pandemic. *Id.* Both eviction bans were part of a deliberative process and have now been in effect for almost a year and a half, forcing landlords to house tenants at their own expense and far outlasting the immediate threat of the COVID-19 pandemic. They are not isolated and brief invasions, nor are they actions taken where property would have been seized or destroyed anyway. The bans are broadly written to forbid almost all evictions, including eviction of tenants who have been unaffected by COVID-19 and have the means to pay. The supposed public good of alleviating the burden of the COVID-19 pandemic does not satisfy the requirements of the necessity exception discussed in *Cedar Point*. *City of Rapid City*, 271 N.W.2d at 66 ("Once the impending disaster has passed, the government may not rely upon the doctrine of necessity to justify the subsequent destruction of property."). Consequently, the bans exceed this narrow background principle and instead force landlords to bear the burden of the COVID-19 pandemic, which in all fairness and justice should be borne by the public as a whole. *Armstrong v. United States*, 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to

*P.s' Supplemental Brief - 9*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.").

## CONCLUSION

As the pandemic wanes, the Governor has seen fit to adopt a permanent restriction on landlords' contract and property rights going forward, far surpassing any reasonable justification as a limited measure related to the COVID-19 pandemic. Moreover, the Supreme Court has recently clarified its takings jurisprudence in a manner that makes one thing clear: temporary invasions of private property, like eviction bans here, are a *per se* taking under the Fifth Amendment.

DATED:  August 2, 2021.

Respectfully submitted:

s/  ETHAN W. BLEVINS
s/  BRIAN T. HODGES
Ethan W. Blevins, WSBA # 48219
Brian T. Hodges, WSBA # 31976
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
Email: EBlevins@pacificlegal.org
Email: BHodges@pacificlegal.org

s/  KATHRYN D. VALOIS
Kathryn D. Valois**
Fla. Bar. No. 1010150
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
Email: KValois@pacificlegal.org

** *Pro hac vice*

*Attorneys for Plaintiffs*

*P.s' Supplemental Brief - 10*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

*Attorney for Plaintiffs*

*P.s' Supplemental Brief - 11*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*