The Honorable Richard A. Jones
The Honorable J. Richard Creatura

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

EL PAPEL, LLC, et al.,

　　　　　　　Plaintiffs,

　　v.

ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington, et al.,

　　　　　　　Defendants.

NO. 2:20-cv-01323-RAJ-JRC

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF

DEFENDANT ROBERT W.
FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 2

III. ARGUMENT ........................................................................................................................ 4

    A. Proclamation 21-09 Has No Effect on the State's Grounds for Summary Judgment ................................................................................................................ 4

        1. Proclamation 21-09 differs from the prior expired proclamations .................... 4

        2. Even if the Landlords could challenge Proclamation 21-09, the State's grounds for summary judgment remain ............................................................ 4

    B. *Cedar Point Nursery* Does Not Support the Landlords' Takings Claim .................. 7

IV. CONCLUSION ................................................................................................................... 12

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO. 2:20-cv-01323-RAJ-JRC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

# TABLE OF AUTHORITIES

**Cases**

*36 Apartment Assocs., LLC v. Cuomo*,
　No. 20-2565-CV, 2021 WL 3009153 (2d Cir. July 16, 2021) .............................................. 6

*Bd. of Trustees of Const. Laborers' Pension Tr. for S. Cal. v. M.M. Sundt Const. Co.*,
　37 F.3d 1419 (9th Cir. 1994), *as amended on denial of reh'g* (Nov. 23, 1994) ..................... 4

*Cedar Point Nursery v. Hassid*,
　141 S. Ct. 2063 (2021) ............................................................................................... passim

*Doe v. Va. Dep't of State Police*,
　713 F.3d 745 (4th Cir. 2013) ............................................................................................. 5

*F.C.C. v. Fla. Power Corp.*,
　480 U.S. 245 (1987) .................................................................................................. 8, 10

*Horne v. Dep't of Agric.*,
　576 U.S. 350 (2015) ........................................................................................................ 11

*Kaiser Aetna v. United States*,
　444 U.S. 164 (1979) ........................................................................................................ 11

*Koontz v. St. Johns River Water Mgmt. Dist.*,
　570 U.S. 595 (2013) .......................................................................................................... 5

*Loretto v. Teleprompter Manhattan CATV Corp.*,
　458 U.S. 419 (1982) ............................................................................................. 8, 10, 11

*Nollan v. Cal. Coastal Comm'n*,
　483 U.S. 825 (1987) ........................................................................................................ 11

*S. Cal. Rental Housing Ass'n v. County of San Diego*,
　No. 3:21CV912-L-DEB, 2021 WL 3171919 (S.D. Cal. July 26, 2021) ...................... 11, 12

*United States v. Causby*,
　328 U.S. 256 (1946) ........................................................................................................ 11

*Yee v. City of Escondido*,
　503 U.S. 519 (1992) ......................................................................................... 8, 9, 10, 11

**Statutes**

Engrossed Second Substitute S.B. 5160,
67th Leg., Reg. Sess. (Wash. 2021),
*enacted as* 2021 Wash. Sess. Laws, ch. 115 ................................................................ passim

DEFENDANT ROBERT W.
FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

## Other Authorities

Administrative Office of the Courts, *Eviction Resolution Pilot Program*,
https://www.courts.wa.gov/newsinfo/index.cfm?fa=newsinfo.EvictionResolutionProgram (last visited Aug. 16, 2021) ................................................................................ 3

Department of Commerce, *Treasury Rental Assistance Program (T-RAP)*,
https://www.commerce.wa.gov/serving-communities/homelessness/eviction-rent-assistance-program/ (last visited Aug. 16, 2021) ....................................................... 3

Dispute Resolution Center of King County,
https://kcdrc.org/ .................................................................................................... 3

King County, Department of Community and Human Services,
*King County Eviction Prevention and Rental Assistance Program*,
https://kingcounty.gov/depts/community-human-services/COVID/eviction-prevention-rent-assistance.aspx ................................................................................ 3

Wash. Off. of the Governor, *Proclamation 20-19.6*,
https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-19.6.pdf ................ 4

Wash. Off. of the Governor, *Proclamation 21-09*,
https://www.governor.wa.gov/sites/default/files/proclamations/proc_21-09.pdf .......... passim

