# Exhibit 1

2021 WL 3745777
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

APARTMENT ASSOCIATION OF LOS ANGELES COUNTY, INC., DBA Apartment Association of Greater Los Angeles, Plaintiff-Appellant,
v.
CITY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of Los Angeles; CITY COUNCIL OF THE CITY OF LOS ANGELES, in its official capacity; DOES, 1 through 25, inclusive, Defendants-Appellees,
and
ALLIANCE OF CALIFORNIANS FOR COMMUNITY EMPOWERMENT ACTION; STRATEGIC ACTIONS FOR A JUST ECONOMY, Intervenor-Defendants-Appellees.

No. 20-56251
|
Argued and Submitted May 12, 2021 Pasadena, California
|
Filed August 25, 2021

D.C. No. 2:20-cv-05193-DDP-JEM

Appeal from the United States District Court for the Central District of California

Dean D. Pregerson, District Judge, Presiding

**Attorneys and Law Firms**

COUNSEL Doug J. Dennington (argued), Peter J. Howell, Kelsey Quist, and Jayson Parsons, Rutan & Tucker LLP, Irvine, California, for Plaintiff-Appellant.

Jonathan H. Eisenman (argued), Deborah Breithaupt, Elaine Zhong, and Matthew A. Scherb, Deputy City Attorneys; David Michaelson, Chief Assistant City Attorney; Michael N. Feuer, City Attorney; Office of the City Attorney, Los Angeles, California; for Defendants-Appellees.

Rohit D. Nath (argued), Marc Seltzer, and Krysta Kauble Pachman, Susman Godfrey LLP, Los Angeles, California; Nisha N. Vyas and Richard Rothschild, Western Center on Law and Poverty, Los Angeles, California; Kathryn A. Eidmann, Faizah Malik, Gigi Lam, Alisa Randell, and Lauren Zack, Public Counsel, Los Angeles, California; Michael Rawson and Craig Castellanet, Public Interest Law Project, Oakland, California; for Intervenor-Defendants-Appellees.

June Babiracki Barlow, Senior Vice President and General Counsel; Neil D. Kalin and Jenny Li, Assistant General Counsel; California Association of Realtors, Los Angeles, California; for Amicus Curiae California Association of Realtors.

James R. Parrinello and Christopher E. Skinnell, Nielsen Merksamer Parrinello Gross & Leoni, San Rafael, California, for Amicus Curiae California Apartment Association.

Ethan W. Blevins, Pacific Legal Foundation, Seattle, Washington, for Amici Curiae El Papel LLC, Berman 2 LLC, Karvell Li, and Pacific Legal Foundation.

Lucia Choi, Tiffany L. Nocon, and Navneet K. Grewal, Disability Rights California, Los Angeles, California, for Amici Curiae Disability Rights California, Disability Rights Education and Defense Fund, and Disability Rights Legal Center.

Celia Meza, Acting Corporation Counsel; Benna Ruth Solomon, Stephen J. Kane, and Rebecca Hirsch, Assistant Corporation Counsel; City of Chicago Department of Law, Chicago, Illinois; Jonathan B. Miller and LiJia Gong, Public Rights Project, Oakland, California; Yibin Shen, City Attorney, Alameda, California; Esteban A. Aguilar Jr., City Attorney, Albuquerque, New Mexico; Anne L. Morgan, City Attorney, Austin, Texas; Farimah Faiz Brown, City Attorney, Berkeley, California; Nancy E. Glowa, City Solicitor, Cambridge, Massachusetts; Cheryl Watson Fisher, City Solicitor, Chelsea, Massachusetts; Zach Klein, City Attorney, Columbus, Ohio; Christopher J. Caso, City Attorney, Dallas, Texas; Barbara J. Doseck, City Attorney, Dayton, Ohio; Rodney Pol Jr., City Attorney, Gary, Indiana; Cara E. Silver, Interim City Attorney, Menlo Park, California; Barbara J. Parker, City Attorney, Oakland, California; Robert Taylor, Interim City Attorney, Portland, Oregon; Susana Alcala Wood, City Attorney, Sacramento, California; James R. Williams, Santa Clara County Counsel, San Jose, California; George S. Cardona, Interim City Attorney, Santa Monica, California; Lyndsey M. Olson, City Attorney, Saint Paul, Minnesota; Peter S. Holmes, City Attorney, Seattle, Washington; Francis X. Wright Jr., City Solicitor, Somerville, Massachusetts; Judith R. Baumann, City Attorney, Tempe, Arizona; Delia Garza, Travis County Attorney, Austin, Texas;

Michael Rankin, City Attorney, Tucson, Arizona; for Amici Curiae Local Governments.

