Hon. Richard A. Jones
Hon. J. Richard Creatura

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| EL PAPEL, LLC and BERMAN 2, LLC, | Civil Action No. 2:20-cv-01323-RAJ-JRC |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington; JENNY A. DURKAN, in her official capacity as the Mayor of the City of Seattle; and THE CITY OF SEATTLE, a municipal corporation, | |
| Defendants. | |

P. Obj. to Rep. & Rec. On XMSJ - i
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

    I.    Plaintiffs' Claims for Injunctive Relief Against the State Eviction Ban Are Not Moot ............................................................................................................ 1

    II.   The Supreme Court's Decision in *Cedar Point Nursery v. Hassid* Controls ................... 2

    III.  *Yee v. City of Escondido* Does Not Control the Outcome of This Case ......................... 5

    IV.  The Eviction Bans Violate the Contract Clause ............................................................... 9

CONCLUSION ............................................................................................................................. 11

CERTIFICATE OF SERVICE ..................................................................................................... 12

P. Obj. to Rep. & Rec. On XMSJ - ii  
Case No: 2:20-cv-01323-RAJ-JRC

*Pacific Legal Foundation*  
*255 South King Street, Suite 800*  
*Seattle, Washington 98104*  
*(425) 576-0484*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ap't Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*,
 No. 20-56251, 2021 WL 3745777 (9th Cir. Aug. 25, 2021) ................................. 9, 10

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) ..................................... 1–5, 9, 11

*Jevons v. Inslee*,
 No. 1:20-CV-3182-SAB, Order Granting Defendants' Motion for Summary
 Judgment and Denying Plaintiffs' Motion for Summary Judgment (E.D.
 Wash. Sept. 21, 2021) ........................................................................................ 1–2

*Knick v. Township of Scott, Pa.*,
 139 S. Ct. 2162 (2019) ........................................................................................ 3–4, 9

*Loretto v. Teleprompter Manhattan CATV Corp.*,
 458 U.S. 419 (1982) ............................................................................................ 8–9

*Penn Central Transportation Company v. City of New York*,
 438 U.S. 104 (1978) ............................................................................................ 2

*Portsmouth Harbor Land & Hotel Co. v. United States*,
 260 U.S. 327 (1922) ............................................................................................ 4

*United States v. Sanchez-Gomez*,
 138 S. Ct. 1532 (2018) ........................................................................................ 1

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) ............................................... 1

*Yee v. City of Escondido*, 224 Cal. App. 3d 1349 (1990) ....................................... 6, 7

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ..................................................... 1, 5–8

**Statutes**

Cal. Civil Code § 798.56 ......................................................................................... 7, 8

Cal. Civil Code § 798.56(a)–(e) .............................................................................. 6

Los Angeles Municipal Code § 49.99.2 .................................................................. 10

**Other Authorities**

Civil Emergency Order, City of Seattle, Moratorium on Residential
 Evictions, § 1(B) ................................................................................................... 10

# INTRODUCTION

This Court should not adopt the United States Magistrate Judge's Report and Recommendation (Recommendation) for at least four primary reasons: (1) the recent extension of the State Proclamation makes clear Plaintiffs' claims for injunctive relief against the State are not moot; (2) the Recommendation improperly dismissed the applicability of *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), to this matter; (3) the Recommendation misinterpreted and misapplied *Yee v. City of Escondido*, 503 U.S. 519 (1992); and (4) the Recommendation wrongly held that the eviction bans do not violate the Contract Clause. Plaintiffs respectfully ask this Court to grant their motion for summary judgment and deny the City and State's cross-motions.

## I. Plaintiffs' Claims for Injunctive Relief Against the State Eviction Ban Are Not Moot

The Recommendation held that Plaintiffs' claims for injunctive relief against the State eviction ban are moot because "the bridge moratorium expires by its own terms on September 30, 2021." Recommendation at 13. That holding is no longer applicable in light of the State's recent extension of the proclamation through October 31, 2021. *See* Defendant Robert W. Ferguson's Notice of Supplemental Authority, Dkt. #143, Exh. 1. Moreover, given the regularity with which the government in this case has extended the eviction bans after arguing Plaintiffs' claims would soon become moot, this case qualifies for an exception to the mootness doctrine where a defendant's actions are "capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). That is, the challenged actions here are (theoretically) too brief to fully litigate prior to expiration, but "there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.*[1] *See also Jevons v. Inslee*, No. 1:20-CV-3182-SAB, Order Granting Defendants' Motion for Summary Judgment and Denying

---

[1] Additionally, the State's objection to the Recommendation wrongly argues that Plaintiffs' claims for declaratory relief are likewise moot because such claims seek prospective relief. Defendant Ferguson's Objections, Dkt. #144, at 1. This is incorrect; it is well-settled that nominal damages provide a means to obtain declaratory relief, and so long as the nominal damages claim remains alive, so does the opportunity to seek such relief. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798, 801 (2021).

