Hon. Richard A. Jones
Hon. J. Richard Creatura

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | | |
|---|---|---|
| EL PAPEL, LLC and BERMAN 2, LLC, | ) | Civil Action No. 2:20-cv-01323-RAJ-JRC |
| Plaintiffs, | ) | |
| v. | ) | **OPPOSITION TO MOTION TO** |
| | ) | **SUPPLEMENT CROSS-MOTION FOR** |
| ROBERT W. FERGUSON, in his official | ) | **SUMMARY JUDGMENT RE** |
| capacity as Attorney General of the State of | ) | **MOOTNESS AND MOTION TO** |
| Washington; BRUCE HARRELL, in his | ) | **MODIFY REPORT AND** |
| official capacity as the Mayor of the City of | ) | **RECOMMENDATION** |
| Seattle; and THE CITY OF SEATTLE, a | ) | |
| municipal Corporation, | ) | **Noted on Motion Calendar:** |
| | ) | **April 1, 2022** |
| Defendants. | ) | |
| | ) | |

**INTRODUCTION**

The prospective claims against the City's eviction ban are not moot. The two bases upon which the City has justified its ban on evictions, the pandemic and its economic impact, are ongoing. The City has not ended its state of emergency, and the Mayor has authority to easily reverse course and reinstate the eviction ban at his discretion. It is eminently reasonable, therefore, to anticipate that the eviction ban may return.

*P. Opp. to Mot. re Mootness - 1*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

1

**ARGUMENT**

2

**I.    The Voluntary Cessation Exception to Mootness Applies**

3

    **A.    The City does not enjoy a presumption of mootness**

4

        Voluntary cessation of the challenged conduct does not typically deprive the court of

5

jurisdiction to determine the conduct's legality. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

6

*(TOC), Inc.*, 528 U.S. 167, 174 (2000) ("A defendant's voluntary cessation of allegedly unlawful

7

conduct ordinarily does not suffice to moot a case."). Courts are not left powerless to prevent a

8

defendant from "return[ing] to his old ways." *Id.* at 189 (internal quotation omitted). Thus, a

9

defendant arguing that voluntary cessation moots a case shoulders the "formidable burden" of

10

showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be

11

expected to recur." *Id.* at 190.

12

        That heavy burden sometimes lightens where the government is the defendant, as courts

13

occasionally treat government cessation "with more solicitude than similar action by private

14

parties." *Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198

15

(9th Cir. 2019) (cleaned up). The degree of solicitude, however, depends on the type of government

16

action. In particular, voluntary cessation through a "legislative-like" process warrants greater

17

solicitude than "ad hoc" government action that is "easily reversible." *Speech First, Inc. v.*

18

*Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019).

19

        Where the voluntary cessation is accomplished through new legislation or legislative

20

repeal, the cessation "will presumptively moot the case" absent a reasonable expectation that the

21

government may reverse course. *Id*. However, if cessation occurs through a "merely regulatory"

22

process, then the solicitude afforded the government depends on whether the means used to cease

23

the challenged law "involved legislative-like procedures or were ad hoc, discretionary, and easily

24

reversible actions." *Id.* If the discretion to cease or reenact the challenged conduct sits with "one

25

agency or individual, or there are no formal processes required to effect the change, significantly

26

more than the bare solicitude itself is necessary to show that the voluntary cessation moots the

27

claim." *Id.*

28

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

For example, in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68–69 (2020), the Supreme Court did not apply a presumption of mootness where the New York Governor had lifted COVID restrictions from the complaining parties but he held ad hoc authority to reimpose them as he saw fit. And in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court did not presume mootness where the Governor of Missouri had directed an agency to cease the challenged conduct, instead requiring the government to still satisfy the "heavy burden" of showing that it was "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[1] *Id.* (citing *Friends of the Earth, Inc.*, 528 U.S. at 189).

The case that the City relies on to press for a presumption of mootness where the government voluntarily ceases challenged conduct, *Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019), involved a legislative act, not an easily reversible action by a single agency or government official. The opinion only addressed the question of "the proper analytical framework to apply when determining whether *the repeal, amendment, or expiration of legislation* renders a lawsuit challenging the legislation moot." *Id.* at 1197 (emphasis added). The holding likewise limited itself to that context, imposing a "presumption of mootness" only where "a *legislative body* is acting in good faith in repealing or amending a challenged *legislative provision*, or in allowing it to expire . . . . unless there is a reasonable expectation that the *legislative body* will reenact the challenged provision or one similar to it." *Id.* at 1199 (emphasis added). Likewise, other Ninth Circuit and Supreme Court opinions recognizing increased solicitude for government cessation of challenged conduct addressed only legislative actions or actions by multiple governmental bodies, not "ad hoc" and "easily reversible"

---

[1] A Ninth Circuit panel also held last year that a challenge to rescinded school-closure orders from the California Public Health Officer was not moot. *See Brach v. Newsom*, 6 F.4th 904, 918–19 (9th Cir. 2021) (rehearing granted by *Brach v. Newsom*, 18 F.4th 1031 (9th Cir. 2021)). Notably, the panel did not rely on the presumption of good faith regarding the government's voluntary cessation of challenged conduct but demanded it satisfy the otherwise heavy burden of demonstrating mootness. *Id.* at 918–19. While that decision has been vacated pending en banc review, it nonetheless suggests that the Ninth Circuit's presumption of good faith has exceptions where the government retains discretion to easily reverse the cessation.

