Hon. Richard A. Jones
Hon. J. Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| El PAPEL LLC, *et al.*, | ) | No. 2:20-cv-01323-RAJ-JRC |
| | ) | |
| Plaintiffs, | ) | DEFENDANT CITY OF SEATTLE'S |
| | ) | REPLY RE SUPPLEMENTAL CROSS-|
| vs. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT RE MOOTNESS AND |
| BRUCE HARRELL, *et al.*, | ) | MOTION TO MODIFY REPORT AND |
| | ) | RECOMMENDATION (DKT. # 141) |
| Defendants. | ) | |
| | ) | **NOTED ON MOTION CALENDAR:** |
| | ) | **APRIL 1, 2022** |

Plaintiffs' requests for injunctive and declaratory relief as to the City's eviction moratorium are moot and must be dismissed.

**A.      The voluntary cessation exception to mootness does not apply.**

      **1.      The expiration of the City's moratorium is presumed to moot Plaintiffs' requests for prospective relief.**

Generally, a case is mooted by a defendant's voluntary cessation of a challenged practice only if the defendant claiming mootness shows it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189-90 (2000). But courts "treat the voluntary cessation of challenged conduct by government officials 'with more solicitude. . . than similar

DEFENDANT CITY OF SEATTLE'S REPLY RE SUPPLEMENTAL
CROSS-MOTION FOR SUMMARY JUDGMENT RE MOOTNESS
AND MOTION TO MODIFY REPORT AND RECOMMENDATION - 1
*El Papel LLC v. Harrell*, No. 2:20-cv-01323-RAJ-JRC

**Ann Davison**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

actions by private parties.'" *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019). Plaintiffs point out that *Glazing Health* involved legislative action. *See* Plaintiffs' Opposition, Dkt. # 165 at p. 3. But even cases cited by Plaintiffs confirm that the presumption is not limited to situations involving cessation of legislative action. *See, e.g., America Cargo Transport, Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (applying the "more solicitude" principle in the context of executive action by government and recognizing that "unlike in the case of a private party, we presume the government is acting in good faith").

Plaintiffs assert that the presumption of mootness in the case of voluntary cessation of government action does not apply when the discretion to cease or reenact the challenged conduct sits with one agency or individual or there are no formal processes required to effect the change. Dkt. # 165 at p. 2. Plaintiffs offer no Ninth Circuit authority denying the presumption on that basis.[1] The two Supreme Court cases Plaintiffs invoke provide questionable support.

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020), is a "shadow docket" order[2] granting injunctive relief pending disposition of an appeal. The order states that "[i]t is clear that this matter is not moot" and cites one case that dealt with the voluntary cessation doctrine, but the order contains no discussion specifically addressing that doctrine. *Id.*, 141 S.Ct. at 68-69. Plaintiffs' reliance on this order for the proposition that the presumption does not apply where an official has ad hoc authority to reimpose restrictions appears to rest on the order's statement that the

---

[1] Plaintiffs gain nothing by citing *Brach v. Newsom*, 6 F.4th 904 (9th Cir. 2021), because that decision has been vacated pending en banc review. Dkt. # 165 at p. 3 n.1; *Brach v. Newsom*, 18 F.4th 1031 (2021).

[2] A law professor coined "shadow docket" to refer to the orders and summary decisions that do not result from the Court's formal merits docket. William Baude, *Foreword: The Supreme Court's Shadow Docket*, 9 N.Y.U.J.L. & LIBERTY 1 (2015). *See also Whole Woman's Health v. Jackson*, Order on App. for Injunctive Relief, __ S. Ct. __, 2021 WL 3910722, at *5 (Sept. 1, 2021) (Kagan, J., dissenting) (noting "just how far the Court's 'shadow-docket' decisions may depart from the usual principles of appellate process"); Stephen I. Vladeck, *The Solicitor General and the Shadow Docket*, 133 HARV. L. REV. 123 (2019) (critiquing the shadow docket's use).

---

DEFENDANT CITY OF SEATTLE'S REPLY RE SUPPLEMENTAL
CROSS-MOTION FOR SUMMARY JUDGMENT RE MOOTNESS
AND MOTION TO MODIFY REPORT AND RECOMMENDATION - 2
*El Papel LLC v. Harrell*, No. 2:20-cv-01323-RAJ-JRC

**Ann Davison**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

"Governor regularly changes the classifications of particular areas without prior notice." Dkt. # 165 at p. 3 (citing *Roman Catholic Diocese of Brooklyn*, 141 S.Ct. at 68-69). But the context indicates the Court made that statement in connection with the "capable of repetition, yet evading review" exception to mootness, not to describe where the presumption of mootness properly applies. *Roman Catholic Diocese of Brooklyn*, 141 S.Ct. at 68.

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2019 n.1 (2017), states in a footnote that the Governor's direction that an executive department change its policy did not moot the case. While holding that the defendant department had failed to carry the burden of showing it could not revert to its prior policy, *Trinity* does not explicitly discuss the application of the presumption of mootness but simply notes the department's position that there was no effective barrier that would prevent it from reinstating its policy. *Id*.