DEFENDANT ROBERT W.
FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

## I. INTRODUCTION

Proclamation 21-09 is a temporary bridge to E2SSB 5160—a 2021 Act amending the landlord-tenant law. Proclamation 21-09, like E2SSB 5160, requires landlords who wish to evict their tenants to first offer reasonable repayment plans, give a chance to obtain rental assistance, and engage in dispute resolution through county programs. Because the rental assistance and dispute resolution programs take time to implement and because the COVID-19 pandemic continues to pose grave health and economic threats in Washington, the Governor issued Proclamation 21-09 as a transitional measure to avoid catastrophe. Proclamation 21-09 provides a path for the Landlords to be made whole through rental assistance measures and to evict through dispute resolution programs. The Landlords have not taken the first step on that path. Proclamation 21-09 is no mere extension of the prior Moratorium, and the Landlords' claims have no reach beyond the Moratorium's expiration.

Even if the Landlords could incorporate Proclamation 21-09 into their current claims, they would fare no better under the State's motion for summary judgment. Proclamation 21-09 is imminently moot, expiring at the end of September. And the federal moratorium would prevent the Landlords from evicting anyway through the beginning of October. This again means the Landlords lack standing. Beyond that, any contracts clause or takings claims against Proclamation 21-09 would fail on the merits for the same reasons laid out in the State's motion for summary judgment, Dkt. # 104.

Finally, the Landlords gain nothing from the Supreme Court's recent decision in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021). That case concerned a physical taking by grant of an easement to an uninvited third party. It left undisturbed the well-established precedent that property owners who invite tenants onto their property do not suffer a physical taking when states regulate the landlord-tenant relationship. Neither the State's now-expired Moratorium nor Proclamation 21-09 forced an occupation that the Landlords did not themselves invite, and so *Cedar Point Nursery* is no impediment to granting summary judgment to the State.

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO. 2:20-cv-01323-RAJ-JRC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

## II.  BACKGROUND

In April 2021, the Legislature enacted a law that provides certain tenant protections during and after the current public health emergency. Engrossed Second Substitute S.B. 5160, 67th Leg., Reg. Sess. (Wash. 2021), *enacted as* 2021 Wash. Sess. Laws, ch. 115 (E2SSB 5160). E2SSB 5160 ended the eviction moratorium instituted through Proclamation 20-19.6 on June 30, 2021. *Id.*, § 4(1). It requires that, if a tenant has remaining unpaid rent that accrued between March 1, 2020, and December 30, 2021, or the end of the public health emergency (whichever is later), a landlord must offer that tenant a reasonable repayment plan for unpaid rent that does not exceed monthly payments equal to one-third of the monthly rent during the period of accrued debt. *Id.* § 4(2). But if that tenant "fails to accept the terms of a reasonable repayment plan within 14 days of the landlord's offer" or defaults on a repayment plan, the landlord may proceed with an unlawful detainer action or apply for reimbursement from the Landlord Mitigation Program. *Id.* Landlords may also seek reimbursement from public funds for up to $15,000 of unpaid rent that accrued between March 1, 2020, and December 30, 2021. *See id.*, § 5. The law requires the Administrative Office of the Courts to contract with dispute resolution centers to establish court-based eviction resolution pilot programs. *Id.*, § 7. The law also provides for court-appointed counsel for indigent tenants in unlawful detainer proceedings. *Id.*, § 8.

Because the new programs in E2SSB 5160 take time to implement, the Governor issued Proclamation 21-09 ("Tenancy Preservation – A Bridge to E2SSB 5160") (Dkt. # 126-1, pp. 22–29) as a temporary bridge to meet the emergency and ensure the protections of E2SSB 5160 are respected until the law is implemented. *See* Procl. 21-09 at pp. 3–4 (asking landlords, tenants, and others to "work collaboratively, patiently, and in good faith to enable the Legislature's remarkable efforts to be effectuated."). It expires on September 30, 2021. *Id.* at p. 3. Essentially, Proclamation 21-09 instructs Landlords to comply with E2SSB 5160, even if that means waiting until E2SSB 5160 is operationalized by their county. *See id.* at p. 4. Specifically, Landlords may not evict tenants until "a rental assistance program and an eviction