Raymond P. Tolentino and Molly K. Webster, Kaplan Hecker & Fink LLP, New York, New York, for Amici Curiae Constitutional Law Scholars.

Adrienna Wong, ACLU Foundation of Southern California, Los Angeles, California, for Amici Curiae UCLA Luskin Institute on Inequality & Democracy, UCLA Center for Neighborhood Knowledge, Professor Ananya Roy, and Professor Paul Ong.

Eric Dunn, National Housing Law Project, Richmond, Virginia, for Amicus Curiae National Housing Law Project.

Jamie Crooks, Elk Hills Research, Washington, D.C., for Amicus Curiae American Medical Asosciation, California Medical Association, and Other Public Health Associations and Professionals.

David A. King Jr., Reichman Jorgensen LLP, Washington, D.C., for Amicus Curaie Southern California Association of Nonprofit Housing.

Eleanor Morton, Leonard Carder LLP, San Francisco, California, for Amicus Curiae United Teachers Los Angeles.

Robert Lapsley, President, California Business Roundtable, Sacramento, California, as and for Amicus Curiae.

Before: Jay S. Bybee and Daniel A. Bress, Circuit Judges, and Kathleen Cardone,[*] District Judge.

OPINION

BRESS, Circuit Judge:

### SUMMARY[**]

### Civil Rights

**\*1** The panel affirmed the district court's order denying plaintiff's request for preliminary injunctive relief in an action brought by a trade association of Los Angeles landlords challenging the City's eviction moratorium, imposed in response to the COVID-19 pandemic.

Plaintiff sought to enjoin key provisions of the eviction moratorium as violating the Contracts Clause. The panel held that the district court did not abuse its discretion in concluding that plaintiff had not shown the required likelihood of success on the merits.

Applying the two-step test set forth in Sveen v. Melin, 138 S. Ct. 1815 (2018), the panel held that even if the eviction moratorium was a substantial impairment of contractual relations, the district court did not err in determining that the moratorium's provisions were likely "reasonable" and "appropriate" given the circumstances of the COVID-19 pandemic. The City fairly tied the moratorium to its stated goal of preventing displacement from homes, which the City reasonably explained could exacerbate the public health–related problems stemming from the COVID-19 pandemic. In turn, each of the provisions of the eviction moratorium that plaintiff challenged could be viewed as reasonable attempts to address that valid public purpose.

The panel stated that whatever force plaintiff's challenge may have had in a much earlier era of Contracts Clause jurisprudence, more contemporary Supreme Court case law has severely limited the Contracts Clause's potency. The panel held that, given the deferential standard established by the Supreme Court and this court, it was compelled to conclude that the City's enactments passed constitutional muster under the Contracts Clause. And whatever other constitutional challenges plaintiff may seek to bring against the Los Angeles eviction moratorium, there was no apparent basis under modern cases to find the challenged provisions unconstitutional under the Contracts Clause—the only issue before the panel.

### OPINION

Following the outbreak of COVID-19 in early 2020, the City of Los Angeles imposed an eviction moratorium with the stated purposes of ensuring housing security and promoting public health during the pandemic. The moratorium operates during a "Local Emergency Period" to bar certain evictions. Related provisions delay applicable tenants' rent payment obligations and prohibit landlords from charging late fees and interest. Plaintiff, a trade association of Los Angeles landlords, sued the City, arguing that the moratorium and its related provisions violate the Constitution's Contracts Clause. U.S. Const. art. I, § 10, cl. 1. The district court

denied plaintiff's request for preliminary injunctive relief, and plaintiff now appeals that ruling.

Other courts, including the Supreme Court, have recently considered a variety of constitutional and statutory challenges to COVID-19 eviction moratoria. The appeal before us, however, is limited only to the Contracts Clause. We hold that under modern Contracts Clause doctrine, the district court did not err in determining that the moratorium's provisions were likely "reasonable" and "appropriate" given the circumstances of the COVID-19 pandemic. Whatever force plaintiff's challenge may have had in a much earlier era of Contracts Clause jurisprudence, more contemporary Supreme Court case law has severely limited the Contracts Clause's potency. And whatever other constitutional challenges plaintiff may seek to bring against the Los Angeles eviction moratorium, there is no apparent basis under modern cases to find the challenged provisions unconstitutional under the Contracts Clause—the only issue before us.