P. Obj. to Rep. & Rec. On XMSJ - 1
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

Plaintiffs' Motion for Summary Judgment at 12 (E.D. Wash. Sept. 21, 2021) (concluding that Plaintiff landlords' challenge to the State's eviction ban and subsequent "bridge" proclamation is not moot).

## II. The Supreme Court's Decision in *Cedar Point Nursery v. Hassid* Controls

"When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Cedar Point Nursery*, 141 S. Ct. at 2071 (cleaned up). The same is true when the government physically takes possession of property without acquiring title to it. *Id.*

The Recommendation wrongly held that *Cedar Point Nursery* is inapplicable to the Plaintiffs' case. While the Magistrate is correct that *Cedar Point Nursery* and this case are factually distinct (*Cedar Point Nursery* involved a landowner forced to allow unionizing activities by third persons for specific amounts of time), this distinction does not permit this Court to ignore the Supreme Court's analysis or its ultimate decision that physical occupations impacting a landowner's right to exclude are *per se* takings requiring just compensation. *Id.*

In June this year, the United States Supreme Court evaluated whether a California statute requiring a property owner to grant physical access to union organizers for three hours per day, 120 days per year, affected a taking requiring just compensation. *Id.* at 2069–71. The Supreme Court concluded that even a temporary physical occupation, no matter how small or intermittent, is a *per se* categorical taking. *Id.* at 2074 ("The regulation appropriates a right to physically invade the growers' property . . . . It is therefore, a *per se* physical taking under our precedents.").

In so holding, the Court recognized that the protection of private property rights is of paramount importance to the protection of other liberties. *Id.* at 2071. The Court also reinforced the premise that physical takings are not only categorical in nature but are also separate and distinct from regulatory takings, which utilize the ad hoc balancing test established in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978), while a *per se* taking occurs "[w]henever a regulation results in a physical appropriation of property." *Cedar Point Nursery*, 141 S. Ct. at 2072.

P. Obj. to Rep. & Rec. On XMSJ - 2
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

Additionally, the Court did not find the temporary nature of the Union's access preclusive of a physical taking's *per se* categorization. *Id.* at 2072–73. Instead, the Court held that the right to exclude was so fundamental that any deprivation, even a momentary one, constituted a *per se* compensable taking. *Id.* at 2074 ("The upshot of this line of precedent is that government-authorized invasions of property—whether by plane, boat, cable, or beachcomber—are physical takings requiring just compensation. As in those cases, the government here has appropriated a right of access to the growers' property, allowing union organizers to traverse it at will for three hours a day, 120 days a year. The regulation appropriates a right to physically invade the growers' property—to literally 'take access,' as the regulation provides. It is therefore a *per se* physical taking under our precedents.") (cleaned up). The duration of the invasion affects only the amount of compensation owed, not whether a categorical physical occupation has occurred. *Id.* at 2074–75. Consequently, a *per se* taking occurs even if the physical occupation is only temporary.

Here, the eviction bans force the Plaintiffs to endure their tenants' continuous physical occupation by eliminating their ability to evict their tenants in all but a few exceptional circumstances. This physical occupation, while initially permitted due to the Plaintiffs' invitation, was predicated on the tenants' continued adherence to their lease agreements, namely their timely payment of rent. The tenants' failure to meet their obligations here, along with the City and State's eviction bans, however temporary, has turned the tenants from lawful invitees to unlawful physical occupiers, violating the Takings Clause and the Supreme Court's mandate in *Cedar Point Nursery*.