*P. Opp. to Mot. re Mootness - 3*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

actions taken by a single non-legislative body or officer. *Compare Roman Catholic Diocese*, 141 S. Ct. at 68–69 (governor's ad hoc cessation) *and Trinity Lutheran*, 137 S. Ct. at 2019 n.1 (same), *with Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) (legislative amendments mooted case challenging original legislation) *and Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1178–79 (9th Cir. 1998) (cessation took place through negotiation and agreement among three federal agencies).

The City notes that voluntary cessation of an executive order can moot a case, citing the Supreme Court's perfunctory disposition of *Trump v. Hawaii*, 138 S. Ct. 377 (Mem.) (2017). But *Trump* does not illuminate the Court's reasoning nor clarify whether the same level of solicitude regarding cessation should be given to an expired order as to, say, a legislative repeal.

Here, this Court should decline to give solicitude to the City's cessation of the moratorium and instead impose the typical "heavy burden" of demonstrating that voluntary cessation moots the case. Much like the governors in *Roman Catholic Diocese* and *Trinity Lutheran*, the Seattle Mayor enjoys unilateral authority to reenact the moratorium at his discretion. Under the emergency authority granted the Mayor during the ongoing civil emergency, which he has not rescinded, he may issue any orders at his sole discretion that he deems "imminently necessary for the protection of life and property." Seattle Municipal Code 10.02.020.A.15; City of Seattle, Mayoral Proclamation of Civil Emergency (March 3, 2020).[2] This is the same authority that the Mayor originally relied on in adopting and extending the eviction ban.

The only procedural limits on the exercise of this authority is the simple requirement that the order contain a statement of the facts that prompted the order, a statement of why the Mayor believes the measure necessary, and a statement that the order is designed to not unnecessarily restrict rights. *See* SMC 10.02.025. This is not a "legislative-like" process that warrants solicitude, but rather an "ad hoc" authority exercised by a single official who can easily reverse decisions at will. Just as the New York Governor could easily re-impose COVID restrictions so long as the state's emergency framework was in place, so also can the Seattle Mayor easily re-impose the

---

[2] *Available at* https://durkan.seattle.gov/wp-content/uploads/sites/9/2020/03/COVID-19-Mayoral-Proclamation-of-Civil-Emergency.pdf.

*P. Opp. to Mot. re Mootness - 4*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

moratorium while the Mayor's proclamation of civil emergency continues to provide him the same emergency authority that he exercised to initiate the eviction ban in the first place. *Contra County of Butler v. Gov. of Pa.*, 8 F.4th 226, 229 (3d Cir. 2021) (holding that a claim against governor's COVID restrictions was moot because the governor had "been stripped of his power to unilaterally act in connection with this pandemic").

**B.      There is a reasonable expectation that the eviction ban will return**

Even if the City enjoys a presumption of mootness, that presumption can be rebutted by showing a "reasonable expectation" that the Mayor may once again adopt the eviction ban. *Bd. of Trustees of Glazing Health and Welfare Trust*, 941 F.3d at 1199. Here, given the regular extensions of the ban and the ongoing pandemic with attendant economic consequences, such a reasonable expectation of the ban's revival does exist.

A reasonable expectation of a COVID restriction's return exists where "officials with a track record of 'moving the goalposts' retain authority to reinstate those heightened restrictions at any time." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (quoting *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 720 (2021) ("Government actors have been moving the goalposts on pandemic-related sacrifices for months, adopting new benchmarks that always seem to put restoration of liberty just around the corner." (Statement of J. Gorsuch))).

Here, the City has developed a long track record of moving the goalpost on the eviction ban. Originally enacted on March 14, 2020, the residential eviction ban had a 60-day expiration date. It has lasted almost two years past that original expiration date and has been extended 10 times. The voluntary cessation of the eviction ban is about as reliable as the many expiration dates that the City repeatedly rescinded. This pattern of moving the goalpost does not necessarily mean that the cessation was done in bad faith; rather, it speaks to the uncertain nature of governance during the pandemic.

Moreover, the pandemic and its economic fallout are not over. The City premises its argument that the eviction moratorium is unlikely to return on evidence indicating that the infection rate is currently on the decline in Seattle. There are at least two reasons that this premise

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

does not banish the specter of a renewed moratorium. First, the City itself has claimed that it has an interest in restricting eviction that is not tied directly to the spread of illness. The City has argued before that restricting evictions beyond the length of the COVID-19 emergency is justified in order to address "the pandemic's persistent economic impacts and prevent homelessness." *See* Def. City of Seattle's Opening/Response Brief on X-MSJ, Dkt. # 103 at 19; *see also id.* at 23 ("[T]he measures are designed not just to limit the disease's spread, but also to mitigate its persistent economic and housing impacts."). According to the City, such impacts "are likely to last longer than the civil emergency itself." *Id.* Indeed, the City's primary rationale for its ordinance creating a defense to eviction for non-payment that lasts six months beyond the moratorium is that the pandemic's economic effects outlast the disease. The City itself clearly does not believe the emergency is over, given that the City's state of civil emergency remains in place. Yet now the City tells this Court that it is unreasonable to expect that the City might resume the ban, which it has continually defended as a lawful and effective way to address the pandemic.