Even accepting Plaintiffs' view of the law, Plaintiffs' assertion that the mootness presumption does not apply to the expiration of the City's moratorium fails because Plaintiffs fundamentally misunderstand the City's process for adopting a measure like the challenged moratorium. Plaintiffs assert that "the Seattle Mayor enjoys unilateral authority to reenact the moratorium at his discretion." Dkt. # 165 at p. 4. This is incorrect. The order establishing the moratorium was an emergency order authorized and proclaimed under Seattle Municipal Code ("SMC") 10.02.020.A.15. Dkt. # 25-8 at p. 11. The Code provision gives the Council final say over emergency orders, requiring any such order to be presented to the City Council "for ratification and confirmation, modification, or rejection, and if rejected shall be void. The Council . . . *may, by resolution, modify or reject the order* . . . ." SMC 10.02.020.B (emphasis added).[3]

---

[3] The Seattle Municipal Code is available at https://library.municode.com/wa/seattle/codes/municipal_code (accessed March 31, 2022)

DEFENDANT CITY OF SEATTLE'S REPLY RE SUPPLEMENTAL
CROSS-MOTION FOR SUMMARY JUDGMENT RE MOOTNESS
AND MOTION TO MODIFY REPORT AND RECOMMENDATION - 3
*El Papel LLC v. Harrell*, No. 2:20-cv-01323-RAJ-JRC

**Ann Davison**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Consistent with that provision, when the Mayor issued the order establishing the moratorium, the Council had the authority to modify that order—and did modify it two days later. Dkt. # 25-8. If the Mayor decided in the future to issue an order reenacting an eviction moratorium, the Council could reject that order. Far from creating "ad hoc" authority exercised by a single official without any formal process, as Plaintiffs claim, Seattle's Code establishes a process that gives the Council an integral role in—and the final word on—the decision to reimpose the moratorium.

That distinguishes this case from *Roman Catholic Diocese of Brooklyn*, 141 S.Ct. at 68, where the Governor could change COVID-related restrictions without prior notice, and from *Trinity Lutheran Church*, 137 S.Ct. at 2019 n.1, where the department agreed there was no barrier to its reinstating its policy. The presumption of mootness applies here.

### 2. Plaintiffs demonstrate no reasonable expectation that the City will reenact the eviction moratorium.

Because the expiration of the City's moratorium triggers a presumption of mootness, Plaintiffs must rebut it by showing a reasonable expectation that the City will reenact the moratorium or one similar to it. *See Board of Trustees of Glazing Health*, 941 F.3d at 1199. Plaintiffs cannot meet that burden. Public health conditions related to COVID-19 are fundamentally different than when the City instituted the moratorium (when no effective vaccines existed). The local vaccination rate now approaches 90 percent. *See* City's Motion, Dkt. # 162 at p. 4. New COVID-19 cases and hospitalizations have decreased precipitously. *Id.*

Plaintiffs point out that the threat from COVID-19 has not disappeared and that future variants and surges could occur. Dkt. # 165 at pp. 6-7. But that does not mean the City would reenact the eviction moratorium. The fact that vaccines are now available and widely used locally precludes a reasonable expectation that the City would reenact the moratorium even though

COVID-19 transmission may continue at varying rates for some time. *See, e.g., Dixon Ventures, Inc. v. Dept. of Health and Human Services*, ___ F. Supp. 3d ___, 2022 WL 179012 at *2 (E.D. Ark. January 19, 2022) (relying on the availability of COVID-19 vaccines and testing to find that a plaintiff showed no reasonable expectation that a new moratorium would be enacted).[4]

Plaintiffs draw the wrong lesson from the acknowledged uncertainty about the future course of the pandemic, postulating that if conditions change for the worse, the City will respond the same way it did at the outset of the pandemic—by instituting an eviction moratorium. But the uncertainty as to the future of the pandemic creates a similar uncertainty as to how the City would respond. If public health conditions change such that City officials feel additional measures are necessary, they could reach for a range of responses. Without knowing the nature of the conditions, one can scarcely predict the nature of the enactments the City would pursue—they might or might not involve limitations on evictions that might or might not repeat elements of the now-expired moratorium. Plaintiffs' expectation that the City's response to negative future conditions would be to reinstate the moratorium rests solely on speculation.

Plaintiffs' suggestion that a reasonable expectation of reenactment exists because the City has "a long track record of moving the goalpost on the eviction ban" is a red herring. Dkt. # 165 at p. 5. Plaintiffs pull the phrase "moving the goalposts" from *Tandon v. Newsom*, 141 S.Ct. 1294, 1297 (2021), another "shadow docket" order granting injunctive relief pending disposition of an appeal. *See* Dkt. # 165 at p. 5. But that order nowhere addresses the "reasonable expectation" of reenactment—indeed, the challenged restrictions in that case had not even

---

[4] Even the source cited by Plaintiffs that warns of the potential for a new surge based on a new variant recognizes that vaccines appear to protect as well against the new variant as they did against the Omicron variant. *See* Dkt. # 165 at p. 7 (citing *Another Covid Surge May Be Coming. Are we ready for It?*, New York Times, March 19, 2022, available at https://www.nytimes.com/2022/03/19/health/covid-ba2-surge-variant.html?auth=login-facebook, last accessed March 31, 2022).