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

resolution pilot program [(together, ERRAP)] as contemplated by Section 7 of E2SSB 5160 have been implemented and are operational in the county in which the rental property is located," and "a tenant has been provided with, and has, since the effective date of this order, rejected or failed to respond within 14 days of receipt of such notice to an opportunity to participate in an operational [ERRAP] provided by E2SSB 5160." *Id.* In King County, where plaintiffs own properties, the ERRAP is at least partially up and running. The county is a statewide leader in processing landlord mitigation claims, but the local dispute resolution center does not yet attest that the eviction resolution pilot program fully complies with the Governor's proclamation.[1] The provisions on enforceable debt, future rent owed, reasonable repayment plans, and indigent tenants' right to counsel closely hem to the requirements of E2SSB 5160. *Compare id.* at pp. 5–7, *with* E2SSB 5160 §§ 3 (late fees), 4 (reasonable repayment plans), 7 (ERRAP requirements), 8 (right to counsel).

Since the enactment of E2SSB 5160, the pandemic has continued to impose a public health emergency and severe economic strain. As noted by Proclamation 21-09, census data released in June 2021, shows that "195,307 renters, or 12% of all Washington renters," most of whom have children in their households, are behind on rent. Procl. 21-09 at p. 2. And the economy continues to suffer under the virus' weight: "unemployment remains above 6% with slow recovery in significant industry sectors[.]" *Id.* The most recent data show that there are *seven times* as many COVID-19 cases in King County as there were when the Landlords filed their complaint—851 on August 9, 2021, compared to 119 on September 3, 2020. Rowe Decl., Ex. A. COVID-19 remains an especially potent threat to people who are housing insecure. *See*

---

[1] The Department of Commerce maintains a county-by-county listing of rental assistance providers. Department of Commerce, *Treasury Rental Assistance Program (T-RAP)*, online at https://www.commerce.wa.gov/serving-communities/homelessness/eviction-rent-assistance-program/ (last visited Aug. 16, 2021). King County's program is online at https://kingcounty.gov/depts/community-human-services/COVID/eviction-prevention-rent-assistance.aspx.

The Administrative Office of the Courts maintains a county-by-county listing of those counties that have eviction resolution pilot projects up and running. Administrative Office of the Courts, *Eviction Resolution Pilot Program*, https://www.courts.wa.gov/newsinfo/index.cfm?fa=newsinfo.EvictionResolutionProgram (last visited Aug. 16, 2021). King County's program is online at https://kcdrc.org/.

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO. 2:20-cv-01323-RAJ-JRC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Rowe Decl., Ex. B. In the midst of the continuing COVID-19 pandemic and an economy still in recovery, the consequences of mass evictions would be grave. *See* Dkt. # 108-1, Ex. B.

### III.   ARGUMENT

**A.   Proclamation 21-09 Has No Effect on the State's Grounds for Summary Judgment**

**1.   Proclamation 21-09 differs from the prior expired proclamations**

The only gubernatorial proclamations that Plaintiffs challenged have expired on their own terms and by the terms of E2SSB 5160. *See* Procl. 20-19.6 (in effect "until 11:59 p.m. on June 30, 2021"); E2SSB 5160, § 4(1) ("The eviction moratorium instituted by the governor of the state of Washington's proclamation 20-19.6 shall end on June 30, 2021").

The differences between Proclamation 21-09 and Proclamation 20-19 *et seq.* are differences not of degree, but of kind. Proclamation 21-09, in the Landlords' own words, is "unlike any prior proclamation before it." Dkt. # 130 at pp. 4, 9. Most significantly, unlike Proclamation 20-19 *et seq.*, Proclamation 21-09 requires landlords (1) to engage in county-level dispute-resolution with their tenants and (2) allow their tenants to pursue rental assistance programs that may cover back rent. Procl. 21-09 at p. 4. These differences provide new avenues for redress, which the Landlords must pursue before challenging Proclamation 21-09 in court. *See, e.g.*, *Bd. of Trustees of Const. Laborers' Pension Tr. for S. Cal. v. M.M. Sundt Const. Co.*, 37 F.3d 1419, 1420 (9th Cir. 1994), *as amended on denial of reh'g* (Nov. 23, 1994) (affirming dismissal because plaintiff failed to pursue remedy of arbitration). The Landlords cannot expand their case to encompass a new and different proclamation that provides for remedies that would moot their case if pursued.