**\*2** The district court thus did not abuse its discretion in concluding that plaintiff had not shown the required likelihood of success on the merits. We therefore affirm.

I

A

Following the spread of COVID-19 to the United States, the Secretary of Health and Human Services on January 31, 2020 declared a nationwide public health emergency. California's Governor likewise proclaimed a state of emergency some weeks later. Soon after that, and as relevant here, the City of Los Angeles enacted an ordinance imposing a series of restrictions on residential landlords. L.A., Cal., Ordinance No. 186,585 (Mar. 31, 2020). A subsequent ordinance created further restrictions. L.A., Cal., Ordinance No. 186,606 (May 12, 2020). We will refer to these ordinances, which subsequently were codified at sections 49.99 through 49.99.9 of the Los Angeles Municipal Code, as the "eviction moratorium."

The eviction moratorium made plain its motivations and purpose. It described the City Council's finding that "[t]he COVID-19 pandemic threatens to undermine housing security and generate unnecessary displacement of City residents and instability of City businesses." L.A., Cal., Municipal Code § 49.99. It also referenced public health measures that called for many individuals to stay at home, as well as the loss of income and increased expenses anticipated as a result of governmental directives to "selfisolate" and shut down nonessential businesses. *Id.* Noting the relationship between housing and physical health during the pandemic, the City Council found it necessary to "take measures to protect public health, life, and property" by enacting the eviction moratorium. *Id.*; L.A., Cal., Ordinance No. 186,585 pmbl.

To achieve these goals, the eviction moratorium curtails the rights of residential landlords in various ways. Most significantly, it substantially alters the grounds that landlords may invoke against tenants in eviction actions (known in California as "unlawful detainer" actions). Specifically, landlords are barred from "endeavor[ing] to evict or evict[ing] a residential tenant for" any of three reasons. L.A., Cal., Municipal Code § 49.99.2(A)–(C).

*First*, "[d]uring the Local Emergency Period and for 12 months after its expiration," tenants cannot be evicted "for non-payment of rent ... if the tenant is unable to pay rent due to circumstances related to the COVID-19 pandemic." *Id.* § 49.99.2(A). "[C]ircumstances related to the COVID-19 pandemic" include:

> loss of income due to a COVID-19 related workplace closure, child care expenditures due to school closures, health-care expenses related to being ill with COVID-19 or caring for a member of the tenant's household or family who is ill with COVID-19, or reasonable expenditures that stem from government-ordered emergency measures.

*Id.* Although these tenants' payment obligations were deferred (an issue we discuss further below), the moratorium did not relieve tenants of their ultimate obligations to pay rent. *Id.*

*Second*, during the Local Emergency Period, tenants cannot be evicted for a "no-fault reason." *Id.* § 49.99.2(B). Those reasons include an owner or owner's family intending to occupy the property; withdrawal of the property from the rental market; the owner's compliance with laws or governmental orders requiring vacating of the property; and

intent to demolish or remodel the property. *Id.* § 49.99.1(D); *see also* Cal. Civ. Code § 1946.2(b)(2). *Finally*, tenants during the Local Emergency Period cannot be evicted "based on the presence of unauthorized occupants or pets, or for nuisance related to COVID-19." *Id.* § 49.99.2(C).

**\*3** The "Local Emergency Period" was defined as "the period of time from March 4, 2020, to the end of the local emergency as declared by the Mayor." *Id.* §§ 49.99.1(C). The Local Emergency Period remains ongoing as of the time of this opinion. The eviction moratorium does not require tenants to provide any evidence, such as a written attestation, that any claimed inability to pay rent, presence of "unauthorized occupants or pets," or "nuisance" existed or was COVID-19-related.

Additionally, the eviction moratorium alters tenants' payment obligations by providing them "up to 12 months following the expiration of the Local Emergency Period to repay any rent deferred during the Local Emergency Period." *Id.* § 49.99.2(A). By its terms, however, it does not "eliminate[ ] any obligation to pay lawfully charged rent." *Id.* For covered tenants, the moratorium also prohibits landlords from "charg[ing] interest or a late fee on rent not paid." *Id.* § 49.99.2(D).

Landlords may continue to seek to evict tenants based on their good-faith belief that the tenants are not protected under the eviction moratorium. But the eviction moratorium's protections create an affirmative defense for tenants in an unlawful detainer action.[1] *Id.* § 49.99.6.