For takings purposes, it does not matter that the eviction bans at issue here are (theoretically) limited in duration, while the union access rule in *Cedar Point Nursery* had no express sunset date. Not only is *Cedar Point Nursery* clear that any physical occupation for any amount of time causes a *per se* taking, but that holding fits with the rule that takings liability is complete the moment the property interest is taken. *See Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2170 (2019). That the government may give back the property in several months (or in this case almost two years) is of no consequence. Hence, this Court need not wait to see just how "temporary" these eviction bans are before deciding whether they have caused a taking.

*P. Obj. to Rep. & Rec. On XMSJ - 3*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

Additionally, the few exceptions the Supreme Court has carved out of the physical takings rule do not apply to the eviction bans. First, the Court has indicated that a mere trespass would not trigger *per se* takings liability. *Id.* at 2078 ("Isolated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts rather than appropriations of a property right."). Second, the Court held that physical invasions consistent with background principles of property law would not trigger takings liability. *Id.* at 2079 ("[M]any government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights."). These background principles include entry for public or private necessity. *Id.* However, such necessity is limited to instances of imminent public disaster, such as a wildfire or other act of God. *Id.* Finally, the Court found physical invasions were less likely to cause a taking where the government requires access as a condition of receiving governmental benefits. *Id.* ("[T]he government may require property owners to cede a right of access as a condition of receiving certain benefits, without causing a taking."). These takings, also known as exactions, are a separate subset of property law that do not trigger the same type of *per se* liability as a physical occupation. *Id.* at 2079–80.

Here, the government cannot argue the eviction bans fit within these limited exceptions. Their eviction bans are not mere trespasses on the Plaintiffs' property, as they have lasted for well over a year and a half and are too widespread among hundreds of landlords to be categorized as an isolated physical invasion. *Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327, 329 (1922) ("[W]hile a single act may not be enough, a continuance of [trespasses] in sufficient number and for a sufficient time may prove [the intent to take property]. Every successive trespass adds to the force of the evidence."). Nor do their eviction bans trigger a background principle of property law. While the government has argued the eviction bans are a public necessity, the background principles cited and discussed by the Supreme Court are far removed from the City and State's reasoning. *Cedar Point Nursery*, 141 S. Ct. at 2079. For example, the Supreme Court cites to cases involving entry to avert imminent public disaster, or to effect an arrest or a reasonable search. *Id.*; Restatement (Second) of Torts § 196 (1964) (entry to

P. Obj. to Rep. & Rec. On XMSJ - 4  
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation  
255 South King Street, Suite 800  
Seattle, Washington 98104  
(425) 576-0484

avert an imminent public disaster); § 197 (entry to avert serious harm to a person, land, or chattels); §§ 204–205 (entry to effect an arrest or enforce criminal law). Furthermore, there is no possible permit at issue in the current case. Consequently, the eviction bans do not fall within *Cedar Point Nursery*'s enumerated exceptions, rendering the Supreme Court's holding that physical occupations are *per se* controlling.

*Cedar Point Nursery* applies to both the City's emergency order barring evictions and the State's most recent "bridge" proclamation. While the State's most recent proclamation purports to provide avenues toward eviction, it in effect remains a *de facto* bar on eviction. Evictions can only move forward under the State proclamation where eviction resolution pilot programs are in place. Yet the Proclamation itself concedes that such programs are not "operational statewide" and therefore eviction remains impossible under the Proclamation in those locations. *See* Defendant Robert W. Ferguson's Notice of Supplemental Authority, Dkt. #143, Exh. 1 at 2.

Thus, the Supreme Court's ruling in *Cedar Point Nursery* controls and this Court is bound to follow its holding that all physical occupations, regardless of duration, are *per se* takings under the Fifth Amendment.

**III.     *Yee v. City of Escondido* Does Not Control the Outcome of This Case**

While the Recommendation recognized *Cedar Point Nursery*'s holding, it held that an exception exists for the rental housing context under *Yee v. City of Escondido*, 503 U.S. 519 (1992). This holding is a profound misreading of a narrow takings decision far afield from the circumstances presented here. Though Plaintiffs in prior briefing have sought to distinguish *Yee*, these objections provide a more thorough analysis of that case.

In *Yee*, the Supreme Court declined to extend its physical takings jurisprudence to a novel theory and circumstance, neither of which bear any resemblance to the case at bar. Mobile home park owners brought a *per se* takings claim against a mobile-home rent control ordinance. *See id*. at 522. Park owners had claimed that the rent control ordinance, which established below-market rates, effected a taking when operating in conjunction with the California Mobilehome Residency Act, which required park owners to accept buyers of mobile homes as tenants. *See id*.