Washington State authorities likewise recognize the ongoing nature of the pandemic and its uncertain future. On Thursday, March 17, 2022, the state issued a report regarding the next phase of the state's COVID response. That report underscores that the pandemic remains a serious threat and that its consequences continue: "While the virus remains with us and is expected to circulate for the foreseeable future, individual Washingtonians, families, business (and) the fabric of our social support system will take years to recover." Washington State Department of Health, *ForWArd: The next phase of WA's COVID-19 Response* at 3 (March 17, 2022).[3] The report announces state programs to address "future COVID-19 variants" and notes that "there is still much work that remains." *Id.* The report cautions that "[a]s we forge on a path of coexisting with COVID-19, we must remember it is difficult to predict when the pandemic will truly end." *Id.* at 13. Washington is no outlier in noting its caution about future variants and surges. Scientists have warned that the United States could face another surge soon, and ominous signs indicate that a

[3] *Available at* https://doh.wa.gov/sites/default/files/2022-03/WAForward.pdf.

*P. Opp. to Mot. re Mootness - 6*
Case No: 2:20-cv-01323-RAJ-JRC

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

subvariant of the omicron strain is on the rise. Benjamin Mueller, *Another Covid Surge May Be Coming. Are We Ready for It?*, New York Times (March 19, 2022).[4]

In light of the City's own approach to this pandemic and the high possibility of further surges, it is eminently reasonable to suspect that the City may reenact the eviction ban.

## II.   The Capable of Repetition Yet Evading Review Exception to Mootness Applies

A case is not moot where a controversy "is capable of repetition, yet evading review." *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 170 (2016) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). That circumstance arises "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018). This controversy satisfies this exception because the eviction ban is too short to fully litigate its constitutionality, and it is reasonable to expect that the City may reenact it.

### A.   The eviction ban is capable of repetition

Controversies are capable of repetition so long as the expectation of re-injury is reasonable, even if it is not "demonstrably probable." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). As already discussed under the voluntary cessation analysis, it is quite reasonable to believe that the pandemic will rebound and surge, and that the City, which continues to insist on the legality and effectiveness of the eviction ban, will respond in the same manner as before.

### B.   The eviction ban evades review

A controversy evades review if it is too short to be fully litigated before cessation and has an inherently limited duration. A controversy satisfies this requirement when the limited duration is "clear at the action's inception." *Hamamoto*, 881 F.3d at 722. Courts have held controversies to be "too short" under this exception where the controversies last two or even three years. *See, e.g.*, *Kingdomware*, 579 U.S. at 169–70 (two-year period was too short to fully litigate); *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010) (three-year period).

---

[4] *Available at* https://www.nytimes.com/2022/03/19/health/covid-ba2-surge-variant.html?auth=login-facebook.

*P. Opp. to Mot. re Mootness - 7*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

The eviction ban evades review. It ended within the two-year period recognized as "too short" in *Kingdomware*. The limited duration of the ban has been clear from its inception, with an expiration date attending each renewal. That expiration date has always been a set number of days or the end of the city's state of civil emergency, which itself is of limited duration. *See, e.g.*, Blevins Decl., Dkt. # 17, Exhs. 7–12. Moreover, the City has long defended the legality of the eviction ban by emphasizing that it is a time-limited response to a temporary emergency. *See, e.g.*, Defendant City of Seattle's X-MSJ Opening/Response Brief, Dkt. # 103 at 28 ("Although [the Supreme Court] recognizes that a different [takings] test might govern a law compelling a landlord to refrain in perpetuity from terminating a tenancy, *the temporary measures Plaintiffs challenge are no such law.*" (citation and quotation omitted) (emphasis added)).

## CONCLUSION

It is reasonable to expect that the City may reenact its eviction ban when another COVID surge strikes. This Court has jurisdiction over this ongoing controversy.

DATED:  March 28, 2022.

Respectfully submitted:

s/  ETHAN W. BLEVINS
s/  BRIAN T. HODGES
Ethan W. Blevins, WSBA # 48219
Brian T. Hodges, WSBA # 31976
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
Email: EBlevins@pacificlegal.org
Email: BHodges@pacificlegal.org

s/  KATHRYN D. VALOIS
Kathryn D. Valois**
Fla. Bar. No. 1010150
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
Email: KValois@pacificlegal.org

** Pro hac vice

*Attorneys for Plaintiffs*

*P. Opp. to Mot. re Mootness - 8*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

*Attorney for Plaintiffs*

*P. Opp. to Mot. re Mootness - 9*
*Case No: 2:20-cv-01323-RAJ-JRC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*