**Ann Davison**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

expired when the Supreme Court ruled. In any event, that the City extended the moratorium

multiple times over the past two years "based on public health necessity" (Dkt. # 25-8 at p. 12)

says nothing about whether, under different public health conditions, Plaintiffs can reasonably

expect the City to reenact the moratorium in the future.

Finally, Plaintiffs err in asserting a reasonable expectation that the City would reenact the

moratorium because of the continuing economic fallout of the pandemic. Dkt. # 165 at pp. 5-6.

Plaintiffs conflate the City's eviction moratorium and the other eviction protections challenged in

this case: the six-month defense and the repayment plan requirement. *See* Dkt. # 103 at p. 8

(describing these protections). Unlike the moratorium, the City adopted the latter two measures

based on the recognition that economic impacts from COVID-19 were likely to last longer than

the emergency itself. *See* Dkt. # 17-11 at p. 3; Dkt. # 17-12 at p. 2. These measures remain in

effect – indeed, the six-month defense only commenced upon termination of the moratorium.

The City's adoption of measures extending beyond the termination of the moratorium in order to

address the pandemic's persistent economic impacts negates any reasonable expectation that the

City would reenact the moratorium in order to address such impacts.

**B.      The "capable of repetition, yet evading review" exception to mootness does not apply.**

Under the "capable of repetition, yet evading review" exception, a court will decline to

dismiss an otherwise moot action if it finds that: (1) the challenged action is in its duration too short

to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the

complaining party will be subject to the same action again. *Protectmarriage.com-Yes on 8 v.*

*Bowen*, 752 F.3d 827, 836 (9th Cir. 2014).

DEFENDANT CITY OF SEATTLE'S REPLY RE SUPPLEMENTAL
CROSS-MOTION FOR SUMMARY JUDGMENT RE MOOTNESS
AND MOTION TO MODIFY REPORT AND RECOMMENDATION - 6
*El Papel LLC v. Harrell*, No. 2:20-cv-01323-RAJ-JRC

**Ann Davison**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs fail the first prong of this test. Plaintiffs err in suggesting that the moratorium meets this prong simply because the moratorium was a temporary measure that was too short in duration to be fully litigated before it expired. Dkt. # 165 at pp. 7-8. For a controversy to meet the first prong, it must be of "*inherently* limited duration." *Protectmarriage.com*, 752 F.3d at 836 (emphasis in original). The "capable of repetition, yet evading review" exception "is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would *always* evade judicial review." *Protectmarriage.com*, 752 F.3d at 836 (emphasis in original).

The City's moratorium allowed for its extension "based on public health necessity" but no longer than the termination of the civil emergency. Dkt. # 25-8 at p. 12. If the City were to issue a similar order in the future, its duration would depend on pandemic conditions at that time— conditions that might justify an order that lives long enough to be litigated. The "inherently limited duration" standard is not met here because there is "no risk that future repetitions of the controversy will *necessarily* evade review as well." *Protectmarriage.com*, 752 F.3d at 837 (emphasis added).

Plaintiffs also fail to meet the "capable of repetition" prong. Under that prong, a plaintiff has the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity. *Native Village of Nuiqsut v. Bureau of Land Management*, 9 F.4th 1201, 1209 (9th Cir. 2021). Plaintiffs cannot carry their burden of showing a reasonable expectation that they will be subject to the City eviction moratorium again. *See supra*, § A.2.

**C.    Conclusion.**

The City respectfully requests that the Court modify the Magistrate Judge's Report and Recommendation and dismiss as moot Plaintiffs' requests for injunctive and declaratory relief

////

////

**Ann Davison**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

against the City's eviction moratorium, while otherwise adopting the Magistrate Judge's

recommendation and dismissing on the merits the balance of Plaintiffs' case against the City.

Respectfully submitted April 1, 2022.

ANN DAVISON
Seattle City Attorney

By:      */s/ Jeffrey S. Weber*, WSBA #24496
         */s/ Roger D. Wynne*, WSBA #23399
         */s/ Erica R. Franklin*, WSBA #43477
Seattle City Attorney's Office
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
Ph: (206) 684-8200
jeff.weber@seattle.gov
roger.wynne@seattle.gov
erica.franklin@seattle.gov
*Assistant City Attorneys for Defendants City of
Seattle and Bruce Harrell, in his official capacity as
the Mayor of the City of Seattle*

DEFENDANT CITY OF SEATTLE'S REPLY RE SUPPLEMENTAL
CROSS-MOTION FOR SUMMARY JUDGMENT RE MOOTNESS
AND MOTION TO MODIFY REPORT AND RECOMMENDATION - 8
*El Papel LLC v. Harrell*, No. 2:20-cv-01323-RAJ-JRC

**Ann Davison**
Seattle City Attorney
701 Fifth Ave., Suite 2050
Seattle, WA 98104-7095
(206) 684-8200