**2.   Even if the Landlords could challenge Proclamation 21-09, the State's grounds for summary judgment remain**

None of the Landlords' arguments about Proclamation 21-09 diminish the grounds for granting summary judgment to the State, even if Proclamation 21-09 were part of their case.

The Landlords lack standing to challenge Proclamation 21-09 just as they lacked standing

DEFENDANT ROBERT W.
FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

to challenge prior proclamations. Though there were two days in which there was no federal moratorium on evictions, the CDC issued a new moratorium on August 3, 2021. Dkt. # 133 at p. 1. The CDC moratorium is in effect until October 3, 2021—three days after Proclamation 21-09 expires. Dkt. # 133-1 at p. 2. It prohibits evictions in any county where there are "substantial" or "high" levels of community transmission of SARS-CoV-2 as defined by the CDC and there is no local moratorium with "the same or greater level of public-health protection[.]" *Id.* at p. 4 n.9, n.10; p. 13. As of August 9, 2021, King County (the location of Landlords' properties) has a "high" level of transmission. Dkt. # 133-1 at p. 22–23. Because the federal moratorium would prohibit the Landlords from evicting their tenants if Proclamation 21-09 were enjoined, the Landlords lack standing just as they did in their challenge to Proclamation 20-19 *et seq. See* Dkt. # 104 at pp. 12–13; Dkt. # 121 at pp. 2–4; *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 756 (4th Cir. 2013).

At base, the Landlords' complaints about Proclamation 21-09 center on the remedies provided by E2SSB 5160—remedies that could resolve their claims and make them whole. But having to pursue administrative remedies is not itself a harm, and the Landlords cite no authority to support a contrary theory. The sole case they cite, *Koontz v. St. Johns River Water Management District*, 570 U.S. 595 (2013), dealt with the conditioning of land use permits on the funding of offsite mitigation projects—nothing to do with the process of negotiations, dispute resolution, and monetary assistance that Proclamation 21-09 and E2SSB 5160 provide here. And as to that process, the Landlords offer nothing but speculation that King County or dispute resolution centers will neglect their legal responsibilities under E2SSB 5160 to implement ERRAP.[2] The Landlords can show no harm from the process that E2SSB 5160 establishes and

---

[2] The Landlords fail to explain how King County's ERRAP "effectively prohibits landlords from terminating or declining to renew a tenancy until December 31, 2021." Dkt. # 130 at p. 7. The King County webpage the Landlords cite prohibits participating landlords from "terminat[ing] or refus[ing]" to renew a tenancy before December 31, 2021 **unless, *inter alia*,** "[a]t least 60 days' written termination notice is provided to the household based on the Landlord's intent to (i) personally occupy the premises as a primary residence, or (ii) sell the property." Rowe Decl., Ex. C.

DEFENDANT ROBERT W.
FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Proclamation 21-09 affirms, and E2SSB 5160 would forbid them from evicting tenants even in the absence of Proclamation 21-09. They therefore lack standing to challenge Proclamation 21-09.

A challenge to Proclamation 21-09 would also be imminently moot, even if it affected King County Landlords. The Landlords' assertions that Proclamation 21-09 "has no end date" are simply wrong. It expires at "11:59 p.m. on September 30, 2021." Procl. 21-09 at p. 3. Though the Landlords point to a section on future rent that refers to periods after August 1, 2021, Dkt. # 130 at 8 n.2, all the prohibitions that could affect the Landlords are limited at the outset: "from July 1, 2021, *until 11:59 p.m. on September 30, 2021, I hereby prohibit the following activities* related to residential dwellings in Washington State." Procl. 21-09 at p. 3 (emphasis added). Even the heading of the particular section which they claim "has no end date" expressly limits itself to "August 1, 2021 through September 30, 2021." *Id.* at p. 5. For the same reasons that the Landlords' claims against Proclamation 20-19 *et seq.* were imminently moot, any claim they could have against Proclamation 21-09 is likewise imminently moot. *See* Dkt. # 104 at pp. 13–14; Dkt. # 121 at pp. 4–5. *See also 36 Apartment Assocs., LLC v. Cuomo*, No. 20-2565-CV, 2021 WL 3009153 (2d Cir. July 16, 2021) (summary order) (dismissing appeal due to expiration of moratorium).