The eviction moratorium also creates a private right of action for residential tenants who believe their landlords have aggrieved them. *Id.* § 49.99.7. If the landlord was given an opportunity to cure and did not do so, a prevailing tenant is potentially entitled to "injunctive relief, direct money damages," "reasonable attorney's fees and costs," and "an award of a civil penalty up to $10,000 per violation depending on the severity of the violation" (and up to an additional $5,000 per violation for elderly or disabled tenants). *Id.* However, an "[o]wner who prevails in any such action and obtains a Court determination that the tenant's action was frivolous" also may recover "reasonable attorney's fees and costs." *Id.*[2]

B

Plaintiff Apartment Association of Los Angeles County, Inc., dba Apartment Association of Greater Los Angeles ("AAGLA"), is a trade association "comprised of thousands of owners and managers of rental housing units, including over 55,000 properties within the City of Los Angeles." AAGLA's members did not react positively to the City's eviction moratorium, viewing it as laying on their shoulders the burdens of maintaining affordable housing during the pandemic. On June 11, 2020, AAGLA, on behalf of its members, challenged the eviction moratorium in a lawsuit against the City, its Mayor, and the City Council. We will refer to these parties collectively as the "City."

**\*4** AAGLA alleged that the eviction moratorium violated the Contracts Clause, the Takings Clause, and the Tenth and Fourteenth Amendments. Later, AAGLA moved for a preliminary injunction. As relevant here, AAGLA sought to enjoin key provisions of the eviction moratorium as violating the Contracts Clause.[3] In support of its motion, AAGLA submitted declarations from four of its members who own or manage properties in Los Angeles, detailing the harms the eviction moratorium was allegedly causing them. These harms include loss of rental income, inability to perform background checks on unauthorized occupants, and being forced to use retirement savings to cover expenses on the properties.

The district court denied AAGLA's request for preliminary injunctive relief. The district court first determined that AAGLA was unlikely to succeed on its Contracts Clause claim. The court found that AAGLA was likely to show that the eviction moratorium would be "a substantial impairment of its contractual rights," in part because no landlord could have anticipated the COVID-19 pandemic and "the public health measures necessary to combat it." But the district court also determined that AAGLA could not show that the eviction moratorium was not "reasonable" and "appropriate" under the deferential standard in Contracts Clause cases. Furthermore, the district court found that AAGLA had not shown a likelihood of irreparable harm or that the balance of the equities and the public interest favored granting relief.

AAGLA timely appealed the district court's order denying preliminary injunctive relief. On appeal, AAGLA pursues its Contracts Clause challenge only with respect to the provisions of the eviction moratorium governing restrictions on the

grounds for evictions, rent deferment, and the elimination of late fees and interest.

## II

We "review the district court's decision to ... deny a preliminary injunction for abuse of discretion." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam). "The district court's interpretation of the underlying legal principles, however, is subject to de novo review." *Id.* Factual findings are reviewed for clear error. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1286 (9th Cir. 2013).

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); accord *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain injunctive relief, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *City & County of San Francisco v. USCIS*, 944 F.3d 773, 788–89 (9th Cir. 2019) (quoting *Winter*, 555 U.S. at 20) (alterations in original). "Likelihood of success on the merits is the most important factor." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (quotations omitted).

## III

### A

The Contracts Clause provides that "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. As a historical matter, the "primary focus" of the Contracts Clause "was upon legislation that was designed to repudiate or adjust preexisting debtor-creditor relationships that obligors were unable to satisfy." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 503 (1987); see generally *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 453–65 (1934) (Sutherland, J., dissenting) (recounting the history of the Contracts Clause). Yet "the text is not so limited, and historical context suggests that the Clause was aimed at all retrospective, redistributive schemes in violation of vested contractual rights." *Ass'n of Equip. Mfrs. v. Burgum*, 932 F.3d 727, 732 (8th Cir. 2019) (quotations omitted). For the first 150 years of American legal history, the Contracts Clause imposed consequential limitations that federal courts routinely deployed to invalidate state and local legislation. See *Blaisdell*, 290 U.S. at 465–72 (Sutherland, J., dissenting) (collecting and discussing cases).

**\*5** All of that changed with *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934), the "watershed decision ... on which the modern interpretation of the [Contracts Clause] rests." Richard A. Epstein, *Toward a Revitalization of the Contract Clause*, 51 U. Chi. L. Rev. 703, 735 (1984). There, the Court "upheld Minnesota's statutory moratorium against home foreclosures, in part, because the legislation was addressed to the 'legitimate end' of protecting 'a basic interest of society.' " *Keystone Bituminous*, 480 U.S. at 503 (quoting *Blaisdell*, 590 U.S. at 445).