P. Obj. to Rep. & Rec. On XMSJ - 5
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

The park owners claimed that these two laws working in tandem caused a taking because the rent control ordinance kept rents below market, and the state law prevented landlords from exercising any bargaining power over incoming tenants. *See id.* at 531 n.*. The combined result was that park owners could never recover the difference between artificially low rents and an ever-growing market value. *See Yee v. City of Escondido*, 224 Cal. App. 3d 1349, 1352 (1990). The park owners argued that this effectively transferred interests in the full property value to their tenants and therefore resulted in a taking. *Id.*

The Court's holding in *Yee* was limited to rejecting an unusual takings theory in an unusual setting. Indeed, the Supreme Court expressly noted that its holding rested upon the unusual economic relationship between a park owner and a mobile-home tenant, where the tenant rents in a physical space they do not own but owns the mobile home structure itself, which, despite its moniker, is difficult or impossible to move to a new location as a practical matter. *Id.* at 526. Moreover, it is important to note that the *Yee* plaintiffs did *not* challenge the California law that limited their right to exclude. *Id.* at 522. They only challenged the local rent control ordinance itself, focused as they were on loss in property value due to depressed rents.

And finally, the California state law that played a role in the park owners' theory in fact allowed for eviction under a wide range of circumstances. Valid grounds for termination included: a tenant's noncompliance with governing laws, conduct causing "substantial annoyance" to neighbors, various criminal offenses, violation of the rental agreement, and nonpayment of rent, utilities, or other charges. *Id.* at 528; Cal. Civil Code § 798.56(a)–(e).

With these peculiar circumstances in mind, it is easy to distinguish between the nuanced and novel takings theory rejected in *Yee* and the claim brought here. The park owners in *Yee* tried to "shoehorn" what was essentially an economic injury into a *per se* taking by arguing that the rent control ordinance had authorized tenants to "permanently occupy the landlord's property *at a reduced rent*." *Yee*, 224 Cal. App. 3d at 1355 (emphasis added); *see also Yee*, 503 U.S. at 527 ("As a result, petitioners conclude, the rent control ordinance has transferred a discrete interest in land— the right to occupy the land indefinitely at a submarket rent—from the park owner to the mobile

P. Obj. to Rep. & Rec. On XMSJ - 6
Case No: 2:20-cv-01323-RAJ-JRC

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

home owner."). The park owners were in fact able to exclude any given tenant under the conditions listed above, but they nonetheless argued they had suffered a permanent physical occupation because they could not effectively raise the rent when tenancies changed hands. *Id.* It is this unusual argument regarding the right to occupy property at submarket rent that the Supreme Court rejected as a physical taking. *See id.* at 526–27.

The factual and legal gulfs between *Yee* and the case presently before this Court are vast. For one, this case sits outside the "unusual economic relationship between park owners and mobile home owners" upon which the park owners' takings argument was predicated. *Yee*, 503 U.S. at 526. But more importantly, *Yee* only stands for the proposition that the Takings Clause does not prevent the government from maintaining a submarket rental rate even when tenancy changes hands. *Yee* simply did not address whether extinguishing the right to evict a given tenant—save in a few exceptional circumstances—gives rise to a physical taking.

Indeed, even if *Yee* did in fact extend its holding to whether the government can bar a landlord from evicting a tenant, the California Mobilehome Residency Act was far less restrictive than the eviction bans at issue here. The Act in *Yee* allowed for evictions for nonpayment of rent, lease violations, nuisance, and criminal activity. *See* Cal. Civil Code § 798.56. Neither of the eviction bans at issue in this case allow for eviction under these circumstances unless the tenants' behavior creates a serious safety risk. And to the extent *Yee*'s holding extended to the validity of the Mobilehome Residency Act—which it did not—such a holding would be dicta, since the park owners in *Yee* did not challenge the validity of the Mobilehome Residency Act, instead claiming only that the local rent control ordinance caused a taking.