The Landlords also lack standing to challenge the restriction, which they allege is unique to Proclamation 21-09, on "a landlord who has decided to sell a property in part because their tenant has not paid rent[.]" Dkt. # 130 at p. 7. The Landlords do not allege any intention to sell their properties. They cannot step into the shoes of a hypothetical landlord who has such an intention, and thus have no grounds to challenge that aspect of Proclamation 21-09.

Finally, Proclamation 21-09 has nothing to do with the Landlords' request for nominal damages. Even as the Landlords frame their argument, their request for nominal damages concerns only "the prior proclamations." Dkt. # 130 at p. 4. The State did not "waive[]" any argument with respect to nominal damages but fully addressed the Landlords' arguments in its

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO. 2:20-cv-01323-RAJ-JRC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

summary judgment reply brief, Dkt. # 121 at pp. 3–4. To the extent the Landlords' nominal damages request relates to Proclamation 21-09, the State refers to its prior submissions.

In the end, even if the Landlords could overcome their lack of standing, they offer no argument that Proclamation 21-09 should fare any differently on the merits of their contracts clause and takings claims. Proclamation 21-09 requires the Landlords follow the ERRAP set out in E2SSB 5160—at most imposing a temporary delay while the ERRAP is operationalized in King County. This reasonable requirement does not substantially impair the Landlords' contracts with their tenants and does not effect any physical taking. Accordingly, should the Court reach the merits, the State's motion for summary judgment should be granted for all the same reasons set forth in its prior briefing. *See* Dkt. # 104 at pp. 14–30; Dkt. # 121 at pp. 5–18.

**B.    *Cedar Point Nursery* Does Not Support the Landlords' Takings Claim**

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), does not control the Takings Clause analysis for the now-expired moratorium on evictions. There, the California access regulation—which gave outside labor organizers "a right to take access" to agricultural employers' property—was a *per se* physical taking; it appropriated property owners' "right to exclude" for the government itself or for third parties. *Cedar Point Nursery*, 141 S. Ct. at 2072. The case left unchanged the Supreme Court's prior holdings that regulations restricting the use of property without a physical invasion of land—especially when that use is premised on the owner's voluntary invitation to an occupant—are not *per se* takings. Nor did it circumscribe the State's authority to regulate housing conditions and the landlord-tenant relationship. Here, the Moratorium did not give uninvited third parties "a right to take access" or invade the Landlords' properties. The Landlords voluntarily invited tenants by renting their units, and the Moratorium temporarily regulated rental relationships by prohibiting the Landlords from expelling their tenants for non-payment of rent. The State did not effect a *per se* taking, and the Court should grant summary judgment to the State on the takings claim (and all claims).

DEFENDANT ROBERT W.
FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

The outcome of *Cedar Point Nursery* turned on whether the Court viewed the California access regulation as a *per se* physical taking or a regulatory taking (under which compensation is required only if the restriction goes too far). The Court held that the California access regulation was a *per se* physical taking because it did not merely restrict how the owner used its own property, but it appropriated the owner's "right to exclude" for the government itself or for third parties by granting labor organizers the right to physically enter and occupy the land for periods of time. *Id.* at 2072.

*Cedar Point Nursery* does not disturb Supreme Court precedent—uncited by the Landlords—that "statutes regulating the economic relations of landlords and tenants are not *per se* takings." *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987). Here, the Moratorium regulated the Landlords' "*use* of their land by regulating the relationship between landlord and tenant." *Yee v. City of Escondido*, 503 U.S. 519, 528 (1992). "[The] Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Id.* at 528–29 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982)); *see id.* at 529 (when landowners decide to accept tenants, the government can impose rent control or require landlords to accept tenants they do not like "without automatically having to pay compensation") (citing *Pennell v. City of San Jose*, 485 U.S. 1, 12 n.6 (1988), and *Heart of Atlanta Motel, Inc. v. United States*, 349 U.S. 241, 261 (1964)).