*Blaisdell* marked the beginning of the Supreme Court significantly curtailing the Contracts Clause's prohibitive force. As a result, the relevant cases today primarily consist of *Blaisdell* and its progeny, which set forth a very different conception of the Contracts Clause than in earlier cases. *E.g.*, *Sveen v. Melin*, 138 S. Ct. 1815 (2018); *Keystone Bituminous*, 480 U.S. 470; *Exxon Corp. v. Eagerton*, 462 U.S. 176 (1983); *Energy Reserves Grp. v. Kan. Power & Light Co.*, 459 U.S. 400 (1983). Perhaps most prominently, in *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400 (1983), the Court clarified the modern approach to the Contracts Clause post-*Blaisdell*, articulating the flexible considerations courts must consider in a Contracts Clause case. *Id.* at 410–13.

Recently, in *Sveen v. Melin*, 138 S. Ct. 1815 (2018), the Supreme Court restated the inquiry as a "two-step test." *Id.* at 1821–22. Under *Sveen*'s formulation, "[t]he threshold issue is whether the state law has 'operated as a substantial

impairment of a contractual relationship.' " *Id.* (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). Factors relevant to that consideration include "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* at 1822.

If the law is a substantial impairment, then "the inquiry turns to the means and ends of the legislation." *Id.* At that point, a court must determine whether the law is drawn in an " 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.' " *Id.* (quoting *Energy Reserves*, 459 U.S. at 411–12). A heightened level of judicial scrutiny is appropriate when the government is a contracting party. *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 25–26 (1977). But when the government is not party to the contract being impaired, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 413 (quotations omitted); *see also Keystone Bituminous*, 480 U.S. at 505; *Lazar v. Kroncke*, 862 F.3d 1186, 1199 (9th Cir. 2017).

Thus, the eviction moratorium must be upheld, even if it is a substantial impairment of contractual relations, if its "adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Energy Reserves*, 459 U.S. at 412 (quotations omitted and alterations accepted). And because the government is not "the party asserting the benefit of the statute," AAGLA bears the burden of showing that the ordinances are unreasonable. *Seltzer v. Cochrane (In re Seltzer)*, 104 F.3d 234, 236 (9th Cir. 1996).

B

**\*6** We need not decide whether the eviction moratorium is a substantial impairment of contractual relations because even assuming it is, given the challenges that COVID-19 presents, the moratorium's provisions constitute an "appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct. at 1822 (quotations omitted); *see also Snake River Valley Elec. Ass'n v. PacifiCorp*, 357 F.3d 1042, 1051 n.9 (9th Cir. 2004) ("We need not address the question of substantial impairment, for we have no doubt that the [statute] reflects significant and legitimate public purposes ...."). AAGLA does not dispute that the eviction moratorium was enacted for a permissible public purpose. Therefore, it can prevail, if at all, only if it can show that the provisions it challenges were not "appropriate and reasonable." *Sveen*, 138 S. Ct. at 1822.

AAGLA's challenge meets its end here because the district court properly deferred to local officials in the reasonableness analysis under modern Contracts Clause precedent. *See Energy Reserves*, 459 U.S. at 413. Therefore, assuming without deciding that the eviction moratorium is a substantial impairment of contracts, and undertaking a "careful examination" of its provisions, *Allied Structural*, 438 U.S. at 245, we conclude that AAGLA is unlikely to show that the eviction moratorium is an unreasonable fit for the problems identified.

Case law supports this conclusion: repeatedly in modern times, both the Supreme Court and this court have upheld as reasonable various laws that nonetheless may have affected private contracts. *See, e.g.*, *Keystone Bituminous*, 480 U.S. at 505–06; *Exxon Corp.*, 462 U.S. at 191–94; *Energy Reserves*, 459 U.S. at 416–19; *Snake River*, 357 F.3d at 1051 n.9; *Seltzer*, 104 F.3d at 236–37. For instance, despite finding that the law challenged in *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987), was a substantial impairment, the Court upheld it, "refus[ing] to second-guess" the legislature's identification of "the most appropriate ways of dealing with the problem." *Id.* at 506.