Thus, *Yee*'s statement that the right to exclude is curtailed where a landlord has invited a tenant to occupy the premises does not apply here. Unlike in *Yee*, the Plaintiffs here and other similarly situated landlords cannot evict even where the terms of that invitation—the lease agreement—are not being honored by the tenant. It is a universal reality that implicit or express terms limit any invitation to occupy or enter property. These include implicit terms such as the expectation that a property owner may eject an invitee who injures a person or property, as well as

*P. Obj. to Rep. & Rec. On XMSJ - 7*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

express terms, such as those in the lease agreements at issue here, which allow occupancy only on conditions such as timely payment of rent or agreement not to smoke indoors. It would be remarkable for *Yee*, which did not involve a circumstance where the terms of an invitation had been breached, to stand for the broad proposition that once an invitee has been granted a right to enter, the government can override any implicit or express limits on that invitation without consequence. Such a holding would clash with the Supreme Court's broader takings jurisprudence as well as longstanding common law and basic common sense.

Nonetheless, this is the lesson that the Recommendation has drawn from *Yee*. *See* Recommendation at 30 (holding, based on *Yee*, that landlords could not demonstrate a physical taking because "the landlords invited the renters to their units"). This interpretation of *Yee* may have derived from the Recommendation's misreading of core facts. According to the Recommendation, "the state law at issue in *Yee* also only permitted eviction in a narrow circumstance—where the park owner wanted to change the use of the land—and required that the owner give six to twelve months' notice." Recommendation at 30. But this is simply wrong. The state law in California *did* allow for eviction for nonpayment, lease violations, and a variety of other scenarios with sixty days' notice. *See Yee*, 503 U.S. at 528; Cal. Civil Code § 798.56. Moreover, the park owners in *Yee did not challenge* the California state law; they challenged the local rent control ordinance only, and the state law only played an indirect role in the case. Thus, the Recommendation's application of *Yee* rests on a misreading of key facts in that case.

Based on this erroneous reading of *Yee*, the Recommendation has embraced a holding that clashes with the Supreme Court's foundational decision in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982),[2] and its recent and unequivocal embrace of the right to exclude

---

[2] The government has relied upon *Loretto*'s statement that "[t]his Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto*, 458 U.S. at 440. It is clear, however, that the Court here was referring to laws requiring "landlords to comply with building codes and provide utility connections" and similar requirements that did not involve compelled physical occupation. *Id.* Indeed, the Court said so in the very next sentence: "In none of these cases, however, did the government authorize the

P. Obj. to Rep. & Rec. On XMSJ - 8
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

in *Cedar Point Nursery*. Consequently, *Yee* cannot control, and this Court should hold that eviction bans barring landlords from evicting tenants impinge the right to exclude and thus effect a categorical taking.[3]

### IV. The Eviction Bans Violate the Contract Clause

The Recommendation also erred in rejecting Plaintiffs' Contract Clause challenge. The Recommendation relied heavily on the Ninth Circuit's recent decision affirming denial of a preliminary injunction in a Contract Clause challenge to a Los Angeles eviction moratorium. *See Ap't Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, No. 20-56251, 2021 WL 3745777 (9th Cir. Aug. 25, 2021) (*AALAC*). Rather than restate arguments addressed at length in the briefing, Plaintiffs will explain why *AALAC* does not control Plaintiffs' Contract Clause challenge for three primary reasons: (1) *AALAC* itself insisted that each Contract Clause issue is highly fact-dependent and therefore existing precedent will rarely be on all fours with the case at bar; (2) the eviction bans at issue here are more restrictive than the one upheld in *AALAC*; and (3) there are legal arguments presented here that *AALAC* did not address.

By its own terms, *AALAC* has limited precedential effect on subsequent Contract Clause claims because such claims are highly dependent on the unique circumstances of each case. The Ninth Circuit rejected the appellants' "ironclad constitutional rule that eviction moratoria pass Contracts Clause scrutiny only if rent is paid during the moratoria" because "every case must be determined upon its own circumstances." *Id.* at *7–8 (cleaned up). Given that courts favor an

---

permanent occupation of the landlord's property." *Id.* Of course, the Court's reference to "permanent" occupation has now been superseded by *Cedar Point Nursery*.

[3] In its analysis of Plaintiffs' takings claim, the Recommendation also noted that the eviction bans do not forgive or cancel rental debt. This fact has no bearing on the takings analysis, since the right to pursue a takings claim arises "as soon as a government takes [] property for public use without paying for it." *Knick*, 139 S. Ct. at 2170. Thus, the "right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* This rationale should apply not only to post-takings remedies provided by the government but also speculative promises of future payment by third parties such as tenants. After all, "[a] later payment of compensation may remedy the constitutional violation that occurred at the time of the taking, but that does not mean the violation never took place. . . . A bank robber may give the loot back, but he still robbed the bank." *Id.* at 2172.