In *Cedar Point Nursery*, the Court clarified that *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), did not compel the Court to hold that the access regulation was not a *per se* physical taking though the invasion was intermittent and non-continuous rather than permanent and ongoing. *Id.* at 2074. Instead, the key to the taking in *Loretto* was the physical invasion itself. *Id.* at 2074–75. So while the size, duration, and frequency of the physical invasion may bear on the amount of compensation due, those factors do not alter the

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF NO. 2:20-cv-01323-RAJ-JRC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

classification of a *per se* taking. *Id.* at 2075 ("The fact that a right to take access is exercised only from time to time does not make it any less a physical taking.").

As to regulatory takings, *Cedar Point Nursery* acknowledged that if the government did not appropriate private property for itself or a third party, but instead "restrict[s] an owner's ability to use his own property, a different standard applies." *Id.* at 2071. Restrictions that go "too far" effect a taking, and to determine whether a use restriction effects a taking, courts generally apply "the flexible test developed in *Penn Central*, balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id.* at 2072 (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

Ultimately, because the California access regulation authorized uninvited third parties to physically invade and occupy agricultural employers' properties, the regulation amounted to the government having taken a property interest like a servitude or easement, which has historically been treated as a *per se* physical taking. *See id.* at 2073–74. The Court further clarified that the physical invasion need not match precisely the definition of "easement" under state law to qualify as a taking. *Id.* at 2076.

Material to this case, *Cedar Point Nursery* distinguished between laws that regulate how landowners must treat those they have already invited onto their land and laws that permit third-party invasions: "Limitations on how a business generally open to the public may treat individuals on the premises are readily distinguishable from regulations granting a right to invade property closed to the public." *Id*. at 2077. Based on *Yee*, the same is true for rental property: Limitations on how a landlord may treat tenants they have voluntarily invited onto their properties by renting to them are readily distinguishable from regulations granting a right to invade property closed to the public. *See Yee*, 503 U.S. at 527–28, 531.

Central to the decision in *Yee* was the fact that the landlords had voluntarily invited tenants onto the property. *See Yee*, 503 U.S. at 531 ("Because they voluntarily open their

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO. 2:20-cv-01323-RAJ-JRC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

property to occupation by others, petitioners cannot assert a *per se* right to compensation based on their inability to exclude particular individuals.); *id.* at 527 ("Petitioners voluntarily rented their land to mobile home owners.").

Here, as in *Yee*, the Landlords' tenants "were invited by [the landlords], not forced upon them by the government." *Id* at 528. And like the law challenged in *Yee*, the Moratorium did not force a landlord to "refrain in perpetuity from terminating a tenancy[,]" and allowed the Landlords to evict tenants if they wished to "change the use of their land." *Id.* The Moratorium was a temporary regulation of the landlord-tenant relationship that temporarily prohibited eviction as a particular remedy for nonpayment of rent. It effected no *per se* physical taking.

Likewise, in *F.C.C. v. Florida Power Corporation*, the Court rejected an argument that a utility rate ceiling was a *per se* physical taking—explaining that the law did not give companies any rights to occupy space on utility poles. In distinguishing the case from *Loretto*, the Court stated: "it is the invitation, not the rent, that makes the difference." 480 U.S. at 252; *see also id.* at 252–53 ("The line which separates these cases from *Loretto* is the unambiguous distinction between a commercial lessee and an interloper with a government license.").

*Cedar Point Nursery* does not overrule *Yee* or undermine the legal underpinnings of *Yee*. In fact, it cited *Yee* for general takings principles. *See* 141 S. Ct. at 2072. And again, *Cedar Point Nursery* pointed out the difference between laws regulating those who have been invited onto private property and laws that give third parties the right to enter private property. *Id.* at 2077; *supra* at 9.