Given such precedents, AAGLA is unlikely to show that the challenged provisions of the eviction moratorium are constitutionally impermissible under the Contracts Clause. The City fairly ties the moratorium to its stated goal of preventing displacement from homes, which the City reasonably explains can exacerbate the public health-related problems stemming from the COVID-19 pandemic. *See* L.A., Cal., Municipal Code § 49.99 ("The COVID-19 pandemic threatens to undermine housing security and generate unnecessary displacement of City residents and instability of City businesses. Therefore, the City of Los

Angeles has taken and must continue to take measures to protect public health, life, and property."); L.A., Cal., Ordinance No. 186,585 pmbl. ("[I]n the interest of protecting public health and preventing transmission of COVID-19, it is essential to avoid unnecessary housing displacement to protect the City's affordable housing stock and to prevent housed individuals from falling into homelessness[.]"). As mentioned, AAGLA does not dispute that this purpose is a legitimate one.

In turn, each of the provisions of the eviction moratorium that AAGLA challenges may be viewed as reasonable attempts to address that valid public purpose. See *Energy Reserves*, 459 U.S. at 418–19. As the City explains in its briefing, the eviction protections are "necessary to avoid displacing residential tenants amidst a pandemic"; late fees and interest "could compound COVID-19 affected tenants' dilemmas, causing them to self-evict or be evicted"; and "economic hardship may cause consolidation of households and an increase in the number of inhabitants in some units, which could include additional inhabitants' pets" (citations and quotations omitted).

 **\*7** Thus, given the deferential standard that precedent constrains us to apply, we are compelled to conclude that the City's enactments pass constitutional muster under the Contracts Clause. Under current doctrine, we must "refuse to second-guess" the City's determination that the eviction moratorium constitutes "the most appropriate way[ ] of dealing with the problem[s]" identified. *Keystone Bituminous*, 480 U.S. at 506. That is particularly so, based on modern Contracts Clause cases, in the face of a public health situation like COVID-19. See *Blaisdell*, 290 U.S. at 440–41, 444–45.

C

AAGLA does not seriously argue that the City's chosen mechanisms are not reasonably related to the legitimate public purpose of ensuring health and security during the pandemic. Instead, AAGLA relies on a line of cases, beginning in the antebellum period and culminating in *Blaisdell*, that considered various laws imposing moratoria on evictions and foreclosures. Citing those earlier cases, AAGLA avers that "the Supreme Court *has* established a standard for reasonableness in the context of moratoria delaying a property owner's right to possession: ensuring *fair rental compensation* contemporaneous with the extended occupation during the pendency of a moratorium."

AAGLA correctly observes that the Court in those Contracts Clause cases often appears to have referenced in its discussion whether the law provided for some sort of reasonable rental value to be paid to the property owner during the moratoria's interim. In *Blaisdell*, for example, the Court upheld a moratorium on foreclosures, at least in part because it "secure[d] to the mortgagee the rental value of the property" during the emergency period. 290 U.S. at 432. The other cases AAGLA discusses appear to have viewed reasonable rent as a relevant consideration as well. [4]

But AAGLA's assertion that, as a matter of constitutional law, eviction moratoria require fair rental compensation in the interim fails for two main reasons. *First*, even in the more Contracts Clause-friendly era in which some of these cases were decided, the authorities AAGLA cites do not clearly impose AAGLA's preferred inflexible rent payment rule. While these cases treated reasonable rent as a relevant criterion in the analysis, they do not purport to impose such a requirement as a categorical matter. Indeed, even AAGLA in its opening brief acknowledges that its desired contemporaneous rent requirement "may not have been elevated to a hard and fast 'rule' in every case."

In other words, there is no apparent ironclad constitutional rule that eviction moratoria pass Contracts Clause scrutiny only if rent is paid during the period of the moratoria. Instead, each of the cases AAGLA cites turned on its own facts and circumstances. That reasonable rent may have been a relevant consideration in some cases thus does not make it a constitutional floor in all cases. And it does not thereby create a Contracts Clause constitutional baseline in a case involving a public health situation like COVID-19. See *Matsuda v. City & County of Honolulu*, 512 F.3d 1148, 1152 (9th Cir. 2008) ("[T]he Supreme Court has construed [the Contracts Clause] prohibition narrowly in order to ensure that local governments retain the flexibility to exercise their police powers effectively.").