P. Obj. to Rep. & Rec. On XMSJ - 9
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

approach that looks to the totality of the circumstances in any given case, *AALAC* and similar cases—while they may inform the court's approach—cannot definitively control the outcome of the case.

Looking to the unique circumstances of this case as *AALAC* instructs, it bears emphasis that the eviction bans here are more restrictive than the one upheld in *AALAC*. The Los Angeles moratorium only prohibited eviction for non-payment of rent, for no-fault reasons such as sale of the property, for unauthorized occupants and pets, or for a COVID-19 related nuisance. *See* Los Angeles Municipal Code § 49.99.2. Here, by contrast, the City eviction ban prohibits all evictions unless the eviction "is due to actions by the tenant constituting an imminent threat to the health or safety of neighbors, the landlord, or the tenant's or landlord's household members." Civil Emergency Order, City of Seattle, Moratorium on Residential Evictions, § 1(B). Hence, the Los Angeles ordinance would allow eviction for non-COVID-related nuisances, lease violations unrelated to payment or unauthorized occupancy, safety risks posed by a tenant's household members, and a panoply of other circumstances foreclosed by the City's emergency order.

Additionally, *AALAC* did not address a merits issue present in this case. The appellants in *AALAC* had argued before the Ninth Circuit that the Los Angeles moratorium violated the Contract Clause because it failed to ensure compensation during the period that the landlord was ousted from possessing his or her property. *See AALAC*, Appellant's Opening Brief, 2020 WL 7701126, at *32–42. The Ninth Circuit, in turn, only addressed the merits question of whether interim compensation is an indispensable requirement for an eviction or foreclosure moratorium to pass constitutional muster. *AALAC*, 2021 WL 3745777, at *6–9.

Here, however, Plaintiffs have raised additional arguments left unaddressed in *AALAC*, namely whether the lack of a hardship requirement, either independently or in conjunction with the lack of interim compensation, violates the Contract Clause. The Recommendation rejects this argument for reasons already argued in the briefing but adds that the lack of a hardship showing is also justified by the "secondary rationale that forcing tenants to defend themselves in eviction court would likely endanger their health." Recommendation at 20. If this is a rationale motivating

P. Obj. to Rep. & Rec. On XMSJ - 10
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

the government actions in this case, then the eviction bans are monumentally underinclusive in addressing that concern, as tenants in eviction proceedings are only a small fraction of all the individuals called upon to appear in court proceedings, and apparently the government has no corollary concern for the health of landlords sued by their tenants. Moreover, the City and State have not explained why the movement to remote proceedings throughout the pandemic does not alleviate this worry.

## CONCLUSION

It is neither reasonable nor appropriate under the Contract Clause for the government to lock down rental properties for over a year-and-a-half. *Cedar Point Nursery*, moreover, offers the correct framework for analyzing whether the moratoria cause a taking, not the narrow holding in *Yee*. Plaintiffs respectfully request that the District Court reject the Recommendation.

DATED:  September 29, 2021.

Respectfully submitted:

| | |
|---|---|
| s/  ETHAN W. BLEVINS | s/  KATHRYN D. VALOIS |
| s/  BRIAN T. HODGES | Kathryn D. Valois** |
| Ethan W. Blevins, WSBA # 48219 | Fla. Bar. No. 1010150 |
| Brian T. Hodges, WSBA # 31976 | Pacific Legal Foundation |
| Pacific Legal Foundation | 4440 PGA Blvd., Suite 307 |
| 255 South King Street, Suite 800 | Palm Beach Gardens, FL 33410 |
| Seattle, Washington 98104 | Telephone: (561) 691-5000 |
| Telephone: (425) 576-0484 | Email: KValois@pacificlegal.org |
| Email: EBlevins@pacificlegal.org | |
| Email: BHodges@pacificlegal.org | ** Pro hac vice |

*Attorneys for Plaintiffs*

*P. Obj. to Rep. & Rec. On XMSJ - 11*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

*Attorney for Plaintiffs*

P. Obj. to Rep. & Rec. On XMSJ - 12
Case No: 2:20-cv-01323-RAJ-JRC

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484