Because of this distinction, decisions like *Cedar Point Nursery* and the cases cited therein—where the government has appropriated property for itself or imposed a servitude or easement causing the owner to suffer an invasion—do not help the Landlords' takings claim. *See, e.g., Cedar Point Nursery*, 141 S. Ct. at 2074 (holding the regulation appropriated a right to physically invade the growers' property by allowing uninvited "union organizers to traverse it at will for three hours a day, 120 days a year"); *United States v. Causby*, 328 U.S. 256, 265–66

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO. 2:20-cv-01323-RAJ-JRC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

(1946) (military aircraft that flew low on private property, causing damage, "were the product of a direct invasion of [the] domain" imposing a servitude on the land); *Kaiser Aetna v. United States*, 444 U.S. 164, 180 (1979) (imposition of public navigation servitude would "result in an actual physical invasion of the privately owned marina" by members of the public); *Loretto*, 458 U.S. at 423–24 (installation of cable equipment on private property was a compensable taking); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831 (1987) (explaining that if the government required the petitioners "to make an easement across their beachfront available to the public on a permanent basis," it would be a taking); *Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015) (law that required raisin growers to turn over percentage of crop without charge "for the Government's control and use" is a physical taking). While *Cedar Point Nursery* announced that a non-continuous, intermittent easement created by California's access regulation effected a *per se* physical taking, it did not undermine the long-standing principle that "[t]he government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Yee*, 503 U.S. at 527.

Accordingly, because the Moratorium effected no *per se* physical taking, it is unnecessary to consider whether any exception to *per se* physical takings applies here.[3] Indeed, a federal district court has already distinguished *Cedar Point Nursery* in evaluating an eviction moratorium in place in San Diego County. *See S. Cal. Rental Housing Ass'n v. County of San Diego*, No. 3:21CV912-L-DEB, 2021 WL 3171919, at *8 (S.D. Cal. July 26, 2021). The court held that the plaintiff had not shown a likelihood of success on the merits on its Contracts Clause and Takings Clause claims, *see id.* at *4–9, and explained why *Cedar Point Nursery* did not control the Takings Clause analysis:

> Unlike the landowners in *Cedar Point* who were forced to allow unionizing activity on their property for a specified amount of time, the landowners here

---
[3] Notably, the Landlords' discussion of an exception for regulations "consistent with background principles of property law" omits the principle that property owners become landlords in full view of the government's "broad power to regulate housing conditions in general and the landlord-tenant relationship in particular[.]" *Loretto*, 458 U.S. at 440.

DEFENDANT ROBERT W.
FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

invited the renters to inhabit their rental units, make them their homes, and abide by the rental agreements. No "physical invasion" has occurred here. Although renters cannot be evicted during the temporary duration of the Ordinance, landlords have not lost their right to exclude as did the owners in *Cedar Point*.

*Id.* at *8. The same holds true here. The Landlords—like the property owners in *Southern California Rental Housing Association*—invited their tenants onto their properties. Those tenants were not forced upon the Landlords by the State, and the State has not taken the Landlords' right to exclude.

## IV. CONCLUSION

Proclamation 21-09 is not a proper target of the Landlords' lawsuit and would not strengthen their claims even if it were. *Cedar Point Nursery* is of no avail to the Landlords either. Summary judgment should be granted in favor of the State.

DATED this 16th day of August, 2021.

        ROBERT W. FERGUSON
        Attorney General

        */s/ Brian H. Rowe*
        BRIAN H. ROWE, WSBA No. 56817
        CRISTINA SEPE, WSBA No. 53609
          Assistant Attorneys General
          Complex Litigation Division
        JEFFREY T. EVEN, WSBA No. 20367
          Deputy Solicitor General
        800 Fifth Avenue, Suite 2000
        Seattle, WA 98104
        (206) 389-3888
        (360) 586-0728
        brian.rowe@atg.wa.gov
        cristina.sepe@atg.wa.gov
        jeffrey.even@atg.wa.gov

        *Attorneys for Defendant Robert W. Ferguson*

**DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will send notification of such filing to all counsel of record.

DATED this 16th day of August, 2021, at Seattle, Washington.

*/s/ Brian H. Rowe*
BRIAN H. ROWE
Assistant Attorney General

DEFENDANT ROBERT W. FERGUSON'S SUPPLEMENTAL BRIEF
NO.  2:20-cv-01323-RAJ-JRC

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744