 **\*8** In claiming that any eviction moratorium is constitutional only if rent is contemporaneously paid, AAGLA relies most heavily on *Blaisdell*. But *Blaisdell* shows why AAGLA's attempt to divine a bright-line "reasonable rent" rule is unpersuasive. *Blaisdell* identified several factors that supported the state law's constitutionality. As the Court later explained, these included that the law contained a declaration

of emergency, "protect[ed] a basic societal interest," was "appropriately tailored," and imposed "reasonable" conditions "limited to the duration of the emergency." *Allied Structural*, 438 U.S. at 242; *see also Blaisdell*, 290 U.S. at 444–47. Nothing in *Blaisdell* suggests that a "reasonable rent" requirement was dispositive. Indeed, *Blaisdell* specifically rejected the notion that Contracts Clause analysis should proceed with a "literal exactness like a mathematical formula." 290 U.S. at 428. Instead, "[e]very case must be determined upon its own circumstances." *Id.* at 430 (quotations omitted).

*Second*, the outmoded approach in the pre-*Blaisdell* cases AAGLA cites does not resemble the Supreme Court's modern Contracts Clause doctrine. *See U.S. Trust*, 431 U.S. at 22 n.19 (explaining that to the extent prior cases had imposed strict limitations, "[l]ater decisions abandoned these limitations as absolute requirements"). Indeed, the Supreme Court has clarified, even "the existence of an emergency and the limited duration of a relief measure ... cannot be regarded as essential in every case." *Id.* at 23 n.19.

As discussed above, *Energy Reserves* provided for considerable deference to state and local legislatures in assessing the reasonableness of legislation. 459 U.S. at 412–13. Even twenty-five years ago, we "specifically recognized the shift in the law created by *Energy Reserves*," when the Supreme Court "retreated from its prior case law" and "indicated a renewed willingness to defer to the decisions of state legislatures regarding the impairment of private contracts." *Seltzer*, 104 F.3d at 236 (quotations omitted and alterations accepted). Under current precedent, this court therefore does not engage in an analysis as demanding as that of the pre-*Blaisdell* cases that AAGLA invokes.

Further weakening AAGLA's challenge is the fact that the eviction moratorium is but one aspect of a broader remedial framework applicable to landlords during the pandemic. In response to AAGLA's concerns, appellees fairly argue that the City's creation of an Emergency Rental Assistance Program supports the eviction moratorium's reasonableness. That Program initially made available about $103 million (of which $100 million was funded by the federal government) to provide up to $2,000 in rent payments per eligible household, though only tenants were able (but were not required) to apply for such assistance. Subsequently, federal and state funds allowed the City to expand that program by an additional $235.5 million.

Moreover, the City more recently has indicated that it expects to receive an additional $193 million "for rental assistance directly from the federal government," along with a portion of the $1.2 billion in federal funds allocated to California from the most recent legislation. The City points to recent state legislation directing the funds to be "used to pay all of the rental debt accumulated on or after April 1, 2020 by a household making up to 80% of the area median income." *See* Cal. Health & Safety Code § 50897.1(b), (d)(1).

And finally, the City notes that other government agencies, including within the City, have given landlords flexibility in meeting their obligations, such as payment plans for utilities and penalty waivers for property taxes. Although the interaction between these various programs is a matter of some complexity, the availability of such relief, while not dispositive, remains relevant in assessing the overall reasonableness of the City's actions. *See Energy Reserves*, 459 U.S. at 418 ("To analyze properly the Kansas Act's effect, ... we must consider the entire state and federal gas price regulatory structure."). That other government programs provide some relief to landlords thus further undermines AAGLA's Contracts Clause challenge.

**\*9** Lastly, we note that although we appear to be the first court of appeals to have addressed a challenge to the constitutionality of a COVID-19-related eviction moratorium under the Contracts Clause, our result today is consistent with those of the district courts that have confronted— and uniformly rejected—these challenges. *See Heights Apartments, LLC v. Walz*, 510 F. Supp. 3d 789, 808–10 (D. Minn. 2020), *appeal docketed*, No. 21-1278 (8th Cir.); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 381–87 (D. Mass. 2020); *El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC, 2020 WL 8024348, at \*6–12 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 71678, at \*3 (Jan. 8, 2021); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 349–35 (E.D. Pa. 2020); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 223–26 (D. Conn. 2020); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 168–72 (S.D.N.Y. 2020).[5]

Because AAGLA has not demonstrated a likelihood of success on its claim, we need not address the other

preliminary injunction factors that AAGLA also would have needed to establish. *See* *California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc) ("If a movant fails to establish likelihood of success on the merits, we need not consider the other factors.").

\* \* \*

We are tasked only with evaluating the constitutionality of the eviction moratorium under the forgiving standard of modern Contracts Clause analysis. A faithful application of that standard requires us to conclude that the district court did not err in denying AAGLA's request for preliminary injunctive relief.

**\*10** AFFIRMED.

**All Citations**

--- F.4th ----, 2021 WL 3745777

## Footnotes

| | |
|---|---|
| \* | The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation. |
| \*\* | This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader. |
| 1 | The Supreme Court recently temporarily enjoined Part A of the COVID Emergency Eviction and Foreclosure Prevention Act (CEEFPA), 2020 N.Y. Laws ch. 381. *Chrysafis v. Marks*, No. 21A8, slip op. at 1 (U.S. Aug. 12, 2021). Under the New York law, "[i]f a tenant self-certifies financial hardship" due to COVID-19, CEEFPA "generally precludes a landlord from contesting that certification and denies the landlord a hearing." *Id.* The Supreme Court concluded that "[t]his scheme violates the Court's longstanding teaching that ordinarily, 'no man can be a judge in his own case' consistent with the Due Process Clause." *Id.* (quoting *In re Murchinson*, 349 U.S. 133, 136 (1955)). Although there are apparent differences between the Los Angeles and New York eviction moratoria, AAGLA in any event does not raise before us any Due Process challenge, whether to the procedures governing unlawful detainer proceedings or otherwise. |
| 2 | We grant the City's motion for judicial notice of related COVID-19 measures. We also note that the eviction moratorium contains other provisions not at issue in this appeal, such as requirements that landlords notify tenants of their rights under the moratorium and restrictions on removing residential property from the rental market. *See, e.g.*, L.A., Cal., Municipal Code §§ 49.99.2(E), .4. |
| 3 | AAGLA did not request preliminary injunctive relief based on the Takings Clause. And although it did invoke the Fourteenth Amendment's Due Process Clause, AAGLA does not appeal the district court's rejection of that claim. We therefore have no occasion to decide whether AAGLA has a valid claim under either the Takings Clause or the Fourteenth Amendment. |
| 4 | *Compare* *Block v. Hirsh*, 256 U.S. 135, 153–54 (1921) (upholding a law allowing tenants to remain in possession after the expiration of the terms of their leases at least in part because "[m]achinery is provided to secure to the landlord a reasonable rent"), *with* *Bronson v. Kinzie*, 42 U.S. (1 How.) 311, 319–22 (1843) (striking down a law limiting certain foreclosures, in part because—as the court later explained—unlike in *Blaisdell*, "there was no provision ... to secure to the mortgagee the rental value of the property during the extended period," *Blaisdell*, 290 U.S. at 432); *and* *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 61 (1935) (invalidating a law limiting foreclosures that did not condition relief "upon payment of interest and taxes or the rental value of the premises"). |
| 5 | We note that AAGLA's Contracts Clause challenge involves a different analysis than the statutory and constitutional challenges to the nationwide eviction moratorium imposed by the Centers for Disease Control |

and Prevention (CDC), which recently reached the Supreme Court. *See Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-3377 (DLF), — F. Supp. 3d —, 2021 WL 1779282, at *4–9 (D.D.C. May 5, 2021), *motion to stay granted*, — F. Supp. 3d —, 2021 WL 1946376, at *5 (May 14, 2021), *motion to vacate stay denied*, No. 21-5093, 2021 WL 2221646, at *1 (D.C. Cir. June 2, 2021) (per curiam), *application to vacate stay denied sub. nom. Ala. Ass'n of Realtors v. Dep't of Health & Hum. Svcs.*, 141 S. Ct. 2320, 2320 (2021) (mem.); *see also Ala. Ass'n of Realtors*, 141 S. Ct. at 2320–21 (Kavanaugh, J., concurring); *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522–24 (6th Cir. 2021) (order); *Terkel v. Ctrs. for Disease Control & Prevention*, No. 6:20-cv-00564, — F. Supp. 3d —, 2021 WL 742877, at *4–10 (E.D. Tex. Feb. 25, 2021), *appeal docketed*, No. 21-40137 (5th Cir.). Those cases concern the federal government's powers to enact national eviction moratoria under the Public Health Service Act and the Constitution. *See Tiger Lily*, 992 F.3d at 522–23; *Ala. Ass'n of Realtors*, 2021 WL 1779282, at *4; *Terkel*, 2021 WL 742877, at *4. We have no occasion to opine on those issues here.

The issues presented here are also different than those in *Chrysafis*, discussed above, in which the Supreme Court partially enjoined New York's eviction moratorium based on a Due Process challenge relating to landlords' lack of access to hearing procedures. No. 21A8, slip op. at 1. The Supreme Court in *Chrysafis* was not considering a Contracts Clause challenge.

